BENJAMIN C. DURHAM, ESQ.
Nevada Bar No. 7684
COFER, GELLER & DURHAM, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 631-6111
(702) 946-0826 fax
bdurham@vegasdefense.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| ANTHONY MITCHELL, LINDA MITCHELL, and MICHAEL MITCHELL, <br><br> *Plaintiffs,* <br><br> *vs.* <br><br> CITY OF HENDERSON, NEVADA; JUTTA CHAMBERS, individually and in her capacity as Chief of the Henderson Police Department; GARRETT POINER, RONALD FEOLA, RAMONA WALLS, ANGELA WALKER, and CHRISTOPHER WORLEY, individually and in their official capacities as Henderson police officers; CITY OF NORTH LAS VEGAS, NEVADA; JOSEPH CHRONISTER, individually and in his official capacity as Chief of the North Las Vegas Police Department; DOE individuals I–X, individually and in their official capacities as police officers; and ROE individuals I–X, individually and in their official capacities, jointly and severally, <br><br> *Defendants.* | Case No: _____ <br><br> **COMPLAINT** <br><br> **JURY DEMANDED** |

COME NOW the Plaintiffs, ANTHONY MITCHELL, LINDA MITCHELL, and MICHAEL MITCHELL, by and through their counsel, BENJAMIN C. DURHAM, ESQ., of COFER, GELLER & DURHAM, LLC, and for their claims for relief against Defendants, and each of them, jointly

1

and severally, based upon knowledge, information, and reasonable belief derived therefrom, allege, complain, and state as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 over Plaintiffs' causes of action arising under 42 U.S.C. § 1983 and due to the deprivation of rights, privileges, and immunities secured to Plaintiffs under the Third, Fourth, and Fourteenth Amendments to the United States Constitution.

2. This Court has supplemental jurisdiction over Plaintiffs' causes of action arising under Nevada state law pursuant to 28 U.S.C. § 1367.

3. Venue lies in the Southern Division of the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(a)(1) and 28 U.S.C. § 1391(b)(2) because one or more Defendants is a political subdivision of the State of Nevada, and because the underlying acts, omissions, events, injuries and related facts upon which the present action is based occurred in Clark County, Nevada.

## PARTIES

4. Plaintiff ANTHONY MITCHELL is, and at all times herein mentioned was, a United States citizen and a resident of the District of Nevada, and is the son of Plaintiffs LINDA MITCHELL and MICHAEL MITCHELL.

5. Plaintiffs LINDA MITCHELL and MICHAEL MITCHELL are, and at all times herein mentioned were, United States citizens and residents of the District of Nevada.  They are a married couple.

6. Defendant CITY OF HENDERSON is a governmental entity organized and existing under the laws of the State of Nevada, and is a political entity of the State of Nevada.

7. Defendant CITY OF NORTH LAS VEGAS is a governmental entity organized and existing under the laws of the State of Nevada, and is a political entity of the State of Nevada.

8.  At all times, Defendant CITY OF HENDERSON possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the Henderson Police Department (hereinafter, "HPD"). In this case, Defendant CITY OF HENDERSON acted through agents, employees, and servants, including its policymakers, and through Defendant JUTTA CHAMBERS.

9.  At all times, Defendant CITY OF NORTH LAS VEGAS possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the North Las Vegas Police Department (hereinafter, "NLVPD").

10.  Defendant JUTTA CHAMBERS was at all times relevant to this action the Chief of HPD. She is sued in this action as an individual.

11.  Defendants SERGEANT GARRETT POINIER, OFFICER RONALD FEOLA, OFFICER RAMONA WALLS, OFFICER ANGELA WALTER, and OFFICER CHRISTOPHER WORLEY are and were at all times relevant to this action police officers employed by CITY OF HENDERSON. They are sued in both their individual and official capacities.

12.  Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER DAVID CAWTHORN, OFFICER ROCKWELL, and OFFICER SNYDER are and were at all times relevant to this action police officers employed by CITY OF NORTH LAS VEGAS. They are sued in both their individual and official capacities.

13.  Does 1–10 are fictitious names for employees, agents and/or servants of CITY OF HENDERSON, and DOES 11–20 are fictitious names for employees, agents, and/or servants of CITY OF NORTH LAS VEGAS. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES, and therefore sue these defendants by such fictitious names. Plaintiffs are informed, believe, and thereon allege that each of the fictitiously named defendants is legally responsible, either intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations

3

and/or deprivation of rights hereinafter alleged. Plaintiffs request leave of the Court to amend this Complaint and insert the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

14.  The reason why Plaintiffs are ignorant of the true names and capacities of Defendants herein sued as DOES is that the same have been unascertainable as of the date of filing of this Complaint, due to the fact that these DOES may be state police officers, sergeants, lieutenants, captains, commanders, deputy chiefs and/or civilian employee agents, policy makers and representatives of HPD or NLVPD, or employees, agents, and/or representatives of Defendants CITY OF HENDERSON or CITY OF NORTH LAS VEGAS and/or other state political entities. As such, many records of these individuals are protected by state statutes and can only be ascertained through the discovery process.

15.  Plaintiffs are informed, believe, and thereon allege that all Defendants were the agents, employees, and/or co-conspirators of the other Defendants, and each of them were acting within the course and scope of their agency, employment, and/or concert of action, and are vicariously liable, jointly and severally, for the actions, inactions, and/or omissions of themselves and of the other Defendants, which proximately resulted in the physical, emotional, and future damages to the Plaintiffs as herein alleged.

## NATURE OF THE ACTION

16.  This is an action for money damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Third, Fourth, and Fourteenth Amendments to the United States Constitution, and under the law of the State of Nevada, against the named Defendants, police officers of the Henderson Police Department and the North Las Vegas Police Department, in their individual and official capacities, and against the City of Henderson and the City of North Las Vegas.

COMMON ALLEGATIONS

17. On the morning of July 10th, 2011, officers from the Henderson Police Department responded to a domestic violence call at a neighbor's residence.

18. At 10:45 a.m., Defendant OFFICER CHRISTOPHER WORLEY (HPD) contacted Plaintiff ANTHONY MITCHELL via his telephone. WORLEY told Plaintiff that police needed to occupy his home in order to gain a "tactical advantage" against the occupant of the neighboring house. ANTHONY MITCHELL told the officer that he did not want to become involved and that he did not want police to enter his residence. Although WORLEY continued to insist that Plaintiff should leave his residence, Plaintiff clearly explained that he did not intend to leave his home or to allow police to occupy his home. WORLEY then ended the phone call.

19. After Plaintiff ANTHONY MITCHELL refused to allow the police to enter his home, the Defendant police officers, including Defendants SERGEANT MICHAEL WALLER, OFFICER DAVID CAWTHORN and OFFICER CHRISTOPHER WORLEY, conspired among themselves to force ANTHONY MITCHELL out of his residence and to occupy his home for their own use. Defendant OFFICER DAVID CAWTHORN outlined the Defendants' plan in his official report:

> It was determined to move to 367 Evening Side and attempt to contact Mitchell. If Mitchell answered the door he would be asked to leave. If he refused to leave he would be arrested for Obstructing a Police Officer. If Mitchell refused to answer the door, force entry would be made and Mitchell would be arrested.

20. At approximately 11:52 a.m., police officers, including Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER DAVID CAWTHORN, OFFICER ROCKWELL, and OFFICER SNYDER arrayed themselves in front of Plaintiff ANTHONY MITCHELL's house and prepared to execute their plan. The officers banged forcefully on the door and loudly commanded ANTHONY MITCHELL to open the door to his residence.

21. Surprised and perturbed, Plaintiff ANTHONY MITCHELL immediately called his mother (Plaintiff LINDA MITCHELL) on the phone, exclaiming to her that the police were beating on his front door.

22. Seconds later, officers, including OFFICER ROCKWELL, smashed open Plaintiff AN-
THONY MITCHELL's front door with a metal ram as Plaintiff stood in his living room.

23. As Plaintiff ANTHONY MITCHELL stood in shock, the officers aimed their weapons at
ANTHONY MITCHELL and shouted obscenities at him and ordered him to lie down on the floor.

24. Fearing for his life, Plaintiff ANTHONY MITCHELL dropped his phone and prostrated
himself onto the floor of his living room, covering his face with his hands.

25. Addressing Plaintiff as "asshole," officers, including OFFICER SNYDER, shouted conflict-
ing orders at ANTHONY MITCHELL, commanding him both to shut off his phone, which was on
the floor in front of his head, and simultaneously commanding him to "crawl" toward the officers.

26. Confused and terrified, Plaintiff ANTHONY MITCHELL remained curled on the floor of his
living room, with his hands over his face, and made no movement.

27. Although Plaintiff ANTHONY MITCHELL was lying motionless on the ground and posed
no threat, officers, including OFFICER DAVID CAWTHORN, then fired multiple "pepperball"
rounds at Plaintiff as he lay defenseless on the floor of his living room.  ANTHONY MITCHELL
was struck at least three times by shots fired from close range, injuring him and causing him severe
pain.

28. As a result of being shot by officers, Plaintiff ANTHONY MITCHELL experienced psycho-
logical horror and extreme emotional distress due to his fear and belief that he had been mortally
wounded by gunfire.  Further, in addition to the shock and bruising caused by the impact of the
"pepperball" rounds on his body at close range, the caustic and irritating chemicals released caused
ANTHONY MITCHELL to suffer extreme and prolonged pain in his eyes, nose, throat, lungs, and
skin, as well as causing him to experience uncontrollable coughing and difficulty breathing.

29. Plaintiff ANTHONY MITCHELL's pet, a female dog named "Sam", was cowering in the
corner when officers smashed through the front door. Although the terrified animal posed no threat
to officers, they gratuitously shot it with one or more pepperball rounds.  The panicked animal
howled in fear and pain and fled from the residence. Sam was subsequently left trapped outside in
a fenced alcove without access to water, food, or shelter from the sun for much of the day, while

temperatures outside soared to over 100 degrees Fahrenheit.

30.  Plaintiff LINDA MITCHELL was talking to her son ANTHONY MITCHELL via telephone at the time that officers smashed through ANTHONY MITCHELL's front door. Over the telephone, she was able to hear officers shouting obscenities and weapons being fired.  As a result of the officers' actions, she experienced extreme emotional distress due to her fear and belief that her son had been severely wounded or killed. While she was screaming her son's name over and over into the phone, one of the officers inside ANTHONY MITCHELL's home callously hung up the phone.

31.  As Plaintiff ANTHONY MITCHELL lay incapacitated and in agony on his living room floor, several officers, including OFFICER DAVID CAWTHORN, forcefully pressed their knees atop the back of ANTHONY MITCHELL's neck and body, and roughly wrenched his arms behind his back and handcuffed him, all of which caused ANTHONY MITCHELL to suffer further pain and distress.

32.  Officers, including OFFICER DAVID CAWTHORN, then roughly dragged Plaintiff ANTHONY MITCHELL out of his residence by his arms, causing him pain and humiliation.

33.  Once outside the residence, OFFICER DAVID CAWTHORN slammed ANTHONY MITCHELL against the exterior of Plaintiff's home, and forcefully pressed Plaintiff's face into the stucco wall, holding him in this painful and humiliating configuration for several minutes. When ANTHONY MITCHELL begged to be released and pleaded that he was not a threat, officers, including OFFICER DAVID CAWTHORN, did not relent, but commented that Plaintiff should have come out of his home when commanded to do so by the police, and continued to press his face against the wall for an additional thirty seconds.

34.  Defendant OFFICER DAVID CAWTHORN then told Plaintiff ANTHONY MITCHELL that he was under arrest for "Obstructing a Police Officer."

35.  Officers, including Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER ROCKWELL, and OFFICER SNYDER, then swarmed through Plaintiff ANTHONY MITCHELL's home, searching through his rooms and possessions and moving his furniture, without permission or a warrant.

36.  Officers subsequently occupied Plaintiff ANTHONY MITCHELL's home at 367 Evening-

side Avenue and used it as an observation post to surveil the neighboring house at 363 Eveningside Avenue.

37.  Meanwhile, starting at approximately 10:45 a.m., police officers entered the back yard of Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's residence at 362 Eveningside Avenue. The officers asked Plaintiff MICHAEL MITCHELL if he would be willing to vacate his residence and accompany them to their "command center" under the guise that the officers wanted MICHAEL MITCHELL's assistance in negotiating the surrender of the neighboring suspect at 363 Eveningside Avenue.  Plaintiff MICHAEL MITCHELL reluctantly agreed to follow the officers from his back yard to the HPD command center, which was approximately one quarter mile away.

38.  When Plaintiff MICHAEL MITCHELL arrived at the HPD command center, he was informed that the suspect was "not taking any calls" and that Plaintiff MICHAEL MITCHELL would not be permitted to call the suspect neighbor from his own phone.  At that time, Mr. Mitchell realized that the request to accompany officers to the HPD command center was a tactic to remove him from his house. He waited approximately 10 minutes at the HPD command center and was told he could not return to his home.

39.  Plaintiff MICHAEL MITCHELL then left the HPD command center and walked down Mauve Street toward the exit of the neighborhood. After walking for less than 5 minutes, an HPD car pulled up next to him. He was told that his wife, LINDA MITCHELL, had "left the house," and would meet him at the HPD command center. Michael Mitchell then walked back up Mauve street to the HPD command center.He then called his son, James Mitchell, to pick him up at the HPD command center.  When Plaintiff MICHAEL MITCHELL attempted to leave the HPD command center to meet James, he was arrested, handcuffed, and placed in the back of a marked police car.

40.  Officers had no reasonable grounds to detain Plaintiff MICHAEL MITCHELL, nor probable cause to suspect him of committing any crime.

41.  At approximately 1:45 p.m., a group of officers entered the back yard of Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's residence at 362 Eveningside Avenue.  They banged on the back door of the house and demanded that Plaintiff LINDA MITCHELL open the

8

door.

42.  Plaintiff LINDA MITCHELL complied and opened the door to her home.  When she told officers that they could not enter her home without a warrant, the officers ignored her.  One officer, Defendant DOE 1, seized her by the arm, and other officers entered her home without permission.

43.  Defendant DOE 1 then forcibly pulled Plaintiff LINDA MITCHELL out of her house.

44.  Another unidentified officer, Defendant DOE 2, then seized Plaintiff LINDA MITCHELL's purse and began rummaging through it, without permission, consent, or a warrant.

45.  Defendant DOE 1 then escorted LINDA MITCHELL at a brisk pace through her yard and up the hill toward the "Command Post" while maintaing a firm grip on her upper arm.  Plaintiff LINDA MITCHELL is physically frail and had difficulty breathing due to the heat and the swift pace.  However, DOE 1 ignored her pleas to be released or to at least slow down, and refused to provide any explanation for why she was being treated in such a manner.

46.  In the meantime, the officers searched and occupied Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's house. When Plaintiff LINDA MITCHELL returned to their home, the cabinets and closet doors throughout the house had been left open and their contents moved about.  Water had been consumed from their water dispenser.  Even the refrigerator door had been left ajar, and mustard and mayonnaise had been left on their kitchen floor.

47.  Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were subsequently transported to Henderson Detention Center and were booked on charges of Obstructing an Officer. Both Anthony and Michael Mitchell were detained for at least nine hours and were required to pay a bond to secure their release from custody.

48.  A criminal complaint was subsequently filed by the Henderson City Attorney's office against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL, charging them with counts of Obstructing an Officer.  All criminal charges against Plaintiffs were ultimately dismissed with prejudice.

49.  Officers and DOE Defendants jailed Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL, and caused criminal complaints to issue against Plaintiffs, in order to provide cover

for Defendants' wrongful actions, to frustrate and impede Plaintiffs' ability to seek relief for those actions, and to further intimidate and retaliate against Plaintiffs.

50. On information and belief, none of the officers involved in the above-alleged incidents were ever subjected to official discipline or inquiry regarding their actions.

FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983)

51. Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–50 as though fully restated herein.

52. Prior to the events of June 10th, 2011, the Henderson Police Department and the North Las Vegas Police Department developed and maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of United States citizens, which caused the violations of Plaintiff's rights.

53. It was the policy and/or custom of the Henderson Police Department and the North Las Vegas Police Department to inadequately supervise and train its police officers, including the Defendant police officers, thereby failing to properly discourage Constitutional violations on the part of their police officers.

54. As a result of the above-described policies and customs, police officers of the Henderson Police Department and the North Las Vegas Police Department, including the Defendant police officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

55. The above-described polices and/or customs demonstrate a deliberate indifference on the part of Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS to the Constitutional rights of United States citizens, and were the cause of the violations of Plaintiffs' rights alleged herein.

56. Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

57. Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
(Assault)

58.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–57 as though fully restated herein.

59.  As described hereinabove, by pointing rifles at Plaintiffs, and making threatening moves and advancing upon Plaintiffs, Defendants caused Plaintiffs to feel fear of harmful or offensive physical contact on multiple occasions.

60.  The actions of Defendants in causing Plaintiffs to fear such harmful or offensive physical contact were intentional, and undertaken with malice and oppression.

61.  As a direct and proximate result of Plaintiffs' fear of harmful or offensive physical contact, Plaintiffs suffered emotional distress.

62.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

63.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
(Battery)

64.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–63 as though fully restated herein.

65.  As a result of being seized, shot, thrown to the ground, slammed into walls, handcuffed, beaten, and otherwise touched without consent, Plaintiffs suffered harmful or offensive physical contact at the hands of Defendants.

66.  The actions of Defendants in inflicting such harmful or offensive physical contact were intentional, and undertaken with malice and oppression.

67.  As a direct and proximate result of Defendants' infliction of such harmful or offensive contact to their persons, Plaintiffs suffered emotional distress, physical discomfort, and injury.

68.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

69.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at

trial.

### Fourth Claim for Relief
(False Arrest and Imprisonment)

70.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–69 as though fully restated herein.

71.  Defendants detained Plaintiff Anthony Mitchell by dragging him from his home, handcuffing him, placing him in a police vehicle, and jailing him.

72.  Defendants detained Plaintiff Michael Mitchell by physically preventing him from leaving the "Command Center," handcuffing him, placing him in a police vehicle, and jailing him.

73.  Defendants detained Plaintiff Linda Mitchell by seizing her by the arm, forcefully dragging her away against her will, and preventing her from remaining in her home.

74.  Defendants' detention of Plaintiffs was without legal authority, and unsupported by reasonable suspicion of wrongdoing, probable cause to believe that a crime had been committed, exigent circumstances, or a judicial warrant.

75.  Defendants acted with oppression, fraud, and malice in detaining Plaintiffs.

76.  As a direct and proximate result of being so detained, Plaintiffs suffered emotional distress, humiliation, physical discomfort, and injury.

77.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

78.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

### Fifth Claim for Relief
(Intentional Infliction of Emotional Distress)

79.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–78 as though fully restated herein.

80.  As set forth hereinabove, Defendants' conduct was intentional, malicious, and oppressive, and calculated to cause Plaintiffs fear and emotional distress.

81.  As the actual and proximate result of Defendants' outrageous conduct, including the inva-

sion of Plaintiff ANTHONY MITCHELL's home, the shooting of Plaintiff ANTHONY MITCHELL and his dog while he was on the phone with his mother, and the unjustified handcuffing and detention of Plaintiffs ANTHONY and MICHAEL MITCHELL in each other's presence and in the presence of LINDA MITCHELL, Plaintiffs suffered humiliation, mental anguish, physical discomfort, injury, and severe emotional distress.

82.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

83.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
(Negligent Infliction of Emotional Distress)

84.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–83 as though fully restated herein.

85.  Plaintiff LINDA MITCHELL, via her telephone, was subjected to the sounds of her son being shot and brutalized by Defendant officers after they broke into his home.

86.  As a direct and proximate result of observing these acts, Plaintiff LINDA MITCHELL suffered emotional injury.

87.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF
(Civil Conspiracy)

88.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–87 as though fully restated herein.

89.  Defendants, acting in concert, agreed among themselves to detain, arrest, and employ physical violence against Plaintiffs, in the manners and ways previously alleged, all the while knowing that they had no legal right to do so.

90.  Defendants further agreed among themselves to provide a false accounting of the incident for the purpose of concealing their own wrongdoing and causing Plaintiffs to be arrested and jailed.

91.  The actions of Defendants were undertaken with fraud, oppression, and malice.

92.  As a direct and proximate result of Defendants' actions, Plaintiffs suffered emotional distress, humiliation, physical discomfort, and injury.

93.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

94.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

EIGHTH CLAIM FOR RELIEF
(Defamation)

95.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–94 as though fully restated herein.

96.  By seizing, handcuffing, and detaining Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL, in full view of the neighborhood, Defendant Officers communicated to all observers that Plaintiffs were criminals.

97.  Plaintiffs were not criminals, and Defendants knew and/or acted in reckless disregard of the fact that Plaintiffs were not criminals.

98.  Defendants published this communication to the individuals present in the neighborhood where Defendants seized Plaintiffs, and to any and all other persons encountered after Defendants first began detaining Plaintiffs.

99.  On information and belief, such individuals were not persons to whom Defendants enjoyed a privilege to publish such defamatory communications.

100.  The actions of Defendants constitute defamation per se.

101.  As a direct and proximate result of these action of Defendants, Plaintiffs were injured in their reputation and suffered severe embarrassment and humiliation.

102.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

103.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

NINTH CLAIM FOR RELIEF
(Abuse of Process)

14

104. Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–103 as though fully restated herein.

105. Defendants filed criminal complaints against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL not for the purpose of resolving a legitimate dispute, but for the ulterior purpose of legitimizing and/or concealing their wrongful detention and arrest of Plaintiffs.

106. The actions of Defendants constitute an abuse of process.

107. Defendants acted with oppression, fraud, and malice in initiating the criminal process against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL.

108. Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

109. Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

TENTH CLAIM FOR RELIEF
(Malicious Prosecution)

110. Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–109 as though fully restated herein.

111. Defendants initiated criminal proceedings against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL by filing a complaint in the Municipal Court of the City of Henderson charging Plaintiffs each with obstruction.

112. Defendants had no probable cause to believe that Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL had committed said crimes.

113. The charges against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were dismissed with prejudice, thereby terminating the proceedings against Plaintiffs.

114. The dismissal of said charges was not based on any agreement, request or acceptance of mercy, or compromise, and such termination was in the favor of Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL.

115. Defendants acted with oppression, fraud, and malice in initiating criminal proceedings against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL.

116.  As a result of the criminal proceedings initiated by Defendants, Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were wrongfully imprisoned, forced to post bond, and suffered humiliation, emotional distress, and outrage.

117.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

118.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

ELEVENTH CLAIM FOR RELIEF
(Respondeat Superior)

119.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–118 as though fully restated herein.

120.  Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS are liable for the tortious acts of their agents and employees, as hereinabove alleged, under the theory of Respondeat Superior.

121.  As a direct and proximate cause of those tortious acts, Plaintiffs suffered injuries in the manners and ways previously alleged.

122.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

123.  Plaintiffs are entitled to exemplary and/or punitive damages in an amount to be proven at trial.

TWELFTH CLAIM FOR RELIEF
(Negligent Hiring, Retention, Supervision, and Training)

124.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–123 as though fully restated herein.

125.  Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS owed a duty to citizens, such as Plaintiffs, to exercise care in the hiring, training, and supervision of its police force, so as to protect citizens from false arrest, false imprisonment, assault, battery, and the like, at the hands of poorly trained, poorly supervised, unwisely hired, or unwisely retained police officers.

126.  Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS breached this duty by

a) negligently tolerating and/or ratifying the practice or policy of their police officers in detaining, seizing, and arresting citizens without probable cause or reasonable grounds, and violating citizens' Constitutional rights to due process and to freedom from unreasonable seizure, as manifested by Defendants' failure to discipline the officers who committed such acts as alleged above; and

b) failing to properly screen individuals who apply to become police officers, and failing to remove dangerous police, as manifested by Defendants' failure to conduct an internal investigation and inquiry under the circumstances described herein.

127.  As a direct and proximate result of Defendants' negligence, Plaintiffs suffered injuries at the hands of Defendants' employees in the manners and ways previously alleged.

128.  Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter a judgment in their favor and against Defendants, jointly and severally, and award:

1.  General damages in an amount to be proven at trial as to each and every claim herein;

2.  Exemplary and/or punitive damages in an amount to be proven at trial as to each and every claim herein, save for the sixth and twelfth claims for relief;

3.  Prejudgment interest pursuant to law;

4.  Declaratory relief declaring Defendant Officers' conduct to be unconstitutional;

5.  Following a proper motion, a permanent injunction requiring Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS to adopt appropriate policies regarding the hiring, training, and supervision of their police officers;

6.  Reasonable attorneys' fees and costs pursuant to all applicable statutes, codes, and rules, including 42 U.S.C. § 1988; and

7. Such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues in this action to the extent authorized by law.

DATED this 30th day of June, 2013.

 

 

 

 

_____

BENJAMIN C. DURHAM, ESQ.
Nevada Bar No. 7684
COFER, GELLER & DURHAM, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 631-6111
(702) 946-0826 fax
bdurham@vegasdefense.com
*Attorney for Plaintiffs*