1  BENJAMIN C. DURHAM, ESQ.
2  Nevada Bar No. 7684
   FRANK H. COFER, ESQ.
3  Nevada Bar No. 11362
4  COFER, GELLER & DURHAM, LLC
   601 South Tenth Street
5  Las Vegas, Nevada 89101
6  (702) 631-6111
   (702) 946-0826 fax
7  bdurham@vegasdefense.com
8  fcofer@vegasdefense.com
   Attorney for Plaintiffs
9
                    UNITED STATES DISTRICT COURT
10
                         DISTRICT OF NEVADA
11

12  ANTHONY MITCHELL, LINDA MITCHELL,          Case No.:  2:13-cv-01154-APG-CWH
    AND MICHAEL MITCHELL,
13
                PLAINTIFFS,
14
         VS.
15
16  CITY OF HENDERSON, NEVADA; JUTTA
    CHAMBERS, individually and in her official
17  capacity as Chief of the Henderson Police
    Department; GARRETT POINIER, RONALD        FIRST AMENDED COMPLAINT
18  FEOLA, RAMONA WALLS, ANGELA WALKER,
    and CHRISTOPHER WORLEY, individually        JURY DEMANDED
    and in their official capacities as
19  Henderson police officers; CITY OF NORTH
20  LAS VEGAS, NEVADA; JOSEPH CHRONISTER,
    individually and in his official capacity as
21  Chief of the North Las Vegas Police
    Department; MICHAEL WALLER, DREW
22  ALBERS, DAVID CAWTHORN, ERIC
    ROCKWELL, AND F/N/U SNYDER,
23  individually and in their official capacities
    as North Las Vegas police officers;
24  JANETTE R. REYES-SPEER; DOE individuals
    1-40, jointly and severally; and ROE
25  CORPORATIONS 1-40 jointly and
    severally,
26
                DEFENDANTS.
27

28

                                    1

COME NOW the Plaintiffs, ANTHONY MITCHELL, LINDA MITCHELL, and MICHAEL MITCHELL, by and through their counsel, BENJAMIN C. DURHAM, ESQ., and FRANK H. COFER, ESQ., of COFER, GELLER & DURHAM, LLC, and for their claims for relief against Defendants, and each of them, jointly and severally, based upon knowledge, information, and reasonable belief derived therefrom, allege, complain, and state as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 over Plaintiffs' causes of action arising under 42 U.S.C. § 1983 and due to the deprivation of rights, privileges, and immunities secured to Plaintiffs under the First, Third, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2.     This Court has supplemental jurisdiction over Plaintiffs' causes of action arising under Nevada state law pursuant to 28 U.S.C. § 1367.

3.     Venue lies in the Southern Division of the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(a)(1) and 28 U.S.C. § 1391(b)(2) because one or more Defendants is a political subdivision of the State of Nevada, and because the underlying acts, omissions, events, injuries and related facts upon which the present action is based occurred in Clark County, Nevada.

## PARTIES

4.     Plaintiff ANTHONY MITCHELL is, and at all times herein mentioned was, a United States citizen and a resident of the District of Nevada, and is the son of Plaintiffs LINDA MITCHELL and MICHAEL MITCHELL.

5.     Plaintiffs LINDA MITCHELL and MICHAEL MITCHELL are, and at all times herein mentioned were, United States citizens and residents of the District of Nevada. They are a married couple.

6.     Defendant CITY OF HENDERSON is a governmental entity organized and existing under the laws of the State of Nevada, and is a political entity of the

State of Nevada.

7.     Defendant CITY OF NORTH LAS VEGAS is a governmental entity organized and existing under the laws of the State of Nevada, and is a political entity of the State of Nevada.

8.     At all times, Defendant CITY OF HENDERSON possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the Henderson Police Department (hereinafter, "HPD") and of its employees, agents, contractors and/or servants. In this case, Defendant CITY OF HENDERSON acted through agents, employees, servants, and contractors, including its policymakers, and through Defendant JUTTA CHAMBERS.

9.     At all times, Defendant CITY OF NORTH LAS VEGAS possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the North Las Vegas Police Department (hereinafter, "NLVPD"), and of its employees, agents, contractors and/or servants. In this case, Defendant CITY OF NORTH LAS VEGAS acted through agents, employees, servants, and contractors, including its policymakers, and through Defendant JOSEPH CHRONISTER.

10.     Defendant JUTTA CHAMBERS was at all times relevant to this action the Chief of HPD and was acting under color of state law.  She is sued in this action in her individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and is sued in her individual and official capacities as to Plaintiffs' state law claims.

11.     Defendant JOSEPH CHRONISTER was at all times relevant to this action the Chief of NLVPD and was acting under color of state law.  He is sued in this action in his individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and is sued in his individual and official capacities as to Plaintiffs' state law

3

claims.

12.     Defendants SERGEANT GARRETT POINIER, OFFICER RONALD FEOLA, OFFICER RAMONA WALLS, OFFICER ANGELA WALTER, and OFFICER CHRISTOPHER WORLEY are and were at all times relevant to this action police officers employed by CITY OF HENDERSON and were acting under color of state law.  They are sued in their individual capacities as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and are sued in their individual and official capacities as to Plaintiffs' state law claims.

13.     Defendants JANET REYES-SPEER is and was at all times relevant to this action a Deputy City Attorney for the CITY OF HENDERSON and was acting under color of state law and also a complaining witness in criminal complaints filed against ANTHONY MITCHELL and MICHAEL MITCHELL.  She is sued in her individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and is sued in her individual and official capacities as to Plaintiffs' state law claims.

14.     Defendants SERGEANT MICHAEL WALLER, OFFICER DREW ALBERS, OFFICER DAVID CAWTHORN, OFFICER ERIC ROCKWELL, and OFFICER SNYDER (first name unknown) are and were at all times relevant to this action police officers employed by CITY OF NORTH LAS VEGAS and were acting under color of state law. They are sued in their individual capacities as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and are sued in their individual and official capacities as to Plaintiffs' state law claims.

15.     The true names, identities or capacities, whether individual, corporate, political, associate or otherwise of the Defendants herein designated as DOES 1-40, inclusive, are unknown to Plaintiffs at this time—and include without limitation police officers, employees, agents, contractors and/or servants of the CITY OF HENDERSON and / or the CITY OF NORTH LAS VEGAS—who therefore sue these Defendants by such fictitious names.   Plaintiffs are informed, believe, and thereon allege that each of the fictitiously named DOES are legally responsible, either

4

intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations and/or deprivation of rights hereinafter alleged. Plaintiffs request leave of the Court to amend this Complaint and insert the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

16.    The true names, identities or capacities, whether individual, corporate, political, associate or otherwise of the Defendants herein designated as ROES CORPORATIONS 1-40, inclusive, are unknown to Plaintiffs at this time, who therefore sue these Defendants by such fictitious names.   Plaintiffs are informed, believe, and thereon allege that each of these ROE CORPORATIONS is legally responsible, either intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations and/or deprivation of rights hereinafter alleged. Plaintiffs request leave of the Court to amend this Complaint and insert the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

17.    The reason why Plaintiffs are ignorant of the true names and capacities of Defendants herein sued as DOES and ROE CORPORATIONS is that the same have been unascertainable as of the date of filing of this Complaint, due to the fact that these DOES and ROE CORPORATIONS may be state police officers, sergeants, lieutenants, captains, commanders, deputy chiefs and/or civilian employee agents, policy makers and representatives of HPD or NLVPD, or employees, agents, contractors and/or representatives of Defendants CITY OF HENDERSON or CITY OF NORTH LAS VEGAS and/or other state political entities. As such, many records of these individuals are protected by state statutes and can only be ascertained through the discovery process.

18.    Plaintiffs are informed, believe, and thereon allege that all Defendants were the agents, employees, contractors and/or co-conspirators of the other

Defendants, and each of them were acting within the course and scope of their agency, employment, and/or concert of action, and are vicariously liable, jointly and severally, for the actions, inactions, and/or omissions of themselves and of the other Defendants, which proximately resulted in the physical, emotional, and future damages to the Plaintiffs as herein alleged.

### NATURE OF THE ACTION

19.     This is an action for money damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Third, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Nevada, against the named Defendants, police officers of the HPD and the NLVPD, in their individual and official capacities, against the CITY OF HENDERSON and the CITY OF NORTH LAS VEGAS, and against DOES 1-40 and ROE CORPORATIONS 1-40.

### COMMON ALLEGATIONS

20.     On the morning of July 10th, 2011, officers from the HPD responded to a domestic violence call at the residence of a Plaintiffs' neighbor, Phillip White, who lives at 363 Eveningside Avenue, Henderson, Nevada..

21.     Plaintiff MICHAEL MITCHELL woke up at approximately 8:20 a.m. at his home at 362 Eveningside Avenue, Henderson, Nevada, and noticed that he had received a telephone call from Mr. White, who lived across the street, and who had left a message that the police were at Mr. White's door and that Mr. White's wife had told the police that Mr. White had assaulted her.

22.     MICHAEL MITCHELL called Mr. White back and was informed that the police had told Mr. White to come out of his house, but that Mr. White explained to the police that he could not leave because he had a one month old baby in the house, and had asked the officers to come inside instead.  Mr. White explained that the police officers did not come in, but instead retreated and called for back-up, and that Mr. White then sat on his couch with his front door open.

6

23.   MICHAEL MITCHELL then went to the front of his house and seeing nothing, went to get his newspaper on the driveway.  Before he could get his newspaper, an HPD officer told him to get back to his house, which he did.

24.   A short time later, MICHAEL MITCHELL heard police sirens and the police directing Mr. White over a bullhorn to come out of his house with his hands up and unarmed.

25.   At approximately 9:30 a.m., Plaintiff ANTHONY MITCHELL was awakened at his home at 367 Eveningside Avenue, Henderson, Nevada, by sirens in front of his home which is located near Mr. White's home and across the street from the home of his parents, MICHAEL MITCHELL and LINDA MITCHELL.

26.   The sirens continued to sound, and at approximately 9:37 a.m., ANTHONY MITCHELL returned a missed call from his father, MICHAEL MITCHELL, who informed ANTHONY MITCHELL about his conversation with Mr. White.

27.   While ANTHONY MITCHELL was on the telephone with MICHAEL MITCHELL, he opened the front door of his residence, telephone in hand, and yelled for the officers outside to shut the siren off, and ended the call a short time later.

28.   MICHAEL MITCHELL, ANTHONY MITCHELL and LINDA MITCHELL became very concerned about the conduct of the police and began taking photographs of the police's conduct from the inside of their respective homes with the intent to disseminate these photographs to the public and to the news media.  The named Defendants police officers herein and Defendant DOE police officers 1-40 saw ANTHONY MITCHELL, MICHAEL MITCHELL and LINDA MITCHELL taking photographs of their activities or were informed of them doing so.

29.   MICHAEL MITCHELL and LINDA MITCHELL observed police officers and police vehicles congregating in front of Mr. White's house across the street, and

then taking positions further down the street.  They observed a SWAT vehicle place a chain around a tree in Mr. White's yard, rip it out of the ground, and SWAT personnel and vehicles assembling where the tree had been located.  They observed DOE police officers 1-10 pointing their loaded firearms at them, their home, the home of their son ANTHONY MITCHELL, at the homes of their neighbors, and LINDA MITCHELL informed MICHAEL MITCHELL that police officers repeatedly pointed their loaded firearms at her when she looked out of their window. MICHAEL MITCHELL and LINDA MITCHELL were extremely concerned about the conduct of the police based on their apparent disregard for Mr. White's concern about the presence of an infant in Mr. White's house.

30.    ANTHONY MITCHELL observed DOE police officers 1-10 pointing their loaded firearms at him, his home, the home of his father MICHAEL MITCHELL and at the homes of their neighbors.

31.    When LINDA MITCHELL looked out of the front door window and bedroom window of her home, she observed DOE police officers 1-10 pointing their loaded weapons at her.

32.    MICHAEL MITCHELL went into his backyard for safety reasons to be as far as possible from the armed and apparently reckless police officers on the street, and directed his wife, Plaintiff LINDA MITCHELL, to also go to the back of the house as well for safety reasons.  A short time after MICHAEL MITCHELL was in his backyard, he was told by HPD to go back in his house, which he did.

33.    While MICHAEL MITCHELL was taking photographs of the police from inside his home through a guest room window, a member of the NLVPD SWAT team, Defendant DOE police officer 1, saw him and pointed his loaded firearm at him.  MICHAEL MITCHELL then went to look out his front door to find the same NLVPD SWAT officer pointing his loaded firearm at him again.

34.    Over the next two hours, ANTHONY MITCHELL made several calls to MICHAEL MITCHELL and spoke to him about the escalating police activity on the

8

street. During this time, ANTHONY MITCHELL and MICHAEL MITCHELL observed the Defendant DOE police officers 1-10 pointing loaded firearms at their homes and the homes of other neighbors.

35.    At approximately 10:45 a.m., Defendant OFFICER CHRISTOPHER WORLEY (HPD) contacted Plaintiff ANTHONY MITCHELL by telephone. WORLEY told ANTHONY MITCHELL that police needed to occupy his home in order to gain a "tactical advantage" against the occupant of the neighboring house, presumably Mr. White. ANTHONY MITCHELL told the officer that this was not a time of war where officers were allowed to occupy his home, that he did not want to become involved and that he did not want police to enter his residence. Ignoring this explanation, WORLEY asked Plaintiff why he did not want to leave his home, to which Plaintiff responded that he had more rights inside his home than outside. WORLEY asked Plaintiff why he thought that, and again asked Plaintiff if he would come outside and allow the police to occupy his home.   When ANTHONY MITCHELL replied in the negative, WORLEY ended the call.

36.    After this phone call, ANTHONY MITCHELL observed Defendant DOE police officers 1-10 pointing their loaded firearms at him whenever he walked in front of his window.   Fearing for his life and safety after observing the indiscriminate and reckless manner in which the police officers were handling and pointing their firearms, ANTHONY MITCHELL donned a protective ballistic vest which he used in his employment as a bail enforcement agent.  Also during this period, ANTHONY MITCHELL attempted to call Mr. White to find out what was going on, but could not get through.

37.    Plaintiff ANTHONY MITCHELL was extremely troubled and concerned for his safety based on WORLEY'S insistence about entering his home without a warrant, and became concerned that serious police misconduct was taking place and that armed police would attempt to enter his home without a warrant.

. . .

9

38.     Beginning at approximately 10:52 a.m., ANTHONY MITCHELL called his father, MICHAEL MITCHELL, several more times, expressing his concerns about his telephone conversation with WORLEY.  He asked his father to look up the telephone number for Fox 5 Vegas KVVU because he felt that the press needed to know about what was going on.

39.     At approximately 11:08 a.m., ANTHONY MITCHELL called Mr. White, who explained that the police were there based on a claim that Mr. White had struck his wife, which he said he did not do.

40.     At approximately 11:17 a.m., ANTHONY MITCHELL called "411" to obtain the telephone number for Fox 5 Vegas KVVU, but they were unable to provide it.

41.     At approximately 11:20 a.m., ANTHONY MITCHELL called his father again, who was able to provide him with the number for Fox 5 Vegas KVVU.

42.     At approximately 11:22 a.m., ANTHONY MITCHELL called Fox 5 Vegas KVVU and spoke to a reporter, explaining his troubling telephone conversation with WORLEY, and that if they wanted to interview him, they would have to send a cameraman to the house, because he was not leaving his home.

43.     ANTHONY MITCHELL called Mr. White a few more times over the next half-hour and let him know that he had contacted Fox 5 Vegas KVVU and that they would be calling Mr. White.

44.     At approximately 11:44 a.m., ANTHONY MITCHELL received a call from the reporter at Fox 5 Vegas KVVU, who informed him that Mr. White was not answering his telephone.

45.     The Defendants knew that ANTHONY MITCHELL was calling Fox 5 Vegas KVVU and knew that ANTHONY MITCHELL and MICHAEL MITCHELL were taking photographs of the police conduct from inside their homes.

46.     Shortly before 11:53 a.m., ANTHONY MITCHELL was on the telephone and stepped in front of his window.  At that time, he once again observed several of

Defendant DOE police officers 1-10 pointing their loaded firearms at him through the window.  As ANTHONY MITCHELL walked back and forth in front of his window, he observed Defendant DOE police officer 2 following him in the sights of his loaded firearm through the window.  ANTHONY MITCHELL then photographed the officer through his window and gave the officer a hand gesture with his middle finger, expressing his disapproval of the officer's conduct.  The Defendants saw ANTHONY MITCHELL make this gesture or were informed of him making it.

47.    After Plaintiff ANTHONY MITCHELL refused to allow the police to enter his home, after he photographed one or more of Defendant DOE police officers 1-10 pointing their loaded firearms at him, and after giving Defendant DOE police officer 2 the middle finger gesture, the Defendant DOE police officers 1-10, including without limitation Defendants SERGEANT MICHAEL WALLER, OFFICER DAVID CAWTHORN, OFFICER CHRISTOPHER WORLEY, conspired among themselves to force ANTHONY MITCHELL out of his residence and to occupy his home for their own use. Defendant OFFICER DAVID CAWTHORN outlined the Defendants' plan in his official report:

> It was determined to move to 367 Evening Side and attempt to contact Mitchell. If Mitchell answered the door he would be asked to leave. If he refused to leave he would be arrested for Obstructing a Police Officer. If Mitchell refused to answer the door, force entry would be made and Mitchell would be arrested.

48.    At approximately 11:52 a.m., Defendant DOE police officers 1-10, including without limitation Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER DAVID CAWTHORN, OFFICER ROCKWELL, and OFFICER SNYDER, arrayed themselves in front of Plaintiff ANTHONY MITCHELL's house and prepared to execute their plan. The Defendant police officers banged forcefully on the door and loudly yelled "resident 367 come to the door."

49.    Surprised and perturbed, Plaintiff ANTHONY MITCHELL immediately called his mother (Plaintiff LINDA MITCHELL) on the phone, exclaiming to her that

11

the police were beating on his front door.

50.     Seconds later, Defendant DOE police officers 1-10, including without limitation OFFICER ROCKWELL, smashed open Plaintiff ANTHONY MITCHELL's front door with a metal ram as Plaintiff stood in his living room.  The Defendant DOE police officers 1-10 made this forceful entry into ANTHONY MITCHELL's home without a warrant, without probable cause, without any legal justification, and without ANTHONY MITCHELL's permission.

51.     As Plaintiff ANTHONY MITCHELL stood in shock, the Defendant DOE police officers 1-10 aimed their loaded firearms at ANTHONY MITCHELL and repeatedly shouted obscenities at him and ordered him to lie down on the floor.

52.     Fearing for his life, Plaintiff ANTHONY MITCHELL dropped his phone and prostrated himself onto the floor of his living room, covering his face with his hands.

53.     Addressing Plaintiff as "asshole," Defendant DOE police officers 1-10, including without limitation OFFICER SNYDER, shouted conflicting orders at ANTHONY MITCHELL, commanding him both to shut off his phone, which was on the floor in front of his head, and simultaneously commanding him to "crawl" toward the officers.  At no time prior to this moment did any police officer instruct ANTHONY MITCHELL to turn off his phone or to not use his phone.

54.     Confused and terrified, Plaintiff ANTHONY MITCHELL remained curled on the floor of his living room, with his hands over his face, and made no movement.

55.     Although Plaintiff ANTHONY MITCHELL was lying motionless on the ground and posed no threat, Defendant DOE police officers 1-10, including without limitation OFFICER DAVID CAWTHORN, then fired multiple "pepperball" rounds at Plaintiff as he lay defenseless on the floor of his living room. ANTHONY MITCHELL was struck at least three times by shots fired from close range, injuring him and causing him severe pain.

56.     As a result of being shot by Defendant DOE police officers 1-10, Plaintiff ANTHONY MITCHELL experienced psychological horror and extreme emotional distress due to his fear and belief that he had been mortally wounded by gunfire. Further, in addition to the shock and bruising caused by the impact of the "pepperball" rounds on his body at close range, the caustic and irritating chemicals released caused ANTHONY MITCHELL to suffer extreme and prolonged pain in his eyes, nose, throat, lungs, and skin, as well as causing him to experience uncontrollable coughing and difficulty breathing.

57.     Plaintiff ANTHONY MITCHELL's dog, Sam, was cowering in the corner when Defendant DOE police officers 1-10 smashed through the front door. Although the terrified animal posed no threat to officers, they gratuitously shot it with one or more pepperball rounds. The panicked animal howled in fear and pain and fled from the residence. Sam was subsequently left trapped outside in a fenced alcove without access to water, food, or shelter from the sun for much of the day, while temperatures outside soared to over 100 degrees Fahrenheit.

58.     Plaintiff LINDA MITCHELL was talking to her son ANTHONY MITCHELL via telephone at the time that officers smashed through ANTHONY MITCHELL's front door. Over the telephone, she was able to hear Defendant DOE police officers 1-10 shouting obscenities and weapons being fired. As a result of the officers' actions, she experienced extreme emotional distress due to her fear and belief that her son had been severely wounded or killed. While she was screaming her son's name over and over into the phone, one of Defendant DOE officers 1-10 inside ANTHONY MITCHELL's home callously hung up the phone.

59.     As Plaintiff ANTHONY MITCHELL lay incapacitated and in agony on his living room floor, several of the Defendant DOE police officers 1-10, including without limitation OFFICER DAVID CAWTHORN, forcefully pressed their knees atop the back of ANTHONY MITCHELL's neck and body, and roughly and wantonly wrenched his arms behind his back and handcuffed him, all of which was intended

13

to cause and did cause ANTHONY MITCHELL to suffer further severe pain and distress.

60.    Defendant DOE police officers 1-10, including without limitation OFFICER DAVID CAWTHORN, then roughly and wantonly dragged Plaintiff ANTHONY MITCHELL out of his residence by his arms, all of which was intended to cause and did cause him pain and humiliation.

61.    Once outside the residence, Defendant DOE police officers 1-10, including without limitation OFFICER DAVID CAWTHORN, roughly and wantonly slammed ANTHONY MITCHELL against the exterior of Plaintiff's home, and forcefully pressed Plaintiff's face into the stucco wall, holding him in this painful and humiliating configuration for several minutes.   When ANTHONY MITCHELL begged to be released and pleaded that he was not a threat, Defendant DOE police officers 1-10, including OFFICER DAVID CAWTHORN, did not relent, but commented that Plaintiff should have come out of his home when commanded to do so by the police, and continued to press his face against the wall for an additional thirty seconds.  All of this conduct was intended to cause and did cause ANTHONY MITCHELL pain and humiliation.

62.    During this time period, one of Defendant DOE police officers 1-10 said to ANTHONY MITCHELL, "you wanna flip us off, huh?"   Another Defendant DOE police officer then turned around and told the officer, "shhhh."

63.    ANTHONY MITCHELL was then forcibly taken by foot while handcuffed to the HPD command center, where he was eventually arrested.

64.    One of the Defendant DOE police officers then told Plaintiff ANTHONY MITCHELL that he was under arrest for "Obstructing a Police Officer."

65.    A short time later, ANTHONY MITCHELL was taken into custody by OFFICER ANGELA WALTER.

66.    At no time did Plaintiff ANTHONY MITCHELL disobey any lawful commands of any police officers or in any manner obstruct any police officers.

14

67.   Defendant DOE police officers, including Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER ROCKWELL, OFFICER SNYDER and DOE police officers 1-10, then swarmed through Plaintiff ANTHONY MITCHELL's home home at 367 Eveningside Avenue, searching through his rooms and possessions and moving his furniture, without permission or a warrant, and then subsequently occupied it and used it as an observation post to surveil the neighboring house at 363 Eveningside Avenue.

68.   Meanwhile, starting at approximately 11:25 a.m., Defendant DOE police officers 11-20 entered the back yard of Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's residence at 362 Eveningside Avenue without permission.  They asked Plaintiff MICHAEL MITCHELL if he would be willing to vacate his residence and accompany them to their "command center" under the guise that the officers wanted MICHAEL MITCHELL to speak to the suspect, Mr. White, and assist them in negotiating the surrender of Mr. White, at 363 Eveningside Avenue. Plaintiff MICHAEL MITCHELL reluctantly agreed to follow the officers from his back yard to the HPD command center, which was approximately one quarter mile away.  He also informed the officers that Mr. White's only concern was for his baby, and that if they told him that his wife was on the street and ready to pick up the baby, he would surely come out of the house.  It was shortly after MICHAEL MITCHELL left with the officers that LINDA MITCHELL received the call from ANTHONY MITCHELL wherein she heard the police officers were forcibly entering his home.

69.   At approximately 11:58 a.m., a group of Defendant DOE police officers 21-30 entered the back yard of Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's residence at 362 Eveningside Avenue without permission. They banged on the back door of the house and demanded that Plaintiff LINDA MITCHELL open the door.

70.   Plaintiff LINDA MITCHELL complied and opened the door to her home. When she told Defendant DOE police officers 21-30 that they could not enter

her home without a warrant, the officers ignored her, entered her home, and began searching it. One female officer, Defendant DOE police officer 21, seized LINDA MITCHELL by the arm, and other officers entered her home without permission.

71.    Defendant DOE police officer 21 then forcibly grabbed Plaintiff LINDA MITCHELL's arm and began to forcibly pull her out of her house, and then forcibly then seized her purse from LINDA MITCHELL's person and began rummaging through it, without permission, consent, or a warrant.

72.    Another unidentified male Defendant DOE police officer 22 then grabbed Plaintiff LINDA MITCHELL and pulled her out of the house and into her yard where a female Defendant DOE police officer 23 grabbed her arm and dragged LINDA MITCHELL at a brisk pace through her yard and up the hill toward the "Command Post" while maintaining a firm grip on her upper arm. Plaintiff LINDA MITCHELL is physically frail and had difficulty breathing due to the heat and the swift pace. However, Defendant DOE police officer 23 ignored her pleas to be released or to at least slow down, and refused to provide any explanation for why she was being treated in such a manner.   After reaching the command center, LINDA MITCHELL witnessed the detention and / or arrest of ANTHONY MITCHELL and MICHAEL MITCHELL.

73.    In the meantime, Defendant DOE police officers 21-22, 24-30 searched and occupied Plaintiffs MICHAEL MITCHELL's and LINDA MITCHELL's house. When Plaintiff LINDA MITCHELL returned to their home, the cabinets and closet doors throughout the house had been left open and their contents moved about. Water had been consumed from their water dispenser, and approximately 15 disposable plastic cups were in the kitchen trashcan which were not there previously.  The sliding glass door in the bedroom leading to the outside was left ajar.  Even the refrigerator door had been left ajar, and mustard and mayonnaise had been left on their kitchen floor.

. . .

74.     While MICHAEL MITCHELL and LINDA MITCHELL were away from their residence, the Defendant DOE police officers 21-22, 24-30 opened and searched truck owned by MICHAEL MITCHELL and a truck owned by ANTHONY MITCHELL which were parked in the driveway of MICHAEL MITCHELL and LINDA MITCHELL's residence without permission, probable cause or legal justification or authority.

75.     When Plaintiff MICHAEL MITCHELL arrived at the HPD command center, he was informed that the suspect, Mr. White, was "not taking any calls" and that Plaintiff MICHAEL MITCHELL would not be permitted to call the suspect neighbor from his own phone.  At that time, MICHAEL MITCHELL realized that the request to accompany officers to the HPD command center was a tactic to remove him from his house so that he would no longer be able to witness, photograph and document the Defendants' conduct. He waited approximately 10 minutes at the HPD command center and was told he could not return to his home.

76.     Plaintiff MICHAEL MITCHELL then left the HPD command center and walked down Mauve Street toward the exit of the neighborhood. After walking for less than 5 minutes, an HPD car pulled up next to him. He was told that his wife, LINDA MITCHELL, had "left the house," and would meet him at the HPD command center.

77.     MICHAEL MITCHELL then walked back up Mauve Street to the HPD command center and met his wife, LINDA MITCHELL, shortly after she witnessed the detention / arrest of ANTHONY MITCHELL.  MICHAEL MITCHELL then called his son, James Mitchell, to pick him up at the point of the police barricade where various news reporters were located.   When Plaintiff MICHAEL MITCHELL attempted to leave the HPD command center to meet James at the barricade, he was arrested, handcuffed by Defendant DOE police officer 31, and shortly thereafter was placed in the back of a marked police car.

. . .

17

78.   MICHAEL MITCHELL and LINDA MITCHELL asked the Defendant DOE police officer 31 what MICHAEL MITCHELL was being arrested for, but the officer did not respond.

79.   Neither Defendant DOE police officer 31 nor any other police officer had any grounds to detain Plaintiff MICHAEL MITCHELL, nor probable cause to suspect him of committing any crime.

80.   At no time did Plaintiff MICHAEL MITCHELL disobey any lawful commands of any police officers or in any manner obstruct any police officer.

81.   MICHAEL MITCHELL was then placed in the back of a parked HPD vehicle.  It was extremely hot in the vehicle.  As time passed, MICHAEL MITCHELL repeatedly complained that the heat was unbearable and begged the officers to do something to relieve him from the oppressive heat and to roll down the windows. The officers ignored these requests.  Later, one of Defendant DOE police officers 31-35 entered the vehicle and sat in the driver's seat and turned on the air conditioning for himself.  However, the front and rear seats were separated by a partition that did not allow any cool air to reach MICHAEL MITCHELL, and the officer in the driver's seat refused to open the rear air conditioning vents to give relief to MICHAEL MITCHELL from the oppressive heat.

82.   MICHAEL MITCHELL again begged the Defendant DOE police officers 31-35 to roll down the windows, but he was ignored.  Feeling that the situation had become life-threatening, MICHAEL MITCHELL begged the Officers to do something because the heat was unbearable, and positioned himself to kick the rear window open.  Only at this time did an officer outside the vehicle open the back door and did one of the officers partially roll down the windows.

83.   Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were subsequently transported to Henderson Detention Center and were booked on charges of Obstructing an Officer. Both ANTHONY MITCHELL and MICHAEL MITCHELL were detained for at least nine hours and were required to pay a bond to

secure their release from custody.

84.   While in custody at the Henderson Detention Center, ANTHONY MITCHELL informed Defendant DOES 36 and 37 that he required seizure medication and asked to receive it as a matter of medical necessity.

85.   Defendant DOES 36 and 37 ignored ANTHONY MITCHELL's request for his seizure medication.

86.   ANTHONY MITCHELL filled out and submitted a prisoner grievance requesting that he be provided his medication or that his brother be allowed to drop it off and it could be provided to him by the facility's staff.

87.   The grievance was ignored, and despite the fact that ANTHONY MITCHELL's medication was delivered by 4:00 p.m. that afternoon, it was not given to him until after he was released.

88.   The deprivation of the medication necessary to treat ANTHONY MITCHELL's medical condition caused him great fear and anxiety that he might have a seizure while in custody.

89.   On or about July 9, 2011, OFFICER CHRISTOPHER WORLEY prepared a police report that contained knowingly false statements, with the intent that it be used to maliciously prosecute ANTHONY MITCHELL and MICHAEL MITCHELL.

90.   On or about July 9, 2011, OFFICER ANGELA WALTER prepared a police report that contained knowingly false statements, with the intent that it be used to maliciously prosecute ANTHONY MITCHELL and MICHAEL MITCHELL.

91.   On or about July 12, 2011, OFFICER DAVID CAWTHORN prepared a police report that contained knowingly false statements, with the intent that it be used to maliciously prosecute ANTHONY MITCHELL and MICHAEL MITCHELL.

92.   On or about July 13, 2011 Defendant Henderson Deputy City Attorney JANETTE R. REYES-SPEER filed criminal complaints as complainant under penalty of perjury against Plaintiff ANTHONY MITCHELL in the Municipal Court of

19

the CITY OF HENDERSON, Case Nos. 11CR9103 and 11CR9104, charging him with "Obstructing an Officer" and "Failure to Obey Police Officer," knowing that the criminal complaint contained false statements, that ANTHONY MITCHELL committed no crime, and that there was no probable cause to initiate criminal proceedings against ANTHONY MITCHELL.

93.   On or about July 13, 2011 Defendant Henderson Deputy City Attorney JANETTE R. REYES-SPEER filed a criminal complaint as complainant under penalty of perjury against Plaintiff MICHAEL MITCHELL in the Municipal Court of the CITY OF HENDERSON, Case No. 11CR9107, charging him with "Obstruct [sic] an Officer," knowing that the criminal complaint contained false statements, that MICHAEL MITCHELL committed no crime, and that there was no probable cause to initiate criminal proceedings against MICHAEL MITCHELL.

94.   All criminal charges against Plaintiff ANTHONY MITCHELL were ultimately dismissed with prejudice on November 9, 2011.

95.   All criminal charges against Plaintiff MICHAEL MITCHELL were ultimately dismissed with prejudice on November 3, 2011.

96.   OFFICER ANGELA WALTER, OFFICER CHRISTOPHER WORLEY, OFFICER DAVID CAWTHORN and Defendant DOE police officers 38-45 caused Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL to be jailed and caused criminal complaints to issue against them in order to violate their constitutional rights, to provide cover for Defendants' wrongful actions, to frustrate and impede Plaintiffs' ability to seek relief for those actions, and to further intimidate and retaliate against Plaintiffs.

97.   Upon information and belief, none of the officers involved in the above-alleged incidents were ever subjected to official discipline or inquiry regarding their actions.

98.   At all times relevant herein, Plaintiffs did not give any police officers or Defendants permission to enter or search their homes.

99.   At all times relevant herein, Plaintiffs had not committed any crime.

100.   At all times relevant herein, Plaintiffs were unarmed, were never observed to be armed, and never made any threats of crime or violence.

101.   At all times relevant herein, Plaintiffs did not pose a threat to the safety of any police officers or of others and did not pose a threat to the property of any police officers or of others.

102.   At all times relevant herein, no Defendant or police officer had any basis to believe that Plaintiffs had committed any crime or posed a threat to the safety or property of anyone.

103.   At all times relevant herein, except as noted in paragraphs 53 and 75, at no time did any Defendant or police officer tell the Plaintiffs they could not use their telephones or not call Mr. White, and any such instruction would be unreasonable and unlawful.

104.   At all times relevant herein, no police officer or Defendant had any legal basis or probable cause to enter any of Plaintiffs' homes without a warrant, to detain Plaintiffs, or arrest Plaintiffs.

<div align="center">

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS UNDER (42 U.S.C. § 1983)**

**RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION**

</div>

105.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–104 as though fully restated herein.

106.   At all times relevant herein, ANTHONY MITCHELL and MICHAEL MITCHELL were taking photographs from within their confines of their homes of what they believed to be serious police misconduct carried out by NLVPD and HPD police officers with the intent to disseminate these photographs and related information to the public and the news media, including without limitation, Fox 5 Vegas, KVVU.  LINDA MITCHELL also intended and desired to disseminate the photographs and information concerning the police misconduct to the public and

the news media.

107.   Both ANTHONY MITCHELL and MICHAEL MITCHELL made efforts to contact Fox 5 Vegas KVVU to bring the police misconduct to this news outlet's attention, and with the intent to provide their photographs to this and other media outlets.

108.   There was a great likelihood that the message of police misconduct which ANTHONY MITCHELL and MICHAEL MITCHELL sought to capture in their photograph and disseminate to the public and the news media would be understood by those who viewed it.

109.   ANTHONY MITCHELL's and MICHAEL MITCHELL's photographing of the police misconduct with the intent to disseminate the photographs to the public and the news media constituted speech and expression protected under the First Amendment to the United States Constitution.

110.   ANTHONY MITCHELL's informing the HPD, NLVPD, OFFICER CHRISTOPHER WORLEY (HPD) and other Defendants as to what he believed were his legal rights to remain secure in his home, to not become involved in the police operations, to not give the police permission to enter his home, and to express his disapproval as to the request that the police be allowed to enter his home, constituted speech and expression protected under the First Amendment to the United States Constitution.

111.   ANTHONY MITCHELL's giving Defendant DOE police officer 2 and other officers the middle finger gesture and expressing his disapproval of the officer's conduct constituted speech and expression protected under the First Amendment to the United States Constitution.

112.   ANTHONY MITCHELL's yelling to DOE Defendant police officers to shut the siren off and expressing his disapproval of the conduct of the officers present constituted speech and expression protected under the First Amendment to the United States Constitution.

113.   The named Defendants and DOE Defendants witnessed or were otherwise aware of ANTHONY MITCHELL's and MICHAEL MITCHELL's protected speech and expression described in this claim for relief.

114.   The conduct of the named Defendants and DOE Defendants as complained of in the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, and Twentieth Claims for Relief herein were carried out against the Plaintiffs with the intent to intimidate, chill and silence Plaintiffs from photographing police misconduct and disseminating it to the public and the news media, and their intent to cause this chilling effect was a but-for cause of their actions, in violation of Plaintiffs' constitutional rights. Their conduct was also intended to intimidate, chill and silence any news media outlets from disseminating any accounts of the police misconduct at issue.

115.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

116.   As a direct and proximate result of the retaliatory conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling them to compensatory damages in an amount to be proven at trial.

117.   The Plaintiffs each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of Plaintiffs' constitutional rights.

118.   Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

. . .

. . .

. . .

23

1

2

3

4

5

### SECOND CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983

### UNLAWFUL ENTRY INTO AND SEARCH OF ANTHONY MITCHELL'S

### HOME AND VEHICLE AND THE UNLAWFUL SEIZURE AND ARREST OF

### ANTHONY MITCHELL

6

7

119.    Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–118 as though fully restated herein.

8

9

10

11

12

13

14

120.    Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER DAVID CAWTHORN, OFFICER ROCKWELL, OFFICER SNYDER, and Defendant DOE police officers 1-10 seized and arrested ANTHONY MITCHELL in his home and entered into and searched his home without warrant, permission, probable cause, or legal justification, violating his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and no exigent circumstances or other legal justification obviated the need for a warrant.

15

16

17

18

19

121.    Defendant DOE police officers 21-22, 24-30 entered into and searched ANTHONY MITCHELL's vehicle without warrant, permission, probable cause, legal justification, violating his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and no exigent circumstances or other legal justification obviated the need for a warrant.

20

21

122.    The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

22

23

24

25

123.    As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling him to compensatory damages in an amount to be proven at trial.

26

27

28

124.    ANTHONY MITCHELL seeks punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of his constitutional rights.

125.   ANTHONY MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983

### USE OF EXCESSIVE FORCE AGAINST ANTHONY MITCHELL

126.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–125 as though fully restated herein.

127.   Regardless of the lawfulness or unlawfulness of the arrest, Defendants SERGEANT MICHAEL WALLER, OFFICER ALBERS, OFFICER DAVID CAWTHORN, OFFICER ROCKWELL, OFFICER SNYDER, and Defendant DOE police officers 1-10 subjected Plaintiff ANTHONY MITCHELL to excessive force and battery, violating his constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

128.   ANTHONY MITCHELL did not resist seizure or arrest or attempt to flee, and there were no circumstances that justified the excessive force used against ANTHONY MITCHELL.

129.   The excessive force and battery used against ANTHONY MITCHELL includes, without limitation, pointing loaded firearms at ANTHONY MITCHELL, firing multiple "pepperball" rounds at him, and the manner in which he was cuffed, dragged out of his home, slammed against the exterior of his home, had his face pressed into the stucco wall, and held in this painful and humiliating configuration for several minutes.  All of this conduct was unnecessarily rough and wanton and was  intended to cause and did cause ANTHONY MITCHELL severe pain and humiliation.

130.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

. . .

25

131.   As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling him to compensatory damages in an amount to be proven at trial.

132.   ANTHONY MITCHELL seeks punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of his constitutional rights.

133.   ANTHONY MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### UNLAWFUL SEIZURE AND ARREST OF MICHAEL MITCHELL

134.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–133 as though fully restated herein.

135.   Defendant DOE police officers 31-35 seized and arrested MICHAEL MITCHELL without warrant, probable cause or legal justification, violating his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

136.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

137.   As a direct and proximate result of the conduct set forth in this claim for relief, MICHAEL MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling him to compensatory damages in an amount to be proven at trial.

138.   MICHAEL MITCHELL seeks punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of his constitutional rights.

139.   MICHAEL MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### FIFTH CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983

### UNLAWFUL SEIZURE AND ARREST OF LINDA MITCHELL

140.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–139 as though fully restated herein.

141.   Defendant DOE police officers 21-30 seized and arrested LINDA MITCHELL without warrant, probable cause or legal justification, violating her rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

142.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

143.   As a direct and proximate result of the conduct set forth in this claim for relief, LINDA MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling her to compensatory damages in an amount to be proven at trial.

144.   LINDA MITCHELL seeks punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of her constitutional rights.

145.   LINDA MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

. . .

. . .

. . .

. . .

27

1

2

3

4

### SIXTH CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983

### UNLAWFUL ENTRY INTO AND SEARCH OF

### MICHAEL MITCHELL'S AND LINDA MITCHELL'S HOME AND VEHICLE

5

6

146.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–145 as though fully restated herein.

7

8

9

10

11

12

147.   Defendant DOE police officer 21-30 entered into and searched the property, home and vehicle of MICHAEL MITCHELL and LINDA MITCHELL without permission, warrant, probable cause, or legal justification, violating their rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and no exigent circumstances or other legal justification obviated the need for a warrant.

13

14

148.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

15

16

17

18

19

149.   As a direct and proximate result of the conduct set forth in this claim for relief, MICHAEL MITCHELL and LINDA MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

20

21

22

23

150.   MICHAEL MITCHELL and LINDA MITCHELL each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

24

25

26

151.   MICHAEL MITCHELL and LINDA MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

27

. . .

28

. . .

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**

**PEACETIME QUARTERING OF DEFENDANTS IN MICHAEL MITCHELL'S AND**

**LINDA MITCHELL'S HOME WITHOUT THEIR CONSENT**

152.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–151 as though fully restated herein.

153.   Defendant DOE police officer 21-30 entered into and quartered themselves in the home of MICHAEL MITCHELL and LINDA MITCHELL without their consent, violating their rights guaranteed by the Third and Fourteenth Amendments of the United States Constitution.

154.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

155.   As a direct and proximate result of the conduct set forth in this claim for relief, MICHAEL MITCHELL and LINDA MITCHELL suffered severe emotional distress, pain and suffering, humiliation, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

156.   MICHAEL MITCHELL and LINDA MITCHELL each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

157.   MICHAEL MITCHELL and LINDA MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

. . .

. . .

. . .

. . .

. . .

**EIGHTH CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**

**UNLAWFUL PUNISHMENT OF ANTHONY MITCHELL AND MICHAEL MITCHELL AND DELIBERATE INDIFFERENCE TO THEIR SERIOUS MEDICAL NEEDS AS PRETRIAL DETAINEES**

158.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–157 as though fully restated herein.

159.   After ANTHONY MITCHELL was arrested and in police custody, he was subjected to punishment while a pretrial detainee by OFFICER DAVID CAWTHORN and denied treatment for serious medical needs by DOES 36 and 37, violating his rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

160.   After MICHAEL MITCHELL was arrested and in police custody, he was subjected to punishment while a pretrial detainee by Defendant DOES 32-55, violating his rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

161.   After ANTHONY MITCHELL was arrested by OFFICER DAVID CAWTHORN and Defendant DOE police officers 1-10 and while in their custody and in the capacity of a pretrial detainee, ANTHONY MITCHELL was subjected to unjustified, unnecessary, wanton and unreasonable physical punishment by these Defendant police officers, who intended to punish and harm ANTHONY MITCHELL in carrying out this conduct.

162.   At the time this punishment was administered by OFFICER DAVID CAWTHORN and Defendant DOE police officers 1-10, ANTHONY MITCHELL was not resisting or in any manner posing a threat to anyone, and it was administered without any legal cause or justification.

163.   After ANTHONY MITCHELL was transported to the Henderson Detention Center he informed Defendant DOES 36 and 37 of his serious medical

need in the form of his anti-seizure medication.

164.   Defendant DOES 36 and 37 acted with deliberate indifference to ANTHONY MITCHELL's serious medical needs and failed to adequately respond to his request for his medication.

165.   After MICHAEL MITCHELL was arrested by Defendant DOE police officer 21 and supervised by Defendant DOE police officers 31-35, and while in the custody of these police officers in the capacity of a pretrial detainee, MICHAEL MITCHELL was subjected to unjustified, unnecessary, wanton and unreasonable physical punishment in the form of being subjected to excessive and life-threatening heat after being placed in the rear of a police vehicle, and these Defendant DOE police officers intended to punish and harm MICHAEL MITCHELL in carrying out this conduct.

166.   Defendants DOE police officers 31-35 were aware of MICHAEL MITCHELL's serious medical needs based on his repeated and vocal demands that something be done about the excessive heat he was being subjected to in the rear of the police vehicle.

167.   Defendant DOE police officers 31-35 acted with deliberate indifference to MICHAEL MITCHELL's serious medical needs and failed to adequately respond to his requests to relieve the oppressive and life-threatening heat he was being subjected to.

168.   As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL and MICHAEL MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

169.   ANTHONY MITCHELL and MICHAEL MITCHELL each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional

rights.

170.   ANTHONY MITCHELL and MICHAEL MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### NINTH CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983

### MALICIOUS PROSECUTION WITH INTENT TO DEPRIVE ANTHONY MITCHELL AND MICHAEL MITCHELL OF CONSTITUTIONAL RIGHTS

171.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–170 as though fully restated herein.

172.   OFFICER ANGELA WALTER, OFFICER CHRISTOPHER WORLEY, OFFICER DAVID CAWTHORN and Defendant DOE police officers 38-45 acted willfully, knowingly, and with malice and specific intent to deprive ANTHONY MITCHELL and MICHAEL MITCHELL of their constitutional rights to freedom from illegal searches, unlawful arrest, detention, and their rights to freedom of expression, to physical liberty, and to due process of law under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by causing Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL to be jailed, filing police reports containing knowingly false statements, and causing criminal complaints to issue against them while knowing that there was no probable cause to initiate the criminal proceedings against ANTHONY MITCHELL and MICHAEL MITCHELL.

173.   On or about July 13, 2011 Defendant JANETTE R. REYES-SPEER acted willfully, knowingly, and with malice and specific intent to deprive ANTHONY MITCHELL and MICHAEL MITCHELL of their constitutional rights to freedom from illegal searches, unlawful arrest, detention, and their rights to freedom of expression, to physical liberty, and to due process of law under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by filing

criminal complaints as complainant under penalty of perjury against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL as described in paragraphs 92 and 93 herein, while knowing that the criminal complaints contained false statements, that ANTHONY MITCHELL and MICHAEL MITCHELL committed no crime, and that there was no probable cause to initiate criminal proceedings against ANTHONY MITCHELL or MICHAEL MITCHELL.

174.   The criminal proceedings that were the subject of the July 13, 2011 criminal complaints against ANTHONY MITCHELL terminated on November 9, 2013 when all charges were dismissed with prejudice.

175.   The criminal proceedings that were the subject of the July 13, 2011 criminal complaint against MICHAEL MITCHELL terminated on November 3, 2013 when all charges were dismissed with prejudice.

176.   As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL and MICHAEL MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

177.   ANTHONY MITCHELL and MICHAEL MITCHELL each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

178.   ANTHONY MITCHELL and MICHAEL MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

. . .

. . .

. . .

. . .

**TENTH CLAIM FOR RELIEF**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**

**CUSTOM, POLICY AND PRACTICE**

179.    Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1-178 as though fully restated herein.

180.    Prior to the events of June 10th, 2011, the the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS developed and maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of United States citizens, which caused the violations of Plaintiffs' rights.

181.    The actions of the Defendants herein resulted from and were taken from a de facto policy of the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS which is implemented by the police officers, attorneys and employees, agents, servants and contractors of HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS.  This de facto policy includes, without limitation:

a.    Summarily violating the constitutional rights of individuals and punishing person who refused to obey police orders, whether lawful or not, by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution;

b.    Searching homes and ordering citizens to leave their homes without warrant, probable cause, or legal justification;

c.    Summarily violating the constitutional rights of individuals and punishing persons—by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution—who exercise their First Amendment right to express their legal rights and remedies, express their opinion about police conduct, photograph police activities and conduct, and disseminate and intend to disseminate

1    information about police conduct to the news media;

2    d.    Summarily punishing persons in an unlawful manner without

3         corroborating information, probable cause, legal excuse and / or rightful

4         authority of law by means of unlawful detention, arrest, search, assault,

5         battery, excessive force and malicious prosecution; and

6    e.    Covering up, refusing to investigate, and misrepresenting facts

7         concerning allegations or cases of police misconduct.

8    182.   The existence of the de facto policy described in paragraph 181 has been

9    known to supervisory and policy-making officers and officials of the HPD and the

10   NLVPD for a substantial period of time.

11   183.   On or about August 1, 2013, representatives for the CITY OF

12   HENDERSON and the HPD made public statements to the press confirming aspects

13   of this policy and custom, including without limitation, justifying the conduct

14   complained of herein based on Plaintiffs "using provocative language against police

15   officers," asserting that the entry into and search of the home of MICHAEL

16   MITCHELL and LINDA MITCHELL was "to remove the occupants from continuing

17   to do their activities," and making statements at odds with the July 12, 2011, police

18   report of OFFICER DAVID CAWTHORN.

19   184.   Despite their knowledge of the said illegal policy and practices, the

20   supervisory and policy-making officials of the HPD, the CITY OF HENDERSON, the

21   NLVPD and the CITY OF NORTH LAS VEGAS, as a matter of policy, have not taken

22   steps to terminate said practices or investigate them, have not disciplined or

23   otherwise properly supervised individual police officers and attorneys who engaged

24   in said practices, have not effectively trained or supervised police officers and

25   attorneys with regard to the proper constitutional and statutory limits on the

26   exercise of their authority, and have instead sanctioned the policy and practices

27   described in paragraph 181 through their deliberate indifference to the effect of said

28   policy and practices upon the constitutional rights of the residents of and visitors to

35

the CITY OF HENDERSON, the CITY OF NORTH LAS VEGAS, and the County of Clark.

185.   The foregoing acts, omissions, and systematic failures are customs and policies of the the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS and caused the named Defendants and Defendant DOES to believe that determination of the right to detain, search, compel removal from a home, use force and the amount of allowable legal force, punish individuals for exercising their First Amendment rights of expression, and file false criminal complaints and without probable cause of a crime being committed was within their discretion, and that complaints of illegal detainment, search, arrest, removal from a home, punishment, use of excessive force, and filing false criminal complaints without probable cause would not be honestly or properly investigated, with the foreseeable result that these Defendants would be likely to illegally detain, search, arrest, punish, compel removal from homes, use excessive force and make false criminal complaints without probable cause.

186.   The above-described polices and/or customs demonstrate a deliberate indifference on the part of Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS to the Constitutional rights of United States citizens, and were the cause of the violations of Plaintiffs' rights alleged herein.

187.   As a direct and proximate result of the aforesaid acts, omissions, policies and customs of the the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS, Plaintiffs were improperly and illegally detained, searched, arrested, forcibly removed from their homes, punished for their lawful expression protected under the First amendment and maliciously prosecuted and suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

. . .

188.   Plaintiffs each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

189.   Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

<div align="center">

**ELEVENTH CLAIM FOR RELIEF**

**CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C.  1985(3)**

</div>

190.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–189 as though fully restated herein.

191.   Defendants, beginning at a time no later than the early morning hours of July 10, 2011, combined, conspired, confederated and agreed together and with and among each other to knowingly and willfully engage in and commit acts in furtherance of a conspiracy to deprive Plaintiffs of their civil rights guaranteed and protected under 42 U.S.C. § 1983 and the First, Third, Fifth and Fourteenth Amendments to the United States Constitution.  The acts and agreement include, without limitation:

a.   violating Plaintiffs' civil rights;

b.   causing Plaintiffs to be harassed and arrested;

c.   causing Plaintiffs to be punished as pretrial detainees;

d.   intentionally inflicting emotional distress on Plaintiffs;

e.   seeking and causing Plaintiffs to be prosecuted criminally without probable cause;

f.   making false statements and preparing police reports containing false statements;

g.   denying Plaintiffs medical treatment and ignoring their serious medical needs;

h.   punishing Plaintiffs for engaging in expression protected under the First

<div align="center">37</div>

1      Amendment.

2      192.   As a direct and proximate result of the conduct set forth in this claim for

3  relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation,

4  physical injuries, and loss of community reputation, entitling each of them to

5  compensatory damages in an amount to be proven at trial.

6      193.   Plaintiffs each seek punitive damages in an amount to be proven at trial

7  as Defendants acted with malice, intent, oppression, knowledge and reckless

8  indifference to violation of their constitutional rights.

9      194.   Plaintiffs have each been forced to engage the services of an attorney,

10  and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any

11  other applicable state or federal law.

### TWELFTH CLAIM FOR RELIEF

### NEGLECT TO PREVENT CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

### UNDER 42 U.S.C. 1986

15      195.   Plaintiffs hereby repeat, reallege, and incorporate by reference

16  paragraphs 1–194 as though fully restated herein.

17      196.   Defendants, and each of them, knew of the conspiracy to deprive

18  Plaintiffs of their civil rights as alleged above.

19      197.   Defendants, and each of them, had the power to prevent or aid in

20  preventing the violations of Plaintiffs' civil rights.

21      198.   Defendants, and each of them, neglected or refused to prevent or aid in

22  the prevention of the violations of Plaintiffs' civil rights.

23      199.   As a direct and proximate result of the conduct set forth in this claim for

24  relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation,

25  physical injuries, and loss of community reputation, entitling each of them to

26  compensatory damages in an amount to be proven at trial.

27      200.   Plaintiffs each seek punitive damages in an amount to be proven at trial

28  as Defendants acted with malice, intent, oppression, knowledge and and reckless

indifference to violation of their constitutional rights.

201.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### THIRTEENTH CLAIM FOR RELIEF

### (Assault)

202.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–201 as though fully restated herein.

203.   As described hereinabove, by pointing loaded firearms at Plaintiffs, and making threatening moves and advancing upon Plaintiffs, Defendants caused Plaintiffs to feel fear of harmful or offensive physical contact on multiple occasions.

204.   The actions of Defendants in causing Plaintiffs to fear such harmful or offensive physical contact were intentional, and undertaken with malice, oppression, and a willful disregard of Plaintiffs' rights, and without probable cause, legal justification, permission or consent.

205.   As a direct and proximate result of Plaintiffs' fear of harmful or offensive physical contact, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

206.   Plaintiffs each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and a conscious disregard of Plaintiffs' rights.

207.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

. . .

. . .

. . .

1

2

**FOURTEENTH CLAIM FOR RELIEF**

**(Battery)**

3      208.   Plaintiffs hereby repeat, reallege, and incorporate by reference

4  paragraphs 1–207 as though fully restated herein.

5      209.   As a result of being seized, shot, thrown to the ground, slammed into

6  walls, handcuffed, beaten, and otherwise touched without consent, Plaintiffs

7  suffered harmful or offensive physical contact at the hands of Defendants.

8      210.   The actions of Defendants in inflicting such harmful or offensive

9  physical contact were intentional, and undertaken with malice and oppression.

10      211.   As a direct and proximate result of the conduct set forth in this claim for

11  relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation,

12  physical injuries, and loss of community reputation, entitling each of them to

13  compensatory damages in an amount to be proven at trial.

14      212.   Plaintiffs each seek punitive damages in an amount to be proven at trial

15  as Defendants acted with malice, intent, oppression, knowledge and a conscious

16  disregard of Plaintiffs' rights.

17      213.   Plaintiffs have been forced to engage the services of an attorney, and are

18  entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other

19  applicable state or federal law.

20

**FIFTEENTH CLAIM FOR RELIEF**

21

**(FALSE ARREST AND IMPRISONMENT)**

22      214.   Plaintiffs hereby repeat, reallege, and incorporate by reference

23  paragraphs 1–213 as though fully restated herein.

24      215.   Defendants detained and arrested Plaintiff ANTHONY MITCHELL and

25  restrained his liberty without cause by dragging him from his home, handcuffing

26  him, placing him in a police vehicle, and jailing him, all against his will and without

27  his consent.

28      . . .

216.    Defendants detained and arrested Plaintiff MICHAEL MITCHELL and restrained his liberty without cause by physically preventing him from leaving the "Command Center," handcuffing him, placing him in a police vehicle, and jailing him, all against his will and without his consent.

217.    Defendants detained and arrested Plaintiff LINDA MITCHELL and restrained her liberty without cause by seizing her by the arm, forcefully dragging her away against her will, and preventing her from remaining in her home, all against her will and without her consent.

218.    Defendants' detention and arrest Plaintiffs was without legal authority, without any reasonable suspicion of wrongdoing, without probable cause to believe that a crime had been committed, without exigent circumstances, and without a judicial warrant.

219.    Defendants acted with oppression, fraud, and malice in detaining, arresting and restraining the liberty of Plaintiffs.

220.    As a direct and proximate result of the conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

221.    Plaintiffs each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and a conscious disregard of Plaintiffs' rights.

222.    Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### SIXTEENTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

223.    Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–222 as though fully restated herein.

224.  As set forth hereinabove, Defendants' conduct was intentional, malicious, and oppressive, and constituted extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.

225.  As the actual and proximate result of Defendants' extreme and outrageous conduct, including without limitation the invasion of Plaintiff ANTHONY MITCHELL's home, the invasion of the home of LINDA MITCHELL and MICHAEL MITCHELL, the forcible removal of LINDA MITCHELL from their home, the quartering of Defendants in their home without their consent, the shooting of Plaintiff ANTHONY MITCHELL and his dog while he was on the phone with his mother, and the unjustified handcuffing and detention of Plaintiffs ANTHONY and MICHAEL MITCHELL in each other's presence and in the presence of LINDA MITCHELL, physically abusing ANTHONY MITCHELL during and after his arrest, locking MICHAEL MITCHELL in a dangerously hot vehicle, and denying ANTHONY MITCHELL his anti-seizure medication, Plaintiffs suffered humiliation, mental anguish, physical discomfort, injury, and severe emotional distress, entitling each of them to compensatory damages in an amount to be proven at trial.

226.  Plaintiffs each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and a conscious disregard of Plaintiffs' rights.

227.  Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### SEVENTEENTH CLAIM FOR RELIEF
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

228.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–227 as though fully restated herein.

229.  Plaintiff LINDA MITCHELL, via her telephone, was subjected to the sounds of her son being shot and brutalized by Defendant officers after they broke

1 into his home.

2   230.   As a direct and proximate result of observing these acts, Plaintiff
3 LINDA MITCHELL suffered shock and emotional injury entitling her to
4 compensatory damages in an amount to be proven at trial.

5   231.   Plaintiff LINDA MITCHELL has each been forced to engage the services
6 of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. §
7 1988 and any other applicable state or federal law.

**EIGHTEENTH CLAIM FOR RELIEF**

**(CIVIL CONSPIRACY)**

10   232.   Plaintiffs hereby repeat, reallege, and incorporate by reference
11 paragraphs 1–231 as though fully restated herein.

12   233.   Defendants, acting in concert, agreed among themselves to detain,
13 arrest, punish and employ physical violence against Plaintiffs, in the manners and
14 ways previously alleged, all the while knowing that they had no legal right to do so.

15   234.   Defendants further agreed among themselves to provide a false
16 accounting of the incident for the purpose of concealing their own wrongdoing and
17 causing Plaintiffs to be arrested and jailed.

18   235.   The actions of Defendants were undertaken with fraud, oppression, and
19 malice.

20   236.   As a direct and proximate result of Defendants' actions, Plaintiffs
21 suffered severe emotional distress, pain and suffering, humiliation, physical injuries,
22 and loss of community reputation, entitling each of them to compensatory damages
23 in an amount to be proven at trial.

24   237.   Plaintiffs each seek punitive damages in an amount to be proven at trial
25 as Defendants acted with malice, intent, oppression, knowledge and a conscious
26 disregard of Plaintiffs' rights.

27   238.   Plaintiffs have been forced to engage the services of an attorney, and are
28 entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other

1 applicable state or federal law.

2 <center>**NINETEENTH CLAIM FOR RELIEF**</center>

3 <center>**(ABUSE OF PROCESS)**</center>

4 239.   Plaintiffs hereby repeat, reallege, and incorporate by reference

5 paragraphs 1–238 as though fully restated herein.

6 240.   Defendants filed criminal complaints against Plaintiffs ANTHONY

7 MITCHELL and MICHAEL MITCHELL not for the purpose of resolving a legitimate

8 dispute, but for the ulterior purpose of legitimizing and/or concealing their wrongful

9 detention and arrest of Plaintiffs and other wrongful conduct complained of herein.

10 241.   Defendants had no probable cause to file the criminal complaints filed

11 against ANTHONY MITCHELL and MICHAEL MITCHELL.

12 242.   The criminal charges that were the subject of the criminal compliant

13 were terminated in favor of MICHAEL MITCHELL and ANTHONY MITCHELL.

14 243.   The actions of Defendants constitute an abuse of process.

15 244.   Defendants acted with oppression, fraud, and malice in initiating the

16 criminal process against Plaintiffs ANTHONY MITCHELL and MICHAEL

17 MITCHELL.

18 245.   As a direct and proximate result of Defendants' actions, ANTHONY

19 MITCHELL and MICHAEL MITCHELL suffered severe emotional distress, pain and

20 suffering, humiliation, physical injuries, and loss of community reputation, entitling

21 each of them to compensatory damages in an amount to be proven at trial.

22 246.   ANTHONY MITCHELL and MICHAEL MITCHELL each seek punitive

23 damages in an amount to be proven at trial as Defendants acted with malice, intent,

24 oppression, knowledge and a conscious disregard of their rights.

25 247.   ANTHONY MITCHELL and MICHAEL MITCHELL have been forced to

26 engage the services of an attorney, and are entitled to attorney's fees and costs

27 pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

28 . . .

<center>44</center>

1

2

### TWENTIETH CLAIM FOR RELIEF

### (MALICIOUS PROSECUTION)

3    248.   Plaintiffs hereby repeat, reallege, and incorporate by reference

4    paragraphs 1–247 as though fully restated herein.

5    249.   Defendants initiated criminal proceedings against Plaintiffs ANTHONY

6    MITCHELL and MICHAEL MITCHELL by filing a complaint in the Municipal Court

7    of the CITY OF HENDERSON charging Plaintiffs each with obstruction.

8    250.   Defendants had no probable cause to believe that Plaintiffs ANTHONY

9    MITCHELL and MICHAEL MITCHELL had committed said crimes.

10   251.   The charges against Plaintiffs ANTHONY MITCHELL and MICHAEL

11   MITCHELL were dismissed with prejudice, thereby terminating the proceedings

12   against Plaintiffs.

13   252.   The dismissal of said charges was not based on any agreement, request

14   or acceptance of mercy, or compromise, and such termination was in the favor of

15   Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL.

16   253.   Defendants acted with oppression, fraud, and malice in initiating

17   criminal proceedings against Plaintiffs ANTHONY MITCHELL and MICHAEL

18   MITCHELL.

19   254.   As a result of the criminal proceedings initiated by Defendants,

20   Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were wrongfully

21   imprisoned, forced to post bond, and suffered severe emotional distress, pain and

22   suffering, humiliation, physical injuries, and loss of community reputation, entitling

23   each of them to compensatory damages in an amount to be proven at trial.

24   255.   ANTHONY MITCHELL and MICHAEL MITCHELL each seek punitive

25   damages in an amount to be proven at trial as Defendants acted with malice, intent,

26   oppression, knowledge and a conscious disregard of their rights.

27   256.   ANTHONY MITCHELL and MICHAEL MITCHELL have been forced to

28   engage the services of an attorney, and are entitled to attorney's fees and costs

45

pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

## TWENTY-FIRST CLAIM FOR RELIEF

## (RESPONDEAT SUPERIOR)

257.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–256 as though fully restated herein.

258.   Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS are liable for the tortious acts of their agents and employees, as hereinabove alleged, under the theory of Respondeat Superior.

259.   As a direct and proximate result of those tortious acts, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

260.   Plaintiffs each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and a conscious disregard of Plaintiffs' rights.

261.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

## TWENTY-SECOND CLAIM FOR RELIEF

## (NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING)

262.   Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1–261 as though fully restated herein.

263.   Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS owed a duty to citizens, such as Plaintiffs, to exercise care in the hiring, training, and supervision of their police force and attorneys, so as to protect citizens from false arrest, false imprisonment, assault, battery, and the like, at the hands of poorly trained, poorly supervised, unwisely hired, or unwisely retained police officers and attorneys.

264.   Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS breached this duty by

    a.    negligently tolerating and/or ratifying the practice or policy of their police officers in detaining, seizing, and arresting citizens without probable cause or reasonable grounds, punishing pretrial detainees and ignoring their serious medical needs, punishing citizens based on their expression protected under the First Amendment, maliciously prosecuting citizens, and violating citizens' Constitutional rights to due process and to freedom from unreasonable seizure, as manifested by Defendants' failure to discipline the officers and attorneys who committed such acts as alleged above;

    b.    negligently tolerating and / or ratifying the practices and policies described in paragraph 181 and the Tenth Claim for Relief herein; and

    c.    failing to properly screen individuals who apply to become police officers and attorneys, and failing to remove dangerous police, as manifested by Defendants' failure to conduct an internal investigation and inquiry under the circumstances described herein.

265.   As a direct and proximate result of Defendants' negligence, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

266.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter a judgment in their favor and against Defendants, jointly and severally, and award:

    1.    General damages in an amount to be proven at trial as to each and every

1 | claim herein;

2      2.    Exemplary and/or punitive damages in an amount to be proven at trial
3 | as to each and every claim herein, save for the Seventeenth and Twenty-Second
4 | claims for relief;

5      3.    Prejudgment interest pursuant to law;

6      4.    Declaratory relief declaring Defendant Officers' conduct to be
7 | unconstitutional;

8      5.    Following a proper motion, a permanent injunction requiring
9 | Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS to adopt
10 | appropriate policies regarding the hiring, training, and supervision of their police
11 | officers;

12      6.    Reasonable attorneys' fees and costs pursuant to all applicable state and
13 | federal statutes, codes, and rules, including without limitation 42 U.S.C. § 1988; and

14      7.    Such other and further relief as the Court deems just and proper.

15 | **DEMAND FOR JURY TRIAL**

16      Plaintiffs hereby demand a trial by jury on all issues in this action to the
17 | extent authorized by law.

18      DATED this 14 day of October, 2013.

19

20

21                        BENJAMIN C. DURHAM, ESQ.
                          Nevada Bar No. 7684
22                        FRANK H. COFER, ESQ.
                          Nevada Bar No. 11362
23                        COFER, GELLER & DURHAM, LLC
24                        601 South Tenth Street
                          Las Vegas, Nevada 89101
25                        (702) 631-6111
26                        (702) 946-0826 fax
27                        bdurham@vegasdefense.com
                          Attorney for Plaintiffs
28