1  KIRK B. LENHARD, ESQ.
   Nevada Bar No. 1437
2  klenhard@bhfs.com
   TAMARA BEATTY PETERSON, ESQ.
3  Nevada Bar No. 5218
   tpeterson@bhfs.com
4  SCOTT M. SCHOENWALD, ESQ.
   Nevada Bar No. 5484
5  sschoenwald@bhfs.com
   BROWNSTEIN HYATT FARBER SCHRECK, LLP
6  100 North City Parkway, Suite 1600
   Las Vegas, Nevada  89106
7  Telephone:  702.382.2101
   Facsimile:   702.382.8135
8  *Attorneys for Defendants City of Henderson, Nevada,*
   *Jutta Chambers, Garrett Poiner, Ronald Feola,*
9  *Ramona Walls, Angela  Walter, Christopher Worley,*
   *and Janette R. Reyes-Speer*
10

11              **UNITED STATES DISTRICT COURT**

12                  **DISTRICT OF NEVADA**

13  ANTHONY MITCHELL, LINDA              Case No.: 2:13-cv-01154-APG-CWH
    MITCHELL, and MICHAEL MITCHELL
14
                Plaintiffs,
15
    v.                                   **DEFENDANTS CITY OF**
16                                       **HENDERSON, NEVADA, JUTTA**
    CITY OF HENDERSON, NEVADA; JUTTA     **CHAMBERS, GARRETT POINER,**
17  CHAMBERS, individually and in her official  **RONALD FEOLA, RAMONA WALLS,**
    capacity as Chief of the Henderson Police   **ANGELA WALTER, CHRISTOPHER**
18  Department, GARRETT POINER, RONALD   **WORLEY, AND JANETTE R. REYES-**
    FEOLA, RAMONA WALLS, ANGELA          **SPEER'S MOTION TO DISMISS FIRST**
19  WALKER, and CHRISTOPHER WORLEY,      **AMENDED COMPLAINT**
    individually and in their official capacities as
20  Henderson police officers; CITY OF NORTH    **[MOTION FOR LEAVE TO FILE IN**
    LAS VEGAS, NEVADA; JOSEPH            **EXCESS OF 30-PAGE LIMIT FILED**
21  CHRONISTER, individually and in his official  **CONCURRENTLY HEREWITH]**
    capacity as Chief of the North Las Vegas
22  Police Department; MICHAEL WALLER,   **[ORAL ARGUMENT REQUESTED**
    DREW ALBERS, DAVID CAWTHORN,         **PURSUANT TO LR 78-2]**
23  ERIC ROCKWELL, AND /F/N/U SNYDER,
    individually and in their official capacities as
24  North Las Vegas police officers; JANETTE R.
    REYES-SPEER; DOE individuals 1-40, jointly
25  and severally; and ROE CORPORATIONS 1-
    40 jointly and severally,
26
                Defendants.
27

28

*[vertical left margin]* BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................2

II.   FACTUAL BACKGROUND AS ALLEGED BY PLAINTIFFS. ......................3

III.  LEGAL STANDARD ..........................................................................................7

IV.   ARGUMENT.......................................................................................................10

    A.    Plaintiffs' First Through Ninth Claims For Relief Based On Alleged Violations Of Civil Rights Under Section 1983 Are Barred By The Applicable Two-Year Statute Of Limitations.....................................................10

    B.    Plaintiffs' First Through Ninth Claims For Relief Should Be Dismissed To The Extent They Purport To State Claims Against "Doe" HENDERSON DEFENDANTS Because "Doe" Pleading Is Improper In Federal Court.............11

    C.    Plaintiffs' First Claim For Relief For Violation Of Civil Rights Under Section 1983 For Retaliation For First Amendment Protected Expression Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS ...................................................................13

    D.    Plaintiffs' Ninth Claim For Relief For Violation Of Civil Rights Under Section 1983 For Malicious Prosecution Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS .................14

    E.    Plaintiffs' Tenth Claim For Relief For Violation Of Civil Rights Under Section 1983 Custom, Policy, And Practice Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS As A Matter Of Law .............................................................................................15

        1.    Plaintiffs Have Failed To State A Claim Against The City Of Henderson For Municipal Liability Based On Monell v. Department of Social Services..................................................................16

        2.    Plaintiffs' Section 1983 Claim Against The HENDERSON DEFENDANTS Fails To State A Claim Because A Valid Constitutional Deprivation Has Not Been Alleged ...................................18

            a.    Plaintiffs' Tenth Claim For Relief Fails To State A Section 1983 Claim Based On Violations Of The Third Amendment .......19

            b.    Plaintiffs' Tenth Claim For Relief Fails To State A Section 1983 Claim Based On Violations Of The Fourteenth Amendment...............................................................................23

                (1)    Plaintiffs' Tenth Claim For Relief Fails To State A Claim Under The Fourteenth Amendment As To LINDA MITCHELL.................................................................24

                (2)    Plaintiffs' Tenth Claim For Relief Fails To State A Claim Under The Fourteenth Amendment As To MICHAEL MITCHELL..............................................................25

                (3)    Plaintiffs' Tenth Claim For Relief Fails To State A Claim Under The Fourteenth Amendment As To ANTHONY MITCHELL .............................................................26

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

i

**TABLE OF CONTENTS**
(continued)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

Page

c.  Plaintiffs' Tenth Claim For Relief Fails To State A Section 1983 Claim Based On Violations Of The Fourth Amendment................................................27

F.  Plaintiffs' Eleventh Claim For Relief For Conspiracy To Violate Civil Rights Under 42 U.S.C. § 1985(3) Should Be Dismissed, As A Matter Of Law, Based On The Lack Of Subject Matter Jurisdiction And The Failure To State A Claim Upon Which Relief Can Be Granted Against The HENDERSON DEFENDANTS ................................................28

G.  Plaintiffs' Twelfth Claim For Relief For Neglect To Prevent A Conspiracy To Violate Civil Rights Under 42 U.S.C. § 1986 Should Be Dismissed, As A Matter Of Law, Based On The Failure To State A Claim Upon Which Relief Can Be Granted Against The HENDERSON DEFENDANTS.................29

H.  Plaintiffs' State Law Claims Against the HENDERSON DEFENDANTS Should Be Dismissed Because They Plaintiffs Failed To Present These Claims As Required Under Nevada Law................................................30

I.  Plaintiffs' Failure To Serve Former HPD Police Chief CHAMBERS And HPD Officer WALLS Within 120 Days Of Filing Their Original Complaint Requires Dismissal Of All Claims Against Them ................................................32

J.  Plaintiffs Have Also Failed To State A Section 1983 Claim Against Former Police Chief JUTTA CHAMBERS Because They Allege No Personal Involvement By Her In The Events On Which They Base Their First Amended Complaint ................................................33

K.  Defendant HPD Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, And WORLEY Are Entitled To Qualified Immunity From Suit In Their Individual Capacities ................................................34

L.  The Court Lacks Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims (Plaintiffs' Thirteenth Through Twenty-Second Claims For Relief) ................................................35

M.  Defendant HPD Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, And WORLEY Are Entitled To Discretionary Immunity Under Nevada Law For All State Law Claims (Plaintiffs' Thirteenth Through Twenty-Second Claims For Relief) ................................................36

N.  Plaintiffs' Seventeenth Claim For Relief For Negligent Infliction Of Emotional Distress Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS ................................................37

O.  Plaintiffs' Nineteenth Claim For Relief For Abuse Of Process Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS ................................................38

P.  Plaintiffs' Twenty-First Claim For Relief For Respondeat Superior Liability Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS ................................................38

Q.  Plaintiffs' Claims For Punitive Damages Should Be Dismissed As A Matter Of Law ................................................39

**TABLE OF CONTENTS**
**(continued)**

Page

     1.    The CITY OF HENDERSON, A Municipality, Is Immune To Punitive Damage Claims As A Matter Of Law .........................................39

     2.    The Individual HENDERSON DEFENDANTS, Including Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, And WORLEY And Deputy City Attorney REYES-SPEER, Are Immune From Plaintiffs' Punitive Damages Claim As A Matter Of Law .........................................................................................................39

V.     CONCLUSION.........................................................................................40

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Albright v. Oliver*, 510 U.S. 266 (1994) .................................................................18

5

*Allen v. Scribner*, 812 F.2d 426, *amended by* 828 F.2d 1145 (9th Cir. 1987).............13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................passim

6

*Askins v. U.S. Dep't of Homeland Sec.*, No. 12-cv-2600 W(BLM), 2013 WL 1561546, at
   *4-5 (S.D. Cal. April 12, 2013) ..................................................................14

7

*Atkinson v. Gurich*, 248 P.3d 356, 360 n. 22 (Okla. 2011)......................................20

*Baker v. McCollan*, 443 U.S. 137 (1979)........................................................24, 26

8

*Baker v. Racansky*, 887 F.2d 183 (9th Cir.1989)....................................................34

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)..............................passim

9

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010)...........................................13

*Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006)......................................32

10

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ..........................28

*Bryan v. Las Vegas Metro. Police Dep't*, 349 F.App'x 132 (9th Cir. 2009)..............39

11

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998) ..................10

*Caldeira v. County of Kauai*, 866 F.2d 1175 (9th Cir. 1989)..............................28, 29

12

*Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873 (9th Cir. 2002)........................36, 37

*Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080 (D. Nev. 2011) ...........................32

13

*Castillo v. McFadden*, 399 F.3d 993 n.5 (9th Cir. 2004) .......................................18

*Chachas v. City of Ely*, 615 F. Supp. 2d 1193 (D. Nev. 2009)..........................10, 29

14

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004) ..............................8

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) .................................39

15

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)..............................................23

*Collins v. Cundy*, 603 F.2d 825 (10th Cir.1979) ..................................................24

16

*Craig v. United States*, 413 F.2d 854 (9th Cir. 1969)............................................12

*Crippins v. Sav On Drug Stores*, 961 P.2d 761 (Nev. 1998).....................................37

17

*Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1043 (10th Cir. 2001)..............21

*Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989).....................................24

18

*Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007).................................36, 37

*Davis v. Mason Cnty.*, 927 F.2d 1473 (9th Cir. 1991)........................................17, 38

19

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ....................................17

*Ellins v. City of Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013)..................................17

20

*Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989) ..........................................24

*Engblom v. Carey*, 677 F.2d 957 (2d Cir. 1982) ..............................................20, 22

21

*Estate of Bennett v. Wainwright*, No. 06-28-P-S, 2007 WL 1576744 (D. Me. May 30,
   2007)..........................................................................................20, 22

22

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002).............................34

*Fayle v. Stapley*, 607 F.2d 858 (9th Cir. 1979)....................................................33

23

*Fifty Assoc. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187 (9th Cir. 1970) ...............11

*Funderburk v. Williams*, No. 2:08-cv-0169-KJD-LRL, 2011 WL 835498, at *3 (D. Nev.
   2011)..........................................................................................33

24

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ..............................................11

25

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir.1992) ..............................................18

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................27

26

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ..............................................13

*Graziose v. Am. Home Products Corp.*, 202 F.R.D. 638 (D. Nev. 2001)......................11

27

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ......................................................28

*Hartrim v. Las Vegas Metro. Police Dep't*, 2:11-cv-00003-RLH-PAL, 2011 WL 2690148
   (D. Nev. July 8, 2011) ........................................................................31

28

iv

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

**TABLE OF AUTHORITIES**
(continued)

*Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802 (9th Cir. 2001) ........................35

*Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043, 1052 (D. Nev. 2004)24, 25, 26, 34

*Hillblom v. Cnty. of Fresno*, 539 F. Supp. 2d 1192 (E.D. Cal. 2008) ..............................23, 24, 25

*Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ....................................................................10

*Imbler v. Pachtman*, 424 U.S. 409 (1976)................................................................................15

*Jenkins v. Rockwell Int'l Corp.*, 595 F. Supp. 399 (D. Nev. 1984).........................................28

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) ....................................................................33

*Keller v. United States*, 667 F. Supp. 1351 fn. 9 (S.D. Cal. 1987)..........................................12

*Kentucky v. Graham*, 473 U.S. 159 (1985)..............................................................................33

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)......................................................................3

*Kovacs v. Acosta*, 787 P.2d 368 (Nev. 1995) ..........................................................................38

*Laxalt v. McClatchy*, 622 F. Supp. 737 (D. Nev. 1985)..........................................................38

*Lenz v. Winburn*, 51 F.3d 1540 (11th Cir. 1995).....................................................................34

*Martinez v. Maruszczak*, 123 Nev. 433 168 P.3d 720, 729 (2007) ........................................36

*McCarthy v. Mayo*, 827 F.2d 1310 (9th Cir. 1987)..................................................................15

*McDougal v. Cnty. of Imperial*, 942 F.2d 668 (9th Cir. 1991)..........................................10, 29

*Mollnow v. Carlton*, 716 F.2d 627 (9th Cir. 1983)..................................................................29

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) ...........................16, 17, 18, 38

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) ............................23

*Newman v. Cnty. of Orange*, 457 F.3d 991 (9th Cir. 2006)......................................................15

*Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) ....................................................24

*Peace v. Baker*, 697 F. Supp. 1145 (D. Nev. 1988)..................................................................15

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................................................34

*Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) ..........................................................10, 11

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008)................................................................23, 26

*Ravin v. State*, 537 P.2d 494 (Alaska 1975) ............................................................................19

*Rini v. Zwirn*, 886 F. Supp. 270 (E.D.N.Y. 1995)...................................................................18

*Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990).................................................29

*Sec. Investor Prot. Corp. v. Exec. Sec. Corp.*, 433 F. Supp. 470, 473 n.2 (S.D.N.Y. 1977) ........20

*Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146 (10th Cir. 2006) .....................................33

*Sigurdson v. Del Guercio*, 241 F.2d 480 (9th Cir. 1956) ....................................................11, 12

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)....................................................13

*Somavia v. Las Vegas Metro. Police Dep't*, 816 F. Supp. 638 (D. Nev. 1993), *aff'd*, 15
   F.3d 1089 (9th Cir. 1994) ......................................................................................................34

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)..........................................................................33

*Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710 (9th Cir. 1993) ............................................11

*Thompson v. City of Los Angeles*, 885 F.2d 1439 (9th Cir.1989)..............................................17

*Tolefree v. Ritz*, 382 F.2d 566 (9th Cir. 1967).........................................................................11

*Trzaska v. Int'l Game Tech.*, No. 2:10-cv-2268 JCM (GWF), 2011 WL 2516931, at *4 (D.
   Nev. June 23, 2011) ..................................................................................................28, 29, 30

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ..................................................35

*United States v. Valenzuela*, 95 F. Supp. 363 (S.D. Cal. 1951)..............................................20

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................................24

*Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, (D. Nev. 2002), *aff'd*, 63 F.App'x 346 (9th
   Cir. 2003)................................................................................................................................28

*Zaic v. Las Vegas Metro. Police Dep't*, 2:10-CV-01814-PMP, 2011 WL 884335, at *5 (D.
   Nev. Mar. 11, 2011).................................................................................................................31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

## TABLE OF AUTHORITIES
### (continued)

Page

### STATUTES

28 U.S.C. § 1367(a) ................................................................................................35
28 U.S.C. § 1367(c)(3) ...........................................................................................35
42 U.S.C. § 1983 .................................................................................2, 10, 16, 39
42 U.S.C. § 1985(3) ........................................................................................28, 29
42 U.S.C. § 1986 ....................................................................................................29
Fed. R. Civ. P. 12(b)(1) ...........................................................................................1
Fed. R. Civ. P. 12(b)(5) ...........................................................................................1
Fed. R. Civ. P. 12(b)(6) ...........................................................................................1
Fed. R. Civ. P. 4 ....................................................................................................32
Fed. R. Civ. P. 8 ......................................................................................................8
NAC 41.100 .....................................................................................................30, 31
Nev. Rev. Stat. § 11.190(4)(e) ..........................................................................10, 29
Nev. Rev. Stat. § 41.031 .........................................................................................36
Nev. Rev. Stat. § 41.035(1) .....................................................................................39
Nev. Rev. Stat. § 41.036(2) ..............................................................................30, 31
Restatement (Second) of Torts § 908 (1979); W. Prosser, *Law of Torts*, at 9-10 (4th ed.
    1971) ..................................................................................................................39

## OTHER AUTHORITIES

James P. Rogers, *Third Amendment Protections in Domestic Disasters*, 17 Cornell J.L. &
    Pub. Pol'y 747 (2008) ........................................................................................19
U.S. Const., amend IV ............................................................................................27
U.S. Const., amend. III ...........................................................................................19

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1    Defendants CITY OF HENDERSON, NEVADA ("CITY OF HENDERSON"), JUTTA

2   CHAMBERS ("CHAMBERS"), GARRETT POINER ("POINER"), RONALD FEOLA

3   ("FEOLA"), RAMONA WALLS ("WALLS"), ANGELA WALTER ("WALTER"),

4   CHRISTOPHER WORLEY ("WORLEY"), and JANETTE R. REYES-SPEER ("REYES-

5   SPEER") (collectively the "HENDERSON DEFENDANTS") hereby move this Honorable Court

6   for an order dismissing Plaintiffs' First Amended Complaint with prejudice.[1]   This Motion is

7   made and based on Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6), the

8   following Memorandum of Points and Authorities, all pleadings, papers, and documents on file

9   with the Court in this action, such further documentary evidence as the Court deems appropriate,

10  and the oral arguments of counsel at any hearing on this Motion.

11       DATED this 12th day of November, 2013.

12                                          BROWNSTEIN HYATT FARBER SCHRECK, LLP

13

14                                          By:  /s/ Tamara Beatty Peterson
                                                KIRK B. LENHARD, ESQ.
15                                              Nevada Bar No. 1437
                                                TAMARA BEATTY PETERSON, ESQ.
16                                              Nevada Bar No. 5218
                                                SCOTT M. SCHOENWALD, ESQ.
17                                              Nevada Bar No. 5484
                                                100 North City Parkway, Suite 1600
18                                              Las Vegas, Nevada  89106
                                                *Attorneys for Defendants*
19                                              *City of Henderson, Nevada, Jutta Chambers,*
                                                *Garrett Poiner, Ronald Feola, Ramona Walls,*
20                                              *Angela  Walter, Christopher Worley, and*
                                                *Janette R. Reyes-Speer*
21

22

23

24

25

26

27
_____
28       [1]  Plaintiffs erroneously named Defendant ANGELA WALTER as Angela Walker in the caption of their First Amended Complaint.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3        This case arises out of a police response to a high intensity domestic violence call in a

4    neighborhood in the City of Henderson.   Plaintiffs ANTHONY, LINDA, and MICHAEL

5    MITCHELL have filed suit against the CITY OF HENDERSON, its former police chief, several

6    officers of the Henderson Police Department ("HPD"), and a deputy city attorney, among others,

7    asserting liability under 42 U.S.C. § 1983 ("Section 1983") and various state law theories.

8    Plaintiffs essentially allege that they were innocent bystanders who resided near the incident and

9    suffered injury as a result of the manner in which the police performed their duties.   No matter

10    how meticulously it reviews their First Amended Complaint, however, the Court will find that

11    Plaintiffs have failed to state a claim for relief against any of the HENDERSON DEFENDANTS

12    as a matter of law.   Although Plaintiffs have filed a 48-page First Amended Complaint, they have

13    not even attempted to satisfy the liberal pleading requirements of the Federal Rules of Civil

14    Procedure in asserting their claims against the HENDERSON DEFENDANTS.

15        The only factual allegations in Plaintiffs' First Amended Complaint that purportedly relate

16    to the HENDERSON DEFENDANTS are that HPD Officer WORLEY telephoned Plaintiff

17    ANTHONY MITCHELL to ask his assistance because he resided near the suspect, that HPD

18    Officer WORLEY somehow conspired against Plaintiff ANTHONY MITCHELL after he denied

19    the request for assistance, that HPD Officers WORLEY and WALTER prepared false police

20    reports that caused the issuance of criminal complaints against Plaintiffs ANTHONY and

21    MICHAEL MITCHELL, and that Henderson Deputy City Attorney REYES-SPEER wrongfully

22    filed criminal complaints against Plaintiffs ANTHONY and MICHAEL MITCHELL.   Nothing

23    more.   On this basis alone, Plaintiffs' allegations are grossly inadequate to sustain their Section

24    1983 claims against the HENDERSON DEFENDANTS, which are the only federal claims

25    alleged against them.

26        Plaintiffs have failed to state a claim against the HENDERSON DEFENDANTS,

27    however, for at least *three* additional reasons.   *First*, not only do Plaintiffs merely set forth

28    conclusory allegations as to how the HENDERSON DEFENDANTS purportedly violated their

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

2

1  federal constitutional rights, they fail to plead how such conduct was the product of a custom,

2  practice, or policy of the CITY OF HENDERSON for Section 1983 purposes.  *Second*, Plaintiffs

3  overlook that Henderson Deputy City Attorney REYES-SPEER is entitled to absolute immunity

4  for her alleged prosecutorial acts against them and that the HPD officers are entitled to both

5  qualified and discretionary immunity from the asserted claims because they were all acting within

6  the scope of their police duties.  *Third*, Plaintiffs overlook that their own conduct suggested that

7  they were aiding the suspect in resisting the police response.  Thus, no matter how vociferously

8  Plaintiffs may claim injury, they have plainly failed to state any federal claims against the

9  HENDERSON DEFENDANTS as a matter of law.

10  Because Plaintiffs' federal claims warrant dismissal under these circumstances, the Court

11  should likewise dismiss all asserted state law claims.  The Court should decline to exercise

12  supplemental jurisdiction over Plaintiffs' state law claims in the interests of judicial economy,

13  convenience, and fairness.  For these reasons, the HENDERSON DEFENDANTS respectfully

14  submit that the Court should grant this motion and dismiss Plaintiffs' First Amended Complaint in

15  its entirety.

16  **II.  FACTUAL BACKGROUND AS ALLEGED BY PLAINTIFFS.**[2]

17  On the morning of July 10, 2011, officers of the Henderson Police Department ("HPD")

18  responded to a domestic violence call on the street where Plaintiffs ANTHONY, MICHAEL, and

19  LINDA MITCHELL resided in the CITY OF HENDERSON.  *See* First Amended Complaint

20  ("FAC"), ¶ 20, Court Docket No. 3.  The home of the suspect was located at 363 Eveningside

21  Avenue.  *See id*.  Plaintiff ANTHONY MITCHELL resided near the suspect at 367 Eveningside

22  Avenue.  *See id*., ¶ 25.  Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL resided

23  across the street from the suspect at 362 Eveningside Avenue.  *See id*., ¶¶ 21 and 25.  Plaintiffs

24  _____

25  [2] The HENDERSON DEFENDANTS vehemently deny the allegations of Plaintiffs' First Amended Complaint.  When ruling on a motion to dismiss, however, the Court must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'"  *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  It is solely on this basis that the HENDERSON DEFENDANTS set forth the erroneous "facts" as alleged by Plaintiffs.  Even accepting such allegations as true for purposes of this motion to dismiss, Plaintiffs have failed to state a claim for relief against the HENDERSON DEFENDANTS as a matter of law.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

assert no allegations regarding the specific nature of the domestic violence call or the threat posed by the suspect.

Plaintiffs allege that, at the outset of the police response to the suspect's residence, ANTHONY and MICHAEL MITCHELL contacted the suspect by telephone and took photographs of the police activity from inside their homes to disseminate to the news media and the public. *See id.*, ¶¶ 22, 28, 33, and 43. Plaintiffs acknowledge that ANTHONY MITCHELL had ongoing telephone communications with the suspect as events unfolded on Eveningside Avenue, "donned a protective ballistic vest," "yelled" at officers to "shut the siren off," gave an officer "a hand gesture with his middle finger," and contacted Fox 5 Vegas KVVU. *See id.*, ¶¶ 27, 36, 38-44. Plaintiffs further allege that ANTHONY MITCHELL called MICHAEL MITCHELL several times to speak with him about the "escalating police activity on the street," and that the "Defendants" knew that ANTHONY MITCHELL was calling Fox 5 Vegas KVVU and that ANTHONY and MICHAEL MITCHELL were taking photographs of the police activity from inside their homes. *See id.*, ¶¶ 34 and 45. According to Plaintiffs, MICHAEL MITCHELL even attempted to justify the suspect's conduct to police based on his own telephone communications with him. *See id.*, ¶¶ 21, 22, 68.

Significantly, as alleged in the First Amended Complaint, the only interaction between any of the HENDERSON DEFENDANTS and any of the Plaintiffs during the course of the police response was a single telephone conversation between HPD Officer WORLEY and Plaintiff ANTHONY MITCHELL that ended without incident. *See id.*, ¶ 35. HPD Officer WORLEY allegedly contacted ANTHONY MITCHELL by telephone and advised him that police needed to occupy his home for the purpose of gaining a tactical advantage over the suspect. *See id.* Plaintiffs acknowledge that HPD Officer WORLEY ended the telephone call when ANTHONY MITCHELL refused his request to leave the residence. *See id.* The First Amended Complaint alleges no other contact between HPD Officer Worley and ANTHONY MITCHELL, or any of the other HENDERSON DEFENDANTS and ANTHONY MITCHELL during the police response.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Plaintiffs make the bare, conclusory allegation that HPD Officer WORLEY and several officers of the NORTH LAS VEGAS POLICE DEPARTMENT ("NLVPD") thereafter "conspired among themselves" to force ANTHONY MITCHELL out of his home and occupy it "for their own use," but the First Amended Complaint sets forth no allegations that HPD Officer Worley or any of the other HENDERSON DEFENDANTS acted in furtherance of this purported conspiracy. *See id.*, ¶ 47. Rather, the First Amended Complaint alleges that five NLVPD officers – and no HPD police officers – banged on ANTHONY MITCHELL'S door and commanded him to open it. *See id.*, ¶ 48. ANTHONY MITCHELL responded by calling his mother, Plaintiff LINDA MITCHELL, on the telephone and exclaiming to her that the police were beating on his front door. *See id.*, ¶ 49. When ANTHONY MITCHELL refused to comply with the NLVPD officers' commands to open the door, NLVPD officers and several unidentified "Doe" officers allegedly entered his house, fired "pepperball" rounds at him, forcibly removed him from the house, and searched the premises for an unspecified period of time. *See id.*, ¶¶ 50-61, 67. Plaintiffs allege that ANTHONY MITCHELL was eventually arrested by one or more unidentified officers. *See id.*, ¶¶ 63 and 64. Although Plaintiffs allege that ANTHONY MITCHELL "was taken into custody" by HPD Officer WALTER a "short time later," they do not allege that any HPD officers entered the house at 367 Eveningside Avenue to apprehend ANTHONY MITCHELL, to search or occupy the residence, or for any other purpose. *See id.*, ¶ 65.

The First Amended Complaint is equally devoid of allegations that the HENDERSON DEFENDANTS had any interaction with Plaintiffs MICHAEL and LINDA MITCHELL. Plaintiffs allege that, at approximately the same time that HPD Officer WORLEY contacted ANTHONY MITCHELL by telephone, unidentified "Doe" officers entered the backyard of Plaintiff MICHAEL and LINDA MITCHELL'S home at 362 Eveningside Avenue and asked MICHAEL MITCHELL to accompany them to the "command center" to assist in negotiations with the suspect. *See id.*, ¶ 68. MICHAEL MITCHELL agreed. *See id*. Although MICHAEL MITCHELL left the command center when he was told that he could not call the suspect, he returned when he was informed that his wife, Plaintiff LINDA MITCHELL, would meet him

there.  *See id*., ¶¶ 75 and 76.  MICHAEL MITCHELL was arrested and detained by an unidentified "Doe" officer when he again sought to leave the command center.  *See id*., ¶ 77.

In the early afternoon, at approximately 11:58 a.m., unidentified "Doe" officers allegedly entered the backyard of Plaintiff MICHAEL and LINDA MITCHELL'S residence at 362 Eveningside Avenue, "banged" on the back door, and demanded that LINDA MITCHELL open the door.  *See id*., ¶ 69.  LINDA MITCHELL complied, and an unidentified "Doe" officer then removed her from the house.  *See id*., ¶ 70.  Another unidentified "Doe" officer escorted LINDA MITCHELL toward the "Command Post" as other unidentified "Doe" officers "searched and occupied" the house.  *See id*., ¶¶ 70-73.  When LINDA MITCHELL subsequently returned to the house, she found that the unidentified "Doe" officers had left cabinet doors, closet doors, the refrigerator door, and a sliding glass door ajar, consumed water from the water dispenser, left approximately 15 disposable plastic cups in the kitchen trashcan, and left mustard and mayonnaise on the kitchen floor.  *See id*., ¶ 73.  Plaintiffs further allege that unidentified "Doe" officers searched trucks owned by ANTHONY and MICHAEL MITCHELL.  *See id*., ¶ 74.  Again, the First Amended Complaint includes no allegations that any of the HENDERSON DEFENDANTS committed these alleged acts or the length of time that the unidentified "Doe" officers remained inside the house or vehicles.

After Officer WORLEY concluded his telephone call with ANTHONY MITCHELL, the only alleged contact between the HPD Defendants and Plaintiffs came following the arrest of ANTHONY and MICHAEL MITCHELL.  Plaintiffs allege that ANTHONY MITCHELL "was taken into custody" by HPD Officer WALTER and that MICHAEL MITCHELL was arrested by an unidentified "Doe" officer and placed in the back of an HPD vehicle.  *See id*., ¶¶ 65, 77, 81.  Without any alleged factual basis, Plaintiffs assert that Officers WORLEY and WALTER prepared false police reports with the intent to use them to maliciously prosecute ANTHONY and MICHAEL MITCHELL.  *See id*., ¶¶ 89 and 90.  Both ANTHONY and MICHAEL MITCHELL were transported to the Henderson Detention Center and booked on charges of obstructing an officer.  *See id*., ¶ 83.  Although Henderson Deputy City Attorney REYES-SPEER filed criminal

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   complaints against ANTHONY and MICHAEL MITCHELL on or about July 13, 2011, the

2   charges were later dismissed with prejudice in early November 2011. *See id.*, ¶¶ 92-96.

3           Based on these allegations, Plaintiffs' First Amended Complaint is unsustainable as a

4   matter of law against the HENDERSON DEFENDANTS.   The First Amended Complaint does

5   not allege, among other things, the following allegations necessary to support the asserted claims:

6       •   That any of the HENDERSON DEFENDANTS had contact with ANTHONY

7           MITCHELL during the police response after HPD Officer WORLEY ended his

8           telephone call with him without incident.

9       •   That any of the HENDERSON DEFENDANTS had contact with MICHAEL

10          MITCHELL at any time prior to his arrest.

11      •   That any of the HENDERSON DEFENDANTS had contact with LINDA

12          MITCHELL at any time relevant to the First Amended Complaint.

13      •   That any HPD officers entered ANTHONY MITCHELL'S home.

14      •   That any HPD officers entered MICHAEL and LINDA MITCHELL'S home.

15      •   That former Henderson Chief of Police JUTTA CHAMBERS was present at any

16          time relevant to the First Amended Complaint, had direct participation in the

17          alleged events, or had any knowledge of the events as they occurred.

18      •   That Henderson Deputy City Attorney REYES-SPEER acted outside her

19          prosecutorial duties when she filed criminal complaints against ANTHONY and

20          MICHAEL MITCHELL.

21      •   That no HPD officer, including Officers WORLEY and WALTER, had qualified

22          and/or discretionary immunity from suit for their alleged acts.

23  On this basis, the HENDERSON DEFENDANTS respectfully submit that the dismissal of

24  Plaintiffs' First Amended Complaint against them, with prejudice, is necessary and appropriate at

25  this time.

26  **III.   <u>LEGAL STANDARD</u>.**

27          Although a court must accept all facts alleged in a complaint as true and construe them in

28  the light most favorable to the plaintiff when presented with a motion to dismiss, it "'is not

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

7

required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged'" or "'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).  Recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court clarified the standard for evaluating whether the allegations of a complaint are sufficient to survive a motion to dismiss in two ways that are pertinent here:

> -- First, the Court held that the tenet that all allegations contained in a complaint must be accepted as true is inapplicable to legal conclusions. *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  The liberal pleading standard established by Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Iqbal*, 556 U.S. at 678.

> -- Second, the Court determined that only a complaint that states a "plausible claim for relief" may survive a motion to dismiss.  *See id*. at 679.  Where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. at 679 (internal quotations omitted).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.  A pleading therefore is "plausible" only where the court may draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id*.

The Supreme Court's application of these principles under the facts presented in *Iqbal*, a constitutional discrimination case, is particularly instructive here given the nature of Plaintiffs' allegations against the HENDERSON DEFENDANTS, which merely consist of legal conclusions that fail to state a plausible claim for relief.

The federal government arrested Iqbal, a Pakistani Muslim, and detained him under restrictive conditions. *See Iqbal*, 555 U.S. at 667-78. Iqbal's complaint alleged that the Attorney General of the United States and the Director of the Federal Bureau of Investigations designated him a person of high interest on account of his race, religion, or national origin in violation of his First and Fifth Amendment rights. *See id*. In disposing of Iqbal's complaint, the Court identified several of his allegations that were not entitled to an "assumption of truth," including that:

> (1)     "[P]etitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race and/or natural origin and for no legitimate penological interest,'" [*Id*. at 680]; and
>
> (2)     "Ashcroft was the 'principal architect' of this invidious policy" and "Mueller was 'instrumental' in adopting and executing it." *Id*. at 680-81 (citations omitted).

The Court held that these allegations were conclusory, and established no basis for relief, because they were nothing more than "'a formulaic recitation of the elements' of a constitutional discrimination claim, namely that petitioners adopted a policy 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id*. at 681 (quoting *Twombly*, 550 U.S. at 554-55). The Court explained that "the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature … disentitle[d] them to the presumption of truth." *Id*.

The Court then considered the well-pleaded factual allegations of the complaint to determine whether they plausibly suggested an entitlement to relief, and found them lacking. *See id*. While the allegations were consistent with a theory of discrimination, the Court concluded that they did not plausibly establish that Iqbal's designation as a person of high interest had an unconstitutional discriminatory purpose. *See id*. at 681. The Court observed that, "even if the complaint's well-pleaded facts give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination, that inference alone would not entitle respondent to relief." *Id*. at 682. In dismissing Iqbal's claims, the Court explained that to prevail under a Section 1983 claim, the complaint would have had to include "***facts plausibly showing*** that

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

[defendants] purposefully adopted a policy classifying post-September-11 detainees as 'of high interest' because of their race, religion or national origin," and it failed to do so.  *See id.* at 682 (emphasis added); *see also See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) ("[t]he absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

These fundamental principles compel the conclusion that Plaintiffs' claims against the HENDERSON DEFENDANTS are legally unsustainable.  As in *Iqbal*, Plaintiffs have not stated a plausible claim for relief against any of the HENDERSON DEFENDANTS as a matter of law. Plaintiffs' First Amended Complaint therefore warrants dismissal in its entirety.

## IV.   ARGUMENT.

### A.   Plaintiffs' First Through Ninth Claims For Relief Based On Alleged Violations Of Civil Rights Under Section 1983 Are Barred By The Applicable Two-Year Statute Of Limitations.

It is well-settled that state statutes of limitations applicable to personal injury actions establish the statute of limitations for claims made under Section 1983.  *See McDougal v. Cnty. of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991).  When a state has "multiple statutes of limitations for various types of personal injury claims, the residual statute of limitations for personal injury actions is to be applied."  *See Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).  The residual statute of limitations for personal injury claims in Nevada is the two-year statute of limitations established by Nev. Rev. Stat. § 11.190(4)(e).  *See id*.  Thus, in Nevada, "the statute of limitations for claims brought pursuant to § 1983 is two years."  *See Chachas v. City of Ely*, 615 F. Supp. 2d 1193, 1202-03 (D. Nev. 2009).

Under federal law, a claim generally accrues under Section 1983 when the plaintiff "'knows or has reason to know of the injury which is the basis of the action.'"  *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998).  According to the allegations of the First Amended Complaint, Plaintiffs' First through Ninth Claims for Relief accrued on July 10, 2011 because Plaintiffs plainly knew or had reason to know of their purported injuries as of that date, which is the only date on which the events underlying these claims occurred.  *See* FAC, ¶ 20.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Plaintiffs asserted these claims for the first time, however, when they filed the First Amended Complaint on October 14, 2013. *See id.* at 1. Given that Plaintiffs asserted these claims more than two years after they accrued, the applicable statute of limitations bars them as a matter of law. The Court therefore should dismiss, with prejudice, Plaintiffs' First through Ninth claims for Relief on this basis alone.[3] *See Perez*, 869 F.2d at 426; *see also Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (affirming dismissal of Section 1983 claims based on statute of limitations).

**B.** **Plaintiffs' First Through Ninth Claims For Relief Should Be Dismissed To The Extent They Purport To State Claims Against "Doe" HENDERSON DEFENDANTS Because "Doe" Pleading Is Improper In Federal Court.**

The use of "Doe" pleading is disfavored in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967) (dismissing Doe defendants and noting that Plaintiffs have other procedural remedies to name additional persons). In federal courts, "'John Doe' casts no magical spell." *See Fifty Assoc. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970). This is so because "[t]here is no provision in the Federal Statutes or the Federal Rules of Civil Procedure for use of fictitious parties." *Id.* "If there are unknown persons or entities, whose role is known, that fact should be expressed in the complaint, but it is unnecessary and improper to include 'Doe' parties in the pleadings." *Graziose v. Am. Home Products Corp.*, 202 F.R.D. 638, 643 (D. Nev. 2001).

The Ninth Circuit has long recognized that "John Doe complaints are dangerous at any time." *See Sigurdson v. Del Guercio*, 241 F.2d 480, 482 (9th Cir. 1956). The plaintiffs there named John Doe and Richard Roe, describing them merely as "officers of the United States Immigration and Naturalization Services." *Id.* Affirming the dismissal entered by the district court, the Ninth Circuit explained with regard to John Doe complaints that "[i]t is inviting disaster

---

[3] In addition, Plaintiffs' claims based on the Third, Fourth, Fifth, and Fourteenth Amendments are unsustainable for the reasons set forth infra at Section IV(e)(2)(a) (Third Amendment – Seventh Claim for Relief); Section IV(e)(2)(b) (Fourteenth Amendment – Second through Ninth Claims for Relief); Section IV(e)(2)(c) (Fourth Amendment – Second, Third, Fourth, Fifth, Sixth, Eighth, and Ninth Claims for Relief); and n.4 (Fifth Amendment – Eighth and Ninth Claims for Relief).

1   to allow them to be filed and to allow fictitious persons to remain defendants if the complaint is

2   still of record." *Id.*

3   Here, Plaintiffs improperly purport to sue "Doe" defendants, broadly described as "police

4   officers, employees, agents, contractors and/or servants of CITY OF HENDERSON," and more

5   specifically characterized as "state police officers, sergeants, lieutenants, captains, commanders,

6   deputy chiefs and/or civilian employee agents, policy makers and representatives of HPD

7   [Henderson Police Department]." *See* FAC, ¶¶ 15-18.  Not only are several of their claims (*i.e.,*

8   the Fourth through Seventh Claims for Relief) asserted only against Doe defendants, Plaintiffs

9   seek to maintain their First, Second, Third, Eighth, and Ninth Claims for Relief at least in part

10  against Doe Defendants.    Plaintiffs do not directly name any of the HENDERSON

11  DEFENDANTS as parties to their Second through Eighth Claims for Relief, but rather are

12  apparently relying on "Doe" pleading to maintain these claims against the HENDERSON

13  DEFENDANTS.    The use of Doe pleading in this manner provides the HENDERSON

14  DEFENDANTS with no meaningful notice, assuming Plaintiffs are even purporting to assert

15  these claims against the HENDERSON DEFENDANTS, because Plaintiffs' expansive definition

16  could conceivably include any employee of the CITY OF HENDERSON.  Every employee is a

17  representative of the City in some respect.  The Court therefore should preclude Plaintiffs from

18  maintaining broad and generalized allegations that the "actions" of "Doe" or "Roe" defendants

19  "proximately resulted in the physical, emotional, and future damages to" them. *See id.*, ¶ 18.

20  Under these circumstances, allowing the "Doe" and "Roe" defendants to remain parties to

21  this action would run directly contrary to federal court policy, and accordingly the principles

22  articulated in *Iqbal* and *Twombly.  See Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969);

23  *see also Keller v. United States*, 667 F. Supp. 1351, 1356, fn. 9 (S.D. Cal. 1987) ("[t]here is a

24  strong federal policy against naming fictitious defendants in the pleadings"); *see also Iqbal*, 556

25  U.S. at 662; *Twombly*, 550 U.S. at 544.  Based on these well-settled principles, the Court should

26  dismiss all "Doe" and "Roe" defendants from this action along with all claims (*i.e.,* Plaintiffs'

27  Fourth through Seventh Claims for Relief) in which Plaintiffs have purported to sue only "Doe"

28  or "Roe" defendants.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

C.   **Plaintiffs' First Claim For Relief For Violation Of Civil Rights Under Section 1983 For Retaliation For First Amendment Protected Expression Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS.**

Plaintiffs' First Claim for Relief is unsustainable as a matter of law because Plaintiffs are unable to state a Section 1983 claim for wrongful retaliation under the First Amendment of the United States Constitution.  To recover on a claim of this nature, a plaintiff must plead and prove that:  "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action."  *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  Plaintiffs cannot establish any of the elements of such a claim because taking photographs of police responding to a domestic violence call that exposes officers and the public to substantial danger does not constitute constitutionally protected speech.[4]  *See, e.g., Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

The freedoms guaranteed by the First Amendment are not without limitation.  It is well-settled that "even speech dealing with matters of public concern is subject to government regulation."  *See Allen v. Scribner*, 812 F.2d 426, 432 (9th Cir.), *amended by* 828 F.2d 1145 (9th Cir. 1987).  Reasonable time, place, and manner regulations on the exercise of First Amendment rights "may be necessary to further significant governmental interests, and are permitted."  *See Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972); *see also Smith*, 212 F.3d at 1333 (the photographing and videotaping of police conduct is "subject to reasonable time, manner and place restrictions").  Consistent with this principle, photographing officers engaged in sensitive government operations is not within the scope of the First Amendment.  *See Askins v. U.S. Dep't of Homeland Sec.*, No. 12-cv-2600 W(BLM), 2013 WL 1561546, at *4-5 (S.D. Cal. April 12,

---

[4] Plaintiffs allege that ANTHONY MITCHELL engaged in a variety of activities which they claim were protected under the First Amendment, including expressions of what "he believed were his legal rights," "giving" police officers "the middle finger gesture and expressing his disapproval of the officer's conduct," and "yelling" to police officers to "shut the siren off and expressing his disapproval of the conduct of the officers."  *See FAC*, ¶¶ 110-112.  Plaintiffs do not allege, however, that the HENDERSON DEFENDANTS took any retaliatory actions in response to these activities.  *See id.*, ¶¶ 105-118.

13

2013) (finding no First Amendment right to photograph border patrol officers in the discharge of their duties had been established, "especially in light of the sensitive nature of CBP operations and its responsibility for national security and secure borders").  It is clear from the allegations of the First Amended Complaint that Plaintiffs were taking the photographs while the police operation was still in progress, that Plaintiffs were communicating with the suspect, and that Plaintiffs' stated purpose for taking the photographs was to disseminate photographs of the police operations and movements so that they could be broadcast while the standoff was still in progress. There was a clear danger that the photographs taken would be used in a manner that would undermine the police response and endanger the lives of officers and the public.  Under the circumstances, the First Amendment did not protect Plaintiffs' conduct.

Even assuming arguendo that ANTHONY and MICHAEL MITCHELL had been engaged in activities protected by the First Amendment, Plaintiffs have failed to plead any of the other required elements necessary to establish the claim.  Plaintiffs allege that the HENDERSON DEFENDANTS acted "with the intent to intimidate, chill and silence Plaintiffs from photographing police misconduct and disseminating it to the public and news media," but nowhere do they allege that the HENDERSON DEFENDANTS knew that Plaintiffs' purpose in taking such photographs was to disseminate them to the news media and the public in the exercise of their First Amendment rights.  *See* FAC, ¶ 114, at 23:4-13.  In other words, Plaintiffs have not set forth any factual basis for their conclusory allegation that the HENDERSON DEFENDANTS acted to deter them from continuing to engage in an activity protected by the First Amendment. The allegation is also conclusory and speculative, and thus cannot be taken as true on a motion to dismiss.  Plaintiffs have failed to allege facts which would support all of the necessary elements of their First Claim for Relief and it should be dismissed.

**D.**     **Plaintiffs' Ninth Claim For Relief For Violation Of Civil Rights Under Section 1983 For Malicious Prosecution Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS.**

Fundamental immunity principles preclude Plaintiffs' attempt to maintain a Section 1983 malicious prosecution claim against Henderson Deputy City Attorney Reyes-Speer as well as HPD Officers WALTER and WORLEY.  The United States Supreme Court has long recognized

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

that a prosecutor enjoys ***absolute immunity*** under Section 1983 when acting within the scope of his or her prosecutorial duties.  *See Imbler v. Pachtman*, 424 U.S. 409, 420-29 (1976); *see also id.* at 431 ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983").   The sole basis for Plaintiffs' Section 1983 malicious prosecution claim against Henderson Deputy City Attorney REYES-SPEER are prosecutorial acts for which she indisputably has absolute immunity from suit – the filing of criminal complaints.  *See* FAC, ¶ 173.  This claim against Defendant REYES-SPEER should be summarily dismissed premised on absolute prosecutorial immunity.  *See McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir. 1987); *Peace v. Baker*, 697 F. Supp. 1145, 1147 (D. Nev. 1988).

Equally unsustainable is Plaintiffs' Section 1983 malicious prosecution claim against Defendant Officers WALTER and WORLEY.  Once Deputy City Attorney REYES-SPEER exercised her independent judgment to file criminal complaints against Plaintiffs ANTHONY and MICHAEL MITCHELL, WALTER and WORLEY became immune from Section 1983 liability arising out of the arrest.  *See Newman v. Cnty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) ("[w]e have long recognized that '[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused arrest exists at that time'") (omissions supplied by court).  Plaintiffs cannot sustain a malicious prosecution claim where, as here, they assert nothing more than a version of events that conflicts with the account of the officers involved.  *See id.* at 995-96.  Thus, Plaintiffs' Ninth Claim for Relief should be dismissed, in its entirety, as to all of the HENDERSON DEFENDANTS.

**E.    Plaintiffs' Tenth Claim For Relief For Violation Of Civil Rights Under Section 1983 Custom, Policy, And Practice Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS As A Matter Of Law.**

When there has been no constitutional deprivation as a result of a municipal custom, practice, or policy, a municipality is not subject to Section 1983 liability as a matter of law. Plaintiffs' Tenth Claim for Relief is legally unsustainable because no constitutional deprivation has been stated against any CITY OF HENDERSON employee.  Plaintiffs do not identify even a

single action taken by any of CITY OF HENDERSON employee pursuant to a custom, policy, or practice of the CITY OF HENDERSON that has resulted in a constitutional tort. The Court therefore should summarily dismiss this claim, along with the other claims set forth in the First Amended Complaint, as a matter of law.

**1.    Plaintiffs Have Failed To State A Claim Against The City Of Henderson For Municipal Liability Based On *Monell v. Department of Social Services*.**

In *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978), the United States Supreme Court held that a municipality may only be subject to liability under Section 1983 when its custom, practice, or policy is the ***moving force***, in causing the claimed constitutional deprivation. Stated otherwise, it is only when the "execution of the government's policy or custom ... inflicts the injury" that a municipality may be held liable under Section 1983. *See id*. at 694. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

*See* 42 U.S.C. § 1983 (emphasis added). The Supreme Court held in *Monell* that the plain language and legislative history of Section 1983 are clear that Congress did not intend for municipalities, like the CITY OF HENDERSON, "to be held liable unless action pursuant to official municipal policy … caused a constitutional tort." *See Monell*, 436 U.S. 658, 691 (emphasis added).

In determining whether official municipal policy is the cause of a constitutional tort, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Rather, *Monell* is explicit that it is only when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, ***inflicts the injury*** that the government as an entity is responsible under § 1983." *See Monell*, 436 U.S. at 694 (emphasis added).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Consistent with *Monell*, the Ninth Circuit has held that "municipalities are subject to damages under § 1983 in three situations:  when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'"  *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).  To establish the liability of a governmental entity under *Monell* pursuant to a theory that an official policy, practice, and/or custom was the basis for the constitutional tort, Plaintiffs must allege:

> (1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.

*See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citation omitted; alterations in original)).

Plaintiffs have failed to state a claim pursuant to *Monell*, and the Plaintiffs' Tenth Claim for Relief should be dismissed.  Significantly, nowhere do Plaintiffs allege that a purported custom, practice, or policy of the CITY OF HENDERSON was the "moving force" behind the constitutional violations alleged by them.  Also, it is well-settled that, where plaintiffs allege municipal liability under *Monell*, formulaic recitations of a cause of action are inadequate and therefore should be dismissed.  *See Dougherty*, 654 F.3d at 900-01 (dismissing § 1983 claims where plaintiffs' claims lacked any factual allegations regarding key elements of *Monell*).  Here, in merely alleging that the CITY OF HENDERSON developed and maintained "policies and/or customs," Plaintiffs could not have been more formulaic in their pleading.  *See* FAC, ¶ 180.

Finally, *Monell* bars Plaintiffs' Tenth Claim for Relief to the extent recovery is sought under Section 1983 on a theory of respondeat superior liability.  *See* FAC, ¶¶ 257-61.  It is well-settled that a municipality is not subject to Section 1983 liability for the acts of its employees under a respondeat superior theory.  *See Monell*, 436 U.S. at 691; *see also Davis v. Mason Cnty.*, 927 F.2d 1473, 1480 (9th Cir. 1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir.1989).  In other words, "a municipality cannot be held liable solely because it employs a tortfeasor."  *See Monell*, 436 U.S. at 691 (italics deleted).  The local government "itself must cause the constitutional deprivation."  *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Cir.1992).   Because *Monell* expressly precludes Plaintiffs' claim that the CITY OF HENDERSON may bear liability for the "tortious acts of [its] agents and employees," dismissal is warranted on this additional basis.  *See* FAC, ¶ 258.

In sum, Plaintiffs' First Amended Complaint fails to satisfy *Monell* because it lacks allegations:  (1) as to how Plaintiffs' asserted constitutional injuries were the result of a custom, practice, or policy of the CITY OF HENDERSON; and (2) that a custom, practice, or policy of the CITY OF HENDERSON was the "moving force" behind the alleged constitutional deprivations.  Given that Plaintiffs cannot satisfy the rigorous culpability and causation elements necessary to establish liability against the CITY OF HENDERSON under *Monell*, Plaintiffs' Tenth Claim for Relief should be dismissed as a matter of law.

**2.   Plaintiffs' Section 1983 Claim Against The HENDERSON DEFENDANTS Fails To State A Claim Because A Valid Constitutional Deprivation Has Not Been Alleged.**

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The first step in evaluating a claim under Section 1983 is to identify the constitutional right allegedly infringed.   *See id*.   The scant allegations against the HENDERSON DEFENDANTS in the First Amended Complaint demonstrate that no constitutional right of any kind has been infringed by them HENDERSON DEFENDANTS in this case.

Because of their conclusory nature, Plaintiffs' allegations are "not entitled to be assumed true."  *See Iqbal*, 556 U.S. at 681.  Most notably, Plaintiffs provide no factual allegations which support a Section 1983 claim against the HENDERSON DEFENDANTS, individually or collectively, which would establish any violation of their rights guaranteed by the United States Constitution.[5]  *See id*. at 678.  To support their Tenth Claim for Relief, Plaintiffs plead that, "prior

---

[5] Plaintiffs' reliance on the Fifth Amendment is misplaced.  *See* FAC, ¶¶ 1 and 19.  The Fifth Amendment applies only to actions of the federal government.  *See Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995) ("[a]s the plaintiffs have not alleged any acts by the federal government, or an act by any defendant associated with the federal government, the plaintiffs' Fifth Amendment § 1983 claim must be stricken"); *see also Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2004) ("[t]he Fifth Amendment prohibits the federal government from depriving persons of due process").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

to the events of June 10th, 2011," the CITY OF HENDERSON "developed and maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of United States Citizens" and that actions by the HENDERSON DEFENDANTS "resulted from and were taken from a de facto policy" to violate a variety of constitutional rights.[6]  *See* FAC, ¶¶ 180 and 181.   These bare, conclusory allegations plainly constitute nothing more than a formulaic recitation of a constitutional deprivation that is insufficient to sustain a Section 1983 claim as a matter of law.  *See Iqbal*, 556 U.S. at 681.

> ### a.  Plaintiffs' Tenth Claim For Relief Fails To State A Section 1983 Claim Based On Violations Of The Third Amendment.

Plaintiffs' failure to plead their claims in conformance with the plausibility standard articulated in *Iqbal*  and *Twombley* leaves the HENDERSON DEFENDANTS in the untenable position of having to speculate about the unstated basis for Plaintiffs' ill-defined Section 1983 claim premised on a purported violation of the Third Amendment to the United States Constitution.  The Third Amendment provides:

> No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner prescribed by law.

*See* U.S. Const., amend. III.   Because Plaintiffs not stated a plausible claim of a Third Amendment violation under Section 1983 such claim should be dismissed.

The Third Amendment serves to prevent the unauthorized "quartering" (i.e., lodging or dwelling) of soldiers in private homes.  *See* James P. Rogers, *Third Amendment Protections in Domestic Disasters*, 17 Cornell J.L. & Pub. Pol'y 747, 767 (2008); *see also Ravin v. State*, 537 P.2d 494, 503 (Alaska 1975) ("[a]mong the enumerated rights in the federal Bill of Rights are the guarantee against quartering of troops in a private house in peacetime (Third Amendment)").   The Founding Fathers established this protection in response to the British government's Quartering Act of 1774, which authorized British commanders to quarter, or house, their troops wherever necessary, including within the homes of American colonists.  *See Engblom v. Carey*, 677 F.2d

---

[6] As part of their tenth claim for relief, Plaintiffs again allege a violation of their First Amendment rights.  *See* FAC, ¶¶ 181(c), 185, 187.  Such a claim is unsustainable here for the same reasons set forth in Section IV(C) above.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

957, 967 (2d Cir. 1982) (Kaufman Circuit Judge, concurring in part and dissenting in part) (summarizing the historical origin of Third Amendment); *see also Atkinson v. Gurich*, 248 P.3d 356, 360 n. 22 (Okla. 2011) ("[t]he Acts were also directly responsible for the Third Amendment of the United States Constitution"); *The Quartering Act, America's Homepage, Historic Documents of the United States*, http://ahp.gatech.edu/quartering_act_1765.html.

The First Amended Complaint sets forth no allegations, which if accepted as true, could establish that Plaintiffs' constitutional rights under the Third Amendment were violated by the HENDERSON DEFENDANTS or any of them. The question of whether police officers can be considered "soldiers" and whether the use of a house for less than twenty-four hours could be construed as "quartering" within the scope of the Third Amendment was addressed by the U. S. District Court for the District of Maine, which was affirmed by the First Circuit. *See Estate of Bennett v. Wainwright*, No. 06-28-P-S, 2007 WL 1576744 (D. Me. May 30, 2007), *aff'g magistrate judge*, 2007 WL 2028961 (D. Me. July 7, 2009), *aff'd*, 548 F.3d 155 (1st Cir. 2008). The plaintiffs in *Estate of Bennett* alleged that a Maine state trooper forced them from their home without authority, constituting "illegal quartering" in violation of the Third Amendment. *See Estate of Bennett*, 2007 WL 1576744, at *3.

The trial court rejected the plaintiffs' position that a municipal officer can, and should be, considered a soldier under the Third Amendment:

> The plaintiffs' position appears to be another of the "far-fetched, metaphorical applications" of this amendment that have been "summarily rejected" as noted by the Second Circuit. ***There is no sense in which a single state trooper and several deputy sheriffs can be considered "soldiers" within the meaning of that word as it is used in the amendment nor in which the use of a house presumably owned by one of the plaintiffs for a period of fewer than 24 hours could be construed as "quartering" within the scope of the amendment.*** The county defendants are entitled to judgment on the pleadings as to any claim asserted under the Third Amendment.

*Id*. at *6 (citing *Engblom*, 677 F.2d at 959 n. 1) (emphasis added). Consistent with this holding, several other courts have likewise summarily dismissed claims of Third Amendment violations. *See Sec. Investor Prot. Corp. v. Exec. Sec. Corp.*, 433 F. Supp. 470, 473 n.2 (S.D.N.Y. 1977) (dismissing a claim that a subpoena violated the claimant's Third Amendment right); *United States v. Valenzuela*, 95 F. Supp. 363, 366 (S.D. Cal. 1951) (rejecting a claim that the 1947 House

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   and Rent Act is "the incubator and hatchery of swarms of bureaucrats to be quartered as storm

2   troopers upon the people"); *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1043 (10th Cir.

3   2001) (rejecting a claim that the operation of military aircraft over private property without the

4   owner's permission constitutes "quartering" and violation of the Third Amendment).

5         Plaintiffs, here, have failed to plead a plausible claim that any of the HENDERSON

6   DEFENDANTS violated their Third Amendment right not to quarter soldiers in their homes.

7   Plaintiffs do not allege any action from which it could be inferred that the HENDERSON

8   DEFENDANTS were soldiers engaged in quartering in Plaintiffs' homes.  Although Plaintiffs

9   purport to allege a claim for violation of the Third Amendment as to MICHAEL and LinDA

10  MITCHELL (Seventh Claim for Relief) by unidentified "Doe" officers, they have asserted no

11  Third Amendment claim of any kind as to ANTHONY MITCHELL and, again, do not maintain

12  that the HENDERSON DEFENDANTS infringed any Third Amendment rights. *See id*., ¶¶ 152-

13  57.  Finally, Plaintiffs have set forth no allegations that the purported custom or policy of the

14  CITY OF HENDERSON referenced in their First Amended Complaint was a "moving force"

15  behind the supposed deprivation of their Third Amendment right to deny the quartering of

16  soldiers in their homes. *See id*., ¶¶ 179-89.

17        Even if their allegations adequately state a violation of constitutional rights (which they do

18  not), Plaintiffs have failed to plead factual allegations which demonstrate that ANTHONY

19  MITCHELL is plausibly entitled to relief under Section 1983 for a purported violation of the

20  Third Amendment.  First, Plaintiffs do not plead that the HENDERSON DEFENDANTS ever

21  entered ANTHONY MITCHELL'S home. *See* FAC, ¶¶ 48-60, 67.  Of the officers identified in

22  Plaintiffs' First Amended Complaint that allegedly entered ANTHONY MITCHELL'S home,

23  Plaintiffs' First Amended Complaint acknowledges that none were Henderson police officers.

24  *See id*.  Second, while Plaintiffs' First Amended Complaint does allege that unidentified "officers"

25  entered ANTHONY MITCHELL'S home and "used it as an observation post," Plaintiffs do not

26  allege that such use constituted quartering within the scope of the Third Amendment. *See id*., ¶

27  67.  Plaintiffs' First Amended Complaint is devoid of any allegations as to:  (1) how the

28  unidentified "officers" were soldiers under the Third Amendment; (2) how long the unidentified

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

21

"officers" stayed in ANTHONY MITCHELL'S home; and (3) how the duration of the stay of the unidentified "officers" was sufficient to constitute quartering (*i.e.*, the lodging of soldiers) under the Third Amendment. *See id.*; *see also Engblom*, 677 F.2d at 967. Plaintiffs' notion constitutes nothing more than another "'far-fetched, metaphorical application[]' of [the Third] amendment" which the Court should summarily reject. *See Estate of Bennett*, 2007 WL 1576744, at *7 (quoting *Engblom*, 677 F.2d at 959 n. 1). Thus, regardless of whether Plaintiffs intend to premise their Tenth Claim for Relief on purported violations of ANTHONY MITCHELL'S rights under the Third Amendment, they have failed to state a claim upon which relief can be granted as a matter of law.

Plaintiffs' allegations are likewise unsustainable as to LINDA and MICHAEL MITCHELL. Like their allegations regarding ANTHONY MITCHELL, Plaintiffs fail to plead that any of the HENDERSON DEFENDANTS ever entered MICHAEL and LINDA MITCHELLS' home. *See* FAC, ¶¶ 68-73. Rather, Plaintiffs allege that a group of unidentified "Doe" officers entered MICHAEL and LINDA MITCHELLS' backyard, that one of the unidentified "Doe" officers removed LINDA MITCHELL from her house, and that the remaining unidentified "Doe" officers entered the house. *See id*. Plaintiffs' First Amended Complaint contains no allegations the unidentified "Doe" officers were in MICHAEL and LINDA MITCHELLS' house for a significant amount of time, let alone that they took up residence (*i.e.*, quartered) in their home. Plaintiffs' mere allegation that unidentified "Doe" officers entered MICHAEL and LINDA MITCHELLS' house, left doors open, drank water, deposited disposable plastic cups in a trashcan, and left condiments on the floor cannot and does not plausibly constitute the "quartering" of a soldier as contemplated by the Third Amendment under any circumstances, and plainly does not constitute a constitutional violation of any kind by the HENDERSON DEFENDANTS.

Because Plaintiffs have no viable claim against the HENDERSON DEFENDANTS for violation of the Third Amendment, their Tenth Claim for Relief under Section 1983 is unsustainable as a matter of law and should be dismissed.

…

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

    **b.**    **Plaintiffs' Tenth Claim For Relief Fails To State A Section 1983 Claim Based On Violations Of The Fourteenth Amendment.**

Like their claim under the Third Amendment, Plaintiffs have failed to plead a Section 1983 claim based on violation of the Fourteenth Amendment.

To plead a constitutional tort under the due process clause of the Fourteenth Amendment, Plaintiffs must plausibly allege, which they have not done, that the HENDERSON DEFENDANTS' governmental actions have deprived them of their individual life, liberty, and property interests of constitutional magnitude. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998). The cognizable level of governmental abuse of power must be so egregious as to "shock the conscience" or "violate the 'decencies of civilized conduct'" to reach a magnitude of constitutional proportions. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).

To that end, the United States Supreme Court has made clear that the due process guarantee does not impose liability "whenever someone cloaked with state authority causes harm." *See id.* at 848; *see also Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (explaining that only official conduct, which both shocks the conscience and was carried out with a "purpose to harm for reasons unrelated to legitimate law enforcement objectives" is cognizable as a due process violation under the Fourteenth Amendment). The Fourteenth Amendment does not protect against all deprivations of liberty, but rather only protects against those deprivations that are undertaken without due process of law. *See Hillblom v. Cnty. of Fresno*, 539 F. Supp. 2d 1192, 1207 (E.D. Cal. 2008) (Fourteenth Amendment claims related to Police Officers entering Plaintiffs' home without a warrant and arresting Plaintiff dismissed as actions not shocking to the conscience and emotional health claims do not warrant substantive due process protection). As a result, an officer's conduct may be objectively unreasonable and still not breach the more demanding standard that governs Fourteenth Amendment due process claims. *See Moreland*, 159 F.3d at 372.

In addition, to plead a constitutional violation under the Fourteenth Amendment arising out of the training and/or supervision of an employee, Plaintiffs would have to allege, which they

again have not done, plausible facts demonstrating that the training was sufficiently inadequate as to constitute "deliberate indifference" to the individual rights of ANTHONY, LINDA, and MICHAEL MITCHELL. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); *see also* FAC, ¶ 184.   Plaintiffs must further demonstrate "***actual causation*** between the inadequate training and the deprivation of the Plaintiff's rights, which they likewise have failed to do." *See Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043, 1052 (D. Nev. 2004) (emphasis added).

Although the due process clause of the Fourteenth Amendment "'provides heightened protection against government interference with certain fundamental rights and liberty interests,'" "'[t]here is no general liberty interest in being free from capricious government action.'"  *See Hillblom*, 539 F. Supp. 2d at 1208 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), and *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir. 1998)).  As a result, "[c]ourts must resist the temptation to augment the substantive reach of the Fourteenth Amendment." *Id*.  For example, emotional health claims do not warrant substantive due process protection. *See id*.; *see also Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (police officer's "I'm going to get you" threat "not an actual infringement of constitutional right"); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (verbal harassment including sheriff's threat to "hang" prisoner states no constitutional deprivation).   Nor does the Fourteenth Amendment "guarantee that only the guilty will be arrested." *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) (arrest of individual based on mistaken identity not a violation of his due process rights).  As the Supreme Court noted, "[i]f it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." *Id*.  According to these fundamental principles, Plaintiffs' Section 1983 claim premised on purported violations of the Fourteenth Amendment cannot stand.

(1)     **Plaintiffs' Tenth Claim For Relief Fails To State A Claim Under The Fourteenth Amendment As To LINDA MITCHELL.**

Plaintiffs' First Amended Complaint fails to allege that the HENDERSON DEFENDANTS, acting under the color of state law, took actions that resulted in the deprivation of LINDA MITCHELL'S due process rights under the Fourteenth Amendment.  *See* FAC ¶¶ 49,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

24

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

58, 68, 70-74.  Plaintiffs have not even alleged how the HENDERSON DEFENDANTS purportedly violated LINDA MITCHELL'S Fourteenth Amendment rights.  *See id.*, ¶¶ 70-72, 140-51.  For example, absent from Plaintiffs' First Amended Complaint is any assertion that any of the HENDERSON DEFENDANTS knew LINDA MITCHELL prior to the incident, had any prior contact with LINDA MITCHELL, possessed any personal animus towards LINDA MITCHELL, or even interacted with LINDA MITCHELL at any time relevant to the First Amended Complaint.  *See id.*  The HENDERSON DEFENDANTS plainly could not have acted with the necessary "deliberate indifference" so as to "shock the conscience" if they did not know or ever interact with LINDA MITCHELL.  Plaintiffs likewise have not alleged how any CITY OF HENDERSON custom, policy, or practice was the actual cause of the purported deprivation of LINDA MITCHELL'S Fourth Amendment rights.  *See Herrera*, 298 F. Supp. 2d at 1052; *see also* FAC, ¶¶ 179-89.

Even assuming for argument purposes only that the basis of LINDA MITCHELL'S Fourteenth Amendment claim is the "extreme emotional distress" that she allegedly suffered in listening to the arrest of ANTHONY MITCHELL, Plaintiffs' claim is still unsustainable.  Not only does the due process clause of the Fourteenth Amendment offer no protection from distress of that nature, the HENDERSON DEFENDANTS could not have been the source of such distress because Plaintiffs have not alleged that any of the HENDERSON DEFENDANTS ever entered ANTHONY MITCHELL'S home.  *See Hillblom*, 539 F. Supp. 2d at 1208; *see also* FAC, ¶¶ 48-60.  Accordingly, LINDA MITCHELL has failed to state a Section 1983 claim against the HENDERSON DEFENDANTS based on the violation of Fourteenth Amendment rights as a matter of law.

### (2)     Plaintiffs' Tenth Claim For Relief Fails To State A Claim Under The Fourteenth Amendment As To MICHAEL MITCHELL.

Plaintiffs' notion that the HENDERSON DEFENDANTS infringed MICHAEL MITCHELL'S rights under the Fourteenth Amendment lacks a legal basis for at least *five* reasons.  *First*, Plaintiffs do not allege that the HENDERSON DEFENDANTS had any interaction with MICHAEL MITCHELL prior to his arrest.  *See* FAC, ¶¶ 134-39, 146-51, 158-70.  *Second,*

25

Plaintiffs' allegations confirm that any interaction that the unidentified "Doe" officers had with MICHAEL MITCHELL occurred during the course of an ongoing investigation related to the domestic violence call on the same street.  *See id.*; *see also Porter*, 546 F.3d at 1137.  *Third*, Plaintiffs acknowledge that MICHAEL MITCHELL voluntarily left his house at the request of unidentified "Doe" officers to "assist them in negotiating the surrender of" the suspect.  *See* FAC, ¶ 68.  *Fourth*, because the Fourteenth Amendment does not guarantee that only the guilty will be arrested, MICHAEL MITCHELL'S arrest is not protected by the due process clause under any circumstances.  *See Baker*, 443 U.S. at 145.  *Fifth*, as with LINDA MITCHELL, Plaintiffs' First Amended Complaint is bereft of any allegation as to how a CITY OF HENDERSON custom, policy, or practice was the actual cause of the purported deprivation of MICHAEL MITCHELL'S Fourth Amendment rights.  *See Herrera*, 298 F. Supp. 2d at 1052.  On these grounds, MICHAEL MITCHELL has failed to state a Section 1983 claim against the HENDERSON DEFENDANTS based on the violation of Fourteenth Amendment rights as a matter of law.

> **(3)    Plaintiffs' Tenth Claim For Relief Fails To State A Claim Under The Fourteenth Amendment As To ANTHONY MITCHELL.**

Plaintiffs have likewise failed to state a claim against that the HENDERSON DEFENDANTS for violating ANTHONY MITCHELL'S due process rights under the Fourteenth Amendment.  Specifically, Plaintiffs have not alleged that the HENDERSON DEFENDANTS participated in the entry and search of ANTHONY MITCHELL'S home, or any of the actions that allegedly preceded his arrest.  *See* FAC, ¶¶ 48-64, 119-33.  The HENDERSON DEFENDANTS could not have acted with "deliberate indifference" toward ANTHONY MITCHELL so as to "shock the conscience" if they were not participants in these alleged events.  *See id.*  A CITY OF HENDERSON policy or custom regarding the training and/or supervision of its officers therefore also could not have been the cause of a Fourteenth Amendment violation, even if Plaintiffs had properly alleged so (which they have not).  *See Herrera*, 298 F. Supp. 2d at 1052; *see also* FAC, ¶ 184.  For these reasons, the Court should dismiss ANTHONY MITCHELL'S claim under the Fourteenth Amendment along with the related claims of LINDA and MICHAEL MITCHELL. …

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

c.    **Plaintiffs' Tenth Claim For Relief Fails To State A Section 1983 Claim Based On Violations Of The Fourth Amendment.**

Equally inadequate under *Twombly* and *Iqbal* is Plaintiffs' suggestion in their First Amended Complaint that the HENDERSON DEFENDANTS somehow violated their rights under the Fourth Amendment to the United States Constitution.  As a result, like the other claims asserted against them, the HENDERSON DEFENDANTS must defend themselves against Plaintiffs' Section 1983 claim without any notice of the basis on which they supposedly committed a Fourth Amendment violation.  The First Amended Complaint is entirely silent in this regard.  *See* FAC, ¶¶ 179-89.  Plaintiffs make no effort to assert Fourth Amendment violations against any of the HENDERSON DEFENDANTS.  *See id.*, ¶¶ 119-51.  Because Plaintiffs have failed to allege how the HENDERSON DEFENDANTS purportedly infringed their rights under the Fourth Amendment, Plaintiffs' First Amended Complaint fails to state a Section 1983 claim on this additional ground as a matter of law.

The Fourth Amendment protects individuals against excessive use of force by government officials. *See* U.S. Const., amend IV.  When an officer's use of force is objectively reasonable under the circumstances, however, no constitutional violation has occurred.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force").  The determination of whether force used is excessive or reasonable requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *See id.* at 396 (internal quotations omitted).

Here, Plaintiffs' notion that the HENDERSON DEFENDANTS violated their Fourth Amendment rights are without basis under the plain language of their First Amended Complaint. No matter how painstakingly the Court examines the First Amended Complaint, it will find no allegation that the HENDERSON DEFENDANTS entered Plaintiffs' homes or interacted with Plaintiffs in any way, other than through HPD Officer WORLEY'S innocuous telephone call with ANTHONY MITCHELL, until after the arrest of ANTHONY and MICHAEL MITCHELL.  It is axiomatic that the HENDERSON DEFENDANTS could not have violated any of the Plaintiffs

27

1  Fourth Amendment rights under such circumstances.   The Court therefore should dismiss

2  Plaintiffs' Section 1983 claim in its entirety.

3  **F.**   **Plaintiffs' Eleventh Claim For Relief For Conspiracy To Violate Civil Rights Under 42 U.S.C. § 1985(3) Should Be Dismissed, As A Matter Of Law, Based On The Lack Of Subject Matter Jurisdiction And The Failure To State A Claim Upon Which Relief Can Be Granted Against The HENDERSON DEFENDANTS.**

6  Plaintiffs claim against the HENDERSON DEFENDANTS under 42 U.S.C. § 1985(3)

7  ("Section 1985(3)") is legally unsustainable for at least *three* reasons.

8  -- *First*, it is well-settled that a claim under Section 1985(3) requires a showing of racial or

9  class-based discrimination.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68

10  (1993); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("[t]he language requiring

11  intent to deprive of equal protection, or equal privileges and immunities, means that there must be

12  some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

13  conspirators' action").   A plaintiff therefore must set forth "'specific allegations of 'class based

14  discriminatory animus'" in order to maintain a Section 1985(3) claim.  *See Jenkins v. Rockwell*

15  *Int'l Corp.*, 595 F. Supp. 399, 402 (D. Nev. 1984).  Because Plaintiffs have asserted no allegations

16  of discrimination of any kind, their Section 1985(3) claim against the HENDERSON

17  DEFENDANTS should be dismissed for a lack of subject matter jurisdiction ***and*** a failure to state

18  a claim upon which relief can be granted.  *See id*.; *Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092,

19  1103 (D. Nev. 2002), *aff'd*, 63 F.App'x 346 (9th Cir. 2003); *Trzaska v. Int'l Game Tech.*, No.

20  2:10-cv-2268 JCM (GWF), 2011 WL 2516931, at *4 (D. Nev. June 23, 2011); *see also Caldeira*

21  *v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("Caldeira never alleges invidiously

22  discriminatory, racial or class-based animus, which is necessary to state a claim under section

23  1985(3)").

24  -- *Second*, a claim under Section 1985(3) fails unless the plaintiff has successfully stated a

25  claim for deprivation of rights under Section 1983.  *See Caldeira*, 866 F.2d at 1182 ("the absence

26  of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on

27  the same allegations").  Given that Plaintiffs have not stated a viable Section 1983 claim against

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   the HENDERSON DEFENDANTS, their Section 1985(3) claim likewise cannot survive

2   dismissal.  *See id.*; *Trzaska*, 2011 WL 2516931, at *4; *see also supra* Sections IV(A)-(E).

3        -- *Third*, like Section 1983, the two-year statute of limitations for personal injury claims

4   under Nevada law constitutes the statute of limitations applicable to Plaintiffs' Section 1985(3)

5   claim.  *See Chachas*, 615 F. Supp. 2d at 1202-03; *see also* Nev. Rev. Stat. § 11.190(4)(e).  The

6   Ninth Circuit has explained:

> An action under § 1985(3) alleging a conspiracy to deprive a person of
> constitutional rights is designed to remedy the same types of harms as the
> deprivations actionable under § 1983.  Accordingly, we hold that suits under
> § 1985(3) are also best characterized as personal injury actions and are governed
> by the same statute of limitations as actions under § 1983.

10  *See McDougal*, 942 F.2d at 673.  Although the events on which Plaintiffs base their Section

11  1985(3) claim occurred on July 10, 2011, they did not assert such a claim against the

12  HENDERSON DEFENDANTS until they filed their First Amended Complaint more than two

13  years later, on October 14, 2013.  *See FAC*, ¶ 191, at 37:11-16.  Plaintiffs' Section 1985(3) claim

14  accordingly is barred by the two-year statute of limitations.

15      On each of these separate and independent grounds, Plaintiffs' Eleventh Claim for Relief

16  is unsustainable as a matter of law.

17      **G.      Plaintiffs' Twelfth Claim For Relief For Neglect To Prevent A Conspiracy To
            Violate Civil Rights Under 42 U.S.C. § 1986 Should Be Dismissed, As A
18          Matter Of Law, Based On The Failure To State A Claim Upon Which Relief
            Can Be Granted Against The HENDERSON DEFENDANTS.**
19

20      Plaintiff's Twelfth Claim for Relief is unsustainable against the HENDERSON

21  DEFENDANTS, as a matter of law, for at least *two* reasons.  *First*, a viable claim under Section

22  1985(3), which Plaintiffs have failed to state here, is a prerequisite to relief under 42 U.S.C.

23  § 1986 ("Section 1986").  *See* 42 U.S.C. § 1986; *Sanchez v. City of Santa Ana*, 936 F.2d 1027,

24  1040 (9th Cir. 1990) ("[a] violation of section 1986 thus depends on the existence of a valid claim

25  under 1985"); *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983) ("Section 1986 depends on

26  the existence of a claim under § 1985").  *Second*, a one-year statute of limitations applies to

27  claims under Section 1986, and Plaintiffs delayed more than two years before they asserted a

28  claim on this basis.  *See* 42 U.S.C. § 1986 ("no action under the provisions of this section shall be

sustained which is not commenced within one year after the cause of action has accrued").  On each of these separate and independent grounds, Plaintiffs Twelfth Claim for Relief warrants dismissal as a matter of law.  *See Trzaska*, 2011 WL 2516931, at *4 (Section 1986 claim "must fail" because "plaintiff does not successfully state a claim for relief under § 1985" and "plaintiff's § 1986 claim is barred by the one year statute of limitations").

**H.   Plaintiffs' State Law Claims Against the HENDERSON DEFENDANTS Should be Dismissed Because Plaintiffs Failed To Present These Claims As Required Under Nevada Law.**

Even if the Court retains jurisdiction over Plaintiffs' state law claims (which it should not), it should dismiss them because Plaintiffs failed to comply with the claim presentation requirements set forth under Nevada law.  NRS 41.036(2) requires that:

> Each person who has a claim against any political subdivision of the State arising out of a tort must file the claim within 2 years after the time the cause of action accrues with the governing body of that political subdivision.

The requirements of a "claim" against the state or political subdivision are set forth in NAC 41.100:

> 1. In support of a claim for compensation for death or personal injury a claimant must submit:
>    (a) A statement which sets forth the amount of relief sought;
>    (b) A clear and concise statement which explains how the injury occurred;
>    (c)  Reports from all physicians who, subsequent to the claimant's injury or to the death, treated or examined the claimant or decedent in relation to the injury for which compensation is claimed; and.
>    (d)  A statement as to why the claimant believes the state to be responsible for the damages.
> 2. In support of a claim for compensation for loss of or injury to property a claimant must submit:
>    (a) A statement which sets forth the amount of relief sought;.
>    (b) A clear and concise statement which explains how the property was damaged;
>    (c)  Proof of ownership of the property; and.
>    (d)  A statement which lists the:
>        (1)  Value of the property before the damage occurred;.
>        (2)  Cost of repairs; and.
>        (3)  Salvage value.
> 3. A claim must be:
>    (a) Typewritten or legibly handwritten;.
>    (b) Signed and verified by the claimant; and.
>    (c) Submitted in the original to the office of the ex officio clerk of the State Board of Examiners at the Blasdel Building, Capitol Complex, Carson City, Nevada 89710.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Failure to comply with the requirements set forth under NRS 41.036(2) is grounds for dismissal. *Hartrim v. Las Vegas Metro. Police Dep't*, 2:11-cv-00003-RLH-PAL, 2011 WL 2690148 (D. Nev. July 8, 2011) (dismissing state law claims against individual officers and the Las Vegas Metropolitan police department for failure to comply with requirements under NRS 41.036(2)).

Here, the incident allegedly giving rise to Plaintiffs' claims took place on July 10, 2011. Thus, in order to comply with the claim presentation requirements under NRS 41.036(2) Plaintiffs would have had to present their claims no later than July 10, 2013. The mere filing of a pleading does not satisfy the claim presentation requirements set forth under NRS 41.036. *Zaic v. Las Vegas Metro. Police Dep't*, 2:10-CV-01814-PMP, 2011 WL 884335, at *5 (D. Nev. Mar. 11, 2011) (finding that despite filing complaint (with the court) within the period set forth in NRS 41.036(2) plaintiff did not substantially comply with statutory requirements because she served the complaint on defendants a month after the two-year period expired). Even if served, a complaint itself may not satisfy the requirements NRS 41.036(2). *See* NAC 41.100. Nor would a demand letter lacking the essential requirements of a claim. *See id.*

Plaintiffs did not meet the claim presentation requirements set forth in NRS 41.036(2). Plaintiffs' original Complaint was filed on July 1, 2013. *See* Court Docket No. 1. However, the original Complaint was never served on any of the HENDERSON DEFENDANTS. More importantly, the original Complaint is not the operative pleading in this matter. On October 14, 2013—more than three months after the time for complying with NRS 41.036(2) had expired— Plaintiffs filed their First Amended Complaint. *See* Court Docket No. 3. The First Amended Complaint adds additional parties, is ***thirty pages longer*** than the original Complaint, and includes ***ten additional claims*** for relief. Thus, even had Plaintiffs served the original Complaint, it still would not have satisfied the requirements set forth in NRS 41.036(2).

The First Amended Complaint was not filed until October 14, 2013, and was not served or otherwise presented to any of the HENDERSON DEFENDANTS before October 21, 2013, well after the deadline for compliance with NRS 41.036(2). As a result, the Court should dismiss the Plaintiffs state law claims against the HENDERSON DEFENDANTS.

I.    **Plaintiffs' Failure To Serve Former HPD Police Chief CHAMBERS And HPD Officer WALLS Within 120 Days Of Filing Their Original Complaint Requires Dismissal Of All Claims Against Them.**

The Court should summarily dismiss Plaintiffs' claims against CHAMBERS and WALLS based on their failure to comply with the service requirements of Rule 4 of the Federal Rules of Civil Procedure ("Rule 4").  Specifically, Plaintiffs neglected to serve CHAMBERS and WALLS within the 120-period mandated by Rule 4(m), which provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—***must dismiss*** the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*See* Fed. R. Civ. P. 4(m) (emphasis added).  Plaintiffs filed their original Complaint on July 1, 2013, but did not serve CHAMBERS until October 31, 2013, ***or 122 days later***, and did not serve WALLS until November 4, 2013, ***or 126 days later***.  *See* Complaint, Court Docket No. 1.  As a result, Plaintiffs missed the deadline for serving CHAMBERS by two days and the deadline for serving WALLS by six days.

Although Plaintiffs filed their First Amended Complaint on October 14, 2013, the 120-day service period established by Rule 4(m) continued to run from July 1, 2013 as a matter of law because they had named CHAMBERS and WALLS as defendants in their original Complaint. The filing of an amended complaint does not restart the 120-day period as provided in Rule 4(m) "except as to those defendants newly added in the amended complaint."  *See Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1100 (D. Nev. 2011) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006)).  This construction of Rule 4(m) prevents a plaintiff from repeatedly filing amended complaints "to extend the time for service indefinitely."  *See Bolden*, 441 F.3d at 1148.  Absent this construction, a dilatory plaintiff, like the Plaintiffs here, could avoid the time constraint in Rule 4(m) by simply "filing an amended complaint when it felt like effecting service."  *See id*. at 1148-49.   Because Plaintiffs cannot show good cause for serving CHAMBERS and CHAMBERS late after having 120 days to effectuate service, Rule 4(m) mandates the dismissal of all claims against them at this time.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

32

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

**J.      Plaintiffs Have Also Failed To State A Section 1983 Claim Against Former Police Chief JUTTA CHAMBERS Because They Allege No Personal Involvement By Her In The Events On Which They Base Their First Amended Complaint.**

Because Plaintiffs' First Amended Complaint is devoid of any allegation that former Police Chief CHAMBERS personally directed, supervised, or participated in the alleged incident, their Section 1983 claims against her should be dismissed as a matter of law.  Individual capacity suits require proof that a government official, acting under color of state law, caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  To pursue an individual capacity action, the plaintiff must show the official's actual personal involvement in the alleged constitutional violation.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (dismissing Director of State Health Department in individual capacity because of lack of involvement); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (holding that officers cannot be liable for an allegedly unlawful search when there is no direct evidence of their individual participation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (dismissing Attorney General in individual capacity because of lack of involvement).  It is well-established that an individual claim under Section 1983 does not lie against a superior officer by virtue of the chain of command to the alleged offending officer.  *See Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1155 (10th Cir. 2006); *Funderburk v. Williams*, No. 2:08-cv-0169-KJD-LRL, 2011 WL 835498, at *3 (D. Nev. 2011).

Other than mentioning her in the caption of this action and alleging that she was the Henderson Chief of Police at the relevant time, Plaintiffs' First Amended Complaint contains no allegation that former Police Chief CHAMBERS had any personal involvement in the alleged incident, let alone that she was the "cause" of the alleged constitutional torts.  *See* FAC, ¶¶ 8 and 10.  Accordingly, Plaintiffs' Section 1983 claims against former Police Chief CHAMBERS, in her individual capacity, warrants dismissal.

…

…

…

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

**K.**   **Defendant HPD Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, And WORLEY Are Entitled To Qualified Immunity From Suit In Their Individual Capacities.**

Qualified immunity protects all government officials and employees, including police officers, from suit in their individual capacities for actions taken within the scope of their discretionary authority while acting under the color of state law.  *See Somavia v. Las Vegas Metro. Police Dep't*, 816 F. Supp. 638, 641 (D. Nev. 1993), *aff'd*, 15 F.3d 1089 (9th Cir. 1994). Not only does qualified immunity protect "'all but the plainly incompetent or those who knowingly violate the law,'" [*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002)], it "generally protects government officials so long as their conduct does not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Herrera*, 298 F. Supp. 2d at 1051 (quoting *Baker v. Racansky,* 887 F.2d 183, 186 (9th Cir.1989)); *see also Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("[t]his inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken'").  Discretionary authority includes all acts undertaken pursuant to the performance of the official's duties that are within the scope of his or her authority. *See Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995).

No dispute exists in this case that the Defendant HPD officers were acting in their official capacities at all relevant times.  Plaintiffs' First Amended Complaint confirms that the Defendant HPD officers were on scene responding to a domestic violence call.  *See* FAC, ¶ 20.  Given that Plaintiffs do not allege that any of the Defendant HPD officers, including Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, and WORLEY, ever interacted with MICHAEL or LINDA MITCHELL, none of them could have exhibited conduct towards either of these Plaintiffs that clearly violated their rights.  And, prior to his arrest, the only alleged interaction that ANTHONY MITCHELL had with the HENDERSON DEFENDANTS was HPD Officer WORLEY'S unobjectionable telephone request that he vacate his residence.  Plaintiffs' allegations regarding that telephone call do not suggest that a clear violation of the law had occurred, but rather confirm that no violation of the law had occurred.  *See* FAC, ¶ 35.  Finally, as a result of the decision by the City Attorney's Office to file criminal complaints against Anthony and

34

MICHAEL MITCHELL, Officers WALTER and WORLEY became immune from Section 1983 liability arising out of the arrest. *See supra* Section IV(D). For these reasons, Defendant HPD Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, and WORLEY are entitled to qualified immunity in their individual capacities as to Plaintiffs' claims as a matter of law.

### L.   The Court Lacks Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims (Plaintiffs' Thirteenth Through Twenty-Second Claims For Relief).

Federal law confers supplemental jurisdiction on the district courts:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

*See* 28 U.S.C. § 1367(a). A district court may only invoke its supplemental jurisdiction when there is a "hook of original jurisdiction on which to hang it." *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). Section 1367 authorizes district courts to decline to exercise supplemental jurisdiction over pendent claims when it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). As the United States Supreme Court has held, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

In *Gibbs*, the Court made clear that the purpose of supplemental jurisdiction over pendent state law claims is to promote judicial economy, convenience, and fairness. *See id*. When these considerations are absent, a federal court should be reticent to exercise jurisdiction. *See id*. The Court explained that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *See id*.

Here, the dismissal of Plaintiff's Section 1983 claims, the only causes of action for which this Court would have original jurisdiction, necessitates the dismissal of Plaintiffs' state law claims, over which this Court would retain only supplemental jurisdiction. The dismissal of Plaintiffs' state law claims would most effectively promote judicial economy, convenience, and fairness because Plaintiffs would then have the opportunity to seek the adjudication of such

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

claims in a Nevada state court.  Plaintiffs would suffer no prejudice from their dismissal of their state law claims given that this case is in its infancy.

**M.**     **Defendant HPD Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, And WORLEY Are Entitled To Discretionary Immunity Under Nevada Law For All State Law Claims (Plaintiffs' Thirteenth Through Twenty-Second Claims For Relief).**

Even if the Court retains jurisdiction over Plaintiffs' state law claims (which it should not), it should still dismiss them as to all individual HPD officers under well-settled principles of discretionary immunity.  HPD Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, and WORLEY, all government employees acting under the color of law, are entitled to discretionary immunity with regard to all of Plaintiffs' state law based claims (the Thirteenth through Twenty-Second Claims for Relief).  *See Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 878 (9th Cir. 2002).

Nevada Revised Statute § 41.032 provides, in relevant part:

> [N]o action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is:
>
> 1. Based upon an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction; or
>
> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

To come within the scope of discretionary act immunity under Nevada law, "a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy."  *See Martinez v. Maruszczak*, 123 Nev. 433, 446-47, 168 P.3d 720, 729 (2007).  "An officer's decision as to how to accomplish a particular seizure or search is generally considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007).  It is only when an officer's actions are

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

36

1   "'attributable to bad faith'" that "'immunity does not apply whether an act is discretionary or not.'"

2   *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007).

3         Plaintiffs' First Amended Complaint makes clear that Defendant HPD Officers

4   CHAMBERS, POINER, FEOLA, WALLS, WALTER, and WORLEY were all exercising their

5   discretionary authority as police officers responding to a domestic violence call, and that they are

6   therefore entitled to discretionary immunity under Nevada law.  *See* FAC, ¶ 20; *see also* Nev.

7   Rev. Stat. § 41.032; *Carey*, 279 F.3d at 878.  Plaintiffs fail to allege any interaction between

8   Defendant HPD Officers CHAMBERS, POINER, FEOLA, WALLS, or WALTER and the

9   individual Plaintiffs occurred during the police response while Defendant HPD Officer

10   WORLEY'S telephone call to ANTHONY MITCHELL was clearly discretionary and without

11   any indication of bad faith.  To the extent Plaintiffs complain about HPD Officer WALTER

12   taking ANTHONY MITCHELL into custody after his arrest or about the police reports prepared

13   by HPD Officers WALTER and WORLEY, the officers were plainly exercising their

14   discretionary authority under the circumstances presented and are therefore entitled to

15   discretionary immunity.  *See* FAC, ¶¶ 65, 89, 90.  On these additional grounds, the Court should

16   dismiss Plaintiffs' Second through Tenth Claims for Relief as to Defendant HPD Officers

17   CHAMBERS, POINER, FEOLA, WALLS, WALTER, and WORLEY as a matter of law.

18      **N.**     **Plaintiffs' Seventeenth Claim For Relief For Negligent Infliction Of**
                 **Emotional Distress Should Be Dismissed Because It Fails To State A Claim**

19                  **Against The HENDERSON DEFENDANTS.**

20         The allegations of Plaintiffs' Seventeenth Claim for Relief cannot sustain a claim for

21   negligent infliction of emotional distress on behalf of Plaintiff LINDA MITCHELL as a result of

22   events that allegedly occurred after police entered the home of her son, ANTHONY MITCHELL.

23   Such a claim "requires that a bystander plaintiff be closely related to the victim of an accident, be

24   located near the scene of the accident, and suffer a shock resulting from direct emotional impact

25   stemming from the sensory and contemporaneous observance of the accident."  *See Crippins v.*

26   *Sav On Drug Stores*, 961 P.2d 761, 762 (Nev. 1998).  Not only do Plaintiffs allege nowhere in

27   their First Amended Complaint that any of the HENDERSON DEFENDANTS entered the home

28   of ANTHONY MITCHELL, Plaintiffs concede through their allegations that LINDA

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

MITCHELL was not a bystander to the alleged events and did not observe them.  *See* FAC, ¶¶ 228-231.  Instead, Plaintiffs acknowledge that LINDA MITCHELL was in her own home on the telephone when the alleged events occurred.  *See id.*, ¶ 229.  Because Plaintiffs have failed to allege the necessary elements of a claim for negligent infliction of emotional distress, and cannot do so, the Court should dismiss their Seventeenth Claim for Relief.

**O.    Plaintiffs' Nineteenth Claim For Relief For Abuse Of Process Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS.**

Under Nevada law, an abuse of process claim consists of two elements, including:  "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding."  *See Kovacs v. Acosta*, 787 P.2d 368, 369 (Nev. 1995).  Plaintiffs have not stated a claim upon which relief can be granted against the HENDERSON DEFENDANTS because the mere filing of a criminal complaint does not establish the tort of abuse of process.  *See Laxalt v. McClatchy*, 622 F. Supp. 737, 751-52 (D. Nev. 1985).  Actions taken after the filing of a criminal complaint may constitute abuse of process, but Plaintiffs have not alleged that the HENDERSON DEFENDANTS willfully misused the legal process in this case after criminal charges had been filed against ANTHONY and MICHAEL MITCHELL.  *See id.*; *Kovacs*, 787 P.2d at 369.  Given that both elements of the claim have not been pled, Plaintiffs' Nineteenth Claim for Relief should be dismissed.

**P.    Plaintiffs' Twenty-First Claim For Relief For Respondeat Superior Liability Should Be Dismissed Because It Fails To State A Claim Against The HENDERSON DEFENDANTS.**

Like Plaintiffs' Tenth Claim for Relief, *Monell* bars Plaintiffs' Twenty-First Claim for relief to the extent they seek recovery under Section 1983 on a theory of respondeat superior liability.  *See* FAC, ¶¶ 257-61.  Because a municipality is not subject to Section 1983 liability for the acts of its employees under a respondeat superior theory, this claim is legally unsustainable and should be dismissed on this basis.  *See Monell*, 436 U.S. at 691; *see also Davis v. Mason Cnty.*, 927 F.2d 1473, 1480 (9th Cir. 1991).

…

…

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

**Q.** **Plaintiffs' Claims For Punitive Damages Should Be Dismissed As A Matter Of Law.**

    **1.** **The CITY OF HENDERSON, A Municipality, Is Immune To Punitive Damage Claims As A Matter Of Law.**

Punitive damages are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. *See* Restatement (Second) of Torts § 908 (1979); W. Prosser, *Law of Torts*, at 9-10 (4th ed. 1971). Dispositive here in the CITY OF HENDERSON's favor is *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981), where the United States Supreme Court expressly held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." The Court reasoned that the considerations of history and policy do not support exposing a municipality to punitive damages for the bad faith actions of its officials. *See id.* at 271. The Court further reasoned that an award of punitive damages against a municipality punishes only the taxpayers, who took no part in the commission of the tort. *See id.* at 263. Neither reason nor justice suggests that blameless and unknowing taxpayers should be subject to such retribution. *See id.*

Furthermore, Nevada law likewise expressly bars Plaintiffs' state law claims for punitive damages against the CITY OF HENDERSON. *See* Nev. Rev. Stat. § 41.035(1); *see also Bryan v. Las Vegas Metro. Police Dep't*, 349 F.App'x 132, 134-35 (9th Cir. 2009) (holding that municipalities are immune from liability for punitive damages under Section 1983 claims as well as under state law claims). Thus, Plaintiffs' federal and state claims for punitive damages against the CITY OF HENDERSON should be dismissed with prejudice as a matter of law.

    **2.** **The Individual HENDERSON DEFENDANTS, Including Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, And WORLEY And Deputy City Attorney REYES-SPEER, Are Immune From Plaintiffs' Punitive Damages Claim As A Matter Of Law.**

It is well-settled that "an award for damages in a tort action against employees of the state or any political subdivision may not include punitive damages." *See Bryan*, 349 F.App'x at 134-35; Nev. Rev. Stat. § 41.035(1). All of the individual HENDERSON DEFENDANTS, including Officers CHAMBERS, POINER, FEOLA, WALLS, WALTER, and WORLEY and Deputy City

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

39

1  Attorney REYES-SPEER, were employees of the CITY OF HENDERSON at the time of the

2  alleged events and, according to the allegations of Plaintiffs' First Amended Complaint, were

3  acting in their roles as employees of CITY OF HENDERSON.  *See* FAC, ¶¶ 8, 10, 12, 13.

4  Consequently, all punitive damage claims against each of these individual HENDERSON

5  DEFENDANTS should be dismissed with prejudice as a matter of law.

6  **V.**　　**CONCLUSION.**

7  　　For the foregoing reasons, Defendants CITY OF HENDERSON, NEVADA, JUTTA

8  CHAMBERS, GARRETT POINER, RONALD FEOLA, RAMONA WALLS, ANGELA

9  WALTER, CHRISTOPHER WORLEY, and JANETTE R. REYES-SPEER respectfully request

10  that the Court grant this Motion and dismiss Plaintiffs' First Amended Complaint against them in

11  its entirety.

12  　　DATED this 12th day of November, 2013.

13  　　　　　　　　　　　　　　　BROWNSTEIN HYATT FARBER SCHRECK, LLP

14

15  　　　　　　　　　　　By: /s/ Tamara Beatty Peterson
　　　　　　　　　　　　　　KIRK B. LENHARD, ESQ.
16  　　　　　　　　　　　　　Nevada Bar No. 1437
　　　　　　　　　　　　　　TAMARA BEATTY PETERSON, ESQ.
17  　　　　　　　　　　　　　Nevada Bar No. 5218
　　　　　　　　　　　　　　SCOTT M. SCHOENWALD, ESQ.
18  　　　　　　　　　　　　　Nevada Bar No. 5484
　　　　　　　　　　　　　　100 North City Parkway, Suite 1600
19  　　　　　　　　　　　　　Las Vegas, Nevada  89106
　　　　　　　　　　　　　　*Attorneys for Defendants*
20  　　　　　　　　　　　　　*City of Henderson, Nevada, Jutta Chambers,*
　　　　　　　　　　　　　　*Garrett Poiner, Ronald Feola, Ramona Walls,*
21  　　　　　　　　　　　　　*Angela  Walter, Christopher Worley, and*
　　　　　　　　　　　　　　*Janette R. Reyes-Speer*

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

## CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **DEFENDANTS CITY OF HENDERSON, NEVADA, JUTTA CHAMBERS, GARRETT POINER, RONALD FEOLA, RAMONA WALLS, ANGELA WALTER, CHRISTOPHER WORLEY, AND JANETTE R. REYES-SPEER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** was served via electronic service on the 12th day of November, 2013 and to the addresses shown below:

| | |
|---|---|
| BENJAMIN C. DURHAM, ESQ.<br>bdurham@vegasdefense.com<br>FRANK H. COFER, III, ESQ.<br>fcofer@vegasdefense.com<br>COFER, GELLER & DURHAM. LLC<br>601 South Tenth Street<br>Las Vegas, Nevada 89101<br>*Attorneys for Plaintiffs* | ROBERT W. FREEMAN, JR.<br>kfreeman@lbbslaw.com<br>LEWIS BRISBOIS BISGAARD & SMITH<br>6385 S. Rainbow, Suite 600<br>Las Vegas, NV 89118<br>*Attorneys for Defendants City of North Las Vegas, Joseph Chronister, Sergeant Michael Waller, Drew Albers, David Cawthorn, Eric Rockwell and Travis Snyder* |

/s/ Erin Parcells
An employee of Brownstein Hyatt Farber Schreck