BENJAMIN C. DURHAM, ESQ.
Nevada Bar No. 7684
FRANK H. COFER, ESQ.
Nevada Bar No. 11362
COFER, GELLER & DURHAM, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 631-6111
(702) 946-0826 fax
bdurham@vegasdefense.com
fcofer@vegasdefense.com
Attorney for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| ANTHONY MITCHELL, LINDA MITCHELL, AND MICHAEL MITCHELL, <br><br> PLAINTIFFS, <br><br> *vs.* <br><br> CITY OF HENDERSON, NEVADA, ET AL., <br><br> DEFENDANTS. | Case No.:  2:13-cv-01154-APG-CWH <br><br> **PLAINTIFFS' COMBINED OPPOSITION TO: (1) DEFENDANTS CITY OF HENDERSON, NEVADA, JUTTA CHAMBERS, GARRETT POINER, RONALD FEOLA, RAMONA WALLS, ANGELA WALTER, CHRISTOPHER WORLEY, AND JANETTE R. REYES-SPEER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (CR 17); AND (2) DEFENDANTS CITY OF NORTH LAS VEGAS, JOSEPH CHRONISTER, MICHAEL WALLER, DREW ALBERS, DAVID CAWTHORN, ERIC ROCKWELL AND TRAVIS SNYDER'S JOINDER THERETO (CR 23)** |

# TABLE OF CONTENTS

I.  SUMMARY OF THE ARGUMENT .................................................................. 2

II. LEGAL STANDARDS .............................................................................. 4

    A.  Pleading DOE Defendants In Federal Court. ............................................. 4

    B.  Motion To Dismiss Under Rule 12(b)(6) For Failure To State A Claim.. 5

    C.  Motions To Dismiss Under Rule 12(b)(1) For Lack Of Subject Matter
        Jurisdiction. ................................................................................ 8

    D.  Motions To Dismiss Under Rule 12(b)(5) For Insufficient Service Of
        Process ....................................................................................... 8

    E.  Amending The Complaint .................................................................. 8

III. FACTS WHICH MUST BE TAKEN AS TRUE AND CONSTRUED IN THE
     LIGHT MOST FAVORABLE TO THE PLAINTIFFS. ......................................... 9

IV. THE ARGUMENT IN OPPOSITION ............................................................ 10

    A.  Plaintiffs' First Through Ninth Causes Of Action Are Not Barred By Any
        Statute Of Limitations Based On The Relation-Back Doctrine And
        Equitable Tolling. ......................................................................... 10

        1.  The Instant Claims Relate Back To The Original Complaint. ...... 11

        2.  Any Statute Of Limitations Are Subject To Equitable Tolling. ....14

    B.  Plaintiffs' First Through Ninth Claims For Relief Are Properly Pled, And
        There Is No Basis To Dismiss Them Based On The Use Of "Doe"
        Defendants. ..................................................................................16

    C.  Plaintiffs' First Claim For Relief For Retaliation Against Protected First
        Amendment Expression States A Claim Upon Which Relief Can Be
        Granted. .....................................................................................21

        1.  The Claim Of Retaliation Based Upon The Photographing Of The
            Defendant Officers Is Well-Pled And Should Not Be Dismissed.22

        2.  Plaintiffs Should Be Allowed To Amend The Complaint To
            Correct A Minor Error As To The First Claim For Relief. ........... 27

    D.  Plaintiffs' Ninth Claim For Relief For Malicious Prosecution Is Not
        Subject To Dismissal. .................................................................... 29

        1.  Reyes-Speer Is Not Entitled To Prosecutorial Immunity Because
            She Stepped Out Of Her Prosecutorial Role And Became The
            Complaining Witness. ................................................................. 29

i

2.    Walter, Worley, Cawthorn, And The Other Defendants Named In Plaintiffs' Ninth Claim For Relief Have No Immunity Based On The Filing Of The Criminal Complaint Because Reyes-Speer Was A Merely A Witness And Not A Prosecutor When She Filed It... 32

3.    Walter, Worley, Cawthorn, And The Other Defendants Named In Plaintiffs' Ninth Claim For Relief Have No Immunity Based On The Filing Of The Complaint Based On The Standards Set Forth in Beck v. City Of Upland. ........................................... 34

    a.    The Correct Legal Standards In First And Fourth Amendment Malicious Prosecution Cases. ...................... 34

    b.    The Argument That The Defendant Officers Have Immunity Based On The Filing Of The Criminal Complaints Is Premature And Inappropriate At The Motion To Dismiss Stage Before Discovery. ................................... 37

    c.    Reyes-Speer's Filing Of The Criminal Complaints Does Nothing To Break The Chain Of Causation Between The Unconstitutional Actions Of The Defendant Officers And The Harm Suffered By Plaintiffs As To Their First Amendment Malicious Prosecution Claims. .................... 39

    d.    Reyes-Speer's Filing Of The Criminal Complaints Does Nothing To Break The Chain Of Causation Between The Unconstitutional Actions Of The Defendant Officers And The Harm Suffered By Plaintiffs As To Their Fourth Amendment Malicious Prosecution Claims. .....................41

    e.    Defendants Fail To Address Plaintiffs' Fifth / Fourteenth Amendment Malicious Prosecution Claim, And It Is Not Subject To Dismissal. ......................................................... 44

E.    Plaintiffs' Tenth Claim For Relief For Violation Of Civil Rights Under § 1983 States A Claim Against The Defendants. ....................................... 45

1.    Plaintiffs' Claims For Municipal Liability Against The City Of Henderson And The City Of North Las Vegas Are Sufficiently Pled And Not Subject To Dismissal. ...................................................... 45

2.    Plaintiffs Have Asserted Viable Claims Of Deprivation Of Their First, Third, Fourth, Fifth, And Fourteenth Amendment Rights, And Dismissal Of These Claims Would Be Wholly Premature Without Plaintiffs Having An Opportunity For Discovery. ......... 53

ii

a.  Plaintiffs State Viable Claims Based On Violation Of The Third Amendment For Which The City Of Henderson And The City Of North Las Vegas Are Liable. .......................... 55

b.  Plaintiffs State Viable Claims Based On Violation Of The Fourteenth Amendment For Which The City Of Henderson And The City Of North Las Vegas Are Liable, And The Related And / Or Underlying Claims for Violation Of The First, Third, Fourth, And Fifth Amendments Are Not Subject To Dismissal. .......................................................... 58

i.  The Defendants' Arguments Concerning Inadequate Training Are Meritless And Premature. .................. 62

ii.  Linda Has Asserted Viable Fourteenth Amendment Claims, As Well As Viable Claims Under The First, Third And Fourth Amendments. ............................ 64

iii.  Michael Has Asserted Viable Fourteenth Amendment Claims, As Well As Viable Claims Under The First, Third, Fourth And Fifth Amendments. ..70

iv.  Anthony Has Asserted Viable Fourteenth Amendment Claims, As Well As Viable Claims Under The First, Fourth And Fifth Amendments. ............. 78

v.  Plaintiffs Have Alleged Viable Fourth Amendment Claims. .................................................................... 89

F.  Plaintiffs' Eleventh Claim For Relief States A Viable Claim For Conspiracy To Violate Rights Under 42 U.S.C. § 1985(3). ................... 89

G.  Plaintiffs' Twelfth Claim For Relief States A Viable Claim For Neglect To Prevent A Conspiracy To Violate Civil Rights Under 42 U.S.C. § 1986. ...................................................................... 94

H.  Plaintiffs' State Law Claims Are Not Barred By Any Alleged Failure To Present A Claim Under NRS 41.036(2). ................................................. 94

1.  The NLVPD And The HPD Are Not Political Subdivisions And Plaintiffs Were Therefore Not Required To Comply With NRS 41.036(2) In Relation To Them. ................................................... 94

2.  Even If NRS 41.036(2) Did Apply To This Case, Plaintiffs Have Substantially Complied With It. ................................................... 96

I.  The Untimely Service Of Defendants Chambers And Walls Is Excused Based On Diligence And Good Cause Shown. ......................................... 98

iii

J.  Plaintiffs Have Sufficiently Alleged Defendant Chambers' Involvement To Make Her Liable As A Supervisor And Policy-Maker....................103

K.  The Defendants Are Not Entitled To Qualified Immunity In Their Individual Capacities. ...................................................................106

  1.  Legal Standards Governing Qualified Immunity. .....................107

  2.  The First Amended Complaint Sets Forth Violations Of Clearly Established Law, Stripping Defendants Of Qualified Immunity. ...........................................................................................109

    a.  The Defendants Violated Clearly Established Law Concerning Search And Seizure.......................................109

    b.  The Defendants Violated Clearly Established Law Concerning Excessive Force..............................................112

    c.  The Defendants Violated Clearly Established Law Concerning Punishment Of Pretrial Detainees And Deliberate Indifference To Their Serious Medical Needs.115

    d.  The Defendants Violated Clearly Established Law Concerning Retaliation For First Amendment Expression. ...........................................................................................116

    e.  The Defendants Violated Clearly Established Law Concerning The Third Amendment.................................117

    f.  The Defendants Violated Clearly Established Law Based On Their Malicious Prosecution Of Anthony And Michael. ..117

  3.  The Defendants' Assertions That They Had No Actionable Interactions With Plaintiffs Are False.......................................117

  4.  The Defendants' Suggestion That They Are Entitled To Qualified Immunity Because They Were In The Neighborhood Responding To A Domestic Violence Call Is Literally Unbelievable. .............118

L.  The Court Has Supplemental Jurisdiction Over Plaintiffs' State Law Claims. ...................................................................................119

M.  The Defendants Are Not Entitled To State Discretionary Immunity For Plaintiffs' State Law Claims. ................................................120

N.  Plaintiffs' Seventeenth Claim For Relief For Negligent Infliction Of Emotional Distress Is Not Subject To Dismissal. ................................123

O.  Plaintiffs' Nineteenth Claim For Abuse Of Process Is Not Subject To Dismissal. .............................................................................125

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P.    Plaintiffs' Twenty-First Claim For Relief For Respondeat Superior Liability Is Not Subject To Dismissal. ....................................................127

Q.    Plaintiffs Are Entitled To Punitive Damages. ......................................127

V.    CONCLUSION ................................................................................. 130

1

2

**TABLE OF AUTHORITIES**

## United States Constitution

U.S. Const. amend. I ...............................................................................passim
U.S. Const. amend. III .............................................................................passim
U.S. Const. amend. IV .............................................................................passim
U.S. Const. amend. V ..............................................................................passim
U.S. Const. amend. XIV ...........................................................................passim

## Federal Cases

Aguilar v. City of S. Gate, 2013 U.S. Dist. LEXIS 10611 (C.D. Cal. Jan. 25, 2013) ..... 51
Aguilar v. Kuloloia, 2007 U.S. Dist. LEXIS 73332 (D. Nev. Sept. 28, 2007).......... 128
Alexander v. City & County of Honolulu, 545 F. Supp. 2d 1122 (D. Haw. 2008)...... 52
Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341
    (1st Cir. 1995) ......................................................................................... 92
Amos v. City of Page, 257 F.3d 1086 (9th Cir. 2001)................................... 46
Anderson v. Creighton, 483 U.S. 635 (1987) ............................................107
Argabright v. United States, 35 F.3d 472 (9th Cir. 1994)......................... 5, 41
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................ 6, 7, 8
Askins v. United States Dep't of Homeland Sec., 2013 U.S. Dist. LEXIS 141725
    (September 30, 2013) ............................................................................... 25
Askins v. United States Dep't of Homeland Sec., 2013 U.S. Dist. LEXIS 53208
    (S.D. Cal. Apr. 12, 2013).................................................................... 24, 25
Awabdy v. City of Adelanto, 368 F.3d 1062 (9th Cir. 2004) ...................... 37, 43, 117
Bacon v. City of Los Angeles, 843 F.2d 372 (9th Cir. 1988).........................15
Bailey v. Newland, 263 F.3d 1022 (9th Cir. 2001)....................................110
Baker v. McCollan, 443 U.S. 137 (1979) .................................................. 76
Banks v. Clark County, 2010 U.S. Dist. LEXIS 32671 (D. Nev. Apr. 2, 2010) .......... 46
Barber v. Williams, 2013 U.S. Dist. LEXIS 111912 (D. Nev. July 8, 2013)................. 53
Barlow v. Ground, 943 F.2d 1132 (9th Cir. 1991)..................................... 37
Bd. of Regents of State Colleges v. Roth, 408 U.S. 564 (1972)................................. 60
Beauregard v. Wingard, 230 F. Supp. 167 (S.D. Cal. 1964)........................................61
Beck v. City of Upland, 527 F.3d 853 (9th Cir. Cal. 2008)..................................passim
Beck v. Ohio, 379 U.S. 89 (1964)........................................................ 65, 109
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ........................... 6, 7, 8
Bell v. Clackamas County, 341 F.3d 858 (9th Cir. 2003) .........................................129
Bell v. Wolfish, 441 U.S. 520 (1979) ..........................................................61
Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) ............. 18, 19
Block v. Hirsh, 256 U.S. 135 (1921) .....................................................56, 57
Blueford v. Prunty, 108 F.3d 251 (9th Cir. 1997)....................................... 108

i

Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997) ...... 106
Bogan v. Keene Corp., 852 F.2d 1238 (9th Cir. 1988) .............................................. 4, 17
Borunda v. Richmond, 885 F.2d 1384 (9th Cir. 1988) ................................................. 37
Brass v. Cnty. of Los Angeles, 328 F.3d 1192 (9th Cir. 2003) .................................. 4, 18
Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993) .............................. 90
Bretz v. Kelman, 773 F.2d 1026 (9th Cir. 1985) ........................................................... 45
Brigham City, Utah v. Stuart, 547 U.S. 398 (2006) .................................................... 110
Broam v. Bogan, 320 F.3d 1023 (9th Cir. 2003) .................................................... 30, 107
Bryan v. Las Vegas Metro. Police Dep't, 349 F.App'x 132 (9th Cir. 2009) ....... 128, 129
Bryan v. MacPherson, 608 F.3d 614 (9th Cir. 2010) ................................................. 112
Buckley v. Fitzsimmons, 509 U.S. 259 (1993) .............................................................. 30
Burns v. Reed, 500 U.S. 478 (1991) .............................................................................. 30
Cannon v. Macon County, 1 F.3d 1558 (11th Cir. 1993) .............................................. 76
Carey v. Piphus, 435 U.S. 247 (1978) ................................................................... 60, 128
Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635 (2009) ...................................... 119
Carnell v. Grimm, 74 F.3d 977 (9th Cir. 1996) ............................................................ 61
Chase v. Atlas Copco Craelius AB, 2012 U.S. Dist. LEXIS 43334
    (D. Nev. Mar. 28, 2012) ............................................................................................ 19
Chavez v. Martinez, 538 U.S. 760 (2003) ..................................................................... 60
Chew v. Gates, 27 F.3d 1432 (9th Cir. 1994) ............................................................. 112
City of Oklahoma v. Tuttle, 471 U.S. 808 (1985) ......................................................... 46
City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983) ......................................... 115
Clemens v. Daimler Chrysler Corp., 534 F.3d 1017 (9th Cir. 2008) ............................ 6
Clements v. Airport Authority of Washoe County, 69 F.3d 321 (9th Cir. 1995) ...... 128
Cline v. Brusett, 661 F.2d 108 (9th Cir. 1981) ............................................................. 45
Colburn v. Upper Darby Township, 838 F.2d 663 (3rd Cir. 1988) ............................. 47
Colton v. Hall, 386 F. App'x 606 (9th Cir. 2010) .................................................... 11, 16
County of Sacramento v. Lewis, 523 U.S. 833 (1998) ................................................. 67
Cousins v. Lockyer, 568 F.3d 1063 (9th Cir. 2009) ................................................... 106
Davis v. City of Ellensburg, 869 F.2d 1230 (9th Cir. 1989) .................................. 46, 63
Davis v. City of Las Vegas, 478 F.3d 1048 (9th Cir. 2007) ............................... 121, 122
Davis v. Mason County, 927 F.2d 1473 (9th Cir. 1991) .............................................129
DCD Programs, LTD. v. Leighton, 833 F.2d 183 (9th Cir. 1987) ................................ 9
Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001) ...................................112, 113, 114
Donovan v. Reinbold, 433 F.2d 738 (9th Cir. Cal. 1970) ......................................... 128
Dougherty v. City of Covina, 654 F.3d 892 (9th Cir. 2011) .................................. 47, 51
Dubner v. City of San Francisco, 266 F.3d 959 (9th Cir. 2001) ................................. 59
Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) ......................................7
Duran Duran v. Douglas, 904 F.2d 1372 (9th Cir. Ariz. 1990) ............................40, 84
Durning v. First Boston Corp., 815 F.2d 1265 (9th Cir. 1987) ...............................5, 41
Efaw v. Williams, 473 F.3d 1038 (9th Cir. 2003) ........................................................ 98

ii

Ellis v. City of San Diego, 176 F.3d 1183 (9th Cir. Cal. 1999) ....................................15

Engblom v. Carey, 677 F.2d 957 (2nd Cir. 1982) ...........................................56, 57, 65

Erickson v. Pardus, 551 U.S. 89 (2007) .......................................................................7

Estate of Bennett v. Wainwright, No. 06-28-P-S, 2007 WL 1576744
    (D. Me. May 30, 2007)............................................................................................57

Fifty Assocs. v. Prudential Ins., Co., 446 F.2d 1187 (9th Cir. 1970)..........................17

Fisher v. City of San Jose, 558 F.3d 1069 (9th Cir. 2009) ......................................110

Florida v. Royer, 460 U.S. 491 (1983)........................................................................67

Foman v. Davis, 371 U.S. 178 (1962) ...........................................................................9

Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir 1995)............................................... 22

Forrester v. White, 484 U.S. 219 (1988) ..................................................................... 30

Freeman v. City Of Santa Ana, 68 F.3d 1180 (9th Cir. Cal. 1995)............................. 45

Garcia v. Cnty. of Merced, 639 F.3d 1206 (9th Cir. 2011) ....................................... 109

Garcia v. Elko County Jail, 2012 U.S. Dist. LEXIS 178710 (D. Nev. Dec. 17, 2012) .. 96

Gibson v. County of Washoe, Nev., 290 F.3d 1175 (9th Cir. 2002) ......................46, 61

Gilker v. Baker, 576 F.3d 245 (9th Cir. 2001)............................................................ 58

Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980)........................................... 4, 17, 18

Gilligan v. Jamco Dev. Corp., 108 F.3d 246 (9th Cir. 1997)........................................ 6

Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) ............................................................ 22

Graham v. Connor, 490 U.S. 386 (1989) ..................................................... 59, 61, 112

Graziose v. Am. Home Prods. Corp., 202 F.R.D. 638 (D.Nev.2001) ......................4, 18

Griffin v. Breckenridge, 403 U.S. 88 (1971)............................................................... 90

Griggs v. Pace Am. Group, Inc., 170 F.3d 877 (9th Cir. 1999) .................................... 9

Grinage v. Leyba, 2007 U.S. Dist. LEXIS 99600 (D. Nev. Dec. 12, 2007) ................61

Griswold v. Connecticut, 381 U.S. 479 (1965) ......................................................56, 57

Hall v. City of Santa Barbara, 833 F.2d 1270 (9th Cir. 1986) ..................................... 6

Hamilton v. Kentucky Distilleries Co., 251 U.S. 146 (1919) ...................................... 56

Hansen v. Black, 885 F.2d 642 (9th Cir. 1989) ....................................................... 113

Hansen v. Nieves, 2010 U.S. Dist. LEXIS 80063, (D. Nev. Aug. 6, 2010) ................ 52

Hardin v. Straub, 490 U.S. 536 (1989) ......................................................................14

Harris v. Roderick, 126 F.3d 1189 (9th Cir. 1997) .................................................. 117

Hartman v. Moore, 547 U.S. 250 (2006)...............................................................passim

Haywood v. Younger, 769 F.2d 1350 (9th Cir. 1985) ................................................. 59

Henderson v. United States, 517 U.S. 654 (1996)...................................................... 98

Hensley v. Bank of N.Y. Mellon, 2013 U.S. Dist. LEXIS 29309
    (D. Ariz. Mar. 4, 2013)....................................................................................... 120

Herrera v. Las Vegas Metro. Police Dep't, 298 F. Supp. 2d 1043
    (D. Nev. 2004).......................................................................................63, 64, 119

Holland v. Harrington, 268 F.3d 1179 (10th Cir. Colo. 2001).................................. 114

Imbler v. Pachtman, 424 U.S. 409 (1976) .................................................................. 29

In re Sheehan, 253 F.3d 507 (9th Cir. 2001) .................................................... 99, 103

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jarvis v. City of Mesquite Police Dep't, 2012 U.S. Dist. LEXIS 22800 (D. Nev. Feb. 23, 2012)................................................................................................................. 121

Johnson v. Henderson, 314 F.3d 409 (9th Cir. 2002) .............................................15

Johnson v. State of Cal., 207 F.3d 650 (9th Cir. 2000)...........................................15

Kalina v. Fletcher, 522 U.S. 118 (1997) .................................................... 30, 31

Katz v. United States, 389 U.S. 347 (1967) ................................................. 56

Kent v. Dulles, 357 U.S. 116 (1958) ......................................................... 62

Kern v. Moulton, 2013 U.S. Dist. LEXIS 124648 (D. Nev. Aug. 30, 2013)..............126

Kolender v. Lawson, 461 U.S. 352 (1983) .................................................. 62

Kritenbrink v. Crawford, 457 F. Supp. 2d 1139 (D. Nev. 2006)................................ 52

Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. Ariz. 2012)................................ 119

Lambert v. Polk County, 723 F. Supp. 128 (S.D. Iowa 1989) ................................. 22

Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991) ................................. 104

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. Cal. 2001) ............................. 76

Lenz v. Winburn, 51 F.3d 1540 (11th Cir. Fla. 1995)...................................... 119

Levi v. Safeway, 1994 U.S. Dist. LEXIS 18087 (N.D. Cal. Dec. 12, 1994) ................ 92

Low v. Stanton, 2009 U.S. Dist. LEXIS 14840 (E.D. Cal. Feb. 25, 2009) .................61

LSO, Ltd. v. Stroh, 205 F.3d 1146 (9th Cir. 2000) ........................................ 5

Lucchesi v. Bar-O Boys Ranch, 353 F.3d 691 (9th Cir. 2003)...............................14

MacKinney v. Nielsen, 69 F.3d 1002 (9th Cir. 1995) ...................................... 40

Malley v. Briggs, 475 U.S. 335 (1986) ...................................................107

Mann v. American Airlines, 324 F.3d 1088 (9th Cir. 2003) ............................ 99, 103

Martell v. Trilogy Ltd., 872 F.2d 322 (9th Cir. 1989) ..................................... 11

Marvik v. Washoe County, 2012 U.S. Dist. LEXIS 95006 (D. Nev. Apr. 17, 2012) ... 96

Mayle v. Felix, 545 U.S. 644, 650 (2005) ..............................................11, 16

McRorie v. Shimoda, 795 F.2d 780 (9th Cir. 1986)........................................ 60

Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283 (9th Cir. 1999) ........ 22, 25

Merritt v County of Los Angeles, 875 F.2d 765 (9th Cir. 1989) ............................19

Meyer v. Nebraska, 262 U.S. 390 (1923) .................................................61

Mincey v. Arizona, 437 U.S. 385 (1978)..................................................110

Mitchell v. Harmony, 54 U.S. 115 (1851)................................................. 56

Mohamed v. Jeppesen Dataplan, Inc., 614 F.3d 1070 (9th Cir. Cal. 2010) ................ 8

Moore v. East Cleveland, 431 U.S. 494 (1977) ............................................ 60

Morgan v. Woessner, 997 F.2d 1244 (9th Cir.1993).......................................129

Morley v. Walker, 175 F.3d 756 (9th Cir. 1999) .......................................... 30

Morongo Band of Mission Indians v. Rose, 893 F.2d 1074 (9th Cir. 1990) ............... 9

Morrison v. Jones, 607 F.2d 1269 (9th Cir. 1979) ......................................... 6

National Abortion Fed'n v. Operation Rescue, 8 F.3d 680 (9th Cir. Cal. 1993)...91, 92

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001)........................................... 5

Nelson v. County of Sacramento, 926 F. Supp. 2d 1159 (E.D. Cal. 2013)...................51

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Newman v. Cnty. of Orange, 457 F.3d 991 (9th Cir. 2006)................................passim

Newport v. Fact Concerts, 453 U.S. 247 (1981) ....................................................... 128

Nunez v. City of San Diego, 114 F. 3d 935 (9th Cir. 1997)......................................... 62

Nurse v. United States, 226 F.3d 996 (9th Cir. 2000) .............................................. 121

Oklahoma City v. Tuttle, 471 U.S. 808 (1985) ............................................................ 46

Orth v. Balaam, 2011 U.S. Dist. LEXIS 44534 (D. Nev. Feb. 4, 2011) ...................... 96

Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470 (9th Cir. 1992)................. 46

Owen v. City of Independence, Mo., 445 U.S. 622 (1980) ........................................ 120

Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001) .................. 9

Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1 (1991) ................................................. 129

Palko v. Connecticut, 302 U.S. 319 (1937) ................................................................. 60

Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993) .................................................. 113

Papachristou v. City of Jacksonville, 405 U.S. 156 (1972)........................................ 62

Payton v. New York, 445 U.S. 573 (1980) ........................................................109, 110

Pearson v. Callahan, 555 U.S. 223 (2009) ............................................................... 108

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)................................................. 46

Percy v. S.F. Gen. Hosp., 841 F.2d 975 (9th Cir. 1988) .............................................. 11

Piacentini v. Levangie, 998 F. Supp. 86 (D. Mass. 1998).......................................... 92

Pierce v. Multnomah County, Or., 76 F.3d 1032 (9th Cir. 1996) ..............................61

Poe v. Ullman, 367 U.S. 497 (1961) ............................................................................ 56

Porter v. Osborn, 546 F.3d 1131 (9th Cir. 2008) ....................................................... 67

Portman v. County of Santa Clara, 995 F.2d 898 (9th Cir. 1992)............................ 60

Potts v. City of Seattle, 2009 U.S. Dist. LEXIS 75708 (W.D. Wash. Aug. 24, 2009) 52

Raysor v. Port Authority, 768 F.2d 34 (2d Cir. 1985)............................................... 52

Redmen v. County of San Diego, 942 F.2d 1435 (9th Cir. 1991) ......................... 47, 52

Richardson v. United States, 841 F.2d 993 (9th Cir. 1988) ......................................... 9

Robinson v. Fetterman, 378 F. Supp. 2d 534 (E.D. Pa. 2005)................................... 22

Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002) .................................... 113

Rochin v. California, 342 U.S. 165 (1952) .................................................................. 60

Santa Maria v. Pac. Bell, 202 F.3d 1170 (9th Cir. 2000)...........................................15

Saranno's Gasco, Inc. v. Morgan, 874 F.2d 1310 (9th Cir. 1989)............................ 116

Saucier v. Katz, 533 U.S. 194 (2001) ................................................................107, 108

Scheuer v. Rhodes, 416 U.S. 232 (1974)...................................................................... 8

Schneider v. Elko County Sheriff's Dep't, 17 F. Supp. 2d 1162 (D. Nev. 1998) .......... 95

Shafer v. City of Boulder, 896 F. Supp. 2d 915 (D. Nev. 2012) .......................... 96, 123

Shwarz v. United States, 234 F.3d 428 (9th Cir. 2000) .......................................5, 41

Sigurdson v. Del Guercio, 241 F.2d 480 (9th Cir. 1956) .....................................18, 19

Silva v. City & County of Honolulu, 2012 U.S. Dist. LEXIS 155311

    (D. Haw. Oct. 29, 2012) ......................................................................................51, 52

Sivard v. Pulaski County, 959 F.2d 662 (7th Cir. 1992) ........................................... 76

Sloman v. Tadlock, 21 F.3d 1462 (9th Cir. 1994)....................................................... 37

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Smiddy v. Varney, 665 F.2d 261(9th Cir. 1981) ...................................................passim

Smiddy v. Varney, 803 F.2d 1469 (9th Cir. 1986) ........................................................ 34

Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000) ....................................... 22

Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005)............................................... 112

Smith v. Wade, 461 U.S. 30 (1983) ..............................................................................129

Socop-Gonzalez v. I.N.S., 272 F.3d 1176 (9th Cir. 2001) (en banc) ...........................15

Somavia v. Las Vegas Metro. Police Dep't, 816 F. Supp. 638 (D. Nev. 1993)........... 119

Sorrels v. McKee, 290 F.3d 965 (9th Cir. 2002)...................................................107, 108

Spock v. United States, 464 F.Supp. 510 (S.D. N.Y. 1978) .........................................19

Starr v. Baca, 652 F.3d 1202 (9th Cir. Cal. 2011)................................................passim

Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002) ......................................................7

Taal v. Zwirner, 2004 DNH 54 (D.N.H. 2004)............................................................ 92

Tokuhama v. Honolulu, 751 F. Supp. 1385 (D. Haw. 1989) ...................................... 52

Trujillo v. Powell, 2011 U.S. Dist. LEXIS 85140 (D. Nev. Aug. 1, 2011)....................123

TwoRivers v. Lewis, 174 F.3d 987 (9th Cir. 1999) ......................................................19

Tyler v. Cisneros, 136 F.3d 603 (9th Cir. 1998) ........................................................... 5

U.S. Fid. & Guar. Co. v. United States, 837 F.2d 116 (3d Cir. 1988) ........................ 121

United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825 (1983) ........ 92, 93

United States v. Holzman, 871 F.2d 1496 (9th Cir. 1989)........................................... 67

United States v. Kerr, 817 F.2d 1384 (9th Cir. Cal. 1987) ....................................... 109

United States v. Ojeda, 276 F.3d 486 (9th Cir. 2002)...............................................110

United States v. Poocha, 259 F.3d 1077 (9th Cir. 2001)............................................116

United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003) ..................................... 32

United States v. Salerno, 481 U.S. 739 (1987) ......................................................59, 60

United States v. Sokolow, 490 U.S. 1 (1989)................................................................ 67

United States v. Struckman, 603 F.3d 731 (9th Cir. 2010) ......................................110

United States v. Wheeler, 254 U.S. 281, (1920).......................................................... 62

Vasquez v. Reno, 461 F. Supp. 1098 (D. Nev. 1978).................................................... 90

W. Shoshone Nat'l Council v. Molini, 951 F.2d 200 (9th Cir. 1991) ........................... 9

Walls v. Las Vegas Metro. Police Dep't, 2013 U.S. Dist. LEXIS 38662
   (D. Nev. Mar. 19, 2013)........................................................................................ 65

Wampler v. Carson City Sheriff, 2012 U.S. Dist. LEXIS 108810
   (D. Nev. Aug. 3, 2012)........................................................................................ 96

Ward v. Nevada, No. 3:09-CV-00007, 2010 U.S. Dist. LEXIS 44149
   (D. Nev. Feb. 26, 2010)........................................................................................ 96

Welsh v. Wisconsin, 466 U.S. 740 (1984) (citation omitted)................................... 109

Wilkins v. City of Oakland, 350 F.3d 949 (9th Cir. 2003) ....................................... 108

Williams v. Boeing Co., 517 F.3d 1120 (9th Cir. 2008)..........................................11, 16

Zaic v. Las Vegas Metro. Police Dep't, 2011 U.S. Dist. LEXIS 24956
   (D. Nev. Mar. 11, 2011)................................................................................... 97, 98

vi

## Federal Statutes

28 U.S.C. § 1367(c)(3) ................................................................ 119
42 U.S.C. § 1983 .................................................................... passim
42 U.S.C. § 1985 ........................................................................ 14
42 U.S.C. § 1985(3) ................................................................ passim
42 U.S.C. § 1986 ................................................................... 15, 94
42 U.S.C. § 2790 ................................................................... 94, 95

## Federal Court Rules

Fed. R. Civ. P. 4(m) ......................................................... 98, 99, 102
Fed. R. Civ. P. 4(m), Advisory Committee Notes, 1993 Amendments .............. 99, 103
Fed. R. Civ. P. 8 .................................................................... 6, 7
Fed. R. Civ. P. 12(b)(1) .................................................................. 8
Fed. R. Civ. P. 12(b)(5) .................................................................. 8
Fed. R. Civ. P. 12(b)(6) ............................................................... 5, 6
Fed. R. Civ. P. 15 .................................................................... 8, 11
Fed. R. Civ. P. 15(c)(1)(B) ........................................................... 11, 16
Fed. R. Evid. 201(b) ..................................................................... 32

## State Cases

Asap Storage, Inc. v. City of Sparks, 173 P.3d 734 (Nev. 2007) ................................ 52
Bird v. Saenz, 28 Cal. 4th 910 (2002) ...................................................... 124
Crippins v. Sav On Drug Stores, 961 P.2d 761 (Nev. 1998) ................................... 124
Falline v. GNLV Corp., 823 P.2d 888 (Nev. 1991) ........................................... 121
Harringan v. City of Reno, 475 P.2d 94 (Nev. 1970) ........................................ 121
Hughey v. Washoe County, 73 Nev. 22, 23, 306 P.2d 1115 (1957) ............................ 52
Krouse v. Graham, 19 Cal. 3d 59 (Cal. 1977) ............................................... 124
LaMantia v. Redisi, 38 P.3d 877 (Nev. 2002) ............................................... 125
Martinez v. Maruszczak, 168 P.3d 720 (Nev. 2007) ......................................... 121
National Convenience Stores, Inc. v. Fantauzzi, 584 P.2d 689 (Nev. 1978). ............ 53
Nurenberger Hercules-Werke GmbH v. Virostek, 107 Nev. 873,
    822 P.2d 1100 (1991) .................................................................. 19
Ra v. Superior Court, 154 Cal. App. 4th 142, 148 (Cal. App. 2d Dist. 2007) ............ 124
Seino v. Employers Ins. Co. of Nev., 111 P.3d 1107 (Nev. 2005) ............................ 15
State v. Lisenbee, 13 P.3d 947 (Nev. 2000) ................................................ 121
Washoe Inv., Inc. v. State, 532 P.2d 265, 266-67 (Nev. 1975) ............................... 98
Wayment v. Holmes, 912 P.2d 816 (Nev. 1996) .............................................. 96
Williams v. City of North Las Vegas, 541 P.2d 652 (Nev. 1975) ............................ 121
Yellow Cab of Reno v. Second Judicial Dist. Court of Nev.,

vii

262 P.3d 699 (Nev. 2011)........................................................................... 52

## Nevada Revised Statutes

NRS 41.0305 ................................................................................ 94, 95
NRS 41.032 ..................................................................................... 120
NRS 41.035 ......................................................................................127
NRS 41.036(2) ...............................................................................passim

## Nevada Court Rules

N.R.C.P. 10(a) .................................................................................19
Nevada Rules of Professional Conduct 3.7(a).............................................. 32

## Other Authorities

Dan. B. Dobbs, The Law of Torts (2000)....................................................126
Wright & A. Miller, Federal Practice & Procedure (1969)............................. 6
Wright & Miller, Federal Practice and Procedure: Civil 3d (2011) .................... 99, 102

viii

COME NOW, the Plaintiffs, ANTHONY MITCHELL ("Anthony"), LINDA MITCHELL ("Linda"), and MICHAEL MITCHELL ("Michael") (collectively, "Plaintiffs"), by and through their undersigned counsel of record, and hereby respectfully submit their combined Opposition to: (1) the motion to dismiss (Court Record ("CR") 17, filed November 12, 2013, "Motion") filed by Defendants City Of Henderson ("City of Henderson"), JUTTA CHAMBERS ("Chambers"), GARRETT POINER ("Poiner"), RONALD FEOLA ("Feola"), RAMONA WALLS ("Walls"), ANGELA WALTER ("Walter"), CHRISTOPHER R. WORLEY ("Worley"), and JANETTE R. REYES-SPEER ("Reyes-Speer"), (collectively referred to as the "Henderson Defendants"), and (2) the Joinder to the Motion filed by Defendants CITY OF NORTH LAS VEGAS ("North Las Vegas"), JOSEPH CHRONISTER ("Chronister"), MICHAEL WALLER ("Waller"), DREW ALBERS ("Albers"), DAVID CAWTHORN ("Cawthorn"), ERIC ROCKWELL ("Rockwell"), and TRAVIS SNYDER ("Snyder") (collectively referred to as the "North Las Vegas Defendants"), CR 23, filed December 12, 2013.

DATED:  January 29, 2014.          **COFER, GELLER & DURHAM, LLC**

*/s/ Frank H. Cofer*

_____

FRANK H. COFER, ESQ.
Nevada Bar No. 11362
601 South Tenth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiffs

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF THE ARGUMENT

This case arises out of the July 10, 2011 warrantless entry, search and occupation of the homes of Anthony, Michael and Linda, their unlawful arrest, and the savage shooting and battery of Anthony after an armed SWAT team broke down his front door and shot him several times with "pepperball" rounds as he lay defenseless on the floor of his own home.  The warrantless invasion of Anthony's home and his subsequent shooting and battery was carried out on the absurd pretext that the officers wanted to use it to gain a strategic advantage for activities going on down the street, after Anthony refused the Defendants' request that he leave his home and allow them to take it over.  A similar pretext was apparently used to unlawfully enter and search Michael and Linda's home and arrest her and forcibly remove her from it with absolutely no legal justification.  There was no probable cause or exigent circumstances for the warrantless searches, seizures, arrests and beating at issue, and to add insult to injury, the City of Henderson filed knowingly false criminal charges against Anthony and Michael for obstructing a police officer which were subsequently dismissed with prejudice. This heinous conduct was carried out in retaliation against the Plaintiffs based on their exercising various acts of expression protected under the First Amendment, including photographing police misconduct, expressing their legal rights to police officers, and expressing their dissatisfaction with the police's conduct.   Plaintiffs' first amended complaint contains both federal civil rights claims as well as state law claims.

The Henderson Defendants filed a 40-page motion to dismiss, which was joined by the North Las Vegas Defendants by way of a joinder that makes no specific or substantive additions to the Motion. The Defendants' Motion and Joinder are peppered with assertions of failure to allege sufficient facts to state a claim and assertions that Plaintiffs have failed to allege the presence of various officers.  These

2

arguments are completely meritless and are based on the Defendants' failure and refusal to take cognizance of Plaintiffs' well-pled and described Doe defendants and the well-established state and federal law that not only allows but requires such pleading when the identities of parties are not yet known.

The Defendants argue that they are entitled to prosecutorial immunity, qualified immunity, and state discretionary immunity for their unconstitutional conduct, but these arguments fail. Plaintiffs have set forth ample facts to support their federal and state claims for relief and for the municipal liability of the City of Henderson and The City of North Las Vegas based on their unconstitutional policies, customs and practices established, further, condoned and carried out by them and their departments, agents, and officers, including the Henderson Police Department ("HPD"), the North Las Vegas Police Department ("NLVPD") and their officers and employees. They argue that Plaintiffs' claims are barred by the statute of limitations, failure to comply with NRS 41.036(2), untimely service of Defendants Chambers and Walls, and failure to allege sufficient facts to make Chambers liable as a policy maker, and make various iterations of the argument that Plaintiffs have failed to state a claim for their federal and state law claims, but these arguments are meritless.

Defendants do not seek dismissal of Plaintiffs' Thirteenth, Fourteenth, Fifteenth, Sixteenth, Eighteenth, and Twentieth state law claims for assault, battery, false arrest and imprisonment, intentional infliction of emotional distress, civil conspiracy, and malicious prosecution for failure to state the elements of these claims..[1]

The Motion and Joinder should be denied in their entirety.

For the sake of simplicity, the Plaintiffs frame their arguments as often as

---

[1] Compare Motion at 35-40 with CR 3, ¶¶202-227, 232-38, 248-56.

possible as being to the Defendants, including the Henderson and North Las Vegas Defendants, collectively, to avoid unnecessary repetition of facts and argument.  The fact that the North Las Vegas Defendants have provided no additional legal or factual support for their joinder makes this both efficient and logical.

The Plaintiffs also note a small correction in Sections IV(C) infra, that needs to be made to the first amended complaint, and also suggest a possible amendment in Section IV(J), infra, and request leave to amend accordingly to the degree the Court deems them appropriate and necessary.

## II.    LEGAL STANDARDS

### A.    Pleading DOE Defendants In Federal Court.

It is true that as a general rule, the use of fictitious Doe defendants is not favored in federal court.[2]  However, the accepted practice is that courts permit a party to amend the complaint upon learning of the identity of the Doe defendant and have the amendment relate back in time to the original filing if circumstances are justified.[3]  More important, the Ninth Circuit has explicitly stated that—in a situation such as the one here—where the identity of the alleged defendants will not be known prior to the filing of the complaint, dismissal based on failure to specifically name defendants is improper and that the plaintiff should be given an opportunity through discovery to identify the unknown defendants unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds.[4]  In the instant case, the Plaintiffs have gone to great pains to describe the conduct complained of in as much detail as possible, and

---

[2] Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Bogan v. Keene Corp., 852 F.2d 1238, 1239 (9th Cir. 1988).

[3] Graziose v. Am. Home Prods. Corp., 202 F.R.D. 638, 643 (D.Nev.2001); see also Brass v. Cnty. of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003).

[4] Gillespie, 629 F.2d at 642.

4

discovery will certainly reveal the names to attach to the various "Defendant DOE police officers" and other DOE defendants named in the complaint, who could be either HPD or NLVPD officers or employees.  The Plaintiffs cannot be faulted at this early stage for having been unable to obtain the names of all perpetrators whose identities were concealed during the highly traumatic acts alleged, and whose identities are protected by various laws.  The Defendants' attempts to dismiss Plaintiffs' claims by way of motion to dismiss are premature and improper for this reason alone.

### B. Motion To Dismiss Under Rule 12(b)(6) For Failure To State A Claim.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations.[5]  Such allegations must be construed in the light most favorable to the nonmoving party.[6]  In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions.[7]

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint.[8]  The issue is not whether

---

[5] LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Tyler v. Cisneros, 136 F.3d 603, 607 (9th Cir. 1998).

[6] Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000); Argabright v. United States, 35 F.3d 472,474 (9th Cir. 1994).

[7] Id.; see also Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

[8] Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.[9]  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."[10]

Complaints under the Civil Rights Act are to be construed liberally.[11]  Rule 8 requires a "short and plain statement" of the claim that is sufficient to demonstrate that the pleader is entitled to relief and to give the defendant notice of the claim against him.  "It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'"[12]

The Henderson Defendants discuss the standards for motions to dismiss at length, relying heavily on Twombly and Iqbal.[13]  However, their discussion ignores and distorts the Ninth Circuit's controlling interpretation of these cases and the proper standard to be applied.  In Starr v. Baca, the Ninth Circuit analyzed not only the Supreme Court's holdings in Twombly and Iqbal, but also the Supreme Court's related rulings in Dura, Erickson, and Swierkiewicz.[14]  The Ninth Circuit noted the

---

[9] Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted).

[10] Clemens v. Daimler Chrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

[11] Morrison v. Jones, 607 F.2d 1269, 1275 (9th Cir. 1979).

[12] Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986) (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1357, at 598 (1969)).

[13] See Motion at 8-10 (citing Twombly and Iqbal).

[14] See Starr v. Baca, 652 F.3d 1202, 1212-16 (9th Cir. Cal. 2011) (citing and discussing Twombly (noting that the Supreme Court here required not just notice of the claim, but that that the claim be plausible); Iqbal (noting that the Supreme Court

6

contradictory nature of these holdings:

> The juxtaposition of <u>Swierkiewicz</u> and <u>Erickson</u>, on the one hand, and <u>Dura</u>, <u>Twombly</u>, and <u>Iqbal</u>, on the other, is perplexing. Even though the Court stated in all five cases that it was applying Rule 8(a), it is hard to avoid the conclusion that, in fact, the Court applied a higher pleading standard in <u>Dura</u>, <u>Twombly</u> and <u>Iqbal</u>. . . . . **To the extent that we perceive a difference in the application of Rule 8(a) in the two groups of cases, it is difficult to know in cases that come before us whether we should apply the more lenient or the more demanding standard**.[15]

In <u>Starr</u>, the Ninth Circuit resolved and harmonized these conflicting positions into two very simple and straightforward standards to be applied in evaluating motions to dismiss. First, "to be entitled to the presumption of truth, allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to

---

found that "bare assertions" "amount[ed] to nothing more than a 'formulaic recitation of the elements'"); <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 514-15 (2002) (noting that the Supreme Court rejected the respondents argument that complaints based on conclusory allegations could not proceed and rejected the notion of a heightened pleading standard under Fed. R. Civ. P. 8); <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005) (noting that the Supreme Court "conceded that ordinary pleading rules are not meant to impose a great burden upon a plaintiff," but analyzed the claim in the context of inapplicable heightened pleading standards under the Private Securities Litigation Reform Act of 1995 which are inapposite to the instant case, and that the Supreme Court stated that "allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause that the plaintiff has in mind would bring about harm of the very sort the statutes seek to avoid"); and <u>Erickson v. Pardus</u>, 551 U.S. 89, 90 (2007) (per curiam) (rejecting the Tenth Circuits determination that the plaintiffs' allegation "that a liver condition resulting from hepatitis C required a treatment program that officials had commenced but then wrongfully terminated, with life-threatening consequences" was conclusory, and ruling that "[t]he holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review.").

[15] <u>Starr</u>, 652 F.3d 1202, 1215-1216 (9th Cir. Cal. 2011) (emphasis added).

7

1   enable the opposing party to defend itself effectively."[16]   Second, "the factual

2   allegations that are taken as true must plausibly suggest an entitlement to relief."[17]

3   The Plaintiffs have certainly fulfilled these requirements.

4   Moreover, as the Ninth Circuit recently noted post-Iqbal, "a district court acts

5   'prematurely' and 'erroneously' when it dismisses a well-pleaded complaint, thereby

6   'preclud[ing] any opportunity for the plaintiffs' to establish their case 'by subsequent

7   proof.'"[18]

8   ### C.   Motions To Dismiss Under Rule 12(b)(1) For Lack Of Subject
9       Matter Jurisdiction.

10   The only reference made to dismissal pursuant to Rule 12(b)(1) of the Federal

11   Rules of Civil Procedure is in relation to Plaintiffs' Eleventh Claim for Relief based

12   on conspiracy to violate rights under 42 U.S.C. § 1985(3).[19]   The legal standards

13   relating to this claim are discussed in Section IV(F), infra.

14   ### D.   Motions To Dismiss Under Rule 12(b)(5) For Insufficient
       Service Of Process

15   The legal standards concerning insufficient process are discussed in Section

16   IV(I), infra.

17   ### E.   Amending The Complaint

18   Rule 15 of the Federal Rules of Civil Procedure governs amended and

19   supplemental pleadings; and pursuant to this rule a court should "freely" give leave

20   to amend "when justice so requires" and in the absence of a reason such as "undue

21   _____

22   [16] Id. at 1216.

23   [17] Id.

24   [18] Mohamed v. Jeppesen Dataplan, Inc., 614 F.3d 1070, 1100 (9th Cir. Cal.
25   2010) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Twombly
26   (quoting Scheuer, 416 U.S. at 236), 550 U.S. at 556 ("[A] wellpleaded complaint may
     proceed even if it appears 'that a recovery is very remote and unlikely.'")

27   [19] See Motion at 28-29.

28

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." [20] Generally, amendment should be allowed with "extreme liberality."[21] The determination of whether to grant leave to amend "should be performed with all inferences in favor of granting the motion." [22] Significantly, "[t]he party opposing amendment bears the burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend.[23]

### III.   FACTS WHICH MUST BE TAKEN AS TRUE AND CONSTRUED IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFFS.

The Henderson Defendants make repeated assertions in their statement of facts about a paucity of allegations against them and the alleged absence of HPD officers on various occasions, which are by extension incorporated by the vague joinder by the North Las Vegas Defendants.[24] This position is misguided. As discussed in more detail in Section IV(B), _infra_, the Defendants make the mistake of assuming that individuals identified as "Defendant DOE police officers" or

---

[20] Foman v. Davis, 371 U.S. 178, 182 (1962); see also W. Shoshone Nat'l Council v. Molini, 951 F.2d 200, 204 (9th Cir. 1991).

[21] Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)).

[22] Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999) (citing DCD Programs, LTD. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987)).

[23] DCD Programs, 833 F.2d at 187; see also Richardson v. United States, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes "an affirmative showing of either prejudice or bad faith")

[24] See Motion at 2:15-25; 4:17-20, 24-27; 5:4-8, 16-19; 6:15-17; 7:3-14; see also CR 23.

9

"Defendant police officers" or "Defendants" are not any of the current Defendants, and erroneously argue that the Doe defendants are not properly pled. While the Defendants would certainly find it convenient to dismiss the claims against them based on the fact that their identities are not yet known, such is not the law. The Plaintiffs have gone into as much detail as possible in describing the disturbing events of July 10, 2011 and the actions of all the perpetrators involved. Discovery will reveal their identities, and the complaint alleges more than sufficient facts to put names to the individuals who carried out each of the acts alleged.

The facts alleged in the first amended complaint must be taken as true and construed in the light most favorable to Plaintiffs, along with all reasonable inferences that may be drawn from them. These facts are found in paragraphs 20-104 of the first amended complaint, as well as in the claims for relief. Rather than reproduce those paragraphs here verbatim and out of context, the relevant facts are set forth throughout this opposition relative to the arguments to which they relate, particularly in Sections IV(E)(2)(b)(ii, iii, iv), <u>infra</u>.

## IV. THE ARGUMENT IN OPPOSITION

### A. Plaintiffs' First Through Ninth Causes Of Action Are Not Barred By Any Statute Of Limitations Based On The Relation-Back Doctrine And Equitable Tolling.

The Defendants argue that Plaintiffs' First through Ninth Claims for Relief are barred by the applicable two-year statute of limitations.[25] The Defendants are incorrect, because not only are many of the claims simply an elaboration or expansion of the same claims set forth in the Plaintiffs' original complaint, but more importantly, all of these claims for relief relate back to the original complaint because they arose out of the same conduct, transaction, or occurrence set forth in the original complaint, thus precluding any application of the statute of limitations.

---

[25] <u>See</u> Motion at 10-11.

In addition, the claims are also timely based on equitable tolling.

### 1.   The Instant Claims Relate Back To The Original Complaint.

Rule 15 of the Federal Rules of Civil Procedure provides for the "relation back" of amendments. Specifically, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[26] "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts,' such that the plaintiff will rely on the same evidence to prove each claim."[27] Thus, under this "relation back" provision of Rule 15, if an amendment refers to the same set of facts as the original complaint then the case should not be time-barred because the defendant has been on notice of the facts giving rise to the injury complained of.[28] In other words, "relation back applies to claims 'tied to a common core of operative facts,' but not to claims 'assert[ing] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'"[29] The facts presented in the first amended complaint are not only tied to the common core of operative facts at issue in the original complaint, but the facts are of the same time and type.

The acts of police misconduct and other constitutional violations complained

_____

[26] See Fed. R. Civ. P. 15(c)(1)(B).

[27] Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008) (citing Martell v. Trilogy Ltd., 872 F.2d 322, 325-26 (9th Cir. 1989); Percy v. S.F. Gen. Hosp., 841 F.2d 975, 978 (9th Cir. 1988)).

[28] See Percy, 841 F.2d 975, 979-80.

[29] See Colton v. Hall, 386 F. App'x 606, 607 (9th Cir. 2010) ((citing Mayle v. Felix, 545 U.S. 644, 650, 664 (2005)).

of took place on July 10th, 2011, and the facts relating thereto are set forth in detail in the original complaint.[30]  The original complaint also contained state-law claims for assault, battery, false arrest and imprisonment, abuse of process, civil conspiracy, and malicious prosecution based on the same facts that put the Defendants on notice of these types of claims relating to these facts as well.[31]

Plaintiffs' original complaint was filed on July 1, 2013, well within the two-year statute of limitations noted by the Defendants.  Plaintiffs' original complaint contained an omnibus First Claim for Relief alleging violations of their federal constitutional rights under 42 U.S.C. § 1983.[32]  Notably, the facts of the original complaint are substantively similar or identical to the relevant fact set forth in the first amended complaint, giving notice to the Defendants of the possible claims that could arise.[33]  The original and first amended complaints arose out of the same conduct, transaction, or occurrence and allege facts of the same time and type, i.e., the events of July 10, 2011 that resulted in the unlawful arrest, incarceration, and malicious prosecution of Michael and Anthony, the unlawful arrest of Linda, the unlawful search of their homes, and the other violations of Plaintiffs' constitutional rights set forth in the first amended complaint.[34]

Plaintiffs First Amended Complaint was filed on October 14, 2013.  Its First through Ninth Claims for Relief set forth claims for violation of civil rights under 42 U.S.C. § 1983 summarized below:

First Claim for Relief        Violation of Plaintiffs' First Amendment rights based

---

[30] See CR 1, ¶¶17-50.

[31] See id. at 11-12, 13, 14-16.

[32] See id., ¶¶51-57.

[33] Compare CR 1, ¶¶17-50 with CR 3, ¶¶20-104.

[34] Id.

12

on them being retaliated against for various acts of protected expression stemming from the unconstitutional police misconduct that took place on July 10, 2011;

Second Claim for Relief   Violations of Anthony's Fourth and Fourteenth Amendment rights based on the unlawful entry into and search of his home and vehicle and his unlawful arrest during the unconstitutional police misconduct that took place on July 10, 2011;

Third Claim for Relief   Violation of Anthony's Fourth and Fourteenth Amendment rights based on the excessive force used against him during the unconstitutional police misconduct that took place on July 10, 2011;

Fourth Claim for Relief   Violation of Michael's Fourth and Fourteenth Amendment rights based on his unlawful seizure and arrest during the unconstitutional police misconduct that took place on July 10, 2011;

Fifth Claim for Relief   Violation of Linda's Fourth and Fourteenth Amendment rights based on her unlawful seizure and arrest during the unconstitutional police misconduct that took place on July 10, 2011;

Sixth Claim for Relief   Violation of Michael's and Linda's Fourth and Fourteenth Amendment rights based the unlawful entry into and search of their home and vehicle during the unconstitutional police misconduct that took place on July 10, 2011;

Seventh Claim for Relief Violation of Michael's and Linda's Third and

13

|   |   |   |
|---|---|---|
| 1 |  | Fourteenth Amendment right to be free from having |
| 2 |  | the Defendants quartered in their house without |
| 3 |  | their consent in a time of peace during the |
| 4 |  | unconstitutional police misconduct that took place |
| 5 |  | on July 10, 2011; |
| 6 | Eight Claim for Relief | Violation of Anthony's  and Michael's Fourth, Fifth |
| 7 |  | and Fourteenth Amendment rights based on their |
| 8 |  | unlawful punishment and deliberate indifference to |
| 9 |  | their serious medical needs as a result of their arrest |
| 10 |  | stemming from the unconstitutional police |
| 11 |  | misconduct that took place on July 10, 2011; |
| 12 | Ninth Claim for Relief | Violation of Anthony's and Michael's First, Fourth, |
| 13 |  | Fifth, and Fourteenth Amendment rights based on |
| 14 |  | their malicious prosecution as a result of their arrest |
| 15 |  | stemming from the unconstitutional police |
| 16 |  | misconduct that took place on July 10, 2011. |

Thus, the First through Ninth Claims for relief in the first amended complaint are simply an expansion of the 42 U.S.C. § 1983 claim set forth in the First Claim for Relief of the original complaint, concern the same conduct, transaction, or occurrence, and are based on the same  operative facts of identical time and type.

### 2. Any Statute Of Limitations Are Subject To Equitable Tolling.

Plaintiffs are entitled to equitable tolling of any statute of limitations.  For § 1983 and § 1985 cases, federal courts apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law.[35]  Nevada

---

[35] See Hardin v. Straub, 490 U.S. 536, 537-39, 543 (1989); Lucchesi v. Bar-O Boys Ranch, 353 F.3d 691, 694 (9th Cir. 2003) ("State law governs the statutes of

1    considers the following factors to determine whether equitable tolling is

2    appropriate: the plaintiff's diligence; the plaintiff's knowledge of the relevant facts;

3    the plaintiff's reliance on authoritative statements that misled the plaintiff about the

4    nature of his rights; any deception or false assurances by the defendant; the

5    prejudice to the defendant that actually would result; and "any other equitable

6    considerations appropriate in the particular case."[36]   Actions under § 1986 are

7    subject to federal equitable tolling principles.[37]   The inquiry as to federal equitable

8    tolling is whether "despite all due diligence, a plaintiff is unable to obtain vital

9    information bearing on the existence of his claim."[38]   In other words, the inquiry is

10   "whether there was excusable delay by the plaintiff: If a reasonable plaintiff would

11   not have known of the existence of a possible claim within the limitations period,

12   then equitable tolling will serve to extend the statute of limitations for filing suit

13   until the plaintiff can gather what information he needs."[39]

14        Facts establishing the City of Henderson's and HPD's policy and custom of

15   punishing individual First Amendment protected expression was not confirmed

16   until August 1, 2013, when representatives from the City and the HPD made public

17   statements to the press concerning their unlawful policies and customs.[40]   Obtaining

18   

19   limitations for section 1983 actions as well as questions regarding the tolling of such

20   limitations periods."); Johnson v. State of Cal., 207 F.3d 650, 653 (9th Cir. 2000);
     Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988).

21

22   [36] Seino v. Employers Ins. Co. of Nev., 121 Nev. 146, 111 P.3d 1107, 1112 (Nev.
     2005).

23   [37] See Ellis v. City of San Diego, 176 F.3d 1183, 1189  & n.3 (9th Cir. Cal. 1999).

24   [38] Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000), overruled on
25   other grounds by Socop-Gonzalez v. I.N.S., 272 F.3d 1176, 1194-96 (9th Cir. 2001)
     (en banc).

26   [39] Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002).

27   [40] See CR 3, ¶183.

28

15

facts relating to a policy and custom or to retaliatory conduct is difficult without discovery, and the assertions in this broadcast could not have possibly been known to Plaintiffs before the broadcast.  The quotations are excerpted from a public radio broadcast which is publicly available, and Plaintiff will provide a copy of a transcript of the broadcast if the Court so requests.[41]  The statements made during the broadcast relate directly to establishing municipal liability as to the First through Ninth Claims for Relief as set forth in Plaintiffs' Tenth Claim for Relief, and also relate directly to the retaliatory nature of the conduct set forth in the First though Ninth Claims for Relief.  Based on the August 1, 2013 date of this broadcast, which is a month *after* the filing of the original complaint and less than three months *before* the filing of the first amended complaint containing the more expansive rendition of Plaintiffs' federal claims, the October 14, 2013 filing of the first amended complaint is timely based on equitable tolling.

All of the claims contained in the First through Ninth Claims for Relief set forth in the first amended complaint arose out of the same "conduct, transaction, or occurrence set out—or attempted to be set out" in the original complaint, and share a common core of operative facts of the same time and type.[42]  Therefore, the First through Ninth Claims for Relief set forth in Plaintiffs' first amended complaint are not barred by the two-year statute of limitations because they relate back to the timely-filed original complaint. Moreover, any statute of limitations is tolled based on equitable tolling.

**B.   Plaintiffs' First Through Ninth Claims For Relief Are Properly Pled, And There Is No Basis To Dismiss Them Based On The**

---

[41] http://www.knpr.org/son/archive/detail2.cfm?SegmentID=10338& ProgramID=2841.

[42] See Fed. R. Civ. P. 15(c)(1)(B); Boeing Co., 517 F.3d at 1133; Colton, 386 F. App'x at 607 (9th Cir. 2010) ((citing Mayle v. Felix, 545 U.S. 644, 650, 664 (2005)).

16

1

**Use Of "Doe" Defendants.**

2    The Defendants argue that Plaintiffs' First through Ninth Claims for Relief

3    should be dismissed because of Plaintiffs' use of "DOE" defendants.[43]  This

4    argument lacks merit and ignores controlling law.  From the outset, it must be noted

5    that the blanket joinder by the North Las Vegas Defendants to this argument is

6    nonsensical and inapplicable, because a host of the North Las Vegas Defendants are

7    named throughout the first amended complaint, and the North Las Vegas

8    Defendants fail to specifically argue or identify which paragraphs or portions of the

9    first amended complaint allegedly require dismissal based on Doe pleading.[44]

10   Plaintiffs cannot be expected to imagine or anticipate arguments that are not

11   proffered.  The individuals identified as "Does" in the first amended complaint could

12   include officers of the North Las Vegas and Henderson police departments already

13   identified by name elsewhere in the first amended complaint, or may include

14   individuals whose identity is not yet known but will become known through

15   discovery.

16   It is true that the use of fictitious Doe defendants is not favored in federal

17   court and that there is no provision in the federal rules allowing the use of fictitious

18   defendants.[45]  However, courts are to allow a party to seek to amend a complaint and

19   have the amendment relate back in time to the original filing once the identity of the

20

21

22   _____

23        [43] <u>See</u> Motion at 11-12.

24        [44] <u>See</u> First Amended Complaint, CR 3, ¶¶14, 47, 48, 50, 53, 55, 59, 60, 61, 67,

25   91, 96, 159, 161, 162, 172, 183.

26        [45] <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980); <u>Bogan v. Keene</u>

27   <u>Corp.</u>, 852 F.2d 1238, 1239 (9th Cir. 1988); <u>Fifty Assocs. v. Prudential Ins., Co.</u>, 446

     F.2d 1187, 1191 (9th Cir. 1970).

28

17

1   Doe defendants are learned, if circumstances are justified.[46]

2   More importantly, the Ninth Circuit has explicitly stated that in a situation

3   such as the one here—where the identity of the alleged defendants will not be known

4   prior to the filing of the complaint—the plaintiff should be given an opportunity

5   through discovery to identify the unknown defendants unless it is clear that

6   discovery would not uncover the identities or that the complaint would be dismissed

7   on other grounds.[47]  This is precisely the case here.  The identities of the Doe

8   defendants—whose actions have been explicitly described in great detail—could not

9   be known before the filing of the complaint, and the records that could be used to

10  identify these Doe Defendants "are protected by state statutes and can only be

11  ascertained through the discovery process."[48]  Discovery will flesh out the names of

12  the perpetrators currently named as Doe defendants, and once this occurs, Plaintiffs'

13  will seek to amend the complaint as the rules permit and require.  The notion that

14  detailed and explicitly-pled claims for relief can be dismissed because the names of

15  the perpetrators is not known is ridiculous, and has been universally rejected.

16  The error of the Defendants' argument is made obvious by their citation to

17  <u>Sigurdson v. Del Guercio</u>.[49]  Defendants failed to note that this case was overruled by

18  <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, in which the United States

19  Supreme Court expressed the idea that pleadings which identify defendants by

20  fictitious designation are common when the true names of such defendants are not

21  yet known and, in most cases, such names are learned only through the process of

22

23  [46] <u>Graziose v. Am. Home Prods. Corp.</u>, 202 F.R.D. 638, 643 (D.Nev.2001); <u>see
24  also</u> <u>Brass v. Cnty. of Los Angeles</u>, 328 F.3d 1192, 1197-98 (9th Cir.2003).

25  [47] <u>Gillespie</u>, 629 F.2d at 642.

26  [48] <u>See</u> CR 1, ¶14; CR 3, ¶17.

27  [49] <u>See</u> Motion at 11-12 (citing <u>Sigurdson v. Del Guercio</u>, 241 F.2d 480, 482 (9th
    Cir. 1956).

28

discovery.[50]  The impact of <u>Bivens</u> on the earlier decision of the 9th Circuit Court in <u>Sigurdson</u> was noted in a number of cases.[51]

But the errors in Defendants' argument do not end there.  Since this is a § 1983 case, the more lenient Nevada rules governing statute of limitations and relation back in the context of adding Doe defendants control.[52]  Nevada Rule of Civil Procedure 10(a) requires that a plaintiff meet a three-part test in order to relate an amendment back to the filing of the original complaint in the context of Doe defendants.  A plaintiff must "(1) plead[] fictitious or doe defendants in the caption of the complaint; (2) plead[] the basis for naming defendants by other than their true identity, and clearly specify[] the connection between the intended defendants and the conduct, activity, or omission upon which the cause of action is based; and (3) exercis[e] reasonable diligence in ascertaining the true identity of the intended defendants and promptly mov[e] to amend the complaint in order to substitute the actual for the fictional."[53]  Plaintiffs have certainly fulfilled these requirements.[54]  Thus, in the context of Plaintiffs' 1983 claims, Plaintiffs were in fact *required* to plead Doe defendants based on this court's importation of Nevada law, and have thus complied with this controlling authority.

In addition, the Defendants' assertions as to lack of notice concerning

---

[50] 403 U.S. 388 (1971).

[51] <u>See</u>, <u>e.g.</u>, <u>Spock v. United States</u>, 464 F.Supp. 510, 518 (S.D. N.Y. 1978).

[52] <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999) (statute of limitations); <u>Merritt v County of Los Angeles</u>, 875 F.2d 765, 768 (9th Cir. 1989) (relation back).

[53] <u>Nurenberger Hercules-Werke GmbH v. Virostek</u>, 107 Nev. 873, 881, 822 P.2d 1100 (Nev. 1991); <u>see</u> <u>also</u> <u>Chase v. Atlas Copco Craelius AB</u>, 2012 U.S. Dist. LEXIS 43334 (D. Nev. Mar. 28, 2012).

[54] <u>See</u> CR 1, ¶¶13-15; CR 3, ¶¶15-18.

19

Plaintiffs' naming of Doe defendants cannot be taken seriously, and ignore the fact that the actions of these defendants, as well as that of named defendants, are clearly described in great detail, both in the eighty (80) paragraphs of the statement of facts detailing the precise conduct complained of as to each Doe defendant, as well as in the Claims for Relief.[55]  The necessary facts to identify the perpetrators have been

_____

[55] The First Claim for Relief (¶¶105-118) asserts First Amendment violations against all Defendants and Defendant Doe police officers for the Plaintiffs' photographing of the police misconduct and Anthony's communications with the officers, with specific allegations concerning Doe #2 and North Las Vegas Defendant Doe police officer 1, and specifically naming Henderson Defendant Worley. See, e.g., CR 3, ¶¶27-31, 33-37, 45, 46, 47, 75, 105-114 (plus all allegations relating to most of the other claims as retaliatory conduct too numerous to mention here (see id., ¶114).  The Second Claim for Relief (¶¶119-25) asserts Fourth / Fourteenth Amendment violations against a host of named North Las Vegas Defendants and specific allegations as to Doe Defendants 1-10, 21-22, 24-30 based on the unlawful search of Anthony's home and vehicle and his unlawful arrest and seizure. See, e.g., id., ¶¶29-31, 34-37, 46-67, 74, 98-104, 120, 121.  The Third Claim for Relief (¶¶126-33) asserts Fourth / Fourteenth Amendment violations against a host of named North Las Vegas Defendants and specific allegations as to Doe Defendants 1-10 based on the excessive force used against Anthony. See, e.g., id., ¶¶29-31, 33-37, 46-67, 98-104, 127-29.  The Fourth Claim for Relief (¶¶134-39) asserts Fourth / Fourteenth Amendment violations against Doe Defendants 31-35 based on the unlawful seizure and arrest of Michael. See, e.g., id., ¶¶68-83, 98-104, 135.  The Fifth Claim for Relief (¶¶140-45) asserts Fourth / Fourteenth Amendment violations against Doe Defendants 21-30 based on the unlawful seizure and arrest of Linda. See, e.g., id., ¶¶ 69-74, 98-104, 141-42.  The Sixth Claim for Relief (¶¶146-51) asserts Fourth / Fourteenth Amendment violations against Doe Defendants 21-30 based on the unlawful entry into and search of Linda and Michael's home and vehicle. See, e.g., id., ¶¶69-74, 98-104, 147.  The Seventh Claim for Relief (¶¶152-57) asserts Third / Fourteenth Amendment violations against Doe Defendants 21-30 based on their quartering in Linda and Michael's home without permission. See, e.g., id., ¶¶69-74, 98-104, 153.  The Eighth Claim for Relief (¶¶158-70) asserts Fourth / Fifth / Fourteenth Amendment violations against Doe Defendants 1-10, 31-35 (note typographical error in paragraph 160), 36, 37, and North Las Vegas Defendant Cawthorn based on their punishment of and deliberate indifference to the serious medical need of Anthony and Michael. See, e.g., id., ¶¶29, 30, 31, 33, 34, 36, 46-67,

20

alleged, and the Defendants know who they are.  All that is to be done is for these individuals to be identified in discovery.

Finally, the Plaintiffs must point out the obvious and disturbing foundation of the Defendants' request to dismiss the explicitly-described but unnamed Doe defendants.  Upholding such a request would reward the Defendants for concealing the identity of the perpetrators and encourage them to do so at all costs now and in the future.  It would unfairly punish Plaintiffs because they have not otherwise been able to ascertain the identities of the Doe defendants without discovery, particularly where, as here, documents that could provide their identities are protected by state privacy statutes.

The specific acts of the Doe defendants are described with great particularity and discovery will certainly reveal their names.  The Defendants' request to dismiss the First through Ninth Claims for Relief based on the use of Doe defendants is contrary to controlling law, unfair, unreasonable and should be denied.

**C.  Plaintiffs' First Claim For Relief For Retaliation Against Protected First Amendment Expression States A Claim Upon Which Relief Can Be Granted.**

The Defendants argue that Plaintiffs' First Claim for Relief based on retaliation against them for conduct protected by the First Amendment fails to state a claim.[56]  The argument lacks merit as to Plaintiffs' claims concerning their activity of taking photographs.  The Defendants correctly note that this Claim lists several additional acts of protected expression by Anthony, but that the Claim lacks a

81-88, 98-104, 159-67.  The Ninth Claim for Relief (¶¶171-78) asserts First / Fourth / Fifth / Fourteenth Amendment malicious prosecution violations against Doe Defendants 38-45, Henderson Defendants Walter and Worley and North Las Vegas Defendant Cawthorn, based on their First, Fourth and Fifth Amendment-based malicious prosecution of Anthony and Michael.  See, e.g., id., ¶¶89-97, 172-75.

[56] See Motion at 13-14.

specific assertion that the Defendants took retaliatory action against him based on this conduct.[57]  As discussed herein, this was an accidental omission from paragraph 114, and Plaintiffs request leave to amend the first amended complaint to correct the omission.

### 1. The Claim Of Retaliation Based Upon The Photographing Of The Defendant Officers Is Well-Pled And Should Not Be Dismissed.

There is no doubt that citizens enjoy a clearly established First Amendment right to photograph police officers performing their responsibilities in public places.[58]  In order to state a claim for a First Amendment § 1983 violation, a plaintiff must allege (1) that he was engaged in a constitutionally protected activity, (2) that the officers' actions would chill a person of ordinary firmness from continuing to engage in that activity and (3) that the protected activity was a substantial or motivating factor in the officers' conduct.[59]

---

[57] See id. at 13 n.4.

[58] See, e.g., Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir 1995) (in Section 1983 case concerning videotaping of Seattle police officers, recognizing an individual's First Amendment right to "film matters of public interest"); Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011)(holding that there is a constitutionally protected right to videotape police carrying out their duties in public); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000)("The First Amendment protects the right to gather information about what public officials do on public property," including right "to photograph or videotape police conduct"); Robinson v. Fetterman, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005) (concluding that plaintiff had a First Amendment right to videotape state troopers conducting truck inspections on a public highway because of his concern about the safety of the inspections); Lambert v. Polk County, 723 F. Supp. 128, 133 (S.D. Iowa 1989) (noting that "[i]t is not just news organizations . . . who have First Amendment rights to make and display videotapes of events -- all of us, including [plaintiff], have that right").

[59] See Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300-01 (9th Cir. 1999).

1      Plaintiffs have satisfied these elements in relation to their First Amendment

2 retaliation claims based on their photographing of the Defendant police officers at

3 issue.  Their photographing of the Defendant police officers was constitutionally

4 protected activity under the First Amendment, satisfying the first element.[60]  The

5 conduct referenced in paragraph 114—including unlawful search and arrest,

6 malicious prosecution, assault, and battery referenced in the Second through Ninth

7 and Eleventh through Twentieth Claims for Relief—most certainly would chill a

8 person of ordinary firmness from continuing to engage in the photography,

9 satisfying the second element.[61]  Finally, the third element is satisfied because

10 Plaintiffs have alleged that their photographing the officers was a substantial or

11 motivating factor in the officers' conduct.[62]  They have alleged that the Plaintiffs had

12 not committed any crime or could be reasonably suspected of committing a crime,

13 were unarmed, were never observed to be armed, made no threats, did not pose a

14 threat to any person or officer or property, and that the Defendants lacked warrant,

15 permission, probable cause, or legal justification or authority  for all the acts

16 alleged.[63]  The actions addressed in the First Claim for Relief were carried out in

17 retaliation for Plaintiffs' conduct protected under the First Amendment.

18 Representatives of the City of Henderson and the HPD made statements that clearly

19 show that Plaintiffs were retaliated against for their protected expression.[64]

20      The Defendants seek to avoid this claim by vaguely referring to time, place

---

[60] See n.58, supra.

[61] See CR 3, ¶114.

[62] Id.

[63] See, e.g., CR 3, ¶¶50, 74, 79, 92, 93, 99-102, 104, 120, 121, 135, 141, 147, 172, 173.

[64] See id., ¶183.

23

and manner restrictions, obliquely arguing that the Plaintiffs' photographing of the Defendant police officers somehow implicated public safety.[65]  The argument is nonsensical for several reasons and is based upon the Defendants re-writing of the complaint.

First, the Defendants mention time, place and manner regulations, but the obvious fact is that no such regulations are at issue here, or identified by the Defendants.

Second, they cite to Askins v. U.S. Dep't of Homeland Sec. and imply that this case precludes or supersedes the Plaintiffs' First Amendment right to photograph police operations in public places.[66]  Aside from the fact that this district court opinion denying a motion for preliminary injunction is not controlling, it is wholly inapposite, the Defendants mischaracterize it, and it actually support the Plaintiffs' claim.  In Askins, *the court recognized the First Amendment right to photograph police officers in public places as Plaintiffs here did*, but then distinguished Askins from this on the basis that the port of entry at issue there was not a public place, and that the federal border agents were not the equivalent of police officers on duty in public:

> **There is no doubt that citizens enjoy a First Amendment right to photograph police officers performing their responsibilities in public places, as evidenced by the cases cited by Plaintiffs**. . . . . The Department of Justice letter that Plaintiffs cite is in accord with this line of cases, and is also limited to situations where **police officers** are performing their duties in a public place. (See DOJ Letter [Doc. 19-6] 1.)
>
> **Noticeably lacking from the Plaintiffs' motion, however, is any argument as to why these cases apply to CBP officers executing their duties at U.S. ports of entry [**. . . .] **Thus,**

---

[65] See Motion at 13:15-14:10.

[66] See id. at 13-14.

**Plaintiffs assume that CBP officers are legally equivalent to police officers and that their duties are legally equivalent to those of police officers. Moreover, Plaintiffs assume that the public places at issue in the cases cited above are legally equivalent to U.S. ports of entry.** The Court is unwilling to make such assumptions, especially in light of the sensitive nature of CBP operations and its responsibility for national security and secure borders**.**[67]

Thus, the court in <u>Askins</u> actually distinguished the national security concerns at issue there from the clearly established First Amendment right at issue here to photograph local police activity.[68]  <u>Askins</u> is thus inapposite to this case and in fact supports Plaintiffs' First Amendment claim, for it reaffirms Plaintiffs' First Amendment right to photograph police in public places, and the Defendants have not produced and cannot produce any basis for the restriction of that right.

The Defendants also attempt to escape this claim by arguing that the Plaintiffs did not allege that the Defendants knew that the Plaintiffs' purpose in taking the photographs was to disseminate them to the news media.[69]  This argument fails for two reasons.  First, the elements of the claim do not require that Plaintiffs plead that that Defendants knew that Plaintiffs intended to disseminate the photographs to the news media, but only that the taking of the photographs was a substantial or

---

[67] <u>Askins v. United States Dep't of Homeland Sec.</u>, 2013 U.S. Dist. LEXIS 53208, *12-13  (S.D. Cal. Apr. 12, 2013) (citations omitted, emphasis added).

[68] It is also worth noting that the <u>Askins</u> court's subsequent opinion on a motion to dismiss actually found that the port property might indeed be a public forum, dismissed the claim with leave to amend based on the existence of an actual policy concerning photography on the federal port property. <u>See</u> <u>Askins v. United States Dep't of Homeland Sec.</u>, 2013 U.S. Dist. LEXIS 141725, *14, 16-18 (September 30, 2013).  No such policy is or could be at issue here.

[69] <u>See</u> Motion at 14:11-23.

25

motivating factor in the officers' conduct.[70]  Second, the Plaintiffs alleged that the Defendants knew they had contacted the news media (see CR 3, ¶45), and the Defendants further diminish their erroneous argument with their own (factually incorrect) argument that the photographing of Defendants allegedly presented a security concern.  The Defendants make the assertion that:

> Plaintiffs' stated purpose for taking the photographs was to disseminate photographs of the police operations and movements so that they could be **broadcast** while the standoff was still in progress.  **There was a clear danger that the photographs taken would be used in a manner that would undermine the police response and endanger the lives of officers and the public**.[71]

Thus, the Defendants admit that *they believed* that the photographs taken by Plaintiffs were to be disseminated to the news media.  Plaintiffs' First Amendment claims concerning the retaliation directed against them based on their photographing of the Defendants is well-pled and should not be dismissed.

Moreover, the Defendants' oblique attempts to invoke officer safety in relation to Plaintiffs' taking photographs cannot be taken seriously.  None of the Plaintiffs was ever told by any of the officers to stop taking photographs.  Ignoring for the moment the absurdity of the assertion of a safety concern based on Plaintiffs taking photographs of an officer in a public place from inside their private residences, if there was such a safety concern, the officers who saw the photographs being taken would have immediately acted to inform the Plaintiffs to stop taking photographs. The Defendants did no such thing, and in fact at no point did any of the Defendants tell any of the Plaintiffs not to take photographs or express any concerns about

---

[70] See Mendocino Envtl. Ctr,  192 F.3d 1283, at 1300-01.

[71] Motion at 14:6-9 (emphasis added). In fact, there is no allegation in the complaint that Plaintiffs intended to disseminate the photographs so that they could be broadcast *during the standoff*.  This is a complete fabrication, evidenced by the Defendants failure to cite to the complaint.

1    officer safety in relation to being photographed whatsoever.[72]  Michael was arrested

2    long after he took the photographs and had left his house and was never told to not

3    take photographs.[73]  The Defendants' *stated pretext* for the unlawful home invasion,

4    search, arrest and excessive force perpetrated against Anthony was his refusal to

5    allow them to invade and take over his home, not his taking of photographs, he was

6    never told not to take any photographs, and was not told to shut off his phone until

7    after the Defendants broke down his door and invaded his home without a warrant

8    and ordered him to the floor at gunpoint.[74]

9            **2.**      **Plaintiffs Should Be Allowed To Amend The Complaint
10                   To Correct A Minor Error As To The First Claim For
                     Relief.**

11          The Defendants correctly note that this the First Claim for Relief lists several

12   acts of protected expression by Anthony in addition to his taking photographs, but

13   that the Claim lacks a specific assertion that the Defendants took retaliatory action

14   against him based on this other conduct.[75]  Specifically, paragraphs 46 and 47 plead

15   facts related to Anthony giving  the middle finger gesture to Defendants and

16   expressing his disapproval of their conduct.[76]  Paragraph 35 pleads facts relating to

17   Anthony expressing his legal rights to Henderson Defendant Worley.[77]  Paragraphs

18   25 and 27 plead facts relating to Anthony expressing his disapproval of the

19   Defendants by yelling at them to shut off their siren.[78]  These facts are reiterated in

20

21

22         [72] <u>See</u>, <u>e.g.</u>, CR 3, ¶¶ 28, 33, 45, 46, 47, 53, 66, 75-80, 103.

23         [73] <u>Id</u>., ¶¶25-35, 68-79.

24         [74] <u>See id</u>., ¶¶47-53.

25         [75] <u>See</u> Motion at 13 n.4.

26         [76] <u>See</u> CR 3, ¶¶ 46, 47.

27         [77] <u>See id</u>., ¶35.

28         [78] <u>See id</u>., ¶ 25, 27.

the First Claim for Relief as the reasons why the Defendants retaliated against Anthony.[79]  However, the undersigned mistakenly omitted these acts as a named basis for the retaliation carried out by the Defendants, which only delineates the conduct relating to the photographing of the officers as the basis for the officers' retaliation.[80]

Plaintiffs request that they be permitted to make a minor amendment to paragraph 114 to correct the mistake as follows, with the new text in brackets:

> The conduct of the named Defendants and DOE Defendants as complained of in the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, and Twentieth Claims for Relief herein were carried out against the Plaintiffs with the intent to intimidate, chill and silence Plaintiffs ~~from photographing police misconduct and disseminating it to the public and the news media~~ [for carrying out the conduct identified in this Claim for Relief and further described in the Common Allegations], and their intent to cause this chilling effect was a but-for cause of their actions, in violation of Plaintiffs' constitutional rights. Their conduct was also intended to intimidate, chill and silence any news media outlets from disseminating any accounts of the police misconduct at issue.

Defendants already have notice of the omitted claims, because they specifically noted their their existence, indicating that they understand that these acts were intended to be pled as a basis for the retaliation alleged.[81]  Therefore, there is no prejudice to the Defendants based on this proposed amendment.

In addition, as noted in Section IV(J), infra, the Plaintiffs also request amendment of their Tenth Claim for Relief to the degree the Court finds that such amendment is necessary or appropriate.

---

[79] See id., ¶¶110-113.

[80] See id., ¶114.

[81] See Motion at 13, n.4.

1

2

3

**D.    Plaintiffs' Ninth Claim For Relief For Malicious Prosecution Is Not Subject To Dismissal.**

Plaintiffs' Ninth Claim for Relief asserts a § 1983 claim for malicious prosecution based on Defendants' intent to violate Plaintiffs' First, Fourth, and Fifth Amendment rights.[82]   Defendants argue that absolute prosecutorial immunity protects Reyes-Speer, and that her filing of the criminal complaints against Anthony and Michael immunizes Henderson Defendants Walter and Worley. North Las Vegas Defendant Cawthorn and Doe officers 38-45.  This argument fails based on well-established exceptions to the doctrine of prosecutorial immunity.  From the outset, it must be pointed out that the Defendants do not assert that the Plaintiffs have failed to assert the necessary elements to establish this claim, but rely solely on the defense of prosecutorial immunity.

**1.    Reyes-Speer Is Not Entitled To Prosecutorial Immunity Because She Stepped Out Of Her Prosecutorial Role And Became The Complaining Witness.**

The Defendants' reliance on prosecutorial immunity in this case is wholly misguided, as is evidenced by their reliance on <u>Imbler v. Pachtman</u>.[83]  <u>Imbler</u> merely stands for the fact that prosecutors are entitled to absolute immunity only in relation to their performance of core prosecutorial function, <u>i.e.</u>, in their role as an advocate, and in fact wholly avoided the question of whether such immunity extended to a prosecutor carrying out administrative or investigative roles.[84]  In fact, when

---

[82] <u>See</u> CR 3, ¶¶ 171-78.

[83] <u>See</u> Motion at 14-15 (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976)).

[84] <u>Imbler</u> at 430-31 ("We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.")

29

1  prosecutors perform administrative or investigative functions, they are not entitled

2  to absolute immunity.[85]

3      To determine whether an action is judicial, administrative or investigative—

4  and to thus decide if prosecutorial immunity is applicable—the court looks at "the

5  nature of the function performed, not the identity of the actor who performed it."[86]

6  Thus, whether a prosecutor benefits from prosecutorial immunity depends on which

7  of the prosecutor's actions are challenged.[87]  The official seeking absolute immunity

8  bears the burden of demonstrating that absolute immunity is justified for the

9  function in question.[88]  Absolute prosecutorial immunity is justified "only for actions

10 that are connected with the prosecutor's role in judicial proceedings, not for every

11 litigation-inducing conduct."[89]

12     In the instant case, the conduct of Reyes-Speer falls under a very specific

13 exception to the doctrine of prosecutorial immunity.  In Kalina v. Fletcher, the

14 United States Supreme Court addressed the question of whether a prosecutor who

15 signed a document under penalty of perjury to support an unsworn information and

16 motion for arrest warrant was entitled to prosecutorial immunity.[90]  The Supreme

17 Court noted that "[t]he critical question . . . is whether [the prosecutor] was acting as

18 a complaining witness rather than a lawyer when she executed the certification

19

20 _____

21     [85] See Buckley v. Fitzsimmons, 509 U.S. 259, 271-73 (1993); Broam v. Bogan,

22 320 F.3d 1023, 1028 (9th Cir. 2003).

23     [86] Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (quoting Forrester v. White, 484
   U.S. 219, 229 (1988)).

24     [87] See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).

25     [88] See Buckley, 509 U.S. at 269; Burns v. Reed, 500 U.S. 478, 486 (1991).

26     [89] Burns, 500 U.S. at 494.

27     [90]Kalina, 522 U.S. at 129-31 (1997).

28

'under penalty of perjury.'"[91]  The Supreme Court ruled that the prosecutor's act of signing the document under penalty of perjury converted her into a witness and stripped her of prosecutorial immunity.[92]   The Supreme Court's exegesis is instructive:

> Nevertheless, petitioner argues that the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution. That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court. Each of those matters involved the exercise of professional judgment; indeed, even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate. **But that judgment could not affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness**.[93]

The instant case is on all fours with <u>Kalina</u>, and the fact that the instant case involved an actual criminal complaint militates even more in favor of finding that Reyes-Speer stepped out of her role as prosecutor.  Reyes-Speer recited the specific facts underlying the charges in the complaints against Anthony and Michael and signed the criminal complaints as the complaining witness "on information and

---

[91] <u>Id</u>. at 129.

[92] <u>Id</u>.

[93] <u>Id</u>. at 131.

31

belief subject to penalty of perjury," and signed them as "Complainant."[94]  Any of the

Defendant officers who allegedly actually witnessed the conduct complained of could

have been the complaining witness, but instead, Reyes-Speer became the

complaining witnesses of record and swore to the complaints' contents under

penalty of perjury.  Moreover, the Rules of Professional Conduct addressed by the

Supreme Court in <u>Kalina</u> are identical to Nevada's:  "[a] lawyer shall not act as

advocate at a trial in which the lawyer is likely to be a necessary witness [. . . .]"[95]

Reyes-Speer stepped out of her prosecutorial role and became the complaining

witness, and therefore she  is not entitled to prosecutorial immunity for the filing of

the criminal complaints against Michael and Anthony.

> **2.    Walter, Worley, Cawthorn, And The Other Defendants Named In Plaintiffs' Ninth Claim For Relief Have No Immunity Based On The Filing Of The Criminal Complaint Because Reyes-Speer Was A Merely A Witness And Not A Prosecutor When She Filed It.**

The Defendants argue that the Defendants named in Plaintiffs' Ninth Claim

for Relief other than Reyes-Speer (Walter, Worley, Cawthorn, Does 38-45) are

---

[94] <u>See</u> **Exhibits A** and **B**, attached to the Declaration of Frank H. Cofer, Esq ("Cofer Decl.") filed concurrently herewith; <u>see</u> <u>also</u> CR 3, ¶¶92-93.  Because **Exhibits A** and **B** are matters of public record and meet the requirements of Federal Rule of Evidence 201, the Court may judicially notice them in deciding  the instant motion without converting it to one for summary judgment. <u>United States v. Ritchie</u>, 342 F.3d 903, 907, 909 (9th Cir. 2003); <u>see</u> Fed. R. Evid. 201(b) (stating that a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and holding that the court "may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.")

[95] Nevada Rules of Professional Conduct 3.7(a) (omitting exceptions inapplicable here).  <u>Compare</u> <u>with</u> <u>Kalina</u> at 130, n.17.

immunized from liability based on the notion that "Reyes-Speer exercised her independent judgment to file criminal complaints against Plaintiffs" Anthony and Michael.[96]  This argument fails because Reyes-Speer was not acting as a prosecutor when the complaints were filed.

As discussed immediately above in Section IV(D)(1), Reyes-Speer abandoned her role as prosecutor and acted as a complaining witness when she recited the facts underlying the charges against Anthony and Michael and signed the criminal complaint under penalty of perjury as a complaining witness.  Thus the "presumption" noted by the Defendants that "the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused arrest exists at that time" is inapplicable here.[97]  No prosecutorial judgment was exercised because Reyes-Speer was not acting as a prosecutor, but rather was acting as a witness.

It is very telling that the Defendants argue that "Plaintiffs cannot sustain a malicious prosecution claim where, as here, they assert nothing more than a version of events that conflicts with the account of the officers involved."[98]  This highlights the problem and demonstrates why Reyes-Speer has no immunity and the other Defendants have no immunity derived from her swearing out of the complaint. There is no "account of the officers involved" for the officers did not swear out the complaint.  The facts recited against Michael and Anthony were sworn out by Reyes-Speer, and Michael and Anthony's version of events conflicts with the version of events sworn out by the actual complaining witness, i.e., Reyes-Speer, not that of the

---

[96] See Motion at 15:11-13.

[97] See id. at 15:15-18 (citing Newman v. Cnty. of Orange, 457 F.3d 991, 993 (9th Cir. 2006)).

[98] Id. at 15:18-20.

33

1   officers.

2       Walter, Worley, Cawthorn and Does 38-45 are not entitled to immunity from

3   Plaintiffs' malicious prosecution claim based on the filing of the criminal

4   complaints.

5       **3.      Walter, Worley, Cawthorn, And The Other Defendants
            Named In Plaintiffs' Ninth Claim For Relief Have No
6           Immunity Based On The Filing Of The Complaint Based
7           On The Standards Set Forth in <u>Beck v. City Of Upland</u>.**

8       The Defendants rely on <u>Newman v. Cnty. of Orange</u>, 457 F.3d 991, 993 (9th

9   Cir. 2006), for the notion that the filing of the criminal complaint by Reyes-Speer

10  immunized them from liability under § 1983 as to Plaintiffs' Ninth Claim for Relief.[99]

11  The Defendants are incorrect.  Not only have they have prematurely pressed this

12  argument at the motion to dismiss stage, but their reliance on <u>Newman</u> is misguided

13  because the approach taken by the Ninth Circuit in <u>Newman</u> has been overruled as

14  to First Amendment malicious prosecution cases, and under the governing

15  standards, the filing of the criminal complaint in this case does not immunize the

16  Defendant officers.

17      **a.      The Correct Legal Standards In First And Fourth
18              Amendment Malicious Prosecution Cases.**

19      The argument pressed by the Defendants seeking to immunize themselves

20  from Plaintiffs' federal malicious prosecution claims is based on <u>Smiddy I</u>, where the

21  Ninth Circuit adopted an evidentiary presumption "that the prosecutor filing [a

22  criminal] complaint exercised independent judgment in determining that probable

23  cause for an accused's arrest exist[ed]," thereby breaking the "chain of causation

24  between an arrest and prosecution" and immunizing "investigating officers . . . from

25

26  _____

27      [99] <u>See</u> Motion at 15:10-21.

28
                                34

damages suffered" after the complaint was filed.[100]  The <u>Smiddy I</u> presumption may be rebutted if the plaintiff shows that the independence of the prosecutor's judgment has been compromised.[101]

However, with the Supreme Court's intervening decision in <u>Hartman v. Moore</u>, 547 U.S. 250 (2006), not addressed in <u>Newman</u>, the Ninth Circuit in <u>Beck v. City of Upland</u> carried out an extensive analysis and reworking of the application of this "chain of causation" issue and the related presumption in malicious prosecution cases.[102]

In First Amendment retaliation claims, <u>Beck</u> rejected <u>Smiddy I</u>'s inquiry into the prosecutor's state of mind due to its conflict with <u>Hartman</u> and held that for the purposes of such claims, "'retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision will suffice to rebut the presumption of regularity and settle the causation issue.'"[103]  It must be pointed out that the notion relied upon by the Defendants that a malicious prosecution claim cannot be sustained based solely on Plaintiffs' version of events that conflicts with the officers' accounts does not apply to malicious prosecution claims based on First Amendment chilling / retaliation.[104]

---

[100] <u>Beck v. City of Upland</u>, 527 F.3d 853, 862 (9th Cir. Cal. 2008) (quoting <u>Smiddy v. Varney</u>, 665 F.2d 261, 266-67 (9th Cir. 1981) ("Smiddy I"); <u>see</u> <u>also</u> <u>Smiddy v. Varney</u>, 803 F.2d 1469, 1472 ("<u>Smiddy II</u>") (9th Cir. 1986) (discussing the presumption).  The holding in <u>Newman</u> upon which Defendants rely is based on the ruling in <u>Smiddy I</u>.  <u>See</u> <u>Newman</u>, 457 F.3d at 993-94.

[101] <u>Beck</u>. at 862.

[102] <u>Id</u>. at 862-65.

[103] <u>Id</u>. at 865 (quoting <u>Hartman</u>, 547 U.S. at 265.)

[104] <u>See</u> Motion at 15:18-20 (citing <u>Newman</u> for the idea that "Plaintiffs cannot sustain a malicious prosecution claim where, as here, they assert nothing more than a version of events that conflicts with the account of the officers involved.").  This is

1    Beck also went on to address Fourth Amendment-based malicious

2 prosecution claims, holding that "it is necessary, if not sufficient, that a plaintiff

3 seeking to sue non-prosecutorial officials alleged to be responsible post-complaint

4 for the arrest or prosecution show the absence of probable cause.  If that were not

5 so, Smiddy I would be irreconcilable with Hartman."[105]  While the Ninth Circuit in

6 Beck questioned whether Smiddy I's requirement in Fourth Amendment cases that

7 the presumption is rebutted upon a showing of whether the prosecutor's

8 independent judgment has been compromised was still valid, it nevertheless

9 retained it—but only for Fourth Amendment claims—because Hartman was a First

10 Amendment case and it wanted to avoid overruling Circuit precedent.[106]

11    Plaintiffs have asserted malicious prosecution claims based on *both* the First

12 and Fourth Amendments, and have also asserted due process-based Fifth /

13 Fourteenth Amendment malicious prosecution claims.[107]

14    The Court in Beck provided a non-exhaustive list of examples where the

15 presumption of independent prosecutorial judgment is rebutted in the Fourth

16

17 incorrect, for this does not apply to First Amendment malicious prosecution claims.
18 Newman was not a First Amendment malicious prosecution case.  Moreover, as the
   Ninth Circuit in Beck made clear, this requirement that a plaintiff must provide
19 information in addition to his own account that contradicts the police report only
20 applies to "Fourth Amendment causation law" in malicious prosecution claims
   based on the Fourth Amendment, and then only where the plaintiff is asserting that
21 the prosecutor "relied on the police investigation and arrest when he filed the
22 complaint instead of making an independent judgment  on the existence of probable
   cause for the arrest."  Beck, 527 F.3d at 862-63 & n.9.  The retaliatory motive / lack
23 of probable cause is the standard to be applied as to First Amendment malicious
24 prosecution claim contained in Plaintiffs' Ninth Claim for Relief.  See Section
   IV(D)(3)(c), infra.

25    [105] Beck. at 865.

26    [106] Id. at 864-65.

27    [107] See CR 3, ¶ 172.

28

Amendment context, such as: 1) where the prosecutor "was pressured by police or given false information"; 2) the police "act[ed] maliciously or with reckless disregard for the rights of an arrested person"; 3) the prosecutor "relied on the police investigation and arrest when he filed the complaint instead of making an independent judgment on the existence of probable cause for the arrest"; or 4) the officers "otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings".[108]  Once such evidence is presented to rebut the presumption, the burden shifts to the defendant to prove that an independent intervening cause cuts off his tort liability."

> **b.  The Argument That The Defendant Officers Have Immunity Based On The Filing Of The Criminal Complaints Is Premature And Inappropriate At The Motion To Dismiss Stage Before Discovery.**

The Defendants' argument that the filing of the criminal complaint broke the chain of causation and immunizes the Defendant officers from Plaintiffs' Ninth Claim for Relief is premature.  As the discussion immediately above makes clear, the showings that must be analyzed to determine this immunity are based on evidence which no plaintiff could possibly develop and present to the court without discovery.  This is precisely why all of the cases discussed above that speak to this immunity address it upon appeal from summary judgment or after trial, not in motions to dismiss.[109]  This is particularly evident in Newman, where the Court refers to

---

[108] Beck at 862-63 (citing and quoting Smiddy I and Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004)).

[109] Smiddy I was a case the actually went to trial with full discovery and witness testimony.  Newman, Beck, and Hartman are all appeals from decisions on summary judgment.  More important, the cases discussed in Newman, 457 F.3d at 994-95, as the foundation for this particular type of immunity were all addressed after the summary judgment stage or after trial, not in a motion to dismiss.  See, e.g., Borunda v. Richmond, 885 F.2d 1384 (9th Cir. 1988) (post-trial appeal); Barlow v.

"evidence of material omissions, or inconsistent police or eyewitness accounts" to demonstrate a genuine issue of material fact on this immunity question.[110]  Such evidence is available in discovery.  Here, the allegations in Plaintiffs' first amended complaint as to the malicious prosecution claims must be taken as true; there is no substantive consideration of evidence at the motion to dismiss stage.  The issue of the Defendant officer having immunity based on the exercise of independent prosecutorial judgment is premature at best at this early stage of the case.

Plaintiffs have pled sufficient facts to sustain their First, Fourth and Fifth Amendment-based malicious prosecution claims, and further assert that they have pled sufficient facts to overcome the presumption that independent judgment by the prosecutor broke the chain of causation.  They nevertheless address the alleged immunity based on the filing of the complaints below in an abundance of caution.

However, to the degree this Court might be inclined to dismiss Plaintiffs' Ninth Claim for Relief based on the intervening act of the prosecutor filing the criminal complaints, they assert that resolution of the question of this particular immunity must wait until Plaintiffs have had an opportunity for discovery.  As Beck makes clear, this type of immunity is based upon questions of the prosecutor's state of mind, at least in Fourth Amendment-based malicious prosecution claims, and such state of mind issues cannot be resolved without discovery.[111]  The alternative is absurd, and would require Plaintiffs to allege facts in a complaint that they could not possibly know without discovery.[112]  Beck all but spells this out in the context of

---

Ground, 943 F.2d 1132 (9th Cir. 1991) (post-summary judgment appeal); Sloman v. Tadlock, 21 F.3d 1462 (9th Cir. 1994) (post-trial appeal).

[110] Newman, 457 F.3d at 994-95.

[111] Beck at 863, 865, 870.

[112] See n.108, supra, and accompanying text.

Fourth Amendment malicious prosecution claims, noting that "'[i]f for reasons of privilege or otherwise *the relevant evidence [to challenge the presumption] is not available*, no presumption will arise,' . . . and the defendant has the burden to show that the prosecutor's judgment was independent.'"[113]

> c. **Reyes-Speer's Filing Of The Criminal Complaints Does Nothing To Break The Chain Of Causation Between The Unconstitutional Actions Of The Defendant Officers And The Harm Suffered By Plaintiffs As To Their First Amendment Malicious Prosecution Claims.**

Plaintiffs have set forth sufficient facts to state a viable claim for relief as to their First Amendment retaliation claim set forth in their Ninth Claim for Relief.[114] They need only show retaliatory motive on the part of the Defendant officers and an absence of probable cause.[115]  This they have done.

Plaintiffs have described in detail Anthony's conduct in giving the middle finger gesture to Defendants, his expressing his disapproval of their conduct, his expressing his legal rights to Henderson Defendant Worley, and his expressing his disapproval of the Defendants' conduct by yelling at them to shut their siren off.[116] They further described Plaintiffs' conduct in photographing the Defendant officers.[117]  Michael and Anthony committed no crime, and the facts alleged demonstrate that there was no probable cause for their detention, arrest or prosecution for the wholly fabricated charges of obstructing a police officer, that Defendants Worley and Walters knowingly and maliciously filed false police reports

---

[113] <u>Beck</u> at 863 (quoting <u>Smiddy I</u> at 267-68) (citations omitted, emphasis added).

[114] <u>See</u> CR 3, ¶172.

[115] <u>Beck</u> at 865 (quoting <u>Hartman</u>, 547 U.S. at 265.)

[116] <u>See</u> CR 3, ¶¶ 25, 27, 35, 46, 47, 110-114.

[117] <u>Id</u>., ¶¶ 28, 33, 45-47, 75, 106-109, 114.

with the specific intent to have them improperly prosecuted, and that the conduct of the named officers and Doe police officers identified in the Ninth Claim for Relief was designed to intimidate and retaliate against Anthony and Mitchell based on their First Amendment protected expression.[118]  Moreover, Anthony's protected expression relating to his gesture, his yelling about the siren, and his asserting his legal rights are precisely the type of conduct found in <u>Beck</u> to assert a viable First Amendment malicious prosecution retaliation claim.[119]

Beyond Defendants' retaliatory animus based on Plaintiffs' protected expression, there was no other basis for the detention, arrest and prosecution of Anthony and Michael.  The facts show that there was no probable cause, exigent circumstances or legal cause for Anthony's or Michael's arrest, detention and prosecution.[120]  The Defendants' purported basis for Anthony's bogus arrest and charge for obstructing an officer was his exercising his right to stay in his home and to refuse the Defendants' warrantless request that he leave it for their use.[121]  Likewise, retaliatory animus aside, the Defendants' purported basis for Michael's identical bogus arrest and charge was his meeting his wife while walking around.[122]

---

[118] <u>Id.</u>, ¶¶ 47, 55, 59-62, 64-66, 75-83, 89-139, 146-57, 172, 173, 174, 177; <u>see also</u> Sections IV(E)(2)(b)(ii, iii, iv), <u>supra</u>.  Note the proposed amendment to paragraph 114 discussed in Section IV(C)(2), <u>supra</u>;

[119] <u>Compare</u> CR 3, ¶¶ 25, 27, 35, 46, 47, 110-114 <u>with</u> <u>Beck</u> at 868 (citing <u>Duran v. Douglas</u>, 904 F.2d 1372, 1374 (9th Cir. Ariz. 1990)(finding use of the middle finger gesture as protected speech)); <u>see</u> <u>also</u> <u>MacKinney v. Nielsen</u>, 69 F.3d 1002, 1007 (9th Cir. 1995) (citing <u>Duran</u> for the proposition that there is a clearly established "First Amendment right to challenge the police. Even when crass and inarticulate, verbal challenges to the police are protected.")

[120] <u>See</u> n.118, <u>supra</u>.

[121] <u>See</u> CR 3, ¶¶35-36, 47-66, 98-104.

[122] <u>Id.</u>, ¶¶68, 75-79.

40

Moreover, the absence of probable cause is a matter of record based on the fact that the complaints against Anthony and Mitchell were unilaterally dismissed with prejudice by prosecutors for the City of Henderson, who apparently concluded that there was no probable cause to arrest or charge either of them.[123]

Plaintiffs have thus pled sufficient fact to show the Defendants' retaliatory motive and lack of probable cause, and their First Amendment malicious prosecution claim set forth in their Ninth Claim for Relief is not subject to dismissal. Plaintiffs have rebutted "the presumption of regularity and settle[d] the causation issue,'"[124] there is no break in the chain of causation based on prosecutor Reyes-Speer's filing of the bogus criminal complaints against Anthony and Michael, and therefore the Defendant officers and Doe defendants have no immunity based on the prosecutor's filing of the complaints against Anthony and Michael as to their First Amendment-based malicious prosecution claim.

> **d.      Reyes-Speer's Filing Of The Criminal Complaints Does Nothing To Break The Chain Of Causation Between The Unconstitutional Actions Of The Defendant Officers And The Harm Suffered By Plaintiffs As To Their Fourth Amendment Malicious Prosecution Claims.**

Plaintiffs have asserted Fourth and Fifth Amendment malicious prosecution claims in their Ninth Claim for Relief.[125]  The Defendants seek to dismiss these claims, relying on <u>Newman</u> for the notion that the prosecutors' filing of the criminal

---

[123] <u>Id</u>., ¶¶ 94, 95; <u>see</u> <u>also</u> Cofer Decl., **Exhibits C** and **D**, dockets showing dismissal of charges against Anthony and Michael with prejudice, of which this Court can take judicial notice without converting the instant motion to one for summary judgment.  <u>See</u> n.94 <u>supra</u>.  <u>See</u> <u>also</u> <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987); <u>Shwarz v. United States</u>, 234 F.3d 428, 435 (9th Cir. 2000); <u>Argabright v. United States</u>, 35 F.3d 472,474 (9th Cir. 1994).

[124] <u>Beck</u> at 865 (quoting <u>Hartman</u>, 547 U.S. at 265).

[125] <u>See</u> CR 3, ¶172, 173-78.

complaints broke the chain of causation.[126] This argument likewise fails.

As already noted, for Plaintiffs to overcome the this alleged shielding of the Defendant officers based on the filing of the criminal complaints, they must show a lack of probable cause as well as show that the prosecutor was not exercising independent judgment in filing the complaints.[127]

The absence of probable cause for the bogus charges of Obstructing a Police Officer is clearly alleged and evident in the first amended complaint.[128]  In addition, the absence of probable cause is evident in the course of events and in the fact that the charges in the complaint were unilaterally dismissed by the City of Henderson.[129]

As to the showing that the prosecutor was not exercising independent judgment, there are several examples, each of which are independently sufficient to overcome the presumption and defeat the Defendant officers' argument that they have immunity because the chain of causation was broken by the filing of the criminal complaints.

First, Plaintiffs have alleged that prosecutor Reyes-Speer was given false information by the police, which led to her filing of the criminal complaints.[130]  As the Court in <u>Beck</u> notes, the presumption of independent prosecutorial judgment is rebutted where "the prosecutor was pressured by police or was given false information."[131]

_____

[126] <u>See</u> Motion at 15:10-21.

[127] <u>See</u> notes 105, 106, <u>supra</u>, and accompanying text.

[128] <u>See</u> CR 3, ¶¶35, 36, 47, 50, 62-64, 66, 75-80, 83, 92, 93, 96, 99-104, 119-39, 146-57, 172, 173, 174.

[129] <u>See</u> notes 118, 123, <u>supra</u>, and accompanying text.

[130] <u>See</u> CR 3, ¶¶89-91.

[131] <u>Beck</u>, 527 F.3d at 862 (quoting <u>Smiddy I</u> at 266-67.)

42

1    Second, Plaintiffs have alleged that the Defendant officers acted maliciously
2    and with reckless disregard for Plaintiffs' rights in relation to their malicious
3    prosecution claims stemming from the unlawful arrests, searches, seizures, etc.[132]
4    <u>Beck</u> holds that the presumption of independent prosecutorial judgment is rebutted
5    where "the police act[ed] maliciously or with reckless disregard for the rights of an
6    arrested person."[133]

7    Third, Plaintiffs have alleged that the Defendant officers knowingly filed false
8    police reports, which constitutes bad faith conduct by the officers sufficient to rebut
9    the presumption.[134]  <u>Beck</u> holds that the presumption is rebutted where the
10   defendant officers "otherwise engaged in wrongful or bad faith conduct that was
11   actively instrumental in causing the initiation of legal proceedings."[135]

12   Thus, the presumption that prosecutor Reyes-Speer was exercising her
13   independent prosecutorial judgment in filing the criminal complaints has been
14   rebutted at to Plaintiffs' Fourth Amendment malicious prosecution claims.
15   Therefore, the Defendants' request that these claims against the Defendant officers
16   be dismissed based on a break in the chain of causation must be denied.

17   It is important to note that the Defendants' assertion that Plaintiffs' malicious
18   prosecution claim cannot be sustained where "they assert nothing more than a
19   version of events that conflicts with the account of the officers involved," is wholly
20   meritless here.[136]  On the one hand, this condition applies only in Fourth

21
22   _____
23        [132] <u>See</u> CR 3, ¶¶ 89-91, 117, 124, 132, 138, 150, 156, 171-78.
24        [133] <u>Beck</u> at 862 (quoting <u>Smiddy I</u> at 267.)
25        [134] <u>See</u> CR 3, ¶¶89-91.
         [135] <u>Beck</u> at 862-63 (quoting <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1067
26   (9th Cir. 2004)).
27        [136] Motion at 15:18-20 (citing <u>Newman</u>, 457 F.3d at 995-96).
28

43

Amendment malicious prosecution claims, and then only to situations where a plaintiff alleges that "the prosecutor 'relied on the police investigation and arrest when he filed the complaint instead of making an independent judgment on the existence of probable cause for arrest,'" and not to the other three attacks on the presumption discussed above.[137]  On the other hand, there has been no discovery in the case such that the "state of mind" of Reyes-Speer could be adequately determined in relation to this particular method to rebut the presumption. If discovery results in evidence showing that Reyes-Speer relied on the police investigation and arrest rather than exercising her independent judgment to determine probable cause, this will constitute yet another basis to rebut the presumption, but any consideration of this question is completely premature without discovery.  As the Supreme Court noted in the First Amendment context in Hartman, "it would be unrealistic to expect a prosecutor to reveal his mind" under the best of circumstances, and Reyes-Speer's state of mind can certainly not be determined without an opportunity to carry out her deposition.[138]

  **e. Defendants Fail To Address Plaintiffs' Fifth / Fourteenth Amendment Malicious Prosecution Claim, And It Is Not Subject To Dismissal.**

  Defendants do not discuss or challenge Plaintiffs' malicious prosecution claim based on violation due process rights protected under the Fifth and Fourteenth Amendments.[139]  Malicious prosecution is a due process violation when the defendants are prosecuted with malice and without probable cause, and the prosecution was carried out with the intent to denying the plaintiff's constitutional

---

[137] Beck at 862, n.9 (quoting Smiddy I at 266-67 and noting that this condition in Newman only applies to this specific attack on the presumption.)

[138] Hartman, 547 U.S. at 264.

[139] See CR 3, ¶¶172-78.

44

rights.[140]  The discussion in Sections IV(D)(3)(a-d), <u>supra</u>, and in Sections IV(E)(2)(b)(iii, iv), <u>infra</u>, establish beyond any doubt that these elements have been amply pled as to Defendants' lack of probable cause or legal excuse for Anthony's and Michael's arrest, detention and prosecution, as well as to their retaliatory animus and intent to violate Anthony's and Michael's rights.[141]  Plaintiffs' Fifth Amendment-based malicious prosecution claims are not subject to dismissal.

### E.    Plaintiffs' Tenth Claim For Relief For Violation Of Civil Rights Under § 1983 States A Claim Against The Defendants.

Contrary to the Defendants' arguments, Plaintiffs' Tenth Claim for Relief establishes municipal liability as to the City of Henderson and the City of North Las Vegas for Plaintiffs' § 1983 claims.  Moreover, the Defendants' blanket assertions that Plaintiffs have failed to state any constitutional claims is completely unsubstantiated and utterly meritless.

#### 1.    Plaintiffs' Claims For Municipal Liability Against The City Of Henderson And The City Of North Las Vegas Are Sufficiently Pled And Not Subject To Dismissal.

Plaintiffs' Tenth Claim for Relief asserts § 1983 claims against the City of Henderson and the City of North Las Vegas based on municipal liability.[142]  In order to impose municipal liability under § 1983 for violation of a plaintiffs' constitutional rights, the plaintiff must show "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and,

---

[140] <u>Freeman v. City Of Santa Ana</u>, 68 F.3d 1180, 1189 (9th Cir. Cal. 1995) (citing <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc) and <u>Cline v. Brusett</u>, 661 F.2d 108, 112 (9th Cir. 1981)).

[141] <u>See</u> <u>also</u> n.118, <u>supra</u>, and accompanying text.

[142] <u>See</u> CR 3, ¶¶179-89.

45

1   (4) that the policy is the 'moving force behind the constitutional violation.'"[143]

2   The term "policy" "generally implies a course of action consciously chosen

3   from among various alternatives."[144]  Liability is imposed on a municipality for

4   injuries resulting from such a choice, if a Constitutional deprivation was "visited

5   pursuant to governmental 'custom' even though such a custom has not received

6   formal approval through the body's official decision-making channels."[145]  A policy is

7   a "moving force" behind a violation where an appropriate policy could have

8   prevented the violation.[146]  Municipal liability is also established by showing the

9   violation is the product of inadequate training or failure to train on the part of the

10  municipality,[147] or showing that there was a failure to supervise that is "sufficiently

11  inadequate"[148].

12  Once a municipal policy is established, "it requires only one application [...] to

13  satisfy fully Monell's requirement that a municipal corporation be held liable only

14  for constitution violations resulting from the municipality's official policy."[149]

15  "If...officials know or should know of the particular vulnerability, then the

16  Fourteenth Amendment imposes on them an obligation not to act with reckless

17  _____

18  [143] Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.

19  1992) (quoting City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)); see also
    Pembaur v. City of Cincinnati, 475 U.S. 469, 480-82 & n.10 (1986); Monell v. Dep't

20  of Social Services, 436 U.S. 658, 694 (1978).

21  [144] City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985).

22  [145] Monell, 436 U.S. at 690-91 (1978).

23  [146] See Banks v. Clark County, 2010 U.S. Dist. LEXIS 32671, *8 (D. Nev. Apr.
    2, 2010) (citing Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1194 (9th Cir.

24  2002) (citing Amos v. City of Page, 257 F.3d 1086, 1094 (9th Cir. 2001)).

25  [147] See City of Canton, 489 U.S. at 389-90.

26  [148] Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989).

27  [149] Oklahoma City v. Tuttle, 471 U.S. 808, 822 (1985).

28

46

1  indifference to that vulnerability."[150]

2      The Defendants argue that Plaintiffs failed to state a claim for municipal

3  liability.[151]  Their arguments lack merit.

4      Ironically, Defendants cite to Dougherty and accuse Plaintiffs of "formulaic

5  recitations" which they characterize as "inadequate," and make the false assertion

6  that Plaintiffs "merely alleg[e] that the CITY OF HENDERSON developed and

7  maintained 'policies and / or customs.'"[152]  In addition, Defendants assert that

8  "nowhere do Plaintiffs allege that a purported custom, practice, or policy of the CITY

9  OF HENDERSON was the 'moving force' behind the constitutional violations alleged

10  by them."  These assertions are completely false and also show that it is the

11  Defendants who rely on formulaic recitations, not the Plaintiffs.  Contrary to the

12  Defendants' assertions, Dougherty actually demonstrates why dismissal is

13  inappropriate.

14      In Dougherty, the Ninth Circuit held dismissal was appropriate when the

15  plaintiff alleged simply "(1) 'Defendant CITY's policies and/or customs caused the

16  specific violations of Plaintiff's constitutional rights at issue in this case[ ]' and (2)

17  'Defendant CITY's polices and/or customs were the moving force and/or affirmative

18  link behind the violation of the Plaintiff's constitutional rights and injury, damage

19  and/or harm caused thereby.'"[153]

20      Plaintiffs have gone far beyond the minimalist allegations in Dougherty, and

21  _____

22      [150] Redmen v. County of San Diego, 942 F.2d 1435 (9th Cir. 1991) (quoting

23  Colburn v. Upper Darby Township, 838 F.2d 663, 669 (3rd Cir. 1988), cert. denied,

24  489 U.S. 1065 (1989)).

    [151] See Motion at 17:12-20 (citing Dougherty v. City of Covina, 654 F.3d 892,
25  900-901 (9th Cir. 2011)).

26      [152] Id.

27      [153] 654 F.3d at 900.

28
                                    47

have satisfied all elements necessary to maintain municipal liability against the City of Henderson and the City of Las Vegas:

179.  Plaintiffs hereby repeat, reallege, and incorporate by reference paragraphs 1-178 as though fully restated herein.

180. Prior to the events of June 10th, 2011, the the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS **developed and maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of United States citizens, which caused the violations of Plaintiffs' rights**.

181. **The actions of the Defendants herein resulted from and were taken from a de facto policy of the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS** which is implemented by the police officers, attorneys and employees, agents, servants and contractors of HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS. **This de facto policy includes, without limitation**:

    a.    Summarily violating the constitutional rights of individuals and punishing person who refused to obey police orders, whether lawful or not, by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution;

    b.    Searching homes and ordering citizens to leave their homes without warrant, probable cause, or legal justification;

    c.    Summarily violating the constitutional rights of individuals and punishing persons—by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution—who exercise their First Amendment right to express their legal rights and remedies, express their opinion about police conduct, photograph police activities and conduct, and disseminate and intend to disseminate information about police conduct to the news media;

    d.    Summarily punishing persons in an unlawful manner without corroborating information, probable cause, legal excuse and / or rightful authority of law by means of unlawful detention, arrest, search, assault, battery,

excessive force and malicious prosecution; and

e.    Covering up, refusing to investigate, and misrepresenting facts concerning allegations or cases of police misconduct.

182. The existence of the de facto policy described in paragraph 181 has been known to supervisory and policy-making officers and officials of the HPD and the NLVPD for a substantial period of time.

184. Despite their knowledge of the said illegal policy and practices, the supervisory and policy-making officials of the HPD, **the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS, as a matter of policy, have not taken steps to terminate said practices or investigate them, have not disciplined or otherwise properly supervised individual police officers and attorneys who engaged in said practices, have not effectively trained or supervised police officers** and attorneys with regard to the proper constitutional and statutory limits on the exercise of their authority, **and have instead sanctioned the policy and practices described in paragraph 181 through their deliberate indifference to the effect of said policy and practices upon the constitutional rights of the residents of and visitors to the CITY OF HENDERSON, the CITY OF NORTH LAS VEGAS, and the County of Clark.**

185. **The foregoing acts, omissions, and systematic failures are customs and policies** of the the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS **and caused the named Defendants and Defendant DOES to believe** that determination of the right to detain, search, compel removal from a home, use force and the amount of allowable legal force, punish individuals for exercising their First Amendment rights of expression, and file false criminal complaints and without probable cause of a crime being committed was within their discretion, and that complaints of illegal detainment, search, arrest, removal from a home, punishment, use of excessive force, and filing false criminal complaints without probable cause **would not be honestly or properly investigated, with the foreseeable result that these Defendants would be likely to illegally detain, search, arrest, punish, compel removal from homes, use excessive force and make false criminal complaints without probable cause.**

49

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**186. The above-described polices and/or customs demonstrate a deliberate indifference on the part of Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS to the Constitutional rights of United States citizens, and were the cause of the violations of Plaintiffs' rights alleged herein**.

**187.   As a direct and proximate result of the aforesaid acts, omissions, policies and customs of the the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS, Plaintiffs were improperly and illegally detained, searched, arrested, forcibly removed from their homes, punished for their lawful expression protected under the First amendment and maliciously prosecuted**.[154]

Perhaps most important, on or about August 1, 2013, representatives of the City of Henderson and the HPD made statements that the constitutional violations carried out against the Plaintiffs were based on their protected expression and conduct of photographing the officers misconduct, demonstrating the existence of an approved policy and custom of retaliation for First Amendment expression.[155]

The above provisions incorporate Plaintiffs' extensive allegations that they possessed constitutional rights whose deprivation is complained of in the First through Ninth Claims for relief and supported by the extensive facts set forth in the Common Allegations of the first amended complaint.[156]  Plaintiffs have alleged the existence of the City of Henderson's and City of North Las Vegas's policies / customs exhibiting deliberate indifference to the Constitutional rights which caused the violations of Plaintiffs' rights, and spelled out the policies / customs in excruciating detail and alleged that they were known to supervisory and policy making officials

---

[154] See CR 3, ¶¶179, 180, 181, 182, 184, 185, 186 (emphasis added).

[155] See id., ¶183.

[156] See n.55, supra; see also Sections IV(E)(2)(b)(ii, iii, iv), infra.

for a long time who sanctioned them, failed to correct them, and failed to properly supervise, train or discipline officers.[157]  Plaintiffs have alleged that "these polices and / or customs were the cause of the violations of Plaintiffs' rights."[158]  This latter quotation puts the lie to Defendants' assertion that Plaintiffs somehow failed to alleged that the policies / customs were the "moving force" behind the constitutional violations.

Courts have rejected and distinguished <u>Dougherty</u> in cases where the allegations were far more limited than those at issue here, and have refused to dismiss municipal liability claims on far sparser facts.[159]  Plaintiffs have set forth sufficient facts to establish the City of Henderson's and the City of North Las Vegas's municipal liability under § 1983.

Defendants also argue that <u>Monell</u> bars Plaintiffs' Tenth Claim for Relief to the extent recovery is sought under Section 1983 on a theory of respondeat superior liability.[160]  This argument is misleading, fails, and is premature.

First, the respondeat superior claim referred to by the Defendants is Plaintiffs' Twenty-First Claim for Relief.[161]  This is a state law claim, not a § 1983 claim.  State law respondeat superior claims are not subject to dismissal based on <u>Monell</u>.[162]

---

[157] <u>See</u> CR 3, ¶¶180, 181, 184, 185, 186.

[158] <u>Id</u>., ¶¶ 186, 187, 180.

[159] <u>See</u>, <u>e.g.</u>, <u>Aguilar v. City of S. Gate</u>, 2013 U.S. Dist. LEXIS 10611, *12 (C.D. Cal. Jan. 25, 2013) (distinguishing <u>Dougherty</u>); <u>see also</u> <u>Silva v. City & County of Honolulu</u>, 2012 U.S. Dist. LEXIS 155311, *17-19 (D. Haw. Oct. 29, 2012).

[160] <u>See</u> Motion at 17:21-18:3.

[161] <u>See</u> <u>id</u>. at 17:22 (citing first amended complaint, ¶¶ 257-61, Plaintiffs' state law respondeat superior claim).

[162] <u>See</u>, <u>e.g.</u>, <u>Nelson v. County of Sacramento</u>, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013) ("While respondeat superior is an improper basis for imposing liability under § 1983, <u>see</u> <u>Monell</u>, 436 U.S. at 692-94, it remains a valid basis for a state law

Respondeat superior liability can indeed be imposed in a § 1983 case as long as there is a state law imposing such liability.[163]  Because Nevada law permits respondeat superior claims against police, such claims are appropriate even in a federal § 1983 case.[164]  The operative analysis then hinges on whether the entity has discretionary function immunity under Nevada law.[165]  As discussed in Section IV(M), infra, the

claim."); Alexander v. City & County of Honolulu, 545 F. Supp. 2d 1122, 1136 (D. Haw. 2008) ("The City and County argue that this claim should be dismissed because 'the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims.' . . . .  Because Plaintiff has alleged separate state law claims, the court rejects this argument."); Tokuhama v. Honolulu, 751 F. Supp. 1385, 1394 (D. Haw. 1989) (citing Raysor v. Port Authority, 768 F.2d 34 (2d Cir. 1985) (upholding pendent state law respondeat superior claims despite dismissal of similar claims also made under § 1983); Silva v. City & County of Honolulu, 2012 U.S. Dist. LEXIS 155311, *13-14, 16 (D. Haw. Oct. 29, 2012) (dismissing plaintiff's § 1983 respondeat superior claims but retaining the respondeat superior state law claims.); Hansen v. Nieves, 2010 U.S. Dist. LEXIS 80063, *16 (D. Nev. Aug. 6, 2010); Potts v. City of Seattle, 2009 U.S. Dist. LEXIS 75708, *43 (W.D. Wash. Aug. 24, 2009) ("In contrast to Mr. Potts' § 1983 claims, liability for Mr. Potts' state law claims may properly be imposed on the City under the doctrine of respondeat superior.")

[163] Kritenbrink v. Crawford, 457 F. Supp. 2d 1139, 1144-1145 (D. Nev. 2006) (quoting Redman v. County of San Diego, 942 F.2d 1453, 1446 (9th Cir. 1991)) ("In a section 1983 action in this circuit, respondeat superior, or vicarious liability, may not be imposed in the absence of a state law imposing such liability.")

[164] Hansen, 2010 U.S. Dist. LEXIS 80063 at *16 ("Nevada permits for respondeat superior liability against a municipality such as Metro in a state law claim."); see also Yellow Cab of Reno v. Second Judicial Dist. Court of Nev., 262 P.3d 699, 704 (Nev. 2011) (discussing state law respondeat superior claims); Asap Storage, Inc. v. City of Sparks, 173 P.3d 734, 745 (Nev. 2007) ("a municipality like the City is generally deemed vicariously liable for its employees' acts that occur within the course and scope of employment"); Hughey v. Washoe County, 73 Nev. 22, 23, 306 P.2d 1115, 1115 (1957) (applying the respondeat superior doctrine to a government entity).

[165] See, e.g., Hansen, 2010 U.S. Dist. LEXIS 80063 at *16; Asap Storage, 173 P.3d at 745.

52

Defendants are not entitled to any such immunity because their actions violated the Constitution, they acted in bad faith, and failed to exercise ordinary care.[166] Because Plaintiffs' respondeat superior claim in its Twenty-First Claim for Relief is a state law respondeat superior claim, it is not subject to dismissal as Defendants suggest.

Moreover, whether an employee was acting within the scope of their employment for purposes of respondeat superior liability is generally a question for the trier of fact, making this issue inappropriate at the motion to dismiss stage.[167]

> ### 2. Plaintiffs Have Asserted Viable Claims Of Deprivation Of Their First, Third, Fourth, Fifth, And Fourteenth Amendment Rights, And Dismissal Of These Claims Would Be Wholly Premature Without Plaintiffs Having An Opportunity For Discovery.

Plaintiffs' First through Tenth Claims for Relief asserts that Defendants are liable under § 1983 for the violation of Plaintiffs' constitutional rights protected under the First, Third, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and that the City of Henderson and the City of North Las Vegas are subject to municipal liability regarding these claims.

In Section E of Defendants' Motion, they argue that Plaintiffs have failed to state § 1983 claims based on the asserted violations of the Fourteenth amendment.[168]  However, within this section, they also make blanket assertions that Plaintiffs have failed to state a § 1983 claim for *any constitutional rights*

---

[166] See, e.g., Barber v. Williams, 2013 U.S. Dist. LEXIS 111912, 20-21 (D. Nev. July 8, 2013) (citing state and federal cases)

[167] National Convenience Stores, Inc. v. Fantauzzi, 584 P.2d 689, 692 (Nev. 1978)..

[168] See Motion at 18-28.

53

*whatsoever.*[169]  While such a blanket assertion is vague to a degree as to be unintelligible, in an abundance of caution, Section IV(E)(2)(b), infra, sets forth the reasons why Plaintiffs' constitutional claims under the First, Third, Fourth, Fifth and Fourteenth Amendments are not subject to dismissal in a comprehensive fashion. As already discussed in Section IV(E)(1), supra, Plaintiffs have set forth the policy, custom and other conduct of the City of Henderson and the City of North Las Vegas in great detail sufficient to establish their exposure to municipal liability for Plaintiffs' § 1983 claims.  Moreover, the facts set forth in the Common Allegations in paragraphs 20 through 104 the first amended complaint more than suffice to support the various constitutional violations complained of in Plaintiffs' First through Ninth Claims for Relief.  The specific allegations relating to these claims are summarized in note 55, supra, are addressed in detail in Sections IV(E)(2)(b)(ii, iii, iv), infra, and are more than sufficient to carry Plaintiffs' First through Ninth Claims for relief past the motion to dismiss stage.

> . . .

> . . .

> . . .

---

[169] See Motion at 18:16-23 ("The scant allegations against the HENDERSON DEFENDANTS in the First Amended Complaint demonstrate that no constitutional right of any kind has been infringed by them [sic] HENDERSON DEFENDANTS in this case . . . . Plaintiffs provide no factual allegations which support a Section 1983 claim against the HENDERSON DEFENDANTS, individually or collectively, which would establish any violation of their rights guaranteed by the United States Constitution."); see also id. at 15:27-16:2 (no constitutional deprivation has been stated against any CITY OF HENDERSON employee. Plaintiffs do not identify even a single action taken by any of CITY OF HENDERSON employee pursuant to a custom, policy, or practice of the CITY OF HENDERSON that has resulted in a constitutional tort. The Court therefore should summarily dismiss this claim, along with the other claims set forth in the First Amended Complaint, as a matter of law.") see also CR 23 at 3 (North Las Vegas Joinder).

54

### a. Plaintiffs State Viable Claims Based On Violation Of The Third Amendment For Which The City Of Henderson And The City Of North Las Vegas Are Liable.

Plaintiffs' Seventh Claim for Relief asserts that Michael's and Linda's rights were violated by the quartering of Defendant Doe officers 21-30 in their home.[170] Defendant Doe police officers carried out an unlawful and warrantless entry into and search of Michael and Linda's home, and unlawfully and forcibly removed Linda from her home without her consent.[171]  At some point after this, Defendant Doe officers, 21-30, without warrant, permission, or legal justification, searched and occupied their house, used its facilities including food and water, and left it in disarray.[172]  Contrary to their feigned ignorance as to the contents of this claim, the Defendants specifically identify the precise conduct that it is based on.[173]  In response, the Defendants argue that this use of the house by police officers cannot constitute a Third Amendment violation.[174]  This argument lacks merit.

. . .

. . .

. . .

---

[170] See CR 3, ¶¶ 152-57.

[171] Id., ¶¶68-72.

[172] Id., ¶¶ 73, 152-54.

[173] Compare Motion at 19:11-14 (complaining of the Defendants being placed in "the untenable position of having to speculate about the unstated basis for Plaintiffs' ill-defined Section 1983 claim premised on a purported violation of the Third Amendment") with id. at 22:19-21 (addressing Plaintiffs' allegations that Defendants entered and occupied Linda and Michael's house and "left doors open, drank water, deposited disposable plastic cups in a trashcan, and left condiments on the floor.")

[174] See Motion at 19:19-22:27.

55

The Third Amendment assures a fundamental constitutional right to privacy.[175]  The Supreme Court has gone so far as to hold that its protections require that no *civilian*—which goes beyond any solder or law enforcement officer to include a private citizen—can be quartered in a private home without the consent of the owner.[176]  Following this precedent, the Second Circuit in Englblom found that the "Third Amendment is incorporated into the Fourteenth Amendment for application to the states," and found that the gravamen of the claim to be that the lawful occupants of the property were restricted access to it.[177]  The Defendants fail to address Griswold or Block or the overarching facts of Englblom.  The unlawful removal of Linda from Linda and Michael's house by Defendant Doe officers 21-30—who at the very *least* are civilians under Block—and the officers' subsequent occupation of the house constitutes a viable claim that Michael and Linda's Third Amendment rights were violated.  The City of Henderson and the City of North Las Vegas bear liability for this claim, for Plaintiffs have alleged that this conduct

---

[175] Griswold v. Connecticut, 381 U.S. 479, 484 (1965) ("Various guarantees create zones of privacy. . . .  The Third Amendment in its prohibition against the quartering of soldiers "in any house" in time of peace without the consent of the owner is another facet of that privacy."); Katz v. United States, 389 U.S. 347, 351 n.5 (1967) (The Third Amendment's prohibition against the unconsented peacetime quartering of soldiers protects another aspect of privacy from governmental intrusion."); Poe v. Ullman, 367 U.S. 497 (1961), at 549 (Harlan, J., dissenting) (same), at 552 (Douglas, J., dissenting) (same).

[176] Block v. Hirsh, 256 U.S. 135 (1921) (citing Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 156 (1919) and Mitchell v. Harmony, 54 U.S. 115, 134, 135 (1851) ("And it is not going too far to say that there is also a plain implication in this Amendment that no civilian shall be quartered in any house in time of either peace or war, without the consent of the owner.")

[177] Englblom v. Carey, 677 F.2d 957, 961 (2nd Cir. 1982); see also id. at 960 ("appellants and other employees . . . were repeatedly denied access to the administration building" and individuals "who lived in staff housing were thus also denied access to their apartments.")

1  resulted from their policies and customs.[178]

2      The Defendants' argument that the allegations of this claim refer to Doe

3  defendants is unavailing.[179]  As already discussed, the Defendants seeks to

4  improperly ignore Plaintiffs' properly pled Doe Defendants who could be either HPD

5  or NLVPD officers. [180]  Discovery will identify the perpetrators named as Doe

6  defendants, and Plaintiffs will seek amendment at that time.

7      In addition, the Defendants' argument that the Doe officers were not in the

8  residence for a sufficient time to constitute a Third Amendment violation is

9  meritless.  The unpublished Maine district court opinion they rely is not only non-

10  precedential, but ignores and fails to address the Supreme Court's holdings in

11  Griswold and Block, as well as Engblom's explicit determination that the Third

12  Amendment is specifically applicable to the states via the Fourteenth Amendment

13  and its affirmative finding that such claims are actionable under § 1983.[181]  Absent

14  from Defendants' argument is any binding Supreme Court authority or any circuit

15  authority addressing the Third Amendment establishing an explicit time limit as to

16  how long a property must be unlawfully cleared and occupied in order to constitute a

17  Third Amendment violation.

18      . . .

19

---

20      [178] See CR 3, ¶¶179, 181 (noting that the actions complained of in the first

21  amended complaint resulted from the City of Henderson's and City of North Las

22  Vegas's policy and custom, and including a non-exhaustive list of the element of this
policy including the forced and unlawful removal of citizens from their homes,

23  incorporating the allegations of Third Amendment violations set forth in the
Seventh Claim for Relief).

24

25      [179] See Motion at 22:10-16.

26      [180] See Sections  IV(B), supra; see also n.55, supra, and accompanying text.

27      [181] See Motion at 20:8-21:4 (citing Estate of Bennett v. Wainwright, No. 06-
28-P-S, 2007 WL 1576744 (D. Me. May 30, 2007)).

28

57

The Defendants' argument as to Anthony Mitchell in relation to the Third Amendment is inapposite.[182]  Plaintiffs make no claim that his Third Amendment rights were violated.

Plaintiffs have pled a viable Third Amendment violation claim that is not subject to dismissal.

      **b.**      **Plaintiffs State Viable Claims Based On Violation Of The Fourteenth Amendment For Which The City Of Henderson And The City Of North Las Vegas Are Liable, And The Related And / Or Underlying Claims for Violation Of The First, Third, Fourth, And Fifth Amendments Are Not Subject To Dismissal.**

Plaintiffs' First Amendment retaliation claims, the standards governing them, and some of the reasons why they are not subject to dismissal are addressed in detail in Section IV(C), <u>supra</u>.

Plaintiffs' First, Fourth and Fifth / Fourteenth Amendment-based malicious prosecution claims claims, the standards governing them, and some of the reasons why they are not subject to dismissal are are addressed in detail in Section IV(D), <u>supra</u>.

Plaintiffs Third Amendment claims, the standards governing them, and some of the reasons why they are not subject to dismissal are are addressed in detail in Section IV(E)(2)(a), <u>supra</u>.

The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure."[183] An arrest made without a warrant requires a showing of probable cause.[184]  An arrest

---

[182] <u>See</u> Motion at 21:5-22:9.

[183] U.S. Const. Amend. IV.

[184] <u>Gilker v. Baker</u>, 576 F.2d 245, 246 (9th Cir. 2001).

made without probable cause or other justification provides the basis for a claim of unlawful arrest under § 1983 as a violation of the Fourth Amendment.[185]  The plaintiff bears the burden of proof on the issue of unlawful arrest, which can be satisfied by showing that the arrest was conducted without a valid warrant.[186]  If the arrest was warrantless, the burden then shifts to the defendant to provide some evidence that the arresting officer(s) had probable cause for a warrantless arrest.[187]

Excessive force claims invoke the protections of the Fourth Amendment and are judged under its reasonableness standard.[188]  The court must examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[189]

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."[190] This Clause clothes individuals with the right to both substantive and procedural due process.[191]

The substantive aspect of the Due Process Clause of the Fourteenth Amendment protects individuals against state action that either "'shocks the

_____

[185] Dubner v. City of San Francisco, 266 F.3d 959 (9th Cir. 2001).

[186] Id. at 965.

[187] Id.

[188] Graham v. Connor, 490 U.S. 386, 394 (1989).

[189] Id.

[190] U.S. Const. amend. XIV, § 1.

[191] United States v. Salerno, 481 U.S. 739, 746 (1987) (analyzing the Due Process Clause of the Fifth Amendment); see also Haywood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

59

conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"[192] The Fifth Amendment is itself in part the source of the substantive due process guaranteed by the Fourteenth Amendment.[193]

Procedural due process requires that the government's deprivation of life, liberty, or property, even if consistent with substantive due process, "be implemented in a fair manner."[194] To state a procedural due process claim under § 1983 Plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."[195]  Moreover, in addition to any other available damages available when actual injury is demonstrated, the denial of procedural due process is actionable for nominal damages without proof of actual injury.[196]

A liberty interest is deemed fundamental, and therefore protected by the Fourteenth Amendment, if it is 'deeply rooted in the Nation's history and tradition."[197]

. . .

---

[192] Salerno, 481 U.S. at 746 (quoting Rochin v. California, 342 U.S. 165 (1952) and Palko v. Connecticut, 302 U.S. 319, 325-326 (1937)).

[193] See Chavez v. Martinez, 538 U.S. 760, 788 (2003) (Stevens, J., concurring) ("By its terms, the Fifth Amendment itself has no application to the States.  It is, however, one source of the protections against state actions that deprive individuals of rights 'implicit in the concept of ordered liberty' that the Fourteenth Amendment guarantees.")

[194] Salerno at 746 (internal quotation marks and citation omitted).

[195] Portman v. County of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1992); see also Bd. of Regents of State Colleges v. Roth, 408 U.S. 564 (1972); McRorie v. Shimoda, 795 F.2d 780, 786 (9th Cir. 1986).

[196] Carey v. Piphus, 435 U.S. 247, 266-267 (1978).

[197] Moore v. East Cleveland, 431 U.S. 494, 503 (1977).

1    The Plaintiffs' Fourteenth Amendment rights were violated in several ways.

2    First, Anthony, Linda and Michael were arrested without probable cause.  Arrest

3    without probable cause is a Fourth and Fourteenth Amendment due process

4    violation actionable under § 1983.[198]  Second, Anthony and Michael were punished

5    and / or beaten without due process, which constitutes a Fourth and Fourteenth

6    Amendment due process violation.[199]  Third, Anthony and Michael were subjected to

7    deliberate indifference to their serious medical needs, which constitute a Fourteenth

8    Amendment due process violation.[200]  Fourth, Michael's right to travel and move

9

10

11   _____

12   [198] See Beauregard v. Wingard, 230 F. Supp. 167, 185 (S.D. Cal. 1964) (citing
     Meyer v. Nebraska, 262 U.S. 390, 399 (1923) ("There can be no question that a
13   person is deprived of his liberty when he is arrested, and also when he is
     imprisoned. . . . There is no question that an arrest by State officers without warrant,
14   without probable cause, not with a purpose of enforcing the law, but with an ulterior
     motive, is an arrest without due process . . . [and] a violation of Section 42 U.S.C.A.
15   § 1983.")

16   [199] See Grinage v. Leyba, 2007 U.S. Dist. LEXIS 99600, *10-11 (D. Nev. Dec.
17   12, 2007) (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); and Bell v.
     Wolfish, 441 U.S. 520, 535-39 (1979) (relying on this decades-old clearly established
18   law to hold that "The Due Process Clause, however, protects a pretrial detainee from
     the use of excessive force that amounts to punishment."); see also Low v. Stanton,
19   2009 U.S. Dist. LEXIS 14840, *11-16 (E.D. Cal. Feb. 25, 2009) (citing the clearly
20   established law set forth in Pierce v. Multnomah County, Or., 76 F.3d 1032, 1042
     (9th Cir. 1996) and in Graham, 490 U.S. at 395 n.10); see also Grinage v. Leyba, No.
21   2:06-CV-0835-RLH-GWF, 2008 U.S. Dist. LEXIS 5025, 2008 WL 199720, at *5 (D.
     Nev. Jan. 17, 2008) ("comparing substantive Due Process and Eighth Amendment
22   cases and concluding that '[u]nder a similar due process analysis, evidence **that
23   detention officers engaged in an unprovoked and unjustified beating of a
24   pretrial detainee would be sufficient to violate the Due Process Clause
     even though the plaintiff's injuries may not be considered significant or
25   serious**.'") (Emphasis added).

26   [200] See Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002)
27   (quoting Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)) ("[w]ith regard to

28

1  about freely was violated, another Fourteenth Amendment due process violation.[201]

2  Fifth, the malicious prosecution of Anthony and Michael constituted a violation of

3  the Fourteenth Amendment.

### i.   The Defendants' Arguments Concerning Inadequate Training Are Meritless And Premature.

6    The Defendants argue that Plaintiffs have failed to alleged "plausible facts

7  demonstrating that training was sufficiently inadequate as to constitute 'deliberate

8  indifference'" to Plaintiffs' individual rights, and argue that Plaintiffs must, at this

9  stage, demonstrate actual causation between the inadequate training and the

---

medical needs, the [D]ue [P]rocess [C]lause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" Id.

[201] See CR 3, ¶¶172, 173 (asserting deprivation of this right as part of Anthony's and Michael's § 1983 malicious prosecution claim); see also Papachristou v. City of Jacksonville, 405 U.S. 156, 164 (1972) (the right to travel is "historically part of the amenities of life as we have known them."; see also Kolender v. Lawson, 461 U.S. 352, 358 (1983) (recognizing "the constitutional right to freedom of movement"); Kent v. Dulles, 357 U.S. 116, 126 (1958) (citations omitted) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. . . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads.") United States v. Wheeler, 254 U.S. 281, 293, (1920) ("In all the states from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom . . . ."); Nunez v. City of San Diego, 114 F. 3d 935 (9th Cir. 1997) (applying strict scrutiny and finding curfew/loitering statute in violation of Equal Protection Clause based on violation of right to free movement and travel).

deprivation of rights.[202]  The argument fails for two reasons.

First, the Defendants are simply incorrect.  Plaintiffs have pled the offending policies, customs, acts, omissions, inadequate training and supervision and failure to train, have pled that the inadequate training and supervision was part of the policies and customs, that the municipalities and supervisory personnel were aware of all this and were deliberately indifferent to the unconstitutional effects of the policies, customs and did nothing about it, and that these policies, customs, acts and omissions were the cause of the constitutional violations complained of by the Plaintiffs.[203]  These allegations are sufficient and state a viable claim for municipal liability.

Second, Defendants' reliance on Davis and Herrara is improper at this motion to dismiss stage.  These cases address review of decisions on motions for summary judgment after all parties have had an opportunity for discovery, which has not taken place here.  Plaintiffs have indeed *alleged sufficient facts*, but the Defendants improperly seek to impose a standard that requires presentation of *evidence* to support those facts that cannot be countenanced.  The Defendants seem to imagine that discovery precedes the filing of a complaint.  In fact, Davis concerned the plaintiff's failure to provide *evidence* establishing specific facts.[204]  The Defendants' reference to Herrara for the notion that that Plaintiffs must establish "actual causation" is even more misleading, for the court's reference there to "actual causation" is specific to summary judgment, as the court noted that the plaintiff must "provide evidence from which a reasonable jury could find that there was an

---

[202] See Motion at 23-24 (citing Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) and Herrera v. Las Vegas Metro. Police Dep't, 298 F. Supp. 2d 1043, 1052 (D. Nev. 2004)).

[203] See CR 3, ¶¶ 180-87.

[204] Davis at 1234-35.

63

inadequate training program."[205]  The Defendants are attempting to improperly conflate the standards for summary judgment with those applicable to a motion to dismiss.

### ii. Linda Has Asserted Viable Fourteenth Amendment Claims, As Well As Viable Claims Under The First, Third And Fourth Amendments.

The Defendants argue that Linda fails to assert any Fourteenth Amendment claims or establish municipal liability as to the City of Henderson and the City of North Las Vegas, that Linda has failed to assert any constitutional violations whatsoever, and that the first amended complaint asserts no Fourth Amendment violations.[206]  The Defendants even go so far as to argue that the first amended complaint is "entirely silent" with regard to Fourth Amendment violations, that "Plaintiffs have failed to allege how the HENDERSON DEFENDANTS purportedly infringed their rights under the Fourth Amendment," and that the first amended complaint contains "no allegation that the HENDERSON DEFENDANTS entered Plaintiffs' homes or interacted with Plaintiffs in any way, other than through HPD Officer WORLEY'S innocuous telephone call with ANTHONY MITCHELL, until after the arrest of ANTHONY and MICHAEL MITCHELL"[207]  These arguments lack merit.  Linda has asserted viable claims of violations of her First, Third, Fourth, and Fourteenth Amendment rights.

Plaintiffs' Fifth Claim for Relief asserts that Linda's rights under the Fourth and Fourteenth Amendments were violated when Doe officers 21-30—who could be

---

[205] Herrera at 1052.

[206] See Motion at 24:24-25:22, 27:1-28:2; see also n.169, supra, and accompanying text.

[207] See id. at 27:5-12, 24-27.

either HPD or NLVPD officers—seized and arrested her without warrant, probable cause or legal justification.[208]  Plaintiffs' Sixth Claim for Relief asserts that Linda's rights under the Fourth and Fourteenth Amendments were violated when Doe officers 21-30 entered and searched her person, property and home without permission, warrant, probable cause or legal justification.[209]  Plaintiffs' Seventh Claim for Relief asserts that Linda's rights under the Third and Fourteenth Amendments were violated when Doe officers 21-30 entered into and quartered themselves in her home without consent.[210]  Plaintiffs' First Claim for Relief asserts that this unlawful conduct was carried out in retaliation for Linda photographing the Defendants' misconduct and in retaliation for Michael's and Anthony's protected expression.[211]  The Defendants' assertion that there are no allegations of Linda substantively interacting with the Henderson Defendants or the North Las Vegas Defendants demonstrates the chicanery discussed in Section IV(B), supra, where the Defendants seek to ignore Plaintiffs' properly pled Doe defendants, who could be either HPD or NLVPD officers.

Linda has stated a claim for her First, Third, Fourth and Fourteenth Amendment violations.  Linda, Michael and Anthony had been taking photographs of the misconduct of the Defendant officers, both named and Doe Defendants who

---

[208] See CR 3, ¶¶ 140-45.  The Fourth Amendment of the Constitution is applicable to the States through the Fourteenth Amendment.  Walls v. Las Vegas Metro. Police Dep't, 2013 U.S. Dist. LEXIS 38662, 14-15 (D. Nev. Mar. 19, 2013) (citing Beck v. Ohio, 379 U.S. 89, 90-91 (1964)).

[209] See CR 3, ¶¶ 146-51.

[210] See id., ¶¶ 152-57.  The "Third Amendment is incorporated into the Fourteenth Amendment for application to the states."  Engblom v. Carey, 677 F.2d 957, 961 (2nd Cir. 1982).

[211] See id., ¶¶105-18; see also Section IV(C), supra, and note amendment to paragraph 114 discussed in Section IV(C)(2).

could either be HPD or NLVPD officers, and had engaged in other protected expression witnessed by the officers, who then proceeded to point their loaded weapons at them in retaliation, all while the Defendants were in their homes.[212]  Doe police officers 21-30—who could have been either HPD or NLVPD officers—then unlawfully entered her house without permission, warrant or legal justification, Doe officer 21 physically seized and arrested Linda and forcibly removed her from the house and unlawfully seized and searched her purse, and the unlawful seizure and arrest was continued by Doe officer 23 who forcibly dragged her to the command post, all without any explanation.[213]  Then, Doe police officers 21, 22, 24-30 unlawfully searched and occupied her home.[214]  All this was carried out in retaliation for Michael, Linda, and Anthony photographing the Defendant officers and intention to contact the news media, Michael's protected expression, and Linda refusing to grant the Defendants permission to enter her home.[215]  There was no probable cause or exigent circumstances for the arrest of Linda or the search of her person or home: at no time did Linda commit any crime and there was no basis to

---

[212] See CR 3, ¶27 (Anthony yelling to Defendant officers to turn off their siren), ¶28 (Does 1-40 seeing or aware of the Defendants photographing the officers), ¶¶29-31, 36, 46, 47 (Does 1-10 as pointing their loaded firearms at the Defendants and their homes, Anthony giving middle finger gesture to Doe officer 2 for pointing his loaded firearm directly at him), ¶¶33, 34 (Doe 1 pointing loaded firearm at Anthony), ¶35 (Anthony expressing to Defendant Worley his legal rights to not allow the police in his home), ¶¶38-47 (Defendants aware Anthony and Michael contacting Fox 5 Vegas KVVU), ¶47 (Does 1-10 and Waller, Cawthorn, Worley conspiring to unlawfully enter Anthony's home and unlawfully arrest him based on the protected expression).

[213] See id., ¶¶69-74, 98-104, 141-42.

[214] Id., ¶¶71, 73, 147.

[215] Id., ¶ 28, 25-35, 36, 45-47, 69-75, 106-118 (note proposed amendment to paragraph 114 discussed in Section IV(C)(2), supra.)

believe that she had, she was unarmed, made no threats of crime or violence, did not pose a threat to the safety of any person or property, no one had any basis to believe that Linda was a threat to person or property, there was no legal basis to enter her home without a warrant, to detain her, or to arrest her, and no permission was ever given to enter her home.[216]

Linda's arrest was not a mere temporary investigative detention: the officers were unlawfully in Linda's home without warrant, permission or legal justification from the outset, there was no reasonable basis for suspicion of criminal activity, and she was arrested physically dragged away by them against her will.[217]  The Defendants' behavior shocked the conscience, was intended to harm Linda, there was no legitimate law enforcement objective involved, and no urgency or safety issue at work as the Defendants imply, resulting in a prima facie Fourteenth Amendment violation.[218]  These violations are in addition to the obvious First, Third and Fourth

_____

[216] Id., ¶¶68-71, 74, 98-104.

[217] Florida v. Royer, 460 U.S. 491, 500 (1983); see also United States v. Holzman, 871 F.2d 1496, 1501 (9th Cir. 1989); United States v. Sokolow, 490 U.S. 1, 7 (1989).

[218] See Motion at 23:13-18 (citing Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).  The instant case is distinguished from Porter and the case upon which it relies, County of Sacramento v. Lewis, 523 U.S. 833 (1998), which involved high speed car chases involving fleeing suspects believed to have committed a crime where split-second decision making was involved.  Moreover, application of Porter is premature to the degree that the Defendants are asserting that exigent circumstances justify their conduct.  The question of whether Defendants can avail themselves of a claim of exigent circumstances can at best be determined if Defendants manage to produce facts supporting their position during deposition and discovery.  For the instant motion to dismiss, the Plaintiffs' allegations stand, and establish that no exigent circumstances existed, and certainly not based on the mere occurrence of a domestic violence call in the neighborhood (see Motion at 25:28-26:3) such as would allow the Defendants to enter the Plaintiffs' homes and carry out the warrantless arrest, search, seizure and excessive force as took place

1   Amendment violations perpetrated against Linda based on her patently unlawful
2   detention and arrest, the unlawful search of her home, purse, and person, and the
3   occupation of her house, all of which were done in retaliation for protected
4   expression by the Plaintiffs.  Representatives of the Henderson Defendants made
5   public statements on August 1, 2013 demonstrating that they condoned and
6   supported the Defendants' retaliatory conduct based on "using provocative language
7   against police officers," and explained the reason for their entry into Linda and
8   Michael's home as "to remove the occupants from continuing to do their activities,"
9   presumably their protected expression of photographing the police misconduct.[219]

10      The Defendants' specific arguments that this unlawful invasion of Linda's
11   home and her subsequent arrest by the Doe officers does not violate the Fourteenth
12   Amendment cannot be taken seriously.[220]  Their assertion that the Defendant
13   officers' conduct cannot be deemed to shock the conscience because they had no
14   contact with Linda prior to July 10, 2011 is nonsensical, and their assertions that
15   they did not know or ever interact with Linda is also false.[221]  One need not have had
16   a prior contact with a person to carry out conduct towards them that shocks the
17   conscience.  The allegations specific to Doe officers 21-30 shock the conscience
18
19   here.  **The Defendants are taking the position that if police are**
20   **responding to a call, they have the right to break into any home in the**
21   **neighborhood, take it over, search it, and physically abuse the**
22   **homeowners as they please.**  This simply cannot be countenanced or taken
23   seriously.  Contrary to the Defendants' implication, the mere existence of a police
     investigation or execution of legal process does not excuse their First, Third, Fourth,
24   Fifth, and Fourteenth Amendment violations.  See n.418, infra, and accompanying
     text; see also Section IV(K)(4), infra.
25      [219] See CR 3, ¶183.
26      [220] See Motion at 24:24-25:12.
27      [221] See id. at 25:7-9.
28
                                    68

regardless of when they occurred.[222]  The Defendants' assertion that they had no personal animus towards Linda is contrary to the facts alleged and irrelevant.[223] Personal animus per se is not a necessary element to the Fourteenth Amendment violations alleged.[224]  Nevertheless, the Defendants' assertion of lack of personal animus towards Linda is false: their personal and retaliatory animus is set forth in detail in Section IV(C), supra, and is evident based on the fact that Linda, Anthony and Michael were taking photographs of the Defendant officers beginning early that morning and the officers knew it, that the offices were pointing their loaded firearms at them when they looked at them out their windows in retaliation for this photographing, that they had used a ruse to get Michael out of the house to make sure he could not take any more photographs, that Anthony yelled to the officers to shut the siren off, gave them the middle finger gesture, and asserted his legal right to refuse the Defendants' request to enter and take over his house without a warrant, and that Linda refused the officers permission to enter her house.[225]

Moreover, contrary to the Defendants' assertions, Plaintiffs have alleged that the above constitutional deprivations were caused by the policy, custom or practice of the City of Henderson and the City of North Las Vegas.[226]  Plaintiffs alleged facts showing that that the above constitutional violations against Linda were based on and a direct result of the municipalities' policy and custom of: punishing person who refused to obey police orders (here, Linda's refusal to allow them to enter her home) by means of unlawful arrest and detention; searching homes and ordering citizens

---

[222] See notes 212-16, supra, and accompanying text.

[223] Id.

[224] See notes 192-95, supra, and accompanying text.

[225] See CR 3, ¶¶ 28, 29, 31, 33, 45, 75, 76, 106,

[226] See Motion at 25:9-12.

(here, Linda) to leave their homes without warrant, probable cause or legal justification; violating constitutional rights in retaliation for First Amendment expression including photographing police conduct and activities (as Linda did) and expressing their legal rights (as Linda did in refusing Defendants permission to enter her home); summarily punishing persons in an unlawful manner without corroborating information, probable cause, legal excuse and / or rightful authority of law by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution (as was done to Linda); and that these policies and customs were the cause of the constitutional violations.[227]  The Defendants' argument and their reference to <u>Herrera</u> also fail for the same reasons set forth in Section IV(E)(2)(b)(i), <u>supra</u>.

The Defendants' argument that Linda failed to state a claim under the Fourteenth Amendment is meritless, as is their argument that the City of Henderson or the City of North Las Vegas are not subject to municipal liability for these claims. To the degree the Defendants are arguing that Linda fails to state a claim under the First, Third, or Fourth Amendments, or that there is no municipal liability associated with these violations, the argument it is likewise meritless.

        **iii.**    **Michael Has Asserted Viable Fourteenth Amendment Claims, As Well As Viable Claims Under The First, Third, Fourth And Fifth Amendments.**

The Defendants argue that Michael fails to assert any Fourteenth Amendment claims or establish municipal liability as to the City of Henderson and the City of North Las Vegas, that Michael has failed to assert any constitutional violations whatsoever, and that the first amended complaint asserts no Fourth Amendment

---

[227] <u>See</u> CR 3, ¶¶ 181(a, b, c, d), 181-87.

violations.[228]  These arguments lack merit.

Plaintiffs' Fourth Claim for Relief asserts that Michael's rights under the Fourth and Fourteenth Amendments were violated by Doe police officers 31-35—who could be either HPD or NLVPD officers—seized and arrested Michael without warrant, probable cause or legal justification.[229]  Plaintiffs' Sixth Claim for Relief asserts that Michael's rights under Fourth and Fourteenth Amendments were violated when Doe officers 21-30—who could be either City of Henderson or City of North Las Vegas officers—entered and searched his home and vehicle without permission, warrant, probable cause or legal justification.[230]  Plaintiffs' Seventh Claim for Relief asserts that Michael's rights under the Third and Fourteenth Amendments were violated when Doe officers 21-30 entered into and quartered themselves in his home without consent.[231]  Plaintiffs' Eighth Claim for Relief asserts that Michael's rights under Fourth, Fifth and Fourteenth Amendments were violated when Doe officers 31-35 punished him as a pretrial detainee and denied treatment for his serious medical needs by locking him in an excruciatingly hot police vehicle without ventilation.[232]  Plaintiffs' Ninth Claim for Relief asserts that Michael's constitutional rights were violated when the Defendants maliciously prosecuted him in First, Fourth, and Fifth Amendment-based claims.[233]  Plaintiffs' First Claim for Relief asserts that the above unlawful conduct was carried out in retaliation for

_____

[228] See Motion at 25:23-26:13, 27:1-28:2; see also n.169, supra, and accompanying text.

[229] See CR 3, ¶¶ 134-39.

[230] See id., ¶¶ 146-51.

[231] See id., ¶¶ 152-57.

[232] See id., ¶¶ 158, 160, 165-70.

[233] See id., ¶¶ 171-78.

Michael photographing the Defendants' misconduct and in retaliation for the protected expression of Linda and Anthony.[234]  The Defendants' assertion that there are no allegations of Michael substantively interacting with the Henderson Defendants or the City of North Las Vegas Defendants demonstrates the same chicanery discussed in Section IV(B), supra, where the Defendants seek to improperly ignore Plaintiffs' properly pled Doe Defendants who could be either HPD or NLVPD officers.

Michael has stated a claim for his First, Third, Fourth, Fifth and Fourteenth Amendment violations.  Linda, Michael and Anthony had been taking photographs of the misconduct of the Defendant officers, both named and Doe Defendants who could either be HPD or NLVPD officers, and had engaged in other protected expression witnessed by the officers, who then proceeded to point their loaded weapons at them in retaliation, all while the Defendants were in their homes.[235]  Doe police officers 11-20 then entered the back yard of Michael's and Linda's residence without permission.[236]  Using a ruse that they wanted Michael's assistance to negotiate a surrender of a suspect who lived in the neighborhood (Mr. White), Michael reluctantly followed the officers to the HPD command center; their real objective was to curtail his ability to photograph the officer's conduct.[237]  After being told he could not return to his home, he left the command center and headed to the exit of the neighborhood.[238]  An individual in an HPD car told him his wife "had left

---

[234] See id., ¶¶106-108, 113-16, 105-118.

[235] See n.212, supra, and accompanying text.  25-36, 38-47.

[236] See CR 3, ¶¶ 68.

[237] Id., ¶ 75.

[238] Id., ¶76.

the house"[239] and that she would meet him at the HPD command center.  Michael headed back to the HPD command center and met his wife, and when he attempted to leave the command center to meet his son James, he was arrested and handcuffed by Doe police officer 31 without probable cause or legal justification and placed in an unmarked police car.[240]

Michael was then punished by being placed in the rear of an extremely hot vehicle, and with deliberate indifference to his serious medical needs. After suffering from and complaining about the oppressive and life-threatening heat to Doe police officers 31-35, he was purposely not given air conditioning, and had to prepare to kick the vehicle door open before one of the officers rolled down the windows.[241] While this was going on, Defendant Doe officers 21-30 unlawfully entered Michael's house without permission, warrant or legal justification, and Doe police officers 21, 22, 24-30 unlawfully searched his vehicle and occupied his home.[242]  There was no probable cause or exigent circumstances to justify the unlawful arrest of Michael and the unlawful search of his home and vehicle.[243]

Sometime later, Defendants Walter, Worley, Cawthorn and Defendant Doe officers 38-45 (who could be either HPD or NLVPD officers)—with specific intent to violate Michael's constitutional rights—caused Michael to be jailed, filed police reports containing knowingly false statements, and caused a criminal complaint to issue against him knowing that there was no probable cause to initiate criminal

---

[239] In fact, Linda had been unlawfully arrested and taken from their home as described in Section IV(E)(2)(b)(ii),supra.

[240] See CR 3, ¶¶77-80, 98-104.

[241] See id., ¶¶81, 82.

[242] Id., ¶¶69-74, 147.

[243] Id., ¶ 74, 79, 93, 98-104.

73

proceedings against him.[244]  Michael was transported to the Henderson Detention Center and booked on a charge of Obstructing an Officer, where he was detained for at least nine hours and required to pay a bond to secure his release from custody.[245] Sometime later, Defendant Reyes-Speer willfully, knowingly, and with malice and specific intent to deprive Michael of a host of constitutional rights filed a criminal complaint against Michael knowing that the criminal complaint contained false statements, that Michael had committed no crime, and that there was no probable cause to initiate criminal proceedings against him.[246] All charges against Michael were eventually dismissed with prejudice by the City of  Henderson.[247]

All of this was carried out in retaliation for Michael, Linda, and Anthony photographing the Defendant officers and intent to contact the news media, Anthony's other protected expression, and Linda refusing to grant the Defendants permission to enter her home.[248]  At no time did Michael commit any crime, he was unarmed, made no threats of crime of violence, did not pose a threat to the safety of any person or property, and no one had any basis to believe that Michael was a threat to person or property, and there was no legal basis to enter his home without a warrant, to detain him, or to arrest him, and no permission was ever given to enter his home.[249]

. . .

---

[244] Id., ¶¶83, 89-104, 172-75.

[245] Id., ¶83.

[246] Id., ¶93, 173.

[247] Id., ¶95, 175.

[248] Id., ¶¶28, 25-36, 38-47, 69-75, 106-118 (note proposed amendment to paragraph 114 discussed in Section IV(C)(2), supra.)

[249] Id., ¶¶98-104.

The Defendants' behavior shocks the conscience and was intended to harm Michael and there was no legitimate law enforcement objective involved, no urgency or safety issue at work as the Defendants imply by their reference to a domestic violence call, resulting in a prima facie Fourteenth Amendment violation. [250]  This shocking conduct in violation of the Fourteenth Amendment is in addition to the First, Third, Fourth and Fifth Amendment violations perpetrated against Michael based on his patently unlawful detention and arrest, the unlawful search of and occupation of his home, and the punishment of Michael and the deliberate indifference to his serious medical needs by being place in the hot vehicle and denied air conditioning, all carried out in retaliation for the protected expression of Michael, Anthony and Linda.

Defendants' specific arguments as to the alleged absence of a Fourteenth Amendment violation all fail.[251]  First, their assertion that Plaintiffs do not allege that Michael had contact with Defendants prior to his arrest is false and inapposite. As noted above, the Defendant Doe police officers whose conduct prior to Michael's arrest is specifically described could be HPD or NLVPD officers, and discovery will uncover their identities.[252]  In addition, there are allegations specific to HPD officers Walter and Worley, NLVPD officer Cawthorn, Reyes-Speer, and Doe officers 1-45, which equally shock the conscience regardless of when they occurred.[253]  Prior contact is not a necessary prerequisite for conduct that shocks the conscience for a Fourteenth Amendment violation.  Also, the Defendants' animus and retaliatory conduct is described in detail in Section IV(C), supra, and stems from events

---

[250] See n.218, supra.

[251] See Motion at 25:25-26:13.

[252] See notes 235-40, supra, and accompanying text.

[253] See notes 235-49, supra, and accompanying text.

beginning with the Plaintiffs photographing the police misconduct and Anthony's other protected expression beginning early that morning long before the arrest. Second, the Defendants' reliance on <u>Porter</u> is inapposite, incorrect, and premature as discussed in note 219, <u>supra</u>.  Third, the Defendants' reference to Michael voluntarily leaving the house—the result of a ruse designed to impede his protected conduct of photographing the police misconduct—is irrelevant to his claims of unlawful arrest, the unlawful search of his home,  the unlawful quartering of the Defendants in his home, the deliberate indifference to his medical needs, and his punishment at the hands of Defendants, much of which was in retaliation for his protected expression.  Fourth, the Defendants' reliance on <u>Baker</u> for the notion that "the Fourteenth Amendment does not guarantee that only the guilty will be arrested" is misleading and inapposite.[254]  The instant case is not one of mistaken identity based on a *valid warrant* as in <u>Baker</u>, a case where an individual was deprived of his liberty with the deprivation being accomplished via due process. This is a case where an individual was knowingly and maliciously arrested with absolutely no probable cause or suspicion of having committed any crime, based purely on retaliatory motive knowing that he indeed committed no crime.[255] Michael had no due process whatsoever.  Fifth, as elaborated immediately below, the assertion that there is no nexus between Michael's constitutional torts and the Defendants' policies and customs is meritless.

_____

[254] <u>See</u> Motion at 26:6-8 (citing <u>Baker v. McCollan</u>, 443 U.S. 137 (1979)).

[255] <u>See</u>, <u>e.g.</u>, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 683-684 (9th Cir. Cal. 2001) (quoting <u>Cannon v. Macon County</u>, 1 F.3d 1558, 1563 (11th Cir. 1993) ("a detainee has "a constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release.") (citing <u>Sivard v. Pulaski County</u>, 959 F.2d 662, 668 (7th Cir. 1992)) (holding that the continued detention of the plaintiff where the sheriff knew it was wrongful states a claim under § 1983 for a due process violation).

Contrary to the Defendants' assertions, Plaintiffs have alleged that the above constitutional deprivations were caused by the policy, custom or practice of the City of Henderson and the City of North Las Vegas.[256]  Plaintiffs alleged facts showing that that the above constitutional violations against Michael were based on the municipalities' policy and custom of: entering and searching (Michael's) home without warrant, probable cause, permission or legal justification; violating constitutional rights in retaliation for First Amendment expression including photographing police conduct and activities (as Michael did); summarily punishing persons in an unlawful manner without corroborating information, probable cause, legal excuse and / or rightful authority of law by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution (as was done to Michael); and that these policies and customs were the cause of the constitutional violations.[257]  The Defendants' argument and their reference to Herrera also fail for the same reasons set forth in Section IV(E)(2)(b)(i), supra.  Finally, the Defendants' reference to a domestic violence call in the neighborhood and their inapposite reference to Porter cannot be taken seriously.[258]  The Defendants are asserting that police officers have the right to break into any home, take it over, search it, and physically abuse the homeowners as they please as long as police are responding to a call in the neighborhood.

The Defendants' argument that Michael failed to state a claim under the Fourteenth Amendment is meritless, as is their argument that the City of Henderson or the City of North Las Vegas are not subject to municipal liability for these claims. To the degree the Defendants are arguing that Michael fails to state a claim under

---

[256] See Motion at 26:8-11.

[257] See CR 3, ¶¶181(b, c, d), 181-87.

[258] See n.218, supra.

77

1  the First, Third, Fourth or Fifth Amendments, or that there is no municipal liability

2  associated with these violations, the arguments are likewise meritless.

3              **iv.    Anthony Has Asserted Viable Fourteenth**

4                      **Amendment Claims, As Well As Viable**

5                      **Claims Under The First, Fourth And Fifth**

              **Amendments.**

6          The Defendants argue that Anthony fails to assert any Fourteenth

7  Amendment claims or establish municipal liability as to the City of Henderson and

8  the City of North Las Vegas, that Anthony has failed to assert any constitutional

9  violations whatsoever, and that the first amended complaint asserts no Fourth

10 Amendment violations.[259]  These arguments lack merit.

11         Plaintiffs' Second Claim for Relief asserts that Anthony's rights under the

12 Fourth and Fourteenth Amendments were violated when NLVPD Officers Waller,

13 Albers, Cawthorn, Rockwell, Snyder, and Doe police officers 1-10—who could be

14 either HPD or NLVPD officers—seized and arrested Anthony in his home and

15 enterer into and searched his home and vehicle without warrant, permission,

16 probable cause or legal justification.[260]  Plaintiffs' Third Claim for Relief asserts that

17 Anthony's rights under Fourth and Fourteenth Amendments were violated when

18 Officers Waller, Albers, Cawthorn, Rockwell, Snyder, and Doe police officers 1-10—

19 who could be either HPD or NLVPD officer—battered and used excessive force

20 against Anthony.[261]  Plaintiffs' Eighth Claim for Relief asserts that Anthony's rights

21 under the Fourth, Fifth and Fourteenth Amendments were violated when Doe

22 officers 1-10 subjected him to unjustified, unnecessary, wanton and unreasonable

23

24

25         [259] See Motion at 26:14-27, 27:1-28:2; see also notes 169, supra, and
   accompanying text.

26         [260] See CR 3, ¶¶ 119-25.

27         [261] See id., ¶¶ 126-33.

28

                                          78

punishment as a pretrial detainee, and when Doe officers 36 and 37 denied treatment for his serious medical needs by depriving him of his anti-seizure medication.[262]  Plaintiffs' Ninth Claim for Relief asserts that Anthony's constitutional rights were violated when the Defendants maliciously prosecuted him in First, Fourth, and Fifth Amendment-based claims.[263]  Plaintiffs' First Claim for Relief asserts that the above unlawful conduct was carried out in retaliation for Anthony's photographing the Defendants' misconduct, his telling the Defendants to turn off their siren, his giving the Defendant officers the middle finger gesture, his expressing his legal rights to the Defendants, and in retaliation for the protected expression of Linda and Anthony.[264]  The Defendants' assertion that "Plaintiffs have not alleged that the HENDERSON DEFENDANTS participated in the entry and search of ANTHONY MITCHELL'S home, or any of the actions that allegedly preceded his arrest"[265] demonstrates the chicanery discussed in Section IV(B) supra, where the Defendants seek to improperly ignore Plaintiffs' properly pled Doe Defendants, who could be either HPD or NLVPD officers.

Anthony has stated a claim for his First, Fourth, Fifth and Fourteenth Amendment violations.  Linda, Michael and Anthony had been taking photographs of the misconduct of the Defendant officers, both named and Doe Defendants who could either be HPD or NLVPD officers, and had engaged in other protected expression witnessed by the officers, who then proceeded to point their loaded weapons at them in retaliation, all while the Defendants were in their homes.[266]

---

[262] See id., ¶¶ 158, 159, 161-63.

[263] See id., ¶¶ 171-78.

[264] See id., ¶¶106-108, 113-16, 105-118.

[265] See n.210, supra, and accompanying text.

[266] See note 212, supra, and accompanying text.

Anthony yelled at the Defendants to shut off their siren.[267]  Defendant Worley called Anthony at approximately 10:45 a.m. and told him that the police needed to occupy his home to gain a "tactical advantage" against the occupant of a neighboring house, presumably Mr. White.[268]  Anthony responded to the the officer by saying that this was not a time of war where officers were allowed to occupy his home, that he did not want to become involved and that he did not want police to enter his residence.[269]  Worley ignored this explanation and asked Anthony why he did not want to leave his home, to which Anthony responded that he had more rights inside his home than outside.[270]  Worley asked Anthony why he thought that, and again asked Anthony if he would come outside and allow the police to occupy his home.[271]  When Anthony replied in the negative, Worley ended the call.

After this phone call, Anthony observed Doe police officers 1-10—who could have been either HPD or NLVPD officers—pointing their loaded firearms at him whenever he walked in front of his window.[272] Fearing for his life and safety after observing the indiscriminate and reckless manner in which the police officers were handling and pointing their firearms, Anthony donned a protective ballistic vest which he used in his employment as a bail enforcement agent.  Anthony became increasingly concerned about the police misconduct he observed and made effort to contact Fox 5 Vegas KVVU.[273]  Shortly before 11:53 a.m., Anthony was on the

---

[267] See CR3, ¶27

[268] Id., ¶35.

[269] Id.

[270] Id.

[271] Id.

[272] Id., ¶36.

[273] Id., ¶¶37, 38, 40-45.

telephone and stepped in front of his window.  At that time, he once again observed several of Defendant Doe police officers 1-10 pointing their loaded firearms at him through the window.[274] As Anthony walked back and forth in front of his window, he observed Defendant Doe police officer 2—who could be either an HPD or an NLVPD officer—following him in the sights of his loaded firearm through the window. Anthony then photographed the officer through his window and gave the officer a hand gesture with his middle finger, expressing his disapproval of the officer's conduct. The Defendants saw Anthony make this gesture or were informed of him making it.[275]

   After Plaintiff Anthony refused to allow the police to enter his home, after he photographed one or more of Defendant Doe police officers 1-10 pointing their loaded firearms at him, and after giving Defendant DOE police officer 2 the middle finger gesture, the Defendant DOE police officers 1-10, including without limitation Defendants Waller, Cawthorn, and Worley, conspired among themselves to force Anthony out of his residence and to occupy his home for their own use.[276] Cawthorn outlined the plan in his official report:

> It was determined to move to 367 Evening Side and attempt to contact Mitchell. If Mitchell answered the door he would be asked to leave. If he refused to leave he would be arrested for Obstructing a Police Officer. If Mitchell refused to answer the door, force entry would be made and Mitchell would be arrested.[277]

   At approximately 11:52 a.m., Defendant Doe police officers 1-10—who could be either an HPD or an NLVPD officers—including without limitation NLVPD

_____

   [274] Id., ¶46.

   [275] Id.

   [276] Id., ¶47.

   [277] Id.

81

Defendants Waller, Albers, Cawthorn, Rockwell, and Snyder, arrayed themselves in front of Anthony's house and prepared to execute their plan.[278] They banged forcefully on the door and loudly yelled "resident 367 come to the door."  Surprised and perturbed, Plaintiff ANTHONY MITCHELL immediately called his mother, Linda, on the phone, exclaiming to her that the police were beating on his front door.[279]  Seconds later, the Defendant officers smashed open Anthony's front door with a metal ram as Anthony stood in his living room. The Defendant officers made this forceful entry into Anthony's home without a warrant, without probable cause, without any legal justification, and without his permission.[280]

As Anthony stood in shock, the Defendant officers 1-10 aimed their loaded firearms at him and repeatedly shouted obscenities at him and ordered him to lie down on the floor.[281]  Fearing for his life, Anthony dropped his phone and prostrated himself onto the floor of his living room, covering his face with his hands.[282] Addressing Anthony as "asshole," Defendant officers  shouted conflicting orders at Anthony, commanding him both to shut off his phone, which was on the floor in front of his head, and simultaneously commanding him to "crawl" toward the officers.[283]  At no time prior to this moment did any Defendant officer instruct Anthony to turn off his phone or to not use his phone.[284]  Confused and terrified, Anthony remained curled on the floor of his living room, with his hands over his

---

[278] Id., ¶48.

[279] Id., ¶49.

[280] Id., ¶50.

[281] Id., ¶51.

[282] Id., ¶52.

[283] Id., ¶53.

[284] Id.

face, and made no movement.[285] Although Anthony was lying motionless on the ground and posed no threat, Defendant Doe police officers fired multiple "pepperball" rounds at Anthony, and he was struck at least three times by shots fired from close range, injuring him and causing him severe pain.[286]  Linda was talking to Anthony via telephone at the time that officers smashed through Anthony's front door.[287]  Over the telephone, she was able to hear the Defendant Doe officers shouting obscenities and weapons being fired.  While she was screaming her son's name over and over into the phone, one of Defendant DOE officers 1-10 callously hung up the phone.[288]

As Anthony lay incapacitated and in agony on his living room floor, several of the Defendant Doe officers forcefully pressed their knees atop the back of Anthony's neck and body, and roughly and wantonly wrenched his arms behind his back and handcuffed him, all of which was intended to cause and did cause Anthony to suffer further severe pain and distress.[289]  The Defendant officers then roughly and wantonly dragged Anthony out of his residence by his arms, all of which was intended to cause and did cause him pain and humiliation.[290]

. . .

. . .

. . .

. . .

---

[285] Id., ¶54.

[286] Id., ¶¶55.

[287] Id.,

[288] Id., ¶58.

[289] Id., ¶59.

[290] Id., ¶60.

1    Once outside the residence, the Defendant Doe police officers roughly and

2 wantonly slammed Anthony against the exterior of his home, and forcefully pressed

3 his face into the stucco wall, holding him in this painful and humiliating

4 configuration for several minutes.[291] When Anthony begged to be released and

5 pleaded that he was not a threat, the Defendant officers did not relent, but

6 commented that Anthony should have come out of his home when commanded to

7 do so by the police, and continued to press his face against the wall for an additional

8 thirty seconds.[292] All of this conduct was intended to cause and did cause Anthony

9 pain and humiliation.  During this time period, one of the Defendant officers said to

10 Anthony, "you wanna flip us off, huh?", clearly demonstrating that their conduct was

11 in retaliation for Anthony's protected expression.[293] Another Defendant Doe police

12 officer then turned around and told the officer, "shhhh", demonstrating that the

13 officers knew that their retaliatory conduct was unlawful and desired to conceal it.[294]

14    Anthony was then forcibly taken by foot while handcuffed to the HPD

15 command center, where he was eventually arrested.[295]  One of the Defendant Doe

16 police officers then told Anthony that he was under arrest for "Obstructing a Police

17 Officer."[296]  A short time later, Anthony was taken into custody by Defendant Walter.

18 Defendant Doe police officers then swarmed through Anthony's home, searching

19 through his rooms and possessions and moving his furniture, without permission or

20

21 _____

22    [291] Id., ¶61.

23    [292] Id.

24    [293] Id., ¶62.  See, e.g., Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir.
1990) (use of the middle finger toward a police officer is protected speech).

25    [294] Id.

26    [295] Id., ¶63.

27    [296] Id., ¶64.

28

84

a warrant, and then subsequently occupied it and used it as an observation post to surveil the neighboring house at 363 Eveningside Avenue.[297]  Later, Defendant Doe Officers 21-22, 24-20 unlawfully searched a truck owned by Anthony that was parked in Michael's driveway.[298]

There was no probable cause or exigent circumstances to justify the unlawful arrest of Anthony, the excessive force used against him, and unlawful search of his home and vehicle.[299]

Anthony was subsequently transported to the Henderson Detention Center and booked on a charge of Obstructing an Officer, where he was detained for at least nine hours and required to pay a bond to secure his release from custody.[300]  While in custody at the Henderson Detention Center, Anthony informed Defendant Does 36 and 37 that he required seizure medication and asked to receive it as a matter of medical necessity.[301]  Defendant DOES 36 and 37 ignored his request for his seizure medication.[302] Anthony filled out and submitted a prisoner grievance requesting that he be provided his medication or that his brother be allowed to drop it off and it could be provided to him by the facility's staff.[303]  The grievance was ignored, and despite the fact that Anthony's medication was delivered by 4:00 p.m. that afternoon, it was not given to him until after he was released.[304]  The deprivation of

---

[297] Id., ¶67.

[298] Id., ¶74.

[299] Id., ¶50, 74, 92, 98-104.

[300] Id., ¶83.

[301] Id., ¶ 84.

[302] Id., ¶85.

[303] Id., ¶86.

[304] Id., ¶87.

the medication necessary to treat Anthony's medical condition caused him great fear and anxiety that he might have a seizure while in custody.[305]

Defendants Walter, Worley, Cawthorn and Defendant Doe officers 38-45—with specific intent to violate Anthony's constitutional rights—caused him to be jailed, filed police reports containing knowingly false statements, and caused a criminal complaint to issue against him knowing that there was no probable cause to initiate criminal proceedings against him.[306]  Defendant Reyes-Speer willfully, knowingly, and with malice and specific intent to deprive Anthony of a host of constitutional rights filed a criminal complaint against Anthony knowing that the criminal complaint contained false statements, that Anthony committed no crime, and that there was no probable cause to initiate criminal proceedings against him.[307] All charges against Anthony were dismissed with prejudice.[308]  At no time did Anthony commit any crime, was unarmed, made no threats of crime of violence, did not pose a threat to the safety of any person or property, and no one had any basis to believe that Anthony was a threat to person or property, and there was no legal basis to enter his home without a warrant, to detain him, or to arrest him, and no permission was ever given to enter his home.[309]

All of the aforementioned conduct was carried out against Anthony in retaliation for Michael, Linda, and Anthony photographing the Defendant officers and intent to contact the news media, Anthony's protected expression in the form of expressing his legal right to not allow the Defendants to take over his home, his

---

[305] Id., ¶88.

[306] Id., ¶¶83, 89-104, 172-75.

[307] Id., ¶¶92, 173.

[308] Id., ¶174.

[309] Id., ¶¶98-104.

yelling to the Defendants to turn off their siren, and his giving the Defendants the middle finger gesture.[310]

The Defendants' behavior shocks the conscience and was intended to harm Anthony and there was no legitimate law enforcement objective involved here, no urgency or safety issue at work as the Defendants imply, resulting in a prima facie Fourteenth Amendment violation.[311]  This shocking conduct in violation of the Fourteenth Amendment is in addition to the obvious First, Fourth and Fifth Amendment violations perpetrated against Anthony based on his patently unlawful detention and arrest, the excessive force use during his arrest, the punishment of Anthony as a pretrial detainee, the unlawful search of and occupation of his home, and the deliberate indifference to his serious medical needs by denying his anti-seizure medication, all carried out in retaliation for the protected expression of Michael, Anthony and Linda.

Defendants' specific arguments as to the alleged absence of a Fourteenth Amendment violation all fail.[312]  They argue that because Plaintiffs do not allege that the Defendants participated in the entry of Anthony's home or the actions preceding his arrest, there is no properly pled municipal liability as to the City of Henderson or the City of North Las Vegas.[313]  Their assertions are false.  Doe Defendants 1-10—who could be either HPD or NLVPD officers—witnessed Anthony's, Linda's and Michael protected expression of photographing the police misconduct, Anthony's yelling to shut the siren off, and his giving the middle finger gesture all before

---

[310] Id., ¶28, 25-36, 38-47, 69-75, 106-118 (note proposed amendment to paragraph discussed in Section IV(C)(2), supra.)

[311] See n.218, supra.

[312] See Motion at 26:14-27.

[313] See id. at 26:18-22.

87

Anthony's arrest, and were pointing loaded weapons at them and carried out the other constitutional torts in retaliation and response to this conduct.[314]  Doe Defendants 1-10—who could be either HPD or NLVPD officers—are specifically alleged to have participated in the unlawful entry into Anthony's home, his arrest, and the use of excessive force against him, as are NLVPD Defendants Waller, Albers, Cawthorn, Rockwell, and Snyder.[315]  Discovery will uncover the identities of Doe officers 1-10.  In addition, the allegations specific Does 36 and 37, officers at the Henderson Detention Center, in depriving Anthony of his anti-seizure medication, shock the conscience, and have been completely ignored by Defendants.  The Defendants' argument and their reference to Herrera also fail for the same reasons set forth in Section IV(E)(2)(b)(i), supra.

Contrary to the Defendants' implications, Plaintiffs have alleged that the above constitutional deprivations were caused by the policy, custom or practice of the City of Henderson and the City of North Las Vegas.  Plaintiffs alleged facts showing that that the above constitutional violations against Anthony were based on the municipalities' policy and custom of: violating the constitutional rights  and punishing of person who refused to obey police orders whether lawful or not, as Anthony did in refusing to allow Defendants to enter his home; entering and searching homes and ordering citizens to leave their home without warrant, probable cause or legal justification; violating constitutional rights in retaliation for First Amendment expression including Anthony's  photographing police conduct, and his protected expression of dissatisfaction with the police's conduct in telling them to shut off their siren, giving them the middle finger gesture, and expressing his legal right to refuse them entry into his home; summarily punishing persons in

---

[314] See notes 266-75, supra, and accompanying text.

[315] See notes 276-99, supra, and accompanying text.

88

an unlawful manner without corroborating information, probable cause, legal excuse and / or rightful authority of law by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution as was done to Anthony; and that these policies and customs were the cause of the constitutional violations.[316]

The Defendants' argument that Anthony failed to state a claim under the Fourteenth Amendment is meritless, as is their argument that the City of Henderson or the City of North Las Vegas are not subject to municipal liability for these claims. To the degree the Defendants are arguing that Anthony fails to state a claim under the First, Fourth or Fifth Amendments, or that there is no municipal liability associated with these violations, the arguments are likewise meritless.

### v.   Plaintiffs Have Alleged Viable Fourth Amendment Claims.

The Defendants argue that Plaintiffs have failed to alleged Fourth Amendment violations.[317]  The argument is mertiless as discussed in Sections IV(E)(2)(b)(ii, iii, iv), <u>supra</u>, and in Sections IV(K)(2)(a, b), <u>infra</u>, in the discussion of qualified immunity where the standards governing the Fourth Amendment protections relating to search, seizure, arrest and use of force and how they were violated are discussed in greater detail.

### F.   Plaintiffs' Eleventh Claim For Relief States A Viable Claim For Conspiracy To Violate Rights Under 42 U.S.C. § 1985(3).

The  Defendants argue that Plaintiffs' claim of conspiracy to violate rights under 42 U.S.C. § 1985(3) is unsustainable  because there are no allegations of discrimination, because they have failed to allege any deprivation of rights under §

---

[316] <u>See</u> CR 3, ¶¶ 181(a, b, c, d), 181-87.

[317] <u>See</u> Motion at 27:1-28:2.

1983, and because the claim is barred by the two-year statute of limitations.[318]

These arguments fail for the following reasons.

The two clauses of 42 U.S.C. § 1985(3) each provide a distinct civil cause of action:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . .

The first clause is known as the "deprivation" clause, while the second clause is known as the "hindrance" clause.  Municipalities are liable under § 1985 based on policy and custom as alleged by Plaintiffs.[319]

The Supreme Court has held that in order to prove a conspiracy under the deprivation clause, a plaintiff must show 1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' actions, and 2) that the conspiracy is aimed at interfering with rights that are protected against private, as well as official, encroachment.[320]  In Griffin v. Breckenridge the Supreme Court noted that Section 1985(3) reaches not only conspiracies under color of state law, but also purely private conspiracies that have an invidiously discriminatory motive.[321]  The term "class" means "something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant

---

[318] See id. at 28:3-29:16.

[319] Vasquez v. Reno, 461 F. Supp. 1098, 1099 (D. Nev. 1978); see CR 3, ¶¶ 179-91.

[320] See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267 (1993).

[321] 403 U.S. 88, 102 (1971).

disfavors."[322]   Rather, the class-based animus requirement demands a purpose behind defendants' conduct that focuses upon the class because of class membership.[323]

The hindrance clause of Section 1985(3) presents a different purpose and standards.   In <u>National Abortion Fed'n v. Operation Rescue</u>, the Ninth Circuit distilled the contradictory opinions in <u>Bray</u> on the hindrance clause as follows:  1) the purpose of the conspiracy must be "to hinder or prevent law enforcement authorities from giving normal police protection to a protected class of persons attempting to exercise a constitutional right"; 2) the victims must be a members of a class, but that class is not limited to constitutionally protected classes; 3) class-based animus is required, "but it can be inferred if the conduct of the conspirators burdens activities that are performed exclusively by members of that class"; and 4) the "right protected against the conspirators' actions must be a constitutional right but it need not be one protected only against private actions."[324]

Notably, the class membership that can substantiate a deprivation clause claim or a hindrance clause claim go far beyond constitutionally protected classes. For example, in <u>Levi v. Safeway</u>, the court assumed for purposes of its analysis that the "poor" constituted a class for the purposes of the deprivation clause, but found that no cause of action was stated because the plaintiff alleged no facts to indicate that his rights were violated because of his membership in the "destitute" class, but rather that the actions taken against him were based on his "panhandling

---

[322] <u>Bray</u> at 269.

[323] <u>Id</u>.

[324] <u>National Abortion Fed'n v. Operation Rescue</u>, 8 F.3d 680, 683-84 (9th Cir. Cal. 1993).

91

behavior."[325]  As the Court in <u>Operation Rescue</u> noted, because the hindrance clause is directed at preventing state law enforcement from protecting activities the deprivation clause leaves for state law enforcement, there is reasonable justification for covering at least all constitutional rights and activities exclusively engaged in by a class determined to be protected under the hindrance clause.[326]  Other courts have found the hindrance clause to apply to cases claiming actions directed at obstruction of law enforcement efforts to prevent the violations complained of.[327]

The Supreme Court has stated that First Amendment violations can create a hindrance clause violation.  The Supreme Court in <u>United Bhd. of Carpenters & Joiners of Am. v. Scott</u> acknowledged that a hindrance clause claim can be based on a conspiracy to infringe First Amendment rights under the deprivation clause as long as it alleged that "the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state."[328]

Here, Plaintiffs have alleged that they were the victims of Defendants' policy and custom of punishing persons who exercise their First Amendment right to

---

[325] 1994 U.S. Dist. LEXIS 18087, *15-16 & n.8 (N.D. Cal. Dec. 12, 1994).

[326] <u>Operation Rescue</u>, 8. F.3d at 685-686.

[327] <u>Taal v. Zwirner</u>, 2004 DNH 54, *17 (D.N.H. 2004) (noting that a hindrance claim would be applicable to a conspiracy to lie to law enforcement authorities in order to interfere with the authorities ability to stop the violations complained of); <u>see also</u> <u>Piacentini v. Levangie</u>, 998 F. Supp. 86, 91 (D. Mass. 1998) ("hindrance clause . . . applies to conspiracies aimed at obstructing law enforcement efforts").

[328] 463 U.S. 825, 830(1983); <u>see</u> <u>also</u> <u>id</u>. at 833 (Where "the right claimed to have been infringed . . . restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the state was somehow involved in or affected by the conspiracy."); <u>accord</u> <u>Alexis v. McDonald's Restaurants of Massachusetts, Inc.</u>, 67 F.3d 341, 351 (1st Cir. 1995) ("To state a valid cause of action under 42 U.S.C. § 1983, a plaintiff must show that she was deprived of a secured right by a person acting on behalf of (or in concert with) state officials.)

express their legal rights, express their opinion about police conduct, photograph police conduct, and disseminate information about police conduct to the news media.[329]   Linda, Michael, and Anthony were the victims of these policies and customs that are directly targeted at their First Amendment protected expression of photographing the officers, and Anthony additionally was victimized based on his protected expression of his legal right to refuse police permission to enter his home and his protected expression of his dissatisfaction with the police conduct in the form of yelling at the police to turn off their siren and giving them the middle finger gesture when they repeatedly pointed their loaded weapons at him in his house. The Plaintiffs' participation in protected expression that is specifically targeted by the Defendants' policy directed at individuals engaged in First Amendment protected expression suffices as "class" membership under either the deprivation or hindrance clauses.

More important, the Defendants' policy and custom targeting of Plaintiffs' First Amendment protected expression is a substantive hindrance clause claim in its own right.  It is undisputed that the Defendants were acting under color of state law. [330]  Therefore, Plaintiffs have asserted a viable §1985(3) claim.

The Defendants' assertions that Plaintiffs have failed to assert any valid §1983 claim is mertiless.[331]   As discussed in Sections IV(A)-(E), _supra_, Plaintiffs' §1983 claims are viable.

The Defendants' assertion that Plaintiffs' § 1985(3) claim is barred by the statute of limitation is meritless as already discussed in Section IV(A), _supra_.

. . .

---

[329] _See_ CR 3, ¶181(c), 185, 179-87, 191(h).

[330] _United Bhd. of Carpenters & Joiners of Am.,_ 463 U.S. at  830.

[331] _See_ Motion at 28:24-29:2.

**G.    Plaintiffs' Twelfth Claim For Relief States A Viable Claim For Neglect To Prevent A Conspiracy To Violate Civil Rights Under 42 U.S.C. § 1986.**

The Defendants argue that Plaintiffs' Twelfth Claim for Relief is unsustainable because  there was no viable § 1985(3) claim, and because it is barred by § 1986's one-year statute of limitation.  These arguments fail.

As discussed in Section IV(F), <u>supra</u>, Plaintiffs have stated a viable claim for relief under § 1985(3).

As discussed in Section IV(A)(2), <u>supra</u>, Plaintiffs' § 1986 claim is timely based on equitable tolling.

**H.    Plaintiffs' State Law Claims Are Not Barred By Any Alleged Failure To Present A Claim Under NRS 41.036(2).**

The Defendants argue that Plaintiffs' state law claims are subject to dismissal because they allegedly were required to and failed to comply with NRS 41.036(2).[332] The argument fails.

**1.    The NLVPD And The HPD Are Not Political Subdivisions And Plaintiffs Were Therefore Not Required To Comply With NRS 41.036(2) In Relation To Them.**

As the Defendants correctly note, NRS 41.036(2) states:

Each person who has a claim against any political subdivision of the State arising out of a tort must file the claim within 2 years after the time the cause of action accrues with the governing body of that political subdivision.

In turn, NRS 41.0305 defines "political subdivision" as:

an organization that was officially designated as a community action agency pursuant to 42 U.S.C. § 2790 before that section was repealed and is included in the definition of an "eligible entity" pursuant to 42 U.S.C. § 9902, the Nevada Rural Housing Authority, an airport authority created by special act of the Legislature, a regional

---

[332] <u>See</u> <u>id</u>. at 30:6-31:28.

1
2
3
4

transportation commission and a fire protection district, irrigation
district, school district, governing body of a charter school, any other
special district that performs a governmental function, even though it
does not exercise general governmental powers, and the governing body
of a university school for profoundly gifted pupils.

5
6

Unfortunately, the Defendants failed to carry out the most basic inquiry:  what
is a political subdivision?  The answer renders their argument meritless.

7
8
9
10

In 1998, Judge Reed determined that sheriffs' departments and police
departments are not political subdivisions under Nevada law because they have no
power under the Nevada Constitution  to tax, receive or disburse funds, enter into
contracts or to delegate power to other agencies:

11
12
13
14
15
16
17
18
19

Nevada defines a political subdivision as a "community action agency"
as defined in the now-repealed 42 U.S.C. § 2790. Nev.Rev.Stat. 41.0305.
42 U.S.C. § 2790, in turn, defined a community action agency as one
with the power to enter into contracts, to receive and administer funds,
and to delegate powers to other agencies. Economic Opportunity
Amendments of 1967, Secs. 210(a)(1) & 212(a), 81 Stat. 691-94 (1967). A
Nevada county falls within this definition, but not a sheriff's
department.  As a practical matter, a judgment against a sheriff's
department is a judgment against the corresponding county. Sheriffs
are constitutional officers, but nothing in either the Nevada
Constitution or the Nevada Revised Statutes gives sheriff's departments
the power to tax or otherwise receive and disburse funds, to enter into
contracts, or to delegate power to other agencies.  Nev.Const. Art. 4, §
32; Nev.Rev. Stat. 248.010.[333]

20
21
22
23

The NLVPD and HPD suffer from the same disabilities and are therefore not
"political subdivisions" under NRS 41.036(2) for the purposes of state law.  This has
been confirmed in many cases in this Court that have subsequently relied on

24
25
26
27
28

[333] Schneider v. Elko County Sheriff's Dep't, 17 F. Supp. 2d 1162, 1164 (D. Nev.
1998).

Schneider.[334]  The cases cited by Defendants—which they cite to imply that NRS 41.036(2) applies to the Las Vegas Metropolitan Police Department—fail to make this searching investigation of what constitutes a political subdivision and therefore are inapposite on the subject.  Thus, because the NLVPD and the HPD are not political subdivisions, Plaintiffs were not obligated to comply with NRS 41.036(2) in relation to their claims against Defendants.

Moreover, as a matter of due process, Plaintiffs cannot have their state law claims dismissed based on NRS 41.036.  This is so because of the rulings in the above cases that police departments are not political subdivisions.  To deny Plaintiffs' state law claims based on failure to comply with NRS 41.036(2)—when this Court's rulings hold that municipal police and sheriffs' departments are not political subdivisions and therefore the statute does not apply to claims against them—would violate Plaintiffs' due process rights.

### 2. Even If NRS 41.036(2) Did Apply To This Case, Plaintiffs Have Substantially Complied With It.

The Defendants argue that Plaintiffs cannot avail themselves of substantial compliance based on the filing of the instant complaint and first amended

---

[334] See, e.g., Garcia v. Elko County Jail, 2012 U.S. Dist. LEXIS 178710, 5-6 (D. Nev. Dec. 17, 2012) (relying on Schneider and using same reasoning to find that the Elko County Jail was not a political subdivision); Wampler v. Carson City Sheriff, 2012 U.S. Dist. LEXIS 108810, 22-23 (D. Nev. Aug. 3, 2012) (ruling that departments of municipal governments such as sheriff's departments are not political subdivisions); Marvik v. Washoe County, 2012 U.S. Dist. LEXIS 95006, 11-12 (D. Nev. Apr. 17, 2012) (finding that Washoe County Sheriff's Department was not a political subdivision); Orth v. Balaam, 2011 U.S. Dist. LEXIS 44534, 13-14 (D. Nev. Feb. 4, 2011) (same); (Ward v. Nevada, No. 3:09-CV-00007, 2010 U.S. Dist. LEXIS 44149 (D. Nev. Feb. 26, 2010) (same, noting that the Sparks Police Department did not constitute a "political subdivision" under Nevada law); see also Shafer v. City of Boulder, 896 F. Supp. 2d 915, 939 (D. Nev. 2012) (citing Wayment v. Holmes, 912 P.2d 816, 819 (Nev. 1996))(ruling that the Boulder City Police Department is not a political subdivision.)

complaint.  The argument is inapposite because—even if NRS 41.036(2) applied here, which is strictly denied—the Plaintiffs sent copies of the original complaint and demand letters to the agencies involved within the two-year statutory period in a manner in which courts in this district have stated are sufficient for substantial compliance.  The Defendants appear to be feigning ignorance of these submissions.

In February 2012, Plaintiffs' former counsel sent a claim to the City of Henderson concerning their claims, and the City of Henderson acknowledged the claims.[335]  In April and May of 2013, the Plaintiffs sent a claim letter along with copies of the original complaint to the NLVPD, the HPD and their respective city attorneys.[336]  These demand letters and original complaint were served on these agencies and their attorneys well within the two-year period beginning July 10, 2011, the date of the events that gave rise to this action.

Under these conditions, this Court has made it clear that substantial compliance with NRS 41.036(2) is acceptable and appropriate.  In the Zaic case cited by Defendants, the court made clear that substantial compliance would be appropriate based on Nevada law "if, for example, Plaintiff actually provided a notice of claim to LVMPD and Defendants thereafter claimed Plaintiff failed to provide notice to the proper person."[337]  This is exactly what took place here: Plaintiffs provided notice of the claims to the HPD and NLVPD.  Zaic's holding is based on importation of Nevada's substantial compliance rulings, which allow for substantial compliance if the notice of the claim is sent to the agency involved rather

---

[335] See Cofer Decl, **Exhibit E**, of which the Court can take judicial notice.  See notes 94, 123, supra.

[336] See id., **Exhibits F-H**, of which the Court can take judicial notice.  See notes 94, 123, supra.

[337] Zaic v. Las Vegas Metro. Police Dep't, 2011 U.S. Dist. LEXIS 24956, 14-15 (D. Nev. Mar. 11, 2011).

than the Board of Examiners.[338]

Because Plaintiffs have substantially complied with NRS 41.036(2) by sending notice of their claims to the NLVPD, HPD, and their attorneys within the two-year limitation period, their state law claims are not subject to dismissal.

### I.   The Untimely Service Of Defendants Chambers And Walls Is Excused Based On Diligence And Good Cause Shown.

The Defendants argue that the claims against Henderson Defendants Chambers and Walls must be dismissed because they were not served within the 120-day period mandated by Rule 4(m) of the Federal Rules of Civil Procedure.[339] The argument lacks merit.

Fed. R. Civ. P. 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Courts have broad discretion to extend the time for service under Rule 4(m) of the Federal Rules of Civil Procedure.[340]  The service period contained in Rule 4(m) "operates not as an outer limit subject to reduction, but as an irreducible allowance."[341]  "On its face, Rule 4(m) does not tie the hands of the district court after the 120-day period has expired. Rather, Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint after that 120-day

---

[338] Id. (citing Washoe Inv., Inc. v. State, 532 P.2d 265, 266-67 (Nev. 1975) for the state law ruling that a plaintiff substantially complied with NRS 41.036(2) by submitted a claim to the relevant agency rather than to the Board of Examiners).

[339] See Motion at 32:1-28.

[340] Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2003).

[341] Henderson v. United States, 517 U.S. 654, 661 (1996).

period."[342]  Moreover, the Advisory Committee Notes to Rule 4(m) state that the rule "authorizes the court to relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown."[343]

Generally, "good cause" exists where the plaintiff has been diligent in his effort to effect service or there are other mitigating circumstances.[344]  Good cause is also found when the failure to complete service in a timely fashion is due to the conduct of a third-person, typically the process server.[345]

The original complaint in this case was filed on July 1, 2013.[346]  The 120 day period set forth under Rule 4(m) ran from that date up to and including October 29, 2013. Defendant Chambers was served on October 31, 2013.[347]  Defendant Walls was personally served on November 1, 2013.[348]  Thus, Chambers was served two days after the expiration of the 120-day period, and Walls was served three days after the expiration of the 120-day period.  The Plaintiffs have good cause to extend the time to serve the Defendants Walls and Chambers based on their diligence and mitigating circumstances outside of their control, including the failure of process servers to serve the summonses and complaints within the time specified by undersigned counsel.

_____

[342] <u>Mann v. American Airlines</u>, 324 F.3d 1088, 1090 (9th Cir. 2003).

[343] <u>See</u> Fed. R. Civ. P. 4(m), Advisory Committee Notes, 1993 Amendments; <u>see</u> <u>also</u> <u>In re Sheehan</u>, 253 F.3d 507, 512-13 (9th Cir. 2001) (A court may excuse untimely service with or without good cause).

[344] <u>See</u> Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u> §1337 (2011).

[345] <u>Id</u>.

[346] <u>See</u> CR 1.

[347] <u>See</u> CR 25-13 at 2.

[348] <u>See</u> CR 25-14.  The Defendants incorrectly state that Walls was served on November 4, 2013.  <u>See</u> Motion at 32:12-13.

On September 15, 2013, the undersigned provided his investigator, Dan Newman, with a copy of the complaint and instructed him to verify the addresses of all Defendants and to make arrangements with a reputable process server to serve the summons and complaint as soon as they were filed.[349]  Mr. Newman employed the services of a reputable local process server, Craig Burton.[350]   On October 17, 2013, Mr. Newman provided the undersigned with an investigative report for each of the Defendants herein, which showed that Defendant Walls was living in Henderson Nevada as of September 30, 2013, and nowhere indicated that Walls was living or ever lived in California.[351]

On Monday, October 21, 2013, the undersigned provided Mr. Newman with a copy of the summons and first amended complaint for each of the Defendants and instructed him to make arrangements to serve them in person and to serve a copy on the Risk Management Division of the NLVPD and the HPD, based on the undersigned's understanding that these divisions routinely accept service of civil process on behalf of defendant officers.[352]  *The undersigned specifically indicated to Mr. Newman that service had to be accomplished by the end of that week, i.e., by October 27, 2013*.[353]  The undersigned further directed Mr. Newman to have service attempted each day until every defendant was served and directed him to have personal service attempted on each defendant even if the police departments purported to accept service.[354]   As discussed below, Mr. Newman and Mr. Burton

---

[349] See Cofer Decl., ¶5.

[350] Id.

[351] Id., ¶¶6-8.

[352] Id., ¶9.

[353] Id.

[354] Id.

100

failed to follow the undersigned's instructions and did not serve Walls and Chambers by October 27, 2013 as instructed.

On Tuesday, October 22, 2013, after initially refusing to accept service, the HPD accepted service on behalf of its officers, including Defendants Walls and Chambers.[355]  However, later that evening, the HPD stated that they had accepted service on Walls by accident because she was no longer employed there as of April 2013.[356]

On October 25, 2013, Mr. Newman indicated that Walls had moved from the address listed on the investigative report as of April 2013, and that Mr. Burton had reported that he identified a forwarding address for Walls in La Mesa, California from the management of her prior residence.[357]  The undersigned instructed Mr. Newman to arrange to have a California process server serve Walls at her California address immediately.[358]  On Monday, October 27, 2013, the undersigned received a letter from Henderson City Attorney Nancy D. Savage indicating that service for Chambers was accepted by the HPD by mistake, and that Mr. Burton had been informed of this fact on October 24, 2013.[359]

Contrary to the undersigned's instructions to serve the Defendants by October 27, 2013, Mr. Burton did not serve Walls until November 1, 2013.[360]  Similarly, Mr. Burton failed to serve Chambers until October 31, 2013.[361]  However, despite the fact

---

[355] Id., ¶10.

[356] Id.

[357] Id., ¶11.

[358] Id., ¶12.

[359] Id., ¶13; see also Cofer Decl., **Exhibit I**.

[360] See CR 25-14.

[361] See CR 25-13 at 2.

101

that Chambers was purportedly not at her Henderson residence from October 25, 2013 to October 30, 2013, when she was served on October 31, 2013, she expressed irritation at being served with the summons and complaint by Mr. Burton and accosted him, stating that "they had already been delivered to the City of Henderson."[362]  Thus, it appears that Chambers had been informed of the service of summons and complaint on the HPD prior to October 31, 2013 and may have been evading service.

Thus, the undersigned was diligent in attempting to serve Walls and Chambers and a short extension of two and three days to the time period under Rule 4(m) as to Chambers and Walls, respectively, is warranted here.

In addition, mitigating circumstances further demonstrate good cause for extending the 120-day time period.  The HPD had actually accepted service for Walls and Chambers on October 22, 2013, but then reversed this position as to Walls on the same day, and also reversed their position as to Chambers days later on October 24, 2013 by informing Mr. Burton of this and did not inform the undersigned of this fact until October 28, 2013, one day before the expiration of the 120-period under Rule 4(m).  Most important, the process servers did not follow the undersigned's instructions to serve Walls and Chambers by October 27, 2013.

The service of Chambers was only two days late, and the service of Walls was only three days late.  Plaintiffs have good cause to extend the time to serve these defendants by these brief periods based on the undersigned's diligence, the failure of his process servers to follow his instructions, and the HPD's confusion as to whether or not it would accept service for these Defendants.[363]  The Court should exercise its

---

[362] Id.

[363] See Wright & Miller, Federal Practice and Procedure: Civil 3d §1337 (2011).

discretion to extend the time to serve these Defendants.[364]

### J.   Plaintiffs Have Sufficiently Alleged Defendant Chambers' Involvement To Make Her Liable As A Supervisor And Policy-Maker.

The Henderson Defendants argue that Plaintiffs have failed to state a § 1983 claim against HPD Chief Defendant Chambers because the first amended complaint does not allege her personal involvement in the constitutional torts at issue.[365]  The Defendants are incorrect.  Notably, the North Las Vegas Defendants make no similar argument as to NLVPD Chief Defendant Chronister, and do not join this argument.[366]

As the Ninth Circuit recently noted, "[w]e have long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them. We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred."[367]  Chambers is liable because of her supervisory liability and because her deliberate indifference deprived Plaintiffs of their constitutional rights.   To be held liable, the supervisor need not be

> "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.  Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous

---

[364] See Mann, 324 F.3d at 1090; Fed. R. Civ. P. 4(m), Advisory Committee Notes, 1993 Amendments; In re Sheehan, 253 F.3d at 512-13.

[365] See Motion at 33:1-25.

[366] See CR 23.

[367] Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. Cal. 2011).

indifference to the rights of others."[368]

Contrary to the Defendants' assertions, Plaintiffs have set forth sufficient allegations as to their supervisory claims against Chambers to survive a motion to dismiss.

The Plaintiffs allege

At all times, Defendant CITY OF HENDERSON possessed the power and authority to **adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the Henderson Police Department** (hereinafter, "HPD") and of its employees, agents, contractors and/or servants. **In this case, Defendant CITY OF HENDERSON acted through** agents, employees, servants, and contractors, including its policymakers, and through **Defendant JUTTA CHAMBERS**.[369]

Paragraphs 179 through 198 of the first amended complaint detail the offending policies at issue and assert that they were the cause of the constitutional violations at issue herein.[370]  The offending policies are "implemented by the police officers, attorneys and employees, agents, servants and contractors," which most certainly include Chambers.[371]  The policies are alleged to have "been known to supervisory and policy-making officers and officials of the HPD and NLVPD for a substantial period of time," which certainly includes Chambers who is explicitly identified as a policy-maker and implementer in paragraph 8 of the first amended complaint.[372]  These supervisory and policy making officers, including Chambers,

---

[368] Starr at 1205-1206 (quoting Larez v. City of Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991)).

[369] See CR 3, ¶8 (emphasis added).

[370] See id., ¶¶181, 180, 185, 186, 179-89.

[371] See id., ¶181.

[372] See id., ¶182.

are alleged to have been aware of the offending policy, failed to take steps to investigate or terminate the practices, failed to discipline offending officers, failed to properly train or supervise them as to the constitutional limits of their exercise of authority, and instead have sanctioned the offending policy via their deliberate indifference.[373]

The Defendants do not deny that Chambers was the Chief of HPD at all times relevant in the first amended complaint.[374]

The multiple constitutional violations set forth in the first amended complaint could not have been carried out absent her knowledge, and the facts clearly demonstrate that the officers at the scene were acting in accordance to a policy, custom, and inadequate training and supervision.  For example, the Defendants' decision to break down Anthony's door and to assault, batter, use excessive force against him and arrest him and search his home and vehicle without a warrant, probable cause or legal justification based on his refusal to comply with their request to let them "use" his home could not be the result of rogue conduct by the officers. That an officer was willing to assert in an official report that this conduct towards Anthony was so motivated demonstrates that it was a result of a policy that Chambers had to be part of.[375]  The same holds true regarding the decision to invade and search Michael's and Linda's home and arrest them without a warrant, permission or probable cause, and their decision to point loaded firearms at the Plaintiffs for no reason beyond them taking photographs of the officers and other protected First Amendment expression.  These violations are "a highly predictable consequence of the failure to train and thereby justif[y] a finding of 'deliberate

---

[373] Id., ¶ 184.

[374] Id., ¶10.

[375] Id., ¶¶47-67.

indifference.'"[376]

These allegations are more than sufficient to withstand a motion to dismiss.  If the Court deems that these references to Chambers by way of her inclusion among these "supervisory and policy-making officials" in paragraph 8 of the first amended complaint is insufficient, Plaintiffs should be permitted to amend the Tenth Claim for Relief to make this correction, which is purely semantic.

### K.    The Defendants Are Not Entitled To Qualified Immunity In Their Individual Capacities.

The Defendants argue that they are entitled to qualified immunity because: (1) they were acting in their official capacities; (2) the Defendants never interacted with Michael or Linda; (3) the only interactions the Defendants had with Anthony prior to his arrest was a telephone call with Henderson Defendant Worley; and (4) the filing of the criminal complaints against Anthony and Michael rendered them immune.  These arguments are inapposite and meritless.

The Defendants' arguments as to official capacity are erroneous and ignore the controlling legal standards.  It should be noted that qualified immunity does not apply to Plaintiffs' state law claims.[377]  Moreover, the North Las Vegas Defendants' joinder to this argument consists of a single sentence, and they make no substantive argument to which Plaintiffs can intelligibly respond, and should be denied qualified immunity based on their failure to make any comprehensible argument for it

---

[376] <u>Board of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 398 (1997); <u>see</u> <u>also</u> <u>Canton</u>, 489 U.S. at 390 ("It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.")

[377] <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1072 (9th Cir. 2009).

106

relating to the North Las Vegas Defendants.[378]  In an abundance of caution, the Plaintiffs nevertheless attempt to tailor their argument below to address this vague argument as best as possible, and reserve the right to elaborate further if the need arises.

### 1.    Legal Standards Governing Qualified Immunity.

To establish liability under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.[379] To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983.[380] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[381]  In ruling on a qualified immunity defense, a court considers whether the facts alleged show the defendant's conduct violated a constitutional right.[382]  In making this determination, the court views the facts alleged in the light most favorable to the party asserting the injury, here, Anthony, Michael, and Linda.[383]  If the plaintiff has alleged the defendant violated a constitutional right, the court then must determine whether that right was clearly established.[384]

---

[378] See CR 23 at 4, Section (I).

[379] Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

[380] Anderson v. Creighton, 483 U.S. 635, 638 (1987).

[381] Malley v. Briggs, 475 U.S. 335, 341 (1986).

[382] Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).

[383] Id.

[384] Id.  Note that under Saucier v. Katz, 533 U.S. 194 (2001), courts previously were required to address whether the plaintiff established a constitutional violation

A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[385]  The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition."[386] An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable.[387] The plaintiff bears the burden of showing that the right at issue was clearly established.[388] But a plaintiff need not establish that a court previously declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful.[389] Additionally, a plaintiff may meet his burden on the clearly established prong by showing the defendant's conduct was "such a far cry from what any reasonable . . . official could have believed was legal that the defendants knew or should have known they were breaking the law."[390]

The Defendants do not dispute that Defendants acted under color of state law. They violated Plaintiffs' clearly established constitutional rights, and are not entitled to qualified immunity.

. . .

. . .

---

before addressing whether the right was clearly established.. However, the <u>Saucier</u> two-step procedure is no longer mandatory, and courts may consider the second step first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

[385] <u>Wilkins v. City of Oakland</u>, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting <u>Saucier</u>, 533 U.S. at 202).

[386] <u>Saucier</u>, 533 U.S. at 200.

[387] <u>Wilkins</u>, 350 F.3d at 955.

[388] <u>Sorrels</u>, 290 F.3d at 969.

[389] <u>Blueford v. Prunty</u>, 108 F.3d 251, 254 (9th Cir. 1997).

[390] <u>Sorrels</u>, 290 F.3d at 971.

108

2.   **The First Amended Complaint Sets Forth Violations Of Clearly Established Law, Stripping Defendants Of Qualified Immunity.**

    a.   **The Defendants Violated Clearly Established Law Concerning Search And Seizure.**

The right to be free from unreasonable search and seizure was clearly established at the time of Defendants' misconduct.[391] The clearly established law governing warrantless search and arrest demands probable cause, which was non-existent in this case.[392] A "seizure" occurs where the officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen."[393] Probable cause exists when officers have "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."[394]

The Fourth Amendment provides a reasonable expectation of privacy in a variety of settings, but the "chief evil" it targets is the "physical entry of the home."[395] Generally, police may not enter a home to arrest a person without an arrest warrant unless exigent circumstances exist.[396] "In [no setting] is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home."[397] "Searches and seizures inside a home without a warrant are

---

[391] <u>Garcia v. Cnty. of Merced</u>, 639 F.3d 1206, 1209 (9th Cir. 2011) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)).

[392] <u>Id</u>.

[393] <u>United States v. Kerr</u>, 817 F.2d 1384, 1386 (9th Cir. Cal. 1987).

[394] <u>Id</u>.

[395] <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 748 (1984) (citation omitted).

[396] <u>See</u> <u>Payton v. New York</u>, 445 U.S. 573, 589 (1980); <u>see also</u>, <u>Welsh</u>, 466 U.S. at 748 (exigent circumstances limited when minor offense committed);

[397] <u>Payton</u>, 445 U.S. at 589.

presumptively unreasonable."[398]  The Fourth Amendment draws "a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."[399]

The exigent circumstances exception is premised on rare situations in which "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."[400]  The Ninth Circuit has defined those situations as (1) the need to prevent physical harm to the officers or other persons, (2) the need to prevent the imminent destruction of relevant evidence, (3) the hot pursuit of a fleeing suspect, and (4) the need to prevent the escape of a suspect.[401]  "The government bears the burden of showing specific and articulable facts to justify the finding of exigent circumstances."[402]

The Defendants do not argue in their arguments regarding qualified immunity that they had any probable cause or exigent circumstances for the unlawful arrest of Anthony, Michael and Linda, and they cannot do so.  Michael was arrested and his and Linda's home and vehicle was searched after meeting his Linda while doing nothing more than walking around; Linda was arrested after police unlawfully

---

[398] Id. at 586.

[399] Id. at 590; see also Bailey v. Newland, 263 F.3d 1022, 1032 (9th Cir. 2001) (noting it is "clearly established Federal law that the warrantless search of a dwelling must be supported by probable cause and the existence of exigent circumstances"); United States v. Struckman, 603 F.3d 731, 738 (9th Cir. 2010) ("the Terry exception to the warrant requirement does not apply to in-home searches and seizures.")

[400] Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (quoting Mincey v. Arizona, 437 U.S. 385, 393-94 (1978)).

[401] See, e.g., Fisher v. City of San Jose, 558 F.3d 1069, 1075 (9th Cir. 2009) (en banc); United States v. Ojeda, 276 F.3d 486, 488 (9th Cir. 2002).

[402] Ojeda, 276 F.3d at 488.

110

invaded her home and dragged her to the HPD Command Center; Anthony was also arrested in his own home and his home and vehicle searched after Defendants forcibly invaded it after Anthony denied their request to enter it and take it over for "tactical advantage."[403]  The absence of probable cause for his arrest is confirmed by the dismissal of the criminal charges against him with prejudice.[404]

The facts show no probable cause or exigent circumstances and Plaintiffs have alleged that Defendants had no warrant, probable cause, or legal justification for the arrests of Anthony, Michael and Linda and that there were no exigent circumstances and these allegations must be taken as true.[405]  Similarly, Defendants do not argue that they had probable cause or exigent circumstances to search the homes, vehicles, persons and belongings of Anthony, Michael and Linda and cannot do so.  The facts show no probable cause or exigent circumstances and Plaintiffs have alleged that these searches were carried out without permission, warrant, probable cause, or legal justification and that there were no exigent circumstances and these allegations must be taken as true.[406]  The Defendants' oblique reference to being on the scene based on a domestic violence call are specifically addressed in Section IV(K)(4), infra.

The Defendants are not entitled to qualified immunity as to Plaintiffs' unlawful search and seizure claims set forth in their Second, Fourth, Fifth, and Sixth Claims for Relief.

. . .

. . .

_____

[403] See CR 3, ¶¶35-37, 46-79, 98-104.

[404] Id, ¶95.

[405] See Sections IV(E)(2)(b)(ii, iii, iv), supra.

[406] Id.

111

1

2

**b.   The Defendants Violated Clearly Established Law
Concerning Excessive Force.**

3

4

5

The right to be free from excessive force was clearly established at the time of the Defendants' misconduct and is based on reasonableness.  The force used here was unreasonable and violates the Fourth Amendment.

6

7

8

9

10

11

12

The Fourth Amendment protects individuals against excessive use of force from government officials.[407]  The Court examines allegations of excessive force under the interpretation of the Fourth Amendment's prohibition on unreasonable seizures.[408]  Under this framework, the Court determines the reasonableness of the force employed by police officers by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[409]

13

14

To determine the nature and quality of the intrusion, the Court first makes an assessment as to the quantum of force.[410]

15

16

17

18

19

To evaluate the government's interest in using force, the Court assesses "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight."[411]  The second factor regarding the safety of officers or others is the most important.[412]  There must be objective factors that

20

_____

21

[407] See U.S. Const. amend. IV.

22

[408] Bryan v. MacPherson, 608 F.3d 614, 619-20 (9th Cir. 2010).

23

24

[409] Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)) (internal quotations omitted); see also Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001).

25

26

[410] Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994); Bryan, 608 F.3d at 620.

[411] Graham, 490 U.S. at 396.

27

[412] Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005).

28

suggest that there is a threat to a person's safety. "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."[413]

Here, the quantum of force was clearly excessive, i.e., breaking down Anthony's front door, invading his home, pointing loaded firearms at him both before and after he was defenseless on the floor, pointing loaded weapons at him before and after his arrest when he was no threat whatsoever, shooting him with pepperballs at close range as he lay defenseless and unarmed on the floor, roughly placing their knees on his back, wrenching his arms, cuffing him, dragging him out of his house by the arms, slamming him against the wall of his house after dragging him outside while cuffed, pressing his face against the stucco wall while cuffed, all with the intent to cause him severe pain and distress.[414] This level of force was excessive under any circumstances.[415] Clearly established law prohibits pointing weapons at unarmed suspects, let alone firing at them.[416] It is clearly established since 2001 that police officers who fire non-lethal rounds at suspects or bystanders who pose no or only minimal risks to themselves or others are not entitled to

---

[413] Deorle, 272 F.3d at 1281.

[414] See Sections IV(E)(2)(b)(iv), supra.

[415] See, e.g., Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir. 1993) (holding that an officer who, during a traffic stop, jerked the plaintiff out of his car, handcuffed him extremely tightly, forcefully shoved him into the back of a patrol car, and refused to loosen his handcuffs was not entitled to qualified immunity because no reasonable officer would have thought this conduct was constitutional); Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (holding that police officers used excessive force when they roughly handcuffed plaintiff Hansen thereby injuring her wrist and arm after she tried to prevent them from collecting evidence and called one of the officers a "son of a bitch").

[416] See Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002)(en banc) (pointing a gun at an unarmed suspect gives rise to an excessive force claim).

qualified immunity.[417]

The Tenth Circuit's observation concerning a case where a lawful warrant was at issue—making the instant case where there was no warrant or probable cause even more unsettling—are *apropos* here:

> Outfitting sheriff's deputies in hooded combat fatigues, arming them with laser-sighted weapons and ordering them to conduct the "dynamic entry" of a private home does not exempt their conduct from Fourth Amendment standards of reasonableness. The "SWAT" designation does not grant license to law enforcement officers to abuse suspects or bystanders, or to vent in an unprofessional manner their own pent-up aggression, personal frustration or animosity toward others. . . .
>
> If anything, the special circumstances and greater risks that warrant "dynamic entry" by a SWAT team call for *more* discipline, control, mindfulness, and restraint on the part of law enforcement, not less. SWAT officers are specially trained and equipped to deal with a variety of difficult situations, including those requiring a swift and overwhelming show of force. At all times, SWAT officers no less than others--dressed in camouflage or not--must keep it clearly in mind that we are *not* at war with our own people.[418]

As to the Defendants' interest in using force, there was none: Anthony was unarmed, lawfully in his home, and there was no danger to the officers or any person or property, and no probable cause that he committed a crime, and Anthony did not resist in any way and was not a flight risk in his own home unarmed surrounded by armed officers, with much of the abuse occurring after Anthony was motionless and helpless on the floor or already cuffed.[419]  Notably, nowhere do Defendants indicate they feared for their safety or that of others or in any other way attempt to justify the excessive force used against Anthony.  The facts supporting these assertions of

---

[417] Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001).

[418] Holland v. Harrington, 268 F.3d 1179, 1194-1195 (10th Cir. Colo. 2001) (emphasis in the original).

[419] See Section IV(E)(2)(b)(iv), supra.

114

1  excessive force have been alleged and must be accepted as true.

2      The Defendants are not entitled to qualified immunity for Plaintiffs' Fourth

3  Amendment excessive force claims set forth in the Third Claim for Relief.

### c.    The Defendants Violated Clearly Established Law Concerning Punishment Of Pretrial Detainees And Deliberate Indifference To Their Serious Medical Needs.

7      The right of pretrial detainees to be free from punishment and deliberate

8  indifference to their serious medical needs were clearly established at the time of

9  Defendants' misconduct.[420]

10     The clearly established law concerning punishment of pretrial detainees and

11 deliberate indifference to their serious medical needs is set forth in detail in Section

12 IV(E)(2)(b), supra.  This law was violated when Anthony was punished as a pretrial

13 detainee based on based on the excessive force used against him (see Section (b)

14 immediately above) and when he was denied his anti-seizure medication in the

15 Henderson Detention Center.[421]  It was also violated when Michael was purposely

16 placed in the life-threatening heat of the police vehicle after his arrest and was

17 refused air conditioning or ventilation.[422] The Defendants fail to address these issues

18 all together in their discussion of qualified immunity.  Defendants are not entitled to

19 qualified immunity as to Plaintiffs' Eighth Claim for Relief concerning their

20 punishment of Anthony and Michael as pretrial detainees and deliberate

_____

[420] City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244-46 (1983) (holding that pretrial detainees possess a constitutional right against deliberate indifference to their serious medical needs because the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"); see also n.200, supra.

[421] See Section IV(E)(2)(b)(iv), supra.

[422] See Section IV(E)(2)(b)(iii), supra.

indifference to their serious medical needs.

### d. The Defendants Violated Clearly Established Law Concerning Retaliation For First Amendment Expression.

The right to be free from First Amendment retaliation by government officials was clearly established at the time of Defendants' misconduct.[423]  The clearly established law concerning First Amendment expression and retaliation by law enforcement in relation to it has already been discussed in detail, and surround the Plaintiffs being retaliated against for photographing the Defendants' misconduct and their intent to disseminate the photographs to the news media, Linda's expressing her legal right to refuse the Defendants entry into her home, Anthony's expressing his legal right to refuse permission to the Defendants to enter and take over his home, and his expression of his dissatisfaction with the Defendant officers' conduct by telling the Defendants to turn off their siren and giving them the middle finger gesture when they were intentionally and recklessly pointing their loaded weapons at him while he was unarmed and inside his own home.[424]  These discussions and facts establish that this clearly established law was violated and that Defendants are not entitled to qualified immunity in relation to it, and the facts alleged must be taken as true.  The Defendants fail to address Plaintiffs' First Amendment retaliation claim (First Claim for Relief) in their discussion of qualified immunity and are not entitled to qualified immunity as to this claim.

. . .

. . .

_____

[423] See United States v. Poocha, 259 F.3d 1077, 1080-82 (9th Cir. 2001); Saranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1319 (9th Cir. 1989).

[424] See section IV(C) and (D)(3)(c), supra; see also notes 58, 199, 293, supra, and accompanying text; see also Sections IV(E)(2)(b)(ii, iii, iv), supra.

116

1

2

### e.    The Defendants Violated Clearly Established Law Concerning The Third Amendment.

3

4     The clearly established law prohibiting peacetime quartering under the Third

Amendment is set forth in Section IV(E)(2)(a), <u>supra</u>.  The Defendants violated this

5

clearly established law, and their discussion of qualified immunity fails to address

6

this issue all together.  The Defendants are not entitled to qualified immunity as to

7

Plaintiffs' Seventh Claim for Relief concerning the Third Amendment violation.

8

### f.    The Defendants Violated Clearly Established Law Based On Their Malicious Prosecution Of Anthony And Michael.

9

10     The right to be free from malicious prosecution by a government official was

11    clearly established at the time of Defendants' misconduct.[425] The clearly established

12    law prohibiting malicious prosecution under the First, Fourth, Fifth and Fourteenth

13    Amendments and related facts is set forth in Section IV(D) and Section

14    IV(E)(2)(b)(ii, iii, iv), <u>supra</u>.  The Defendants violated this clearly established law,

15    and their discussion of qualified immunity fails to address this issue all together

16    beyond asserting that the filing of the criminal complaint somehow immunized the

17    Defendants from the Ninth Claim for Relief.  These arguments are shown to be

18    mertiless in Section IV(D), <u>supra</u>.  The Defendants are not entitled to qualified

19    immunity as to Plaintiffs' Ninth Claim for Relief for malicious prosecution.

20

### 3.    The Defendants' Assertions That They Had No Actionable Interactions With Plaintiffs Are False.

21

22     The Defendants repeat their absurd assertions that Defendants did not have

23    interactions with Michael and Linda, and that the interaction with Anthony was

24    limited to Defendant Worley's phone call.[426]  These false assertions have already

25

26     [425] <u>See</u> <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1066 (9th Cir. 2004); <u>Harris v. Roderick</u>, 126 F.3d 1189, 1198 (9th Cir. 1997).

27     [426] <u>See</u> Motion at 34.

28

been addressed in Section IV(E)(2)(b)(ii, iii, iv) and are based on Defendants ignoring the well-pled Doe officers (see Section IV(B), supra) who could be either NLVPD or HPD officers, and their ignoring of the named Defendants.  The Defendants cannot escape liability and claim qualified immunity based on false assertions that they were not alleged to be present when such allegations are plain on the face of the first amended complaint.

> **4.      The Defendants' Suggestion That They Are Entitled To Qualified Immunity Because They Were In The Neighborhood Responding To A Domestic Violence Call Is Literally Unbelievable.**

The Defendants argue that they are entitled to qualified immunity because they were "on the scene responding to a domestic violence call."[427]  The Defendants' reference to being on the "scene" for a domestic violence call concerning a neighbor that did not even involve Plaintiffs does nothing to establish probable cause or exigent circumstances to excuse the unlawful actions taken against the Plaintiffs.  Moreover, it shows just how far the Defendants have strayed from respecting the protections of the constitution, essentially asserting that police officers have the right to break into any home, take it over, search it, and physically abuse the homeowners as they please as long as police are responding to a call in the neighborhood.[428]  It is disturbing that they Defendants even suggest such thing, but it comes as no surprise in light of the conduct that took place on July 10, 2011.  At the very least, this argument is premature, as the Defendants' citations to cases on summary judgment demonstrates, for the factual contours of exactly what the Defendants knew or did not know such that they could even prove exigent

---

[427] See id. at 34:17-19.

[428] See id. at 34:17-19; see also n.218, supra.

1
2
3

circumstances could only come from depositions or discovery.[429]

### L.    The Court Has Supplemental Jurisdiction Over Plaintiffs' State Law Claims.

The Defendants argue that the Court lacks supplemental jurisdiction over Plaintiffs' state law claims because they presume all of Plaintiffs' § 1983 claims are subject to dismissal, and that the Court is obligated to not exercise supplemental jurisdiction under these circumstances.[430]  These arguments are meritless for two obvious reasons.

First, as discussed in Sections IV(A-K), supra, Plaintiffs' Section 1983 claims are viable and are not subject to dismissal.

Second, dismissal of the federal claims does not automatically deprive the Court of subject matter jurisdiction over the supplemental state law claims.[431] Instead, the Court retains discretion whether to exercise supplemental jurisdiction over the state law claims even after all federal claims are dismissed.[432]  "Where a district court 'dismiss[es] every claim over which it had original jurisdiction,' it retains 'pure[ ] discretion[ ]' in deciding whether to exercise supplemental jurisdiction over the remaining claims."[433]  This Court is perfectly capable of

---

[429] See id. at 34 (citing decisions addressing summary judgment in Somavia v. Las Vegas Metro. Police Dep't, 816 F. Supp. 638, 640-411 (D. Nev. 1993), Herrera v. Las Vegas Metro. Police Dep't, 298 F. Supp. 2d 1043, 1048-49 (D. Nev. 2004), and Lenz v. Winburn, 51 F.3d 1540, 1544-45 (11th Cir. Fla. 1995)).

[430] See id. at 35:5-36:2.

[431] Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 638-41 (2009).

[432] 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

[433] Lacey v. Maricopa County, 693 F.3d 896, 940 (9th Cir. Ariz. 2012) (citing Carlsbad Tech., Inc., 556 U.S. at 639) (superseded on unrelated grounds concerning

addressing Plaintiffs' state law claims should the federal claims be dismissed, and there are a host of cases in this district where the Courts in this district address well-worn state law claims such a Plaintiffs.  Failure to exercise supplemental jurisdiction should the federal claims be dismissed will do nothing more than delay resolution of the issue and prejudice the Plaintiffs by this delay.

### M.   The Defendants Are Not Entitled To State Discretionary Immunity For Plaintiffs' State Law Claims.

The Defendants argue that Plaintiffs' Thirteenth through Twenty-Second state law Claims for Relief should be dismissed based on discretionary immunity, and their primary support of this argument is their assertion that Plaintiffs failed to allege any actionable interactions between them and Plaintiffs.[434]  These arguments are meritless and ignore the controlling law.

Government employees have no "discretion" to violate the Constitutional rights of citizens.[435]

NRS 41.032 sets forth exceptions to Nevada's general waiver of sovereign immunity.  Pursuant to section 41.032(1, 2), no action may be brought against a state officer or employee or any state agency or political subdivision that is "exercising due care, in the execution of a statute or regulation," or "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused."  Nevada looks to federal decisional law on the Federal Tort Claims Act for guidance on what type of conduct

---

2010 amendment to Fed. R. Civ. P. 15, as stated in Hensley v. Bank of N.Y. Mellon, 2013 U.S. Dist. LEXIS 29309, *20-21 (D. Ariz. Mar. 4, 2013)).

[434] See Motion at 36:3-37:17.

[435] See Owen v. City of Independence, Mo., 445 U.S. 622 (1980).

120

1 discretionary immunity protects.[436]

2       To determine whether immunity for a discretionary act applies, Nevada

3 utilizes a two-part test. First, an act is entitled to discretionary immunity if the

4 decision involved an element of individual judgment or choice.[437] Second, the

5 judgment must be "of the kind that the discretionary function exception was

6 designed to shield," which includes actions "based on considerations of social,

7 economic, or political policy."[438]

8       Acts which violate the Constitution are not protected by discretionary

9 immunity under Nevada law.[439] Discretionary immunity does not protect a

10 municipality or officer if they fail to exercise ordinary care in fulfilling their

11 duties.[440] Further, acts taken in bad faith are not protected by discretionary

12 immunity under Nevada law.[441] The touchstone of this bad faith is when an "officer

13 arrests a citizen in an abusive manner not as the result of the exercise of poor

14

_____

15 [436] Jarvis v. City of Mesquite Police Dep't, 2012 U.S. Dist. LEXIS 22800, 13-16
16 (D. Nev. Feb. 23, 2012) (citing Martinez v. Maruszczak, 168 P.3d 720, 727-28 (Nev.
2007)).

17 [437] Martinez, 168 P.3d at 729.

18 [438] Id. at 727-29 (quotations omitted).

19 [439] Jarvis at 13-16 (citing Nurse v. United States, 226 F.3d 996, 1002 (9th Cir.
20 2000); see also id. (quoting Nurse at 1002) ("In general, governmental conduct
cannot be discretionary if it violates a legal mandate."); see also id. (quoting U.S.
21 Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir. 1988)) (stating that
"conduct cannot be discretionary if it violates the Constitution, a statute, or an
22 applicable regulation" because federal officials "do not possess discretion to violate
23 constitutional rights or federal statutes"); see also State v. Lisenbee, 13 P.3d 947
24 (Nev. 2000).

25 [440] Williams v. City of North Las Vegas, 541 P.2d 652 (Nev. 1975); see also
26 Harringan v. City of Reno, 475 P.2d 94 (Nev. 1970).

27 [441] See Falline v. GNLV Corp., 823 P.2d 888, 891 (Nev. 1991); see also Davis v.
City of Las Vegas, 478 F.3d 1048, 1059-60 (9th Cir. 2007).

28

judgment as to the force required to make an arrest, but instead because of hostility toward a suspect . . . or because of a willful or deliberate disregard for the rights of a particular citizen or citizens . . . ."[442]

Under these standards, the Defendants are not entitled to discretionary immunity as to any of Plaintiffs' state law claims.  Plaintiffs' federal claims for unlawful search and seizure, excessive force, punishment and deliberate indifference to their serious medical needs as pretrial detainees, retaliation for First Amendment-protected expression, malicious prosecution, and quartering of soldiers all assert acts that violate the constitution and clearly established law interpreting it.[443]  Plaintiffs' Thirteenth through Twentieth Claims for Relief asserting state law claims for assault, battery, false arrest and imprisonment, negligent and intentional infliction of emotional distress, civil conspiracy, abuse of process, and malicious prosecution are all based on the same facts and circumstances as these constitutional violations and therefore Defendants are not protected by discretionary immunity in relation to them based on the violation of Plaintiffs' constitutional rights.[444]  Likewise, Plaintiffs have alleged that the acts complained of were carried out in retaliation for Plaintiffs' protected First Amendment expression and this demonstrates bad faith that nullifies any discretionary immunity as to Plaintiffs' Thirteenth through Twentieth Claims for Relief.[445]  In addition, Plaintiffs' Thirteenth through Twentieth Claims for Relief were not carried out with exercise of ordinary care and do not invoke discretionary immunity on that basis.

---

[442] Davis at 1060 (emphasis added).

[443] See Section IV(K)(2).

[444] See id.; see also Section IV(E)(2)(b)(ii, iii, iv); CR 3, ¶¶202-56.

[445] See Section IV(C) & Sections IV(E)(2)(b)(ii, iii, iv) supra; see also CR 3, ¶¶114, 105-18.

122

Discretionary immunity does not apply to Plaintiffs' state law respondeat superior claim set forth in their Twenty-First Claim for Relief.[446]  Similarly, because Plaintiffs' Twenty-Second Claim for Relief for negligent hiring, training and supervision is based on a policy of knowingly violating the constitution and condoning and ratifying such violations, the Defendants are not entitled to discretionary immunity as to this claim based on the violation of their constitutional rights.[447]

Finally, Defendants' assertions that they are entitled to discretionary immunity based on a lack of interaction with Plaintiffs is simply false and fail for the same reasons set forth in Section IV(K)(3), supra.  The Doe defendants named in the first amended complaint could be either NLVPD or HPD Defendants, and Henderson and North Las Vegas Defendants are also named throughout the first amended complaint.[448]

The Defendants are not entitled to discretionary immunity for Plaintiffs' state law claims set forth in their Thirteenth through Twenty-Second Claims for Relief.

### N.   Plaintiffs' Seventeenth Claim For Relief For Negligent Infliction Of Emotional Distress Is Not Subject To Dismissal.

The Defendants argue that Plaintiffs' Seventeenth Claim for Relief for negligent infliction of emotion distress should be dismissed because Linda was

---

[446] See Shafer v. City of Boulder, 896 F. Supp. 2d 915, 939 (D. Nev. 2012) (citing Trujillo v. Powell, 2011 U.S. Dist. LEXIS 85140 (D. Nev. Aug. 1, 2011)) ("because respondeat superior is a 'valid theory of liability against a government employer as to common law torts,' it is applicable in the realm of discretionary-function immunity. . . . Under a theory of respondeat superior, Defendants Chase and Dubois' unconstitutional decision to authorize the use of the DHS cameras to conduct a search of Shafer's home can be imputed to their supervisor and the City")

[447] See CR 3, ¶¶ 263-64.

[448] See id., ¶¶ 20-104.

123

allegedly not a "bystander" when she was on the telephone when Anthony as the Defendants broke down his door and shot him, and because the Defendants did not participate in the unlawful entry in to Anthony's home and the excessive forced used against him.[449]  These arguments fail.  It also must be noted that the Defendants do not seek dismissal of Plaintiffs' Eighteenth Claim for Relief for state law intentional infliction of emotional distress for failure to state a claim, implicitly conceding that the elements have been sufficiently pled and satisfied.[450]

The notion that Linda was not a "bystander" is incorrect.  It is clear that Linda had a "sensory and contemporaneous observance" of the abuse of Anthony, and Defendants cite no authority indicating that this observance must be visual.[451] Nevada relies on California authority for negligent infliction standards,[452] and the longstanding authority holds that a plaintiff "may recover based on an event perceived by other senses [tan visual] so long as the event is contemporaneously understood as causing injury to a close relative."[453]  The contemporaneous observance thus need not be visual.  Linda thus had a "sensory and contemporaneous observance" of the invasion of Anthony's home and him being yelled at and shot by the Defendants because she was on the phone with him, and states a valid claim for negligent infliction of emotional distress.

Finally, Defendants' assertions that they were not present for these events is

_____

[449] See Motion at 37:18-38:5 (citing Crippins v. Sav On Drug Stores, 961 P.2d 761, 762 (Nev. 1998))

[450] See CR 3, ¶¶223-37.

[451] See Crippins at 762.

[452] Id.

[453] Ra v. Superior Court, 154 Cal. App. 4th 142, 148 (Cal. App. 2d Dist. 2007) (citing Bird v. Saenz, 28 Cal. 4th 910, 916-17 (2002) and Krouse v. Graham, 19 Cal. 3d 59, 76 (Cal. 1977)).

124

is simply false and fail for the same reasons set forth in Section IV(K)(3), supra.  The Doe defendants named in the first amended complaint could be either NLVPD or HPD Defendants, and Henderson and North Las Vegas Defendants are also named throughout the first amended complaint.[454]

### O.     Plaintiffs' Nineteenth Claim For Abuse Of Process Is Not Subject To Dismissal.

The Defendants argue that Plaintiffs' Nineteenth Claim for Relief should be dismissed because they have not alleged that they Defendants misused the legal process after the criminal charges were filed.[455]  The argument lacks merit.

Plaintiffs have pled a viable state law abuse of process claim.  The elements of an abuse of process claim are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding."[456]

The first element is satisfied here by Plaintiffs' allegation that the criminal complaints against Michael and Anthony were filed not for the purpose of resolving a legitimate legal dispute, but rather "for for the ulterior purpose of legitimizing and/or concealing their wrongful detention and arrest of Plaintiffs and other wrongful conduct complained of" in the first amended complaint.[457]  Abuse of process can arise in both civil and criminal proceedings.[458]

The second element concerning the willful act in the use of the legal process not proper in the regular conduct of the proceeding concerns "the use of

---

[454] See CR 3, ¶¶ 20-104.

[455] See Motion at 38:6-18.

[456] LaMantia v. Redisi, 38 P.3d 877, 879 (Nev. 2002).

[457] See CR 3, ¶240.

[458] LaMantia at 879.

125

'summons[es], subpoenas, attachments, garnishments, replevin . . ., arrest . . ., injunctive orders, and other orders directly affecting obligations of persons or rights in property."[459] This element is clearly is clearly satisfied here by actions that took place well after the filing of the criminal complaints.

The criminal complaints against Anthony and Michael were filed on July 12, 2011, and this was when the criminal case began.[460]  As the dockets in both cases make clear, in order to further the Defendants' improper purposes, the Defendants used legal process to repeatedly haul Anthony, Michael, and their attorneys into court on August 3, September 13, October 6, November 2, and November 3, 2011 in order to address the bogus charges a.[461]  While Michael had a public defender, Anthony was forced to hire counsel.[462]  These bogus complaints could have been dismissed immediately, but instead, the Defendants subjected Michael, Anthony and their counsel to numerous court appearances over the course of four months, and the related inconvenience and expense in the furtherance of their improper purpose. This is especially true because while the criminal complaints were filed on July 12, 2011, both Anthony and Michael were forced to appear on August 3, 2011 for their first court appearance, and the Defendants certainly knew before this time that the charges against Anthony and Michael were utterly groundless.  Forcing someone into the position of being a defendant by filing a criminal complaint against them and then compelling them or their lawyer appear for court hearings is most certainly the use of legal process.

---

[459] Kern v. Moulton, 2013 U.S. Dist. LEXIS 124648, *9-10 (D. Nev. Aug. 30, 2013) (citing Dan. B. Dobbs, The Law of Torts § 440, at 1235-36 (2000)).

[460] See CR 3, ¶¶

[461] See Cofer Decl., **Exhibits C & D**.

[462] Id.

126

Plaintiffs' Nineteenth Claim for Relief for abuse of process is not subject to dismissal.

**P.    Plaintiffs' Twenty-First Claim For Relief For Respondeat Superior Liability Is Not Subject To Dismissal.**

The Defendants' argument that Plaintiffs' state law respondeat superior claim should be dismissed to the degree it seeks such relief under § 1983 is inapposite.[463] Plaintiffs' Twenty-First Claim for Relief for respondeat superior liability is based on state law, not § 1983. However, it should be noted that if Plaintiffs prevail on their pendent state claims based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under § 1988.[464]

**Q.    Plaintiffs Are Entitled To Punitive Damages.**

The Defendants argue that NRS 41.035 precludes punitive damages against them on their state law claims, and that federal law precludes recovery of punitive damages on § 1983 claims.[465] The arguments lack merit for several reasons.

First, the argument as to immunity as to punitive damages under NRS 41.035 is premature and squarely in dispute. The Defendants have not provided any evidence that they are "a present or former officer of employee of the State or any political subdivision," and cannot do so on a motion to dismiss.[466] In fact, it appears that as far as state law is concerned, NLVPD and HPD are not political subdivisions such that the restriction as to punitive damages would even apply to them or their

---

[463] Motion at 38:19-26.

[464] Carreras v. City of Anaheim, 768 F.2d 1039, 1050 (9th Cir. 1985) abrogated on other grounds by Los Angeles Alliance for Survival v. City of Los Angeles, 22 Cal. 4th 352, 93 Cal. Rptr. 2d 1, 993 P.2d 334 (2000).

[465] See Motion at 39:1-40:5.

[466] See NRS §41.035(1).

127

officers or employees.[467]  In addition, the  argument is superfluous.  A statutory damage cap is not an affirmative defense that is subject to waiver, and courts routinely reduce jury awards to applicable statutory limits, if applicable, at entry of judgment.[468]

Second, NRS 41.035 does not apply to federal constitutional torts under §1983.  "NRS § 41.035(1) . . . prohibits an award of punitive damages against present or former officers or employees of the state in actions under state law, **but has no application to federal claims under § 1983**."[469]  In fact, the Ninth Circuit has essentially rejected the notion that state laws relating to state susceptibility to suit should be applied to §1983 claims.[470]

Third, Plaintiffs properly seek punitive damages based on constitutional violations under 42 U.S.C. § 1983.  The Defendants' citation to <u>Newport v. Fact Concerts</u> and <u>Bryan</u> relying on it is misleading: the Ninth Circuit has subsequently held that the rule against punitive damages in § 1983 cases is not absolute and that punitive damages are indeed permissible in § 1983 cases under some circumstances.[471]  Moreover, the Supreme Court and the Ninth Circuit have held

---

[467] <u>See</u> Section IV(H), <u>supra</u>.

[468] <u>See</u>, <u>e.g.</u>, <u>Oliver v. Cole Give Centers, Inc.</u>, 85 F.Supp.2d 109 (D. Conn. 2000).

[469] <u>Aguilar v. Kuloloia</u>, 2007 U.S. Dist. LEXIS 73332, *47-48 (D. Nev. Sept. 28, 2007) (emphasis added) (<u>citing</u> <u>Clements v. Airport Authority of Washoe County</u>, 69 F.3d 321, 336-37 (9th Cir. 1995) (<u>citing</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 257-58 n.11 (1978)).

[470] <u>See</u> <u>Donovan v. Reinbold</u>, 433 F.2d 738, 742 (9th Cir. Cal. 1970) (rejecting provisions of the California Tort Claims Act because "[a]n incorporation of such state created policies 'would practically constitute a judicial repeal of the Civil Rights Act.'") (Citations omitted.)

[471] <u>Compare</u> Motion at 39:4-21 (citing <u>Newport v. Fact Concerts</u>, 453 U.S. 247, 248 (1981) and <u>Bryan v. Las Vegas Metro. Police Dep't</u>, 349 F.App'x 132, 134-35 (9th

subsequent to <u>Newport</u> that punitive damages are available under § 1983.[472]  State actors may liable for punitive damages in their individual capacities, and punitive damages are awarded at the jury's discretion.[473]  "It is well-established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others."[474]  Plaintiffs have alleged sufficient facts entitling them to punitive damages as to their § 1983 claims, particularly to the claims against the Defendants in their individual capacities.[475]

Plaintiffs' claim to punitive damages is not subject to dismissal.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

Cir. 2009)) <u>with</u> <u>Bell v. Clackamas County</u>, 341 F.3d 858, 868 n. 4 (9th Cir. 2003)("Although municipal defendants are immune from liability for punitive damages under § 1983, municipalities may pay punitive damages in some circumstances.")

[472] <u>See</u> <u>Pac. Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 17 (1991); <u>Morgan v. Woessner</u>, 997 F.2d 1244, 1255 (9th Cir.1993).

[473] <u>Smith v. Wade</u>, 461 U.S. 30, 51, 54 (1983); <u>Woods v. Graphic Communications</u>, 925 F.2d 1195, 1206 (9th Cir. 1991).

[474] <u>Morgan</u>, 997 F.2d at 1255 (quoting <u>Davis v. Mason County</u>, 927 F.2d 1473, 1485 (9th Cir. 1991)) (internal quotations removed).

[475] <u>See</u> CR 3, ¶¶117, 124, 132, 138, 144, 150, 156, 169, 172, 173, 177, 188, 193, 200.

## V.    CONCLUSION

For the foregoing reasons, the Henderson Defendants' motion to dismiss and the North Las Vegas Defendants' joinder thereto should be denied in their entirety.

DATED:  January 29, 2014.          **COFER, GELLER & DURHAM, LLC**

/s/ Frank H. Cofer

_____
FRANK H. COFER, ESQ.
Nevada Bar No. 11362
601 South Tenth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiffs

130

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3

I HEREBY CERTIFY that on the 29th day of January, 2014, a true and correct

4

copy of the foregoing document:

5

**PLAINTIFFS' COMBINED OPPOSITION TO: (1) DEFENDANTS CITY OF**

6

**HENDERSON, NEVADA, JUTTA CHAMBERS, GARRETT POINER, RONALD FEOLA, RAMONA WALLS, ANGELA WALTER, CHRISTOPHER**

7

**WORLEY, AND JANETTE R. REYES-SPEER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (CR 17); AND (2) DEFENDANTS CITY OF**

8

**NORTH LAS VEGAS, JOSEPH CHRONISTER, MICHAEL WALLER, DREW ALBERS, DAVID CAWTHORN, ERIC ROCKWELL AND TRAVIS**

9

**SNYDER'S JOINDER THERETO (CR 23)**

10

was served via the Court's CM/ECF system, upon the following persons:

11

**TAMARA BEATTY PETERSON**

12

Brownstein Hyatt Farber Schreck, LLP
Email:  TPeterson@bhfs.com

13

Attorneys for Henderson Defendants

14

15

**ROBERT W. FREEMAN, JR.**

Lewis Brisbois Bisgaard & Smith

16

Email:  kfreeman@lbbslaw.com
Attorneys for City of North Las Vegas, Joseph Chronister, Michael

17

Waller, Drew Albers, David Cawthorn, Eric Rockwell, and Travis Snyder

18

19

*/s/ Cristina Flores*

20

_____

21

Cristina Flores
An employee of Cofer, Geller & Durham, LLC

22

23

24

25

26

27

28

131