BENJAMIN C. DURHAM, ESQ.
Nevada Bar No. 7684
BENJAMIN DURHAM LAW FIRM
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 631-6111
(702) 946-1396 (fax)
bdurham@vegasdefense.com

FRANK H. COFER, ESQ.
Nevada Bar No. 11362
COFER & GELLER, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 777-9999
(702) 777-9995 (fax)
fcofer@cofergeller.com

BRADLEY S. MAINOR, ESQ.
Nevada Bar No. 7434
bmainor@mainorwirth.com
JOSEPH J. WIRTH, ESQ.
Nevada Bar No. 10280
jwirth@mainorwirth.com
6018 S. Ft. Apache Rd., Ste. 150
Las Vegas, Nevada 89148
(702) 464-5000
(702) 463-4440 (fax)
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANTHONY MITCHELL, LINDA MITCHELL, and MICHAEL MITCHELL, | Case No.: 2:13-cv-01154-APG-CWH |
| Plaintiffs, | |
| *vs.* | |
| CITY OF HENDERSON, JUTTA CHAMBERS, RONALD AVERETT, FRED THOMPSON, MARC CASSELL, THOMAS SPATH, RICHARD MELCHERT, JON MORROW, JEFFREY WIENER, T. HASTIE, M. CONRAD, JULIO DELGADO, WAVIE REED, JEB BOZARTH, P. REIMANN, D. BASKOVIC, J. NILSON, | **SECOND AMENDED COMPLAINT** **[REDACTED]** |

1

1
2
3
4
5
6

RONALD FEOLA, RAMONA WALLS, ANGELA
WALTER, H. VILLA, CHRISTOPHER WORLEY,
CITY OF NORTH LAS VEGAS, JOSEPH
CHRONISTER, DAVID NOAHR, ANTHONY
DIMAURO, MICHAEL WALLER, DREW ALBERS,
DAVID CAWTHORN, ERIC ROCKWELL, and
TRAVIS SNYDER,

        Defendants.

7
8
9
10
11
12
13

COME NOW the Plaintiffs, ANTHONY MITCHELL, LINDA MITCHELL, and MICHAEL MITCHELL, by and through their undersigned counsel, and for their claims for relief against Defendants, and each of them, jointly and severally, based upon knowledge, information, and reasonable belief derived therefrom, allege, complain, and state as follows:

**I.**

**JURISDICTION AND VENUE**

14
15
16
17
18
19
20

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' causes of action arising under 42 U.S.C. § 1983 and due to the deprivation of rights, privileges, and immunities secured to Plaintiffs under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

21
22
23

2.      This Court has supplemental jurisdiction over Plaintiffs' causes of action arising under Nevada state law pursuant to 28 U.S.C. § 1367.

24
25
26
27
28

3.      Venue lies in the Southern Division of the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(a)(1) and 28 U.S.C. § 1391(b)(2) because one or more Defendants is a political subdivision of the State of Nevada, and because the underlying acts, omissions, events, injuries and related facts upon which the present action

is based occurred in Clark County, Nevada.

## II.
## PARTIES

4.      Plaintiff ANTHONY MITCHELL is, and at all times herein mentioned was, a United States citizen and a resident of the District of Nevada, and is the son of Plaintiffs LINDA MITCHELL and MICHAEL MITCHELL.

5.      Plaintiffs LINDA MITCHELL and MICHAEL MITCHELL are, and at all times herein mentioned were, United States citizens and residents of the District of Nevada. They are a married couple.

6.      Defendant CITY OF HENDERSON is a governmental entity organized and existing under the laws of the State of Nevada, and is a political entity of the State of Nevada.

7.      Defendant CITY OF NORTH LAS VEGAS is a governmental entity organized and existing under the laws of the State of Nevada, and is a political entity of the State of Nevada.

8.      At all times, Defendant CITY OF HENDERSON possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the Henderson Police Department (hereinafter, "HPD") and of its employees, agents, contractors and/or servants. In this case, Defendant CITY OF HENDERSON acted through agents, employees, servants, and contractors, including its policymakers, including Defendant JUTTA CHAMBERS.

9.      At all times, Defendant CITY OF NORTH LAS VEGAS possessed the power

3

and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the North Las Vegas Police Department (hereinafter, "NLVPD"), and of its employees, agents, contractors and/or servants.  In this case, Defendant CITY OF NORTH LAS VEGAS acted through agents, employees, servants, and contractors, including its policymakers, including Defendant JOSEPH CHRONISTER.

10.    Defendant JUTTA CHAMBERS was at all times relevant to this action the Chief of HPD, and was acting under color of state law.  She is sued in this action in her individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and is sued in her individual capacity and official capacity as to Plaintiffs' state law claims.

11.    Defendant JOSEPH CHRONISTER was at all times relevant to this action the Chief of NLVPD, and was acting under color of state law.  He is sued in this action in his individual capacity as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and is sued in his individual and official capacity as to Plaintiffs' state law claims.

12.    Defendants DEPUTY CHIEF RONALD AVERETT, CAPTAIN FRED THOMPSON, LIEUTENANT MARC CASSELL, SERGEANT THOMAS SPATH (collectively as "HPD Commanding Officers"), OFFICER RICHARD MELCHERT, OFFICER JON MORROW, OFFICER JEFFREY WIENER, OFFICER T. HASTIE, OFFICER M. CONRAD, OFFICER JULIO DELGADO, OFFICER WAVIE REED, OFFICER JEB BOZARTH, OFFICER P. REIMANN, OFFICER D. BASKOVIC, OFFICER J. NILSON (collectively as "HPD SWAT Officers"), OFFICER RAMONA WALLS, OFFICER RONALD FEOLA, OFFICER ANGELA WALTERS, OFFICER S. YOUNG, OFFICER H. VILLA and OFFICER CHRISTOPHER WORLEY (collectively as "HPD Officers") were at all times relevant to this

action police officers employed by CITY OF HENDERSON and were acting under color of state law.  They are sued in their individual capacities as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and are sued in their individual and official capacities as to Plaintiffs' state law claims.

13.   Defendants CAPTAIN DAVID NOAHR, LIEUTENANT ANTHONY DIMAURO (collectively   as "NLVPD Commanding Officers"), SERGEANT MICHAEL WALLER, OFFICER DREW ALBERS, OFFICER DAVID CAWTHORN, OFFICER ERIC ROCKWELL, and OFFICER TRAVIS SNYDER (collectively as "NLVPD SWAT Officers") are and were at all times relevant to this action police officers employed by CITY OF NORTH LAS VEGAS and were acting under color of state law. They are sued in their individual capacities as to Plaintiffs' claims arising under 28 U.S.C. § 1983, and are sued in their individual and official capacities as to Plaintiffs' state law claims.

14.   Plaintiffs are informed, believe, and thereon allege that all Defendants were the agents, employees, contractors and/or co-conspirators of the other Defendants, and each of them were acting within the course and scope of their agency, employment, and/or concert of action, and are vicariously liable, jointly and severally, for the actions, inactions, and/or omissions of themselves and of the other Defendants, which proximately resulted in the physical, emotional, and future damages to the Plaintiffs as herein alleged.

## III.
## NATURE OF THE ACTION

15.   This is an action for money damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C. § 1983 and 1988, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Nevada,

5

against the named Defendants, police officers of the HPD and the NLVPD, and against the CITY OF HENDERSON and the CITY OF NORTH LAS VEGAS.

**IV.**

**COMMON ALLEGATIONS**

**A.    INDIVIDUAL OFFICER ACTIONS**

16.    On the morning of July 10th, 2011, HPD Officers WORLEY and FEOLA responded to a domestic violence call at the residence of a Plaintiffs' neighbor, Phillip White, who lives at 363 Eveningside Avenue, Henderson, Nevada.

17.    Phillip White's wife, Suzette White, left her home to call police regarding her allegation that she had been battered by her husband. In her 911 call to police, made from a neighbor's house, the 911 dispatcher asked Suzette White if there were weapons in the White's home. Suzette White advised officers that there was a gun in the White's house, but that it was unloaded and was not out. She advised that the Whites' infant child was in the house, but did not indicate that the child was in danger or that Phillip White had made any threat to the child.

18.    ████████████████████████ ████████ ██████████████████████████
███████████ ████████████████████████████████████████████████████████████
████

19.    ████████████ █ ██████████████ ████████ ████████ █████ ███████
███████████ ████████████████████████████████████████████████████████████
████████████

20.    Phillip White instead invited responding Officers WORLEY and FEOLA into his home due to his concern about leaving his infant child.

21.    ███████████████████    and  FEOLA ████████    ████████    ██████████

1 ██████████████ ██████████████ ████████████████████

2 ██████ ████████████ No evidence of the existence of this supposed clip knife

3 was ever logged, photographed or impounded.

4

5     22.    Officers WORLEY and FEOLA then notified SERGEANT SPATH, the Watch

6 Commander that day, of the situation.

7     23.   ████████████ ██████████ ████████ ████

8

9 ██████ ██████████████

10     24.    Officers WORLEY and FEOLA advised SERGEANT SPATH that Phillip White

11 had invited them in, was calm, and ████████████████████

12     25.    SERGEANT SPATH (HPD) subsequently set up a Command Post up the

13 street from 363 Eveningside, and ████ ████████ ████████ ████████

14

15 ██████████████ ██████████

16     26.   ██████████ ████████ ████████████████

17 ████████████████ ██████████

18     27.   ██ ██████████████ ████ ████ ████ ████████

19

20 ████████████████████████████████████████████████

21 ████████ ████ ████████ ██████████

22     28.   ████████████ ██████ ████ ████ ████████ ████

23 ██ ██████████████████████████████

24 ██████████████████████████████████

25

26 ████████████████████ ██████████████████

27 ████ ████████████████████

28

29. ███████████████████████████████████████████████████████

OFFICER MELCHERT, the Officer in Charge (OIC) of the SWAT team, ██████████

██████

30.     LIEUTENANT CASSELL, the SWAT team Commander, arrived at the

Command Post shortly thereafter and assumed command of the SWAT tactical operation.

31. ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

32. ████████████████████████████████████████████████████████

██████████████████████████████████████

33. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████

34. ████████████████████████████████████████████████████

██████████████████████████████████████

35. ████████████████████████████████████████████████████████

████████████████████████████████

36.     CAPTAIN THOMPSON (HPD) arrived at the command post sometime after

NLVPD SWAT was called, but before the NLVPD SWAT Officers arrived on scene.

37. ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████ ████

38.     CAPTAIN NOAHR oversaw NLVPD SWAT operations as the senior NLVPD officer and Captain of the NLVPD SWAT team.

39.     LIEUTENANT DIMAURO was the NLVPD SWAT commander.

40.     Shortly after the NLVPD SWAT Officers arrived on the scene, the Defendant officers turned their attention away from Phillip White and began to focus on the residents located at 362 and 367 Eveningside, later identified as Plaintiffs ANTHONY MITCHELL, MICHAEL MITCHELL, and LINDA MITCHELL, because Plaintiffs were believed to be photographing the Officers' conduct, talking on their phones, and had asserted their constitutional rights to remain in their homes rather than be forcibly evacuated.

41.     ████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

42.     The belief that ANTHONY MITCHELL was relaying tactical information to Phillip White was pure speculation and was never confirmed.

43.     CAPTAIN THOMPSON, CAPTAIN NOAHR, LIEUTENANT CASSELL, LIEUTENANT DIMAURO, and SERGEANT SPATH subsequently conspired to forcibly remove Plaintiffs' ANTHONY MITCHELL, MICHAEL MITCHELL, and LINDA MITCHELL from their homes.

44.     ████████████████████████████████
██████████████████████████████████

45.     ████████████████████████████████
████████████████████████████████████████████

9





without consent, probable cause, or a warrant.

11



61. ████████████████████████████████████████████████████████

62. ████████████████████████████████████████████████████████

63. ████████████████████████████ and search the homes of the

Plaintiffs without consent, probable cause, or a warrant.

**B.    POLICE ACTIONS OBSERVED BY THE PLAINTIFFS**

64.    Plaintiff MICHAEL MITCHELL woke up at approximately 8:20 a.m. at his

home at 362 Eveningside Avenue, Henderson, Nevada, and noticed that he had received a

telephone call from Mr. White, who lived across the street, and who had left a message that

the police were at Mr. White's door and that Mr. White's wife had told the police that Mr.

White had assaulted her.

65.    MICHAEL MITCHELL called Mr. White back and was informed that the

police had told Mr. White to come out of his house, but that Mr. White explained to the

police that he could not leave because he had a one month old baby in the house, and had

asked the officers to come inside instead.  Mr. White explained that the police officers did not come in, but instead retreated and called for back-up, and that Mr. White then sat on his couch with his front door open.

66.    MICHAEL MITCHELL then went to the front of his house and seeing nothing, went to get his newspaper on the driveway.  Before he could get his newspaper, an HPD officer told him to get back to his house, which he did.

67.    A short time later, MICHAEL MITCHELL heard police sirens and the police directing Mr. White over a bullhorn to come out of his house with his hands up and unarmed.

68.    At approximately 9:30 a.m., Plaintiff ANTHONY MITCHELL was awakened at his home at 367 Eveningside Avenue, Henderson, Nevada, by sirens in front of his home which is located near Mr. White's home and across the street from the home of his parents, MICHAEL MITCHELL and LINDA MITCHELL.

69.    The sirens continued to sound, and at approximately 9:37 a.m., ANTHONY MITCHELL returned a missed call from his father, MICHAEL MITCHELL, who informed ANTHONY MITCHELL about his conversation with Mr. White.

70.    While ANTHONY MITCHELL was on the telephone with MICHAEL MITCHELL, he opened the front door of his residence, telephone in hand, and yelled for the officers outside to shut the siren off, and ended the call a short time later.

71.    MICHAEL MITCHELL, ANTHONY MITCHELL and LINDA MITCHELL became very concerned about the conduct of the police and began taking photographs of the police's conduct from the inside of their respective homes with the intent to disseminate these photographs to the public and to the news media.  The named Defendant police

officers herein saw ANTHONY MITCHELL, MICHAEL MITCHELL and LINDA MITCHELL taking photographs of their activities or were informed of them doing so.

72.     MICHAEL MITCHELL and LINDA MITCHELL observed police officers and police vehicles congregating in front of Mr. White's house across the street, and then taking positions further down the street.  They observed a SWAT vehicle place a chain around a tree in Mr. White's yard, rip it out of the ground, and SWAT personnel and vehicles assembling where the tree had been located.  They observed officers pointing their loaded firearms at them, their home, the home of their son ANTHONY MITCHELL, at the homes of their neighbors, and LINDA MITCHELL informed MICHAEL MITCHELL that police officers repeatedly pointed their loaded firearms at her when she looked out of their window.  MICHAEL MITCHELL and LINDA MITCHELL were extremely concerned about the conduct of the police based on their apparent disregard for Mr. White's concern about the presence of an infant in Mr. White's house.

73.     ANTHONY MITCHELL observed the officers pointing their loaded firearms at him, his home, the home of his father MICHAEL MITCHELL and at the homes of their neighbors.

74.     When LINDA MITCHELL looked out of the front door window and bedroom window of her home, she observed the HPD SWAT Officers pointing their loaded weapons at her.

75.     The NLVPD Commanding Officers and the HPD Commanding Officers, and each of them, directed and permitted their subordinates to point loaded firearms at the Plaintiffs and their neighbors.

76.     MICHAEL MITCHELL went into his backyard for safety reasons to be as far

14

as possible from the armed and apparently reckless police officers on the street, and directed his wife, Plaintiff LINDA MITCHELL, to go to the back of the house as well for safety reasons.  A short time after MICHAEL MITCHELL was in his backyard, he was told by HPD to go back in his house, which he did.

77.   While MICHAEL MITCHELL was taking photographs of the police from inside his home through a guest room window, a member of the HPD SWAT team, saw him and aimed his loaded firearm at him.  MICHAEL MITCHELL then went to look out his front door to find the same HPD SWAT officer pointing his loaded firearm at him again.

78.   Over the next two hours, ANTHONY MITCHELL made several calls to MICHAEL MITCHELL and spoke to him about the escalating police activity on the street. During this time, ANTHONY MITCHELL and MICHAEL MITCHELL observed the police officers pointing loaded firearms at their homes and the homes of other neighbors.

79.   At approximately 10:45 a.m., Defendant OFFICER CHRISTOPHER WORLEY (HPD) contacted Plaintiff ANTHONY MITCHELL by telephone.  WORLEY told ANTHONY MITCHELL that police needed to occupy his home in order to gain a "tactical advantage" against the occupant of the neighboring house, presumably Mr. White. ANTHONY MITCHELL told the officer that he did not want to become involved and that he did not want police to enter his residence. OFFICER WORLEY then asked ANTHONY why he did not want to leave his home, to which ANTHONY responded that he had more rights inside his home than outside.  WORLEY asked ANTHONY why he thought that, and again asked ANTHONY if he would come outside and allow the police to occupy his home.  When ANTHONY MITCHELL replied in the negative, OFFICER WORLEY ended the call.

80.   After this phone call, ANTHONY MITCHELL observed police officers,

specifically including the NLVPD SWAT Officers, pointing their loaded firearms at him whenever he walked in front of his window.  Fearing for his life and safety after observing the indiscriminate and reckless manner in which the police officers were handling and pointing their firearms, ANTHONY MITCHELL donned a protective ballistic vest which he used in his employment as a bail enforcement agent.  Also during this period, ANTHONY MITCHELL attempted to call Mr. White to find out what was going on, but could not get through.

81.     Plaintiff ANTHONY MITCHELL was extremely troubled and concerned for his safety based on WORLEY's insistence about entering his home without a warrant, and became concerned that serious police misconduct was taking place and that armed police would attempt to enter his home without a warrant.

82.     Beginning at approximately 10:52 a.m., ANTHONY MITCHELL called his father, MICHAEL MITCHELL, several more times, expressing his concerns about his telephone conversation with WORLEY.  He asked his father to look up the telephone number for Fox 5 Vegas KVVU because he felt that the press needed to know about what was going on.

83.     At approximately 11:08 a.m., ANTHONY MITCHELL called Mr. White, who explained that the police were there based on a claim that Mr. White had struck his wife, which he said he did not do.

84.     At approximately 11:17 a.m., ANTHONY MITCHELL called "411" to obtain the telephone number for Fox 5 Vegas KVVU, but they were unable to provide it.

85.     At approximately 11:20 a.m., ANTHONY MITCHELL called his father again, who was able to provide him with the number for Fox 5 Vegas KVVU.

86.     At approximately 11:22 a.m., ANTHONY MITCHELL called Fox 5 Vegas KVVU and spoke to a reporter, explaining his troubling telephone conversation with WORLEY, and that if they wanted to interview him, they would have to send a cameraman to the house, because he was not leaving his home.

87.     ANTHONY MITCHELL called Mr. White a few more times over the next half-hour and let him know that he had contacted Fox 5 Vegas KVVU and that they would be calling Mr. White.

88.     At approximately 11:44 a.m., ANTHONY MITCHELL received a call from the reporter at Fox 5 Vegas KVVU, who informed him that Mr. White was not answering his telephone.

89.     The Defendants knew that ANTHONY MITCHELL and MICHAEL MITCHELL were taking photographs of the police conduct from inside their homes.

90.     Shortly before 11:53 a.m., ANTHONY MITCHELL was on the telephone and stepped in front of his window.  At that time, officers pointed their loaded firearms at ANTHONY again through the window.  As ANTHONY MITCHELL walked back and forth in front of his window, he observed Defendant NLVPD OFFICER ALBERS following him through the sights of his loaded firearm.  ANTHONY MITCHELL then photographed the officer through his window and gave the officer a hand gesture with his middle finger, expressing his disapproval of the officer's conduct.  Defendant OFFICER ALBERS saw ANTHONY MITCHELL make this gesture and informed the other officers of him making it.

91.     After Plaintiff ANTHONY MITCHELL refused to allow the police to enter his home, after he photographed police officers pointing their loaded firearms at him, and after he gave Defendant OFFICER ALBERS the middle finger gesture, the Defendant police

17

officers conspired among themselves to execute a plan to forcibly enter ANTHONY MITCHELL's home unlawfully, without probable cause or a search warrant to effectuate an unlawful arrest. Defendant OFFICER DAVID CAWTHORN outlined the Defendants' plan in his official report:

> It was determined to move to 367 Evening Side and attempt to contact Mitchell. If Mitchell answered the door he would be asked to leave. If he refused to leave he would be arrested for Obstructing a Police Officer. If Mitchell refused to answer the door, forced entry would be made and Mitchell would be arrested.

92.     NLVPD SWAT Officers WALLER, ALBERS, CAWTHORN, ROCKWELL, and SNYDER, with permission from CAPTAIN THOMPSON, CAPTAIN NOAHR, LIEUTENANT CASSELL, LIEUTENANT DIMAURO and SERGEANT SPATH knowingly, willfully, and intentionally entered ANTONY MITCHELL's home without consent, probable cause, or a warrant despite reasonably knowing their actions were constitutional violations of rights protected by the Fourth Amendment.

93.     At approximately 11:52 a.m., NLVPD SWAT Officers WALLER, ALBERS, CAWTHORN, ROCKWELL and SNYDER arrayed themselves in front of Plaintiff ANTHONY MITCHELL's house and prepared to execute their plan. The Defendant police officers banged forcefully on the door and loudly yelled, "Resident 367 come to the door."

94.     Surprised and perturbed, Plaintiff ANTHONY MITCHELL immediately called his mother (Plaintiff LINDA MITCHELL) on the phone, exclaiming to her that the police were beating on his front door.

95.     Seconds later, NLVPD SWAT Officers WALLER, ALBERS, CAWTHORN, ROCKWELL and SNYDER smashed open Plaintiff ANTHONY MITCHELL's front door with a metal ram as Plaintiff stood in his living room.  The Defendants made this forceful

18

entry into ANTHONY MITCHELL's home without consent, probable cause, or a warrant.

96.     As Plaintiff ANTHONY MITCHELL stood in shock, Defendants WALLER, ALBERS, CAWTHORN, ROCKWELL and SNYDER aimed their loaded firearms at ANTHONY MITCHELL, shouted obscenities at him and ordered him to lie down on the floor.

97.     Fearing for his life, Plaintiff ANTHONY MITCHELL complied with the Officers commands, dropped his phone and prostrated himself onto the floor of his living room, covering his face with his hands.

98.     Addressing ANTHONY MITCHELL as "asshole," NLVPD SWAT Officers WALLER, ALBERS, CAWTHORN, ROCKWELL, and SNYDER shouted conflicting orders at ANTHONY, commanding him both to shut off his phone, which was on the floor in front of his head, and simultaneously commanding him to "crawl" toward the officers.  At no time prior to this moment did any police officer instruct ANTHONY MITCHELL to turn off his phone or to not use his phone.

99.     Confused and terrified, Plaintiff ANTHONY MITCHELL remained curled on the floor of his living room, with his hands over his face, and made no movement or resistance.

100.     Although Plaintiff ANTHONY MITCHELL was lying motionless on the ground, was not resisting and posed no threat, OFFICER DAVID CAWTHORN still chose to fire multiple "pepperball" rounds at Plaintiff as he lay defenseless on the floor of his living room. ANTHONY MITCHELL was struck at least three times by shots fired from close range, injuring him and causing him severe pain.

101.     As a result of being shot by OFFICER CAWTHORN, Plaintiff ANTHONY

MITCHELL experienced psychological horror and extreme emotional distress due to his fear and belief that he had been mortally wounded by gunfire. Further, in addition to the shock and bruising caused by the impact of the "pepperball" rounds on his body at close range, the caustic and irritating chemicals released caused ANTHONY MITCHELL to suffer extreme and prolonged pain in his eyes, nose, throat, lungs, and skin, as well as causing him to experience uncontrollable coughing and difficulty breathing.

102.   Plaintiff ANTHONY MITCHELL's dog, Sam, a service dog trained to be peaceful, obedient, and docile, was cowering in the corner when NLVPD SWAT Officers WALLER, ALBERS, CAWTHORN, ROCKWELL, and SNYDER smashed through the front door. Despite the terrified animal posing no threat to the NLVPD SWAT Officers, they gratuitously, maliciously, and inhumanely shot Sam with one or more pepperball rounds. The panicked animal howled in fear and pain and fled from the residence. Sam was subsequently left trapped outside in a fenced alcove without access to water, food, or shelter from the sun for much of the day, while temperatures outside soared to over 100 degrees Fahrenheit.

103.   Plaintiff LINDA MITCHELL was talking to her son ANTHONY MITCHELL via telephone at the time that officers smashed through ANTHONY MITCHELL's front door. Over the telephone, she was able to hear the officers shouting obscenities and weapons being fired. As a result of the officers' actions, she experienced extreme emotional distress due to her fear and belief that her son had been severely wounded or killed. While she was screaming her son's name over and over into the phone, one of the Defendant officers inside ANTHONY MITCHELL's home callously hung up the phone.

104.   As Plaintiff ANTHONY MITCHELL lay incapacitated and in agony on his

living room floor, several of the NLVPD SWAT Officers, including without limitation OFFICER DAVID CAWTHORN, forcefully pressed their knees atop the back of ANTHONY MITCHELL's neck and body, and roughly and wantonly wrenched his arms behind his back and handcuffed him, all of which was intended to cause and did cause ANTHONY MITCHELL to suffer further severe pain and severe emotional distress.

105.    NLVPD SWAT Officers WALLER, ALBERS, CAWTHORN, ROCKWELL and SNYDER, then roughly and wantonly dragged Plaintiff ANTHONY MITCHELL out of his residence by his arms, all of which was intended to cause and did cause him pain, suffering and humiliation.

106.    Once outside the residence, the NLVPD SWAT Officers, including without limitation OFFICER DAVID CAWTHORN, roughly and wantonly slammed ANTHONY MITCHELL against the exterior of Plaintiff's home, and forcefully pressed Plaintiff's face into the stucco wall, holding him in this painful and humiliating configuration for several minutes.  When ANTHONY MITCHELL begged to be released and pleaded that he was not a threat, the NLVPD SWAT Officers, including OFFICER DAVID CAWTHORN, did not relent, but commented that Plaintiff should have come out of his home when commanded to do so by the police, and continued to press his face against the wall for an additional thirty seconds.  All of this conduct was intended to cause and did cause ANTHONY MITCHELL pain and humiliation.

107.    During this time period, one of the NLVPD SWAT Officers said to ANTHONY MITCHELL, "You wanna flip us off, huh?"   Another of the NLVPD SWAT Officers then turned around and told the officer, "Shhhh."

108.    OFFICER H. VILLA then forcibly took ANTHONY MITCHELL by foot while

handcuffed to the HPD command center, where he was unlawfully arrested.

109.   OFFICER H. VILLA told Plaintiff ANTHONY MITCHELL that he was under arrest for "Obstructing a Police Officer."

110.   A short time later, ANTHONY MITCHELL was taken into custody by OFFICER ANGELA WALTER.

111.   At no time did Plaintiff ANTHONY MITCHELL disobey any lawful commands of any police officers or in any manner obstruct any police officers in the performance of their duties as he had remained within the confines of his residence for the entire ordeal.

112.   The NLVPD SWAT Officers, and each of them, then swarmed through Plaintiff ANTHONY MITCHELL's home at 367 Eveningside Avenue, searching through his rooms and possessions and moving his furniture, without consent, probable cause, or a warrant.

**C.   EVENTS AT MICHAEL AND LINDA MITCHELL'S RESIDENCE 362 EVENINGSIDE**

113.   Meanwhile, starting at approximately 11:25 a.m., HPD SWAT Officers, accompanied by HPD Officers YOUNG, FEOLA and WORLEY, entered the back yard of Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's residence at 362 Eveningside Avenue without consent, probable cause, or a warrant. HPD OFFICERS WORLEY, YOUNG and FEOLA asked Plaintiff MICHAEL MITCHELL if he would be willing to vacate his residence and accompany them to their "command center" under the guise that the officers wanted MICHAEL MITCHELL to speak to the suspect, Mr. White, and assist them in negotiating the surrender of Mr. White, at 363 Eveningside Avenue.

114.   At approximately 11:51 am, Plaintiff MICHAEL MITCHELL reluctantly agreed to follow OFFICER YOUNG from his back yard to the HPD command center, which was

approximately one quarter mile away.  He also informed the officers that Mr. White's only concern was for his baby, and that if they told him that his wife was on the street and ready to pick up the baby, he would surely come out of the house.  It was shortly after MICHAEL MITCHELL left with the officers that LINDA MITCHELL received the call from ANTHONY MITCHELL wherein she heard the police officers were forcibly entering his home.

115.    At approximately 11:58 a.m., the HPD SWAT Officers entered the back yard of Plaintiffs MICHAEL MITCHELL and LINDA MITCHELL's residence at 362 Eveningside Avenue without consent, probable cause, or a warrant. They banged on the back door of the house and demanded that Plaintiff LINDA MITCHELL open the door. HPD OFFICER YOUNG also entered the backyard shortly thereafter.

116.    Plaintiff LINDA MITCHELL complied and opened the door to her home. When she told the HPD SWAT Officers that they could not enter her home without a warrant, the officers ignored her, entered her home, and began searching it. OFFICER WALLS seized LINDA MITCHELL by the arm, and other officers entered her home without permission.

117.    OFFICER WALLS then forcibly grabbed Plaintiff LINDA MITCHELL's arm and pulled her out of her house into her backyard, seized her purse, and began searching it without consent, probable cause, or a search warrant.

118.    OFFICER WALLS then grabbed Plaintiff LINDA MITCHELL and pulled her into her front yard. OFFICER YOUNG then grabbed LINDA MITCHELL's arm and dragged her at a brisk pace through her yard and up the hill toward the "Command Post," all the while maintaining a firm grip on her upper arm. Plaintiff LINDA MITCHELL is physically frail and had difficulty breathing due to the heat and the swift pace. OFFICER YOUNG

ignored her pleas to be released or to at least slow down, and refused to provide any explanation for why she was being treated in such a manner. After reaching the command center, LINDA MITCHELL witnessed the detention and/or arrest of ANTHONY MITCHELL and MICHAEL MITCHELL.

119.   In the meantime, the named HPD SWAT Officers searched and occupied Plaintiffs MICHAEL MITCHELL's and LINDA MITCHELL's home. When Plaintiff LINDA MITCHELL returned to their home, the cabinets and closet doors throughout the house had been left open and their contents moved about.  Water had been consumed from their water dispenser, and approximately 15 disposable plastic cups were in the kitchen trashcan which were not there previously.  The sliding glass door in the bedroom leading to the outside was left ajar.  Even the refrigerator door had been left ajar, and mustard and mayonnaise had been left on their kitchen floor.

120.   While MICHAEL MITCHELL and LINDA MITCHELL were away from their residence, the named HPD Officers searched MICHAEL MITCHELL's truck and ANTHONY MITCHELL's truck, which were both parked in the driveway of MICHAEL and LINDA MITCHELL's residence, without consent, probable cause or a warrant.

**D.   UNLAWFUL ARREST OF MICHAEL MITCHELL**

121.   After Plaintiff MICHAEL MITCHELL arrived at the HPD command center, the officers, including CAPTAIN FRED THOMPSON, informed him that the suspect, Mr. White, was "not taking any calls" and that he would not be permitted to call the suspect neighbor from his own phone.  He waited approximately 10 minutes at the HPD command center and was then told by SERGEANT SPATH he was free to leave, but could not return to his home.

24

122. ███████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████

123. After leaving the HPD command center, Plaintiff MICHAEL MITCHELL walked down Mauve Street toward the exit of the neighborhood. After walking for less than 5 minutes, an HPD car pulled up next to him. He was told that his wife, LINDA MITCHELL, had "left the house," and would meet him at the HPD command center. MICHAEL MITCHELL then walked back up Mauve Street to the HPD command center and met his wife LINDA MITCHELL. CAPTAIN THOMPSON, the senior officer on scene, ordered MICHAEL MITCHELL to be arrested for Obstruction of Justice despite his full cooperation with police.

124. OFFICER FEOLA then seized and handcuffed MICHAEL MITCHELL. LINDA MITCHELL asked OFFICER FEOLA what MICHAEL MITCHELL was being arrested for, but the officer did not respond.

125. There were no grounds to detain Plaintiffs MICHAEL or LINDA MITCHELL, nor probable cause to arrest MICHAEL MITCHELL.

126. At no time did Plaintiff MICHAEL MITCHELL disobey any lawful commands of any police officers or in any manner obstruct any police officer.

127. MICHAEL MITCHELL was then placed in the back of a parked HPD vehicle by OFFICER FEOLA and other HPD officers.  It was extremely hot in the vehicle.  As time passed, MICHAEL MITCHELL repeatedly complained that the heat was unbearable and begged the officers to do something to relieve him from the oppressive heat and to roll

down the windows.  The officers ignored these requests.  Later, OFFICER FEOLA entered the vehicle and sat in the driver's seat and turned on the air conditioning for himself.  However, the front and rear seats were separated by a partition that did not allow any cool air to reach MICHAEL MITCHELL, and the officer in the driver's seat refused to open the rear air conditioning vents to give relief to MICHAEL MITCHELL from the oppressive heat.

128.   MICHAEL MITCHELL again begged the HPD Officers to roll down the windows, but he was ignored.  Feeling that the situation had become life-threatening, MICHAEL MITCHELL begged the officers to do something because the heat was unbearable, and positioned himself to kick the rear window open.  Only at this time did an officer outside the vehicle open the back door and partially roll down the windows.

E.   **BOOKING AT HENDERSON DETENTION CENTER**

129.   Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were subsequently transported to Henderson Detention Center and were booked on charges of Obstructing an Officer and disobeying an officer in violation of NRS 475.070. Both ANTHONY MITCHELL and MICHAEL MITCHELL were detained for at least nine hours and were required to pay a bond to secure their release from custody.

130.   While in custody at the Henderson Detention Center, ANTHONY MITCHELL informed HPD detention officers that he required seizure medication and asked to receive it as a matter of medical necessity.

131.   The HPD detention officers ignored ANTHONY MITCHELL's request for his seizure medication.

132.   ANTHONY MITCHELL filled out and submitted a prisoner grievance requesting that he be provided his medication or that his brother be allowed to drop it off

26

and it could be provided to him by the facility's staff.

133.    The grievance was ignored, and despite the fact that ANTHONY MITCHELL's medication was delivered by 4:00 p.m. that afternoon, it was not given to him until after he was released.

134.    The deprivation of the medication necessary to treat ANTHONY MITCHELL's medical condition caused him great fear and anxiety that he might have a seizure while in custody.

**F.    AFTERMATH**

135.    Despite the fact that Phillip White had invited officers into his home, HPD SWAT Officers and NLVPD SWAT Officers subsequently elected to detonate one or more explosive devices at Phillip White's residence in order to force entry into the residence.

136.    The explosives used were so powerful that they caused the house to shake and distributed debris and fragments onto MICHAEL and LINDA MITCHELL's property.

137.    These bombs and / or explosive devices were used to force entry even though the infant child of Phillip and Suzette White was still in the residence.

138.    HPD CHIEF CHAMBERS and DEPUTY CHIEF AVERETT were advised in advance of HPD and NLVPD SWAT's intention to use the explosives, and endorsed and ratified that decision.

139.    On or about July 10, 2011, OFFICER CHRISTOPHER WORLEY prepared a police report that contained knowingly false statements, with the intent that it be used to maliciously prosecute ANTHONY MITCHELL and MICHAEL MITCHELL. Specifically:

   a.    OFFICER WORLEY stated in his report that "believing that Michael may
         be relaying our positions or compromising our safety, Officer Feola
         ordered Michael to walk over to him." However, OFFICERS WORLEY and
         FEOLA were not legitimately worried about MICHAEL MITCHELL

relaying their positions because OFFICERS WORLEY and FEOLA were both aware that Phillip White's residence at 363 Eveningside, which is directly across from MICHAEL MITCHELL's residence, had surveillance cameras surrounding the home. In fact, OFFICER WORLEY later stated ███████████████ ███████████████████        ████████████████

b.  OFFICER WORLEY stated in his report that it was "later confirmed that Michael was in fact in communication with Phillip on the phone and Officer's had to use additional resources to treat Michael as a potential safety concern." This is false, as an HPD Internal Affairs investigation revealed that it had never been confirmed that MICHAEL MITCHELL or ANTHONY MITCHELL were in contact with Phillip White.

c.  OFFICER WORLEY stated in his report that when NLVPD SWAT Officers entered ANTHONY MITCHELL's home, they found him loading an assault rifle. This statement is false, as according to NLVPD OFFICER CAWTHORN, ANTHONY MITCHELL was found in his living room holding a cellphone. Further, after investigating the facts, Defendant CITY OF HENDERSON could not identify any officer who ever witnessed ANTHONY MITCHELL holding or loading any firearm on the day of the incident.

140.    On or about July 10, 2011, OFFICER ANGELA WALTER prepared a police report that contained knowingly false statements, with the intent that it be used to maliciously prosecute ANTHONY MITCHELL and MICHAEL MITCHELL.

a.  OFFICER WORLEY stated in his report that when NLVPD SWAT Officers entered ANTHONY MITCHELL's home, they found him loading an assault rifle. This statement is false, as according to NLVPD OFFICER CAWTHORN, ANTHONY MITCHELL was found in his living room holding a cellphone. Further, after investigating the facts, Defendant CITY OF HENDERSON could not identify any officer who ever witnessed ANTHONY MITCHELL holding or loading any firearm on the day of the incident.

b.  OFFICER WALTER stated in her report that LINDA MITCHELL left her home peacefully, without incident. This statement is false, as LINDA MITCHELL was forcibly removed from her home, officers searched her person, her purse and her home without consent, and she was taken by OFFICER YOUNG to the Command Post.

141.    On or about July 12, 2011, OFFICER DAVID CAWTHORN prepared a police

28

report that contained knowingly false statements with the intent that it be used to maliciously prosecute ANTHONY MITCHELL and MICHAEL MITCHELL.

142.    On or about July 13, 2011, Henderson Deputy City Attorney Janette R. Reyes-Speer filed criminal complaints as complainant under penalty of perjury against Plaintiff ANTHONY MITCHELL in the Municipal Court of the CITY OF HENDERSON, Case Nos. 11CR9103 and 11CR9104, charging him with "Obstructing an Officer" and "Failure to Obey Police Officer," knowing that the criminal complaint contained false statements, charged conduct under an inapplicable fire statute, that ANTHONY MITCHELL committed no actual crime, and that there was no probable cause to initiate criminal proceedings against ANTHONY MITCHELL.

143.    On or about July 13, 2011, Henderson Deputy City Attorney Janette R. Reyes-Speer filed a criminal complaint as a complainant under penalty of perjury against Plaintiff MICHAEL MITCHELL in the Municipal Court of the CITY OF HENDERSON, Case No. 11CR9107, charging him with "Obstruct [sic] an Officer," knowing that the criminal complaint contained false statements, that MICHAEL MITCHELL committed no crime, and that there was no probable cause to initiate criminal proceedings against MICHAEL MITCHELL.

144.    All criminal charges against Plaintiff ANTHONY MITCHELL were ultimately dismissed with prejudice on November 9, 2011.

145.    All criminal charges against Plaintiff MICHAEL MITCHELL were ultimately dismissed with prejudice on November 3, 2011.

146.    All criminal charges against Phillip White were ultimately dismissed with prejudice on November 1, 2011.

29

147.    NLVPD Command officers, the HPD Command officers, the HPD SWAT Officers, the NLVPD SWAT Officers, and the HPD Officers caused Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL to be jailed and caused criminal complaints to issue against them in order to violate their constitutional rights, to provide cover for Defendants' unlawful conduct, to frustrate and impede Plaintiffs' ability to seek relief for those actions, and to further intimidate and retaliate against Plaintiffs.

148.    At all times relevant herein, Plaintiffs did not give any police officers or Defendants consent to enter or search their homes.

149.    At all times relevant herein, Plaintiffs had not committed any crime.

150.    At all times relevant herein, Plaintiffs were unarmed, were never observed to be armed, and never made any threats of crime or violence.

151.    At all times relevant herein, Plaintiffs did not pose a threat to the safety of any police officers or of others and did not pose a threat to the property of any police officers or of others.

152.    At all times relevant herein, no Defendant had any basis to believe that Plaintiffs had committed any crime or posed a threat to the safety or property of anyone.

153.    At all times relevant herein, Defendants tell the Plaintiffs they could not use their telephones or not call Mr. White, and any such instruction would have been unreasonable and unlawful.

154.    At no time relevant herein did Defendants have legal basis or probable cause to enter any of Plaintiffs' homes without a warrant, to detain Plaintiffs, or arrest Plaintiffs.

155.    ███████████████████████████████████████████████
████████████████████████████████████████████████████████████

30

██████ ████████████████████████████████████████████████████████████

156.    Despite being provided photographs of officers pointing their loaded weapons directly at photographers at the scene of the incident, Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS were unable to identify the officers, indicating that such use of force is customary, tolerated, and not logged.

157.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ CHIEF    CHAMBERS    and    CITY    OF HENDERSON.

158.    ██████████████████████████████████████ ██████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████

159.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████

160.    █████████████████████████████████ none of the officers involved in the above-alleged incidents was ever subjected to official discipline regarding their actions.

161.    Despite the fact that NLVPD SWAT Officers participated in the HPD Internal Affairs investigation and admitted that they breached ANTHONY MITCHELL's home without a warrant, shot him with pepperballs when he was holding a cellphone, and arrested him, the CITY OF NORTH LAS VEGAS and CAPTAIN CHRONISTER elected to impose no discipline on any of their officers.

162.    The reason that no discipline was imposed on any of the NLVPD SWAT Officers is that the actions of the NLVPD SWAT Officers were consistent with the policies

31

1   and procedures of the NLVPD and the CITY OF NORTH LAS VEGAS.

2   163. ████████████████████████████████████████

3   ████████████████████████████████████████████

4

5   ████████████████████████

6                      **FIRST CLAIM FOR RELIEF**
7   **VIOLATION OF CIVIL RIGHTS UNDER (42 U.S.C. § 1983)**
    **RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION**
8

9   164.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous

10  paragraphs as though fully restated herein.

11  165.   At all times relevant herein, ANTHONY MITCHELL and MICHAEL

12  MITCHELL were taking photographs from within their confines of their homes of what

13  they believed to be serious police misconduct carried out by NLVPD and HPD police

14  officers with the intent to disseminate these photographs and related information to the

15  public and the news media, including without limitation, Fox 5 Vegas, KVVU. LINDA

16  MITCHELL also intended and desired to disseminate the photographs and information

17

18  concerning the police misconduct to the public and the news media.

19  166.   Both ANTHONY MITCHELL and MICHAEL MITCHELL made efforts to

20  contact Fox 5 Vegas KVVU to bring the police misconduct to this news outlet's attention,

21

22  and with the intent to provide their photographs to this and other media outlets.

23  167.   There was a great likelihood that the message of police misconduct which

24  ANTHONY MITCHELL and MICHAEL MITCHELL sought to capture in their photograph

25

26  and disseminate to the public and the news media would be understood by those who

27  viewed it.

28  168.   ANTHONY MITCHELL's and MICHAEL MITCHELL's photographing of the

32

police misconduct with the intent to disseminate the photographs to the public and the news media constituted speech and expression protected under the First Amendment to the United States Constitution.

169.    ANTHONY MITCHELL's informing the HPD Officers and NLVPD SWAT Officers, OFFICER CHRISTOPHER WORLEY (HPD) and other Defendants as to his legal rights to remain secure in his home, to not become involved in the police operations, to not give the police permission to enter his home, and to express his disapproval as to the request that the police be allowed to enter his home, constituted speech and expression protected under the First Amendment to the United States Constitution.

170.    ANTHONY MITCHELL's giving Defendant OFFICER ALBERS and other officers the middle finger gesture and expressing his disapproval of the officers' conduct constituted speech and expression protected under the First Amendment to the United States Constitution.

171.    ANTHONY MITCHELL's yelling to HPD Officers to shut the siren off and expressing his disapproval of the conduct of the officers constituted speech and expression protected under the First Amendment to the United States Constitution.

172.    The Defendants witnessed or were otherwise aware of ANTHONY MITCHELL's and MICHAEL MITCHELL's protected speech and expression described in this claim for relief.

173.    Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, LIEUTENANT DIMAURO, as the officers in charge of the police operation at 363 Eveningside on July 10, 2011, knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan to enter Plaintiff ANTHONY MITCHELL's

home without consent, probable cause, or a warrant in order to chill Plaintiffs' legitimate exercise of constitutionally protected speech and expression protected by the First Amendment.

174.    Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO were the officers in charge of the police operation at 363 Eveningside on July 10, 2011 with the power to both give orders to subordinate officers and to thwart the execution of unlawful orders likely to result in constitutional deprivations under the First Amendment and pursuant to NLVPD and HPD Policies and Procedures. Specifically:

DP201.2 – 2. Unlawful Orders – No command or supervisory officer shall knowingly issue any order which is a violation of any law, ordinance, Department rule or regulation.

DP201.2 – 3. Obedience To Unlawful Orders – No employee is required to obey any order, which outwardly appears to be in direct conflict with any federal, state or local law. If the legality of an order is in doubt, the affected employee shall request the issuing supervisor/officer to clarify the order or confer with a higher authority.

DP322.4 Warrantless Searches with Probable Cause, Exigent Circumstances, and a Serious Crime – Search Of Premises Under Exigent Circumstances – A warrantless nonconsensual entry to conduct a search is not permitted unless there is probable cause to believe that contraband or evidence of a serious crime will be found inside the premises, and there is an exigent circumstance. Although exigent circumstances relieve an officer of the obligation of obtaining as warrant, they do not relieve an officer of the need to have probable cause to enter the house. Doubts about whether a warrantless entry may be justified should be resolved in favor of obtaining a warrant. Officers cannot create the exigent circumstance upon which they rely to make a warrantless nonconsensual entry. Officers may not speculate as to the existence of an exigent circumstance, rather, there must be specific and articulable facts which, taken together with rational inferences, support a warrantless intrusion. If an officer lacks probable cause and an exigent circumstance in relations to a serious crime, the officer can neither make a nonconsensual warrantless entry, nor can he order the occupants to come outside.

34

175.   The conduct of the HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers, and HPD Officers as complained of herein was carried out in retaliation for engaging in protected expression, and with the intent to intimidate Plaintiffs, compel their silence, and prevent them from photographing police misconduct and disseminating it to the public and the news media. HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers' conduct was carried out with the intent to cause a chilling effect of Plaintiffs' exercise of constitutional rights protected by the First Amendment.

176.   HPD CHIEF CHAMBERS and HPD DEPUTY CHIEF AVERETT were advised by CAPTAIN THOMPSON of HPD Command Officers' intentions to enter into ANTHONY MITCHELL and MICHAEL MITCHELL's home without consent, probable cause, or a warrant, and to effectuate unlawful arrest for engaging in constitutionally protected conduct.

177.   HPD CHIEF CHAMBERS and HPD DEPUTY CHIEF AVERETT failed to thwart or intervene to stop these actions and were objectively and deliberately indifferent to the constitutional violations likely to be caused by subordinates under their command.

178.   HPD CHIEF CHAMBERS subsequently ratified HPD Command Officers, HPD SWAT Officers, and HPD Officers conduct that resulted in constitutional deprivations of rights protected by the First Amendment, and violations of HPD Policies and Procedures, by failing to discipline anyone but CAPTAIN THOMPSON, and by intervening to commute CAPTAIN THOMPSON's discipline to only ten hours suspension.

179.   ██████████████████████████████████████████

████████████████████████████████ NLVPD CAPTAIN NOAHR is a subordinate who reports directly reports to NLVPD CHIEF CHRONISTER. As such, NLVPD CHIEF CHRONISTER had actual and constructive notice of conduct resulting in constitutional deprivations, was aware another department was investigating such deprivations, and failed to discipline any NLVPD Command Officers nor any NLVPD SWAT Officers. NLVPD CHIEF CHRONISTER displayed objective and deliberate indifference to constitutional deprivations of rights protected by the First Amendment.

180.    Defendants' conduct was the direct, but-for cause of a constitutional deprivation of Plaintiffs' constitutional rights under the First Amendment.

181.    As a direct and proximate result of the retaliatory conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling them to compensatory damages in an amount to be proven at trial.

182.    The Plaintiffs each seek punitive damages in an amount to be proven at trial as against the non-municipal Defendants as those Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of Plaintiffs' constitutional rights.

183.    Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

**SECOND CLAIM FOR RELIEF**

1
2
3

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
UNLAWFUL ENTRY INTO AND SEARCH OF ANTHONY MITCHELL'S
HOME AND VEHICLE AND THE UNLAWFUL SEIZURE AND ARREST OF
ANTHONY MITCHELL**

4
5
6

184.    Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

7
8
9
10
11
12

185.    Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, LIEUTENANT DIMAURO, as the officers in change of the police operation at 363 Eveningside on July 10, 2011, knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan to enter Plaintiff ANTHONY MITCHELL's home without consent, probable cause, or a warrant.

13
14
15
16
17
18
19

186.    Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO were the officers in charge of the police operation at 363 Eveningside on July 10, 2011 with the power to both give orders to subordinate officers and to thwart the execution of unlawful orders likely to result in constitutional deprivations under the Fourth Amendment and pursuant to NLVPD and HPD Policies and Procedures.

20
21
22
23
24
25

187.    NLVPD SWAT Officers and HPD Officers seized and arrested ANTHONY MITCHELL in his home and entered into and searched his home without a warrant, permission, probable cause, or legal justification, violating his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and no exigent circumstances or other legal justification obviated the need for a warrant.

26
27
28

188.    HPD CHIEF CHAMBERS and HPD DEPUTY CHIEF AVERETT were advised by CAPTAIN THOMPSON of the HPD Command Officers' intentions to enter into

ANTHONY MITCHELL's home without consent, probable cause, or a warrant.

189.   HPD CHIEF CHAMBERS and HPD DEPUTY CHIEF AVERETT failed to thwart or intervene and were objectively and deliberately indifferent to the constitutional violations likely to be caused by subordinates under their command.

190.   HPD CHIEF CHAMBERS subsequently ratified the conduct of the HPD Command Officers, HPD SWAT Officers, and HPD Officers that resulted in constitutional deprivations of rights protected by the Fourth Amendment, and violations of HPD Policies and Procedures, by failing to discipline anyone but CAPTAIN THOMPSON, and by intervening to commute CAPTAIN THOMPSON's discipline to only ten hours suspension.

191.   ████████████████████████████████████████████ ██████████████████████████████████████ NLVPD CAPTAIN NOAHR is a subordinate who reports directly reports to NLVPD CHIEF CHRONISTER. As such, NLVPD CHIEF CHRONISTER had actual and constructive notice of conduct resulting in constitutional deprivations, was aware another department was investigating such deprivations, and failed to discipline any NLVPD Command Officers nor any NLVPD SWAT Officers. NLVPD CHIEF CHRONISTER displayed objective and deliberate indifference to constitutional deprivations of rights protected by the Fourth Amendment.

192.   The HPD Officers and the HPD SWAT Officers entered into and searched ANTHONY MITCHELL's vehicle without warrant, consent, probable cause, or other legal justification violating his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

193.   The Defendants actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

194.    As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, damage to property, and loss of community reputation, entitling him to compensatory damages in an amount to be proven at trial.

195.    ANTHONY MITCHELL seeks punitive damages against the non-municipal Defendants in an amount to be proven at trial against as the Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of his constitutional rights.

196.    ANTHONY MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### USE OF EXCESSIVE FORCE AGAINST ANTHONY MITCHELL

197.    Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

198.    Regardless of the lawfulness or unlawfulness of the arrest, NLVPD SWAT Officers and HPD Officers subjected Plaintiff ANTHONY MITCHELL to excessive force and battery, violating his constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

199.    ANTHONY MITCHELL did not resist seizure or arrest or attempt to flee, and there were no circumstances that justified the excessive force used against ANTHONY MITCHELL.

200.    The excessive force and battery used against ANTHONY MITCHELL includes,

without limitation, pointing loaded firearms at ANTHONY MITCHELL, firing multiple "pepperball" rounds at him, and the manner in which he was cuffed, dragged out of his home, slammed against the exterior of his home, had his face pressed into the stucco wall, and held in this painful and humiliating configuration for several minutes.  All of this conduct was unnecessarily rough and wanton and was intended to cause and did cause ANTHONY MITCHELL severe pain and humiliation.

201.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO, acting under color of law as the officers in change of the police operation at 363 Eveningside on July 10, 2011, knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan to enter Plaintiff ANTHONY MITCHELL's home without consent, probable cause, or a warrant.

202.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO were the officers in charge of the police operation at 363 Eveningside on July 10, 2011 with the power to both give orders to subordinate officers and to thwart the execution of unlawful orders likely to result in constitutional deprivations under the Fourth and Fourteenth Amendments and pursuant to NLVPD and HPD Policies and Procedures. Specifically:

DP201.2 – 2. Unlawful Orders – No command or supervisory officer shall knowingly issue any order which is a violation of any law, ordinance, Department rule or regulation.

DP201.2 – 3. Obedience To Unlawful Orders – No employee is required to obey any order, which outwardly appears to be in direct conflict with any federal, state or local law. If the legality of an order is in doubt, the affected employee shall request the issuing supervisor/officer to clarify the order or confer with a higher authority.

DP300 Use of Force policy generally.

203.   HPD CHIEF CHAMBERS subsequently ratified HPD Command officers, HPD SWAT Officers, and HPD Officers' conduct that resulted in constitutional deprivations of rights protected by the Fourth and Fourteenth Amendments, and violations of HPD Policies and Procedures, by failing to discipline anyone but CAPTAIN THOMPSON, and by intervening to commute CAPTAIN THOMPSON's discipline to only ten hours suspension.

204.   ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ NLVPD CAPTAIN NOAHR is a subordinate who reports directly reports to NLVPD CHIEF CHRONISTER. As such, NLVPD CHIEF CHRONISTER had actual and constructive notice of conduct resulting in constitutional deprivations, was aware another department was investigating such deprivations, and failed to discipline any NLVPD Command Officers and NLVPD SWAT Officers. NLVPD CHIEF CHRONISTER displayed objective and deliberate indifference to constitutional deprivations of rights protected by the Fourth and Fourteenth Amendments.

205.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

206.   As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, damage to property and loss of community reputation, entitling him to compensatory damages in an amount to be proven at trial.

207.   ANTHONY MITCHELL seeks punitive damages against the non-municipal Defendants in an amount to be proven at trial as those Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of his constitutional rights.

41

208.   ANTHONY MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**UNLAWFUL SEIZURE AND ARREST OF MICHAEL MITCHELL**

209.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

210.   HPD Command Officers, NLVPD Command Officers, HPD SWAT Officers, and HPD Officers, acting in concert, seized and arrested MICHAEL MITCHELL without warrant, probable cause or legal justification, violating his rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

211.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, and LIEUTENANT DIMAURO, as the officers in change of the police operation at 363 Eveningside on July 10, 2011, knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan to arrest Plaintiff MICHAEL MITCHELL without probable cause.

212.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO, were the officers in charge of the police operation at 363 Eveningside on July 10, 2011 with the power to both give orders to subordinate officers, and thwart the execution of unlawful orders likely to result in constitutional deprivations and pursuant to NLVPD and HPD Policies and Procedures. Specifically:

DP201.2 – 2. Unlawful Orders – No command or supervisory officer shall

knowingly issue any order which is a violation of any law, ordinance, Department rule or regulation.

DP201.2 – 3. Obedience To Unlawful Orders – No employee is required to obey any order, which outwardly appears to be in direct conflict with any federal, state or local law. If the legality of an order is in doubt, the affected employee shall request the issuing supervisor/officer to clarify the order or confer with a higher authority.

213.    HPD CHIEF CHAMBERS subsequently ratified HPD Command officers, HPD SWAT Officers, and HPD Officers' conduct that resulted in constitutional deprivations of rights protected by the Fourth and Fourteenth Amendments, and violations of HPD Policies and Procedures, by failing to discipline anyone but CAPTAIN THOMPSON, and by intervening to commute CAPTAIN THOMPSON's discipline to only ten hours suspension.

214.    ████████████████████████████████████████████████ ████████████████████████████████████████████ NLVPD CAPTAIN NOAHR is a subordinate who reports directly reports to NLVPD CHIEF CHRONISTER. As such, NLVPD CHIEF CHRONISTER had actual and constructive notice of conduct resulting in constitutional deprivations, was aware another department was investigating such deprivations, and failed to discipline any NLVPD Command Officers and NLVPD SWAT Officers. NLVPD CHIEF CHRONISTER displayed objective and deliberate indifference to constitutional deprivations of rights protected by the Fourth and Fourteenth Amendments.

215.    The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

216.    As a direct and proximate result of the conduct set forth in this claim for relief, MICHAEL MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling him to

43

compensatory damages in an amount to be proven at trial.

217.   MICHAEL MITCHELL seeks punitive damages against the non-municipal Defendants in an amount to be proven at trial as those Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of his constitutional rights.

218.   MICHAEL MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### FIFTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### UNLAWFUL SEIZURE AND ARREST OF LINDA MITCHELL

219.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

220.   The HPD SWAT Officers and HPD Officers seized and arrested LINDA MITCHELL without warrant, probable cause or legal justification, violating her rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

221.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, and LIEUTENANT DIMAURO, as the officers in change of the police operation at 363 Eveningside on July 10, 2011, knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan to seize Plaintiff LINDA MITCHELL without probable cause.

222.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO were the officers in charge of the police operation at 363 Eveningside on July 10, 2011 with the power to both give orders

to subordinate officers and to thwart the execution of unlawful orders likely to result in constitutional deprivations and pursuant to NLVPD and HPD Policies and Procedures.

223.   HPD CHIEF CHAMBERS subsequently ratified HPD Command officers, HPD SWAT Officers, and HPD Officers' conduct that resulted in constitutional deprivations of rights protected by the Fourth and Fourteenth Amendments, and violations of HPD Policies and Procedures, by failing to discipline anyone but CAPTAIN THOMPSON, and by intervening to commute CAPTAIN THOMPSON's discipline to only ten hours suspension.

224.   ███████████████████████████████████████████████

████████████████████████████████████ NLVPD CAPTAIN NOAHR is a subordinate who reports directly reports to NLVPD CHIEF CHRONISTER. As such, NLVPD CHIEF CHRONISTER had actual and constructive notice of conduct resulting in constitutional deprivations, was aware another department was investigating such deprivations, and failed to discipline any NLVPD Command Officers and NLVPD SWAT Officers. NLVPD CHIEF CHRONISTER displayed objective and deliberate indifference to constitutional deprivations of rights protected by the Fourth and Fourteenth Amendments.

225.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

226.   As a direct and proximate result of the conduct set forth in this claim for relief, LINDA MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling her to compensatory damages in an amount to be proven at trial.

227.   LINDA MITCHELL seeks punitive damages against the non-municipal Defendants in an amount to be proven at trial as those Defendants acted with malice,

45

intent, oppression, knowledge and reckless indifference to violation of her constitutional rights.

228.   LINDA MITCHELL has been forced to engage the services of an attorney, and is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**UNLAWFUL ENTRY INTO AND SEARCH OF**
**MICHAEL MITCHELL'S AND LINDA MITCHELL'S HOME AND VEHICLE**

229.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

230.   HPD SWAT Officers and HPD Officers entered into and searched the property, home and vehicles of MICHAEL MITCHELL and LINDA MITCHELL without permission, warrant, probable cause, or legal justification, violating their rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and no exigent circumstances or other legal justification obviated the need for a warrant.

231.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, LIEUTENANT DIMAURO, as the officers in change of the police operation at 363 Eveningside on July 10, 2011, knowingly, intentionally, wantonly and maliciously plotted to, and executed a plan to enter the home and vehicle of MICHAEL MITCHELL and LINDA MITCHELL without consent, probable cause, or a warrant.

232.   Defendants CAPTAIN THOMPSON, LIEUTENANT CASSELL, SERGEANT SPATH, CAPTAIN NOAHR, and LIEUTENANT DIMAURO were the officers in charge of the police operation at 363 Eveningside on July 10, 2011 with the power to both give orders

to subordinate officers, and to thwart the execution of unlawful orders likely to result in constitutional deprivations under the Fourth Amendment and pursuant to NLVPD and HPD Policies and Procedures.

233.    HPD SWAT Officers, and HPD Officers seized and arrested MICHAEL MITCHELL, and detained LINDA MITCHELL, entered their home and vehicle and conducted a search without warrant, permission, probable cause, or legal justification, violating rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and no exigent circumstances or other legal justification obviated the need for a warrant.

234.    HPD CHIEF CHAMBERS and HPD DEPUTY CHIEF AVERETT were advised by CAPTAIN THOMPSON of HPD Command Officers' intentions to enter into MICHAEL and LINDA MITCHELL's home without consent, probable cause, or a warrant.

235.    HPD CHIEF CHAMBERS and HPD DEPUTY CHIEF AVERETT failed to thwart or intervene and were objectively indifferent to the constitutional violations likely to be caused by subordinates under their command.

236.    HPD CHIEF CHAMBERS subsequently ratified the HPD Command Officers, HPD SWAT Officers, and HPD Officers' conduct that resulted in constitutional deprivations of rights protected by the Fourth Amendment, and violations of HPD Policies and Procedures, by failing to discipline anyone but CAPTAIN THOMPSON, and by intervening to commute CAPTAIN THOMPSON's discipline to only ten hours suspension.

237.    ███████████████████████████████████████████ ███████████████████████████████████████ NLVPD CAPTAIN NOAHR is a subordinate who reports directly reports to NLVPD CHIEF CHRONISTER. As such,

NLVPD CHIEF CHRONISTER had actual and constructive notice of conduct resulting in constitutional deprivations, was aware another department was investigating such deprivations, and failed to discipline any NLVPD Command Officers nor any NLVPD SWAT Officers. NLVPD CHIEF CHRONISTER displayed objective and deliberate indifference to constitutional deprivations of rights protected by the Fourth Amendment.

238.   The actions complained of in this claim for relief were unreasonable and in violation of clearly established law.

239.   As a direct and proximate result of the conduct set forth in this claim for relief, MICHAEL MITCHELL and LINDA MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

240.   MICHAEL MITCHELL and LINDA MITCHELL each seek punitive damages against the non-municipal Defendants in an amount to be proven at trial as those Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

241.   MICHAEL MITCHELL and LINDA MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### SEVENTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### UNLAWFUL PUNISHMENT OF ANTHONY MITCHELL AND MICHAEL MITCHELL AND DELIBERATE INDIFFERENCE TO THEIR SERIOUS MEDICAL NEEDS AS PRETRIAL DETAINEES

242.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

48

243.  After ANTHONY MITCHELL was arrested and in police custody, he was subjected to punishment while a pretrial detainee by being denied treatment for serious medical needs by officers the Henderson jail, violating his rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

244.  After MICHAEL MITCHELL was arrested and in police custody, he was subjected to punishment while a pretrial detainee by HPD Officers, including Officer FEOLA, violating his rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

245.  After ANTHONY MITCHELL was detained and arrested by the named NLVPD SWAT Officers, by HPD OFFICER VILLA and by HPD OFFICER WALTER and while in their custody and in the capacity of a pretrial detainee, ANTHONY MITCHELL was subjected to unjustified, unnecessary, wanton and unreasonable physical punishment by these Defendant police officers, who intended to punish and harm ANTHONY MITCHELL in carrying out their conduct.

246.  At the time this punishment was being administered, ANTHONY MITCHELL was not resisting or in any manner posing a threat to anyone, and it was administered without any legal cause or justification.

247.  Both before and after ANTHONY MITCHELL was transported to the Henderson Detention Center, he informed officers of the HPD of his serious medical need in the form of his anti-seizure medication.

248.  After MICHAEL MITCHELL was arrested by HPD Officers, including OFFICER FEOLA, and while in the custody of these police officers in the capacity of a pretrial detainee, MICHAEL MITCHELL was subjected to unjustified, unnecessary, wanton

and unreasonable physical punishment in the form of being subjected to excessive and life-threatening heat after being placed in the rear of a police vehicle, and these officers intended to punish and harm MICHAEL MITCHELL in carrying out this conduct.

249.   The HPD Officers were aware of MICHAEL MITCHELL's serious medical needs based on his repeated and vocal demands that something be done about the excessive heat he was being subjected to in the rear of the police vehicle.

250.   The HPD Officers acted with deliberate indifference to MICHAEL MITCHELL's serious medical needs and failed to adequately respond to his requests to relieve the oppressive and life-threatening heat he was being subjected to.

251.   As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL and MICHAEL MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

252.   ANTHONY MITCHELL and MICHAEL MITCHELL each seek punitive damages against the non-municipal Defendants in an amount to be proven at trial as those Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

253.   ANTHONY MITCHELL and MICHAEL MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

///

///

50

1

2

3

**EIGHTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**MALICIOUS PROSECUTION WITH INTENT TO DEPRIVE ANTHONY MITCHELL AND**
**MICHAEL MITCHELL OF CONSTITUTIONAL RIGHTS**

4

5

6

254.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

255.   The HPD Command Officers, NLVPD Command Officers, HPD SWAT Officers, NLVPD SWAT Officers, and HPD Officers acted willfully, knowingly, and with malice and specific intent to deprive ANTHONY MITCHELL and MICHAEL MITCHELL of their constitutional rights to freedom from illegal searches, unlawful arrest, detention, and their rights to freedom of expression, to physical liberty, and to due process of law under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by causing Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL to be jailed, filing police reports containing knowingly false statements, and making false statements to regarding ANTHONY MITCHELL's loading and/or brandishing a firearm, and falsely claiming to have had confirmation that MICHAEL and ANTHONY MITCHELL were communicating with Phillip Mitchell about police tactical movements prior to violating their constitutional rights.

21

22

23

24

25

256.   In doing so, HPD Command Officers, NLVPD Command Officers, HPD SWAT Officers, NLVPD SWAT Officers, and HPD Officers caused criminal complaints to issue against MICHAEL and ANTHONY MITCHELL while knowing that there was no probable cause to initiate the criminal proceedings against them.

26

27

28

257.   The criminal proceedings that were the subject of the July 13, 2011 criminal complaints against ANTHONY MITCHELL terminated on November 9, 2013 when all

51

charges were dismissed with prejudice.

258.   The criminal proceedings that were the subject of the July 13, 2011 criminal complaint against MICHAEL MITCHELL terminated on November 3, 2013 when all charges were dismissed with prejudice.

259.   As a direct and proximate result of the conduct set forth in this claim for relief, ANTHONY MITCHELL and MICHAEL MITCHELL suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

260.   ANTHONY MITCHELL and MICHAEL MITCHELL each seek punitive damages in an amount to be proven at trial as Defendants acted with malice, intent, oppression, knowledge and reckless indifference to violation of their constitutional rights.

261.   ANTHONY MITCHELL and MICHAEL MITCHELL have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### NINTH CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### MUNICIPALITY LIABILITY UNDER MONELL

**A.     UNCONSTITUTIONAL OFFICIAL POLICY LIABILITY**

262.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

263.   At all times relevant to the claims herein, the HPD had an official written policy that was unconstitutional on its face which permits Henderson Police officers to forcibly enter an individual's premises without consent, probable cause, or a warrant.

Specifically:

DM608 (changed to DPM363 in 2013) permits officers to be "evacuated due to an unusual occurrence such as a barricaded individual, a known or suspected explosive device or a gas leak.

264.   HPD Policy DM608 cites directly to NRS 475.070, which falls under a title expressly for fires and explosives.

265.   Nowhere in NRS 475.070 does any language appear permitting an officer to enter into someone's home without consent, probable cause or a warrant to evacuate them for a "barricaded individual" situation.

266.   Additionally, because NRS 475.070 falls under a title for Fires and Explosives, it is only applicable to emergency situations involving fires and explosives.

267.   The Defendants were aware of the unconstitutionality of this policy and chose to utilize it in support of their actions on July 10, 2011.

268.   HPD Policy was, therefore, a source of the conduct resulting in the violation of ANTHONY, LINDA and MICHAEL MITCHELL's rights under the constitution.

269.   CHIEF CHAMBERS, a final policy maker for the CITY OF HENDERSON who had decision making authority in adopting the policies and procedures of the HPD, permitted this facially unconstitutional policy to be enforced.

270.   The policy is unconstitutional on its face, directly and proximately resulted in Defendants' violation of ANTHONY, LINDA and MICHAEL MITCHELL's rights under the constitution.

271.   THE CITY OF HENDERSON is subject to liability pursuant to the United

States Supreme Court's holding in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 701 (1978).

272.    As a direct and proximate result of the conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling them to compensatory damages in an amount to be proven at trial.

273.    Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

**B.    UNCONSTITUTIONALLY APPLIED OFFICIAL POLICY LIABILITY**

274.    Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

275.    That at all times relevant to the claims herein, the HPD had an official written policy that was unconstitutional on its face, which permits Henderson Police officers to forcibly enter an individual's premises without consent, probable cause, or a warrant. Specifically:

> DM608 (changed to DPM363 in 2013) permits officers to be "evacuated due to an unusual occurrence such as a barricaded individual, a known or suspected explosive device or a gas leak."

276.    HPD Policy DM608 cites directly to NRS 475.070, which falls under a title expressly for fires and explosives.

277.    Nowhere in NRS 475.070 does any language appear permitting an officer to enter into someone's home without consent, probable cause or a warrant to evacuate them for a "barricaded individual" situation.

278.    Additionally, because NRS 475.070 falls under a title for Fires and Explosives,

54

1    it is only applicable to emergency situations involving fires and explosives.

2    279.   Defendants, each of them, were aware of the unconstitutionality of this policy

3    and chose to utilize it in support of their actions on July 10, 2011.

4

5    280.   HPD policy was, therefore, a source of the conduct resulting in the violation of

6    ANTHONY, LINDA and MICHAEL MITCHELL's rights under the constitution.

7    281.   ██████████ ███ ████ ████████████████████████

8    ████████████████████████████████████████████ █████████

9

10   ████████████████████████████ ███████   in   violations   of

11   ANTHONY, LINDA and MICHAEL MITCHELL's constitutional rights.

12   282.   In doing so, the aforementioned Defendants created any emergency, and

13   impermissibly applied DM0608 to the incident that occurred on July 10, 2011.

14

15   283.   DM0608 was therefore unconstitutionally applied to ANTHONY, LINDA, and

16   MICHAEL MITCHELL.

17   284.   CHIEF CHAMBERS, a final policy maker for the CITY OF HENDERSON who

18   had decision making authority in adopting the policies and procedures of the HPD and

19

20   permitted this facially unconstitutional policy to be enforced, ratified its unconstitutional

21   application.

22   285.   The policy directly and proximately caused Defendants' conduct, resulting in

23   the violation of ANTHONY, LINDA and MICHAEL MITCHELL's rights under the

24   Constitution.

25

26   286.   THE CITY OF HENDERSON and THE CITY OF NORTH LAS VEGAS are

27   subject to liability pursuant to the United States Supreme Court's holding in *Monell v.*

28   *Dept. of Soc. Servs.*, 436 U.S. 658, 701 (1978).

287.   As a direct and proximate result of the conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling them to compensatory damages in an amount to be proven at trial.

288.   Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

## C.    CUSTOM AND PRACTICE LIABILITY

289.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

290.   Prior to the events of June 10th, 2011, the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS developed and maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of United States citizens, which caused the violations of Plaintiffs' rights.

291.   The actions of the Defendants herein resulted from and were taken from a de facto policy of the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS which is implemented by the police officers, attorneys and employees, agents, servants and contractors of HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS.  This de facto policy includes, without limitation:

a.    Summarily violating the constitutional rights of individuals and punishing person who refused to obey police orders, whether lawful or not, by means of unlawful detention, arrest, search, assault, battery, excessive force and malicious prosecution;

b.    Searching homes and ordering citizens to leave their homes without warrant, probable cause, or legal justification;

1

2      c.   Summarily violating the constitutional rights of individuals and punishing
3            persons—by means of unlawful detention, arrest, search, assault, battery,
            excessive force and malicious prosecution—who exercise their First
4            Amendment right to express their legal rights and remedies, express their
            opinion about police conduct, photograph police activities and conduct, and
5            disseminate and intend to disseminate information about police conduct to the
            news media;
6

7      d.   Summarily punishing persons in an unlawful manner without corroborating
            information, probable cause, legal excuse and / or rightful authority of law by
8            means of unlawful detention, arrest, search, assault, battery, excessive force
            and malicious prosecution; and
9

10     e.   Covering up, refusing to investigate, and misrepresenting facts concerning
            allegations or cases of police misconduct.
11

12     292.   The existence of this de facto policy has been known to supervisory and

13  policy-making officers and officials of the HPD and the NLVPD for a substantial period of

14  time.

15     293.   On or about August 1, 2013, representatives for the CITY OF HENDERSON

16  and the HPD made public statements to the press confirming aspects of this policy and

17
    custom, including without limitation, justifying the conduct complained of herein based on
18
    Plaintiffs "using provocative language against police officers," asserting that the entry into
19
    and search of the home of MICHAEL MITCHELL and LINDA MITCHELL was "to remove
20
    the occupants from continuing to do their activities," and making statements at odds with
21

22  the July 12, 2011, police report of OFFICER DAVID CAWTHORN, including false claims

23  that ANTHONY MITCHELL was loading and/or holding a firearm when officers made

24  forced entry into his home.

25     294.   Despite their knowledge of the said illegal policy and practices, the
26
    supervisory and policy-making officials of the HPD, the CITY OF HENDERSON, the
27

28

NLVPD and the CITY OF NORTH LAS VEGAS, as a matter of policy, have not taken steps to terminate said practices or investigate them, have not appropriately disciplined or otherwise properly supervised individual police officers and attorneys who engaged in said practices, have not effectively trained or supervised police officers and attorneys with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and practices described through their deliberate indifference to the effect of said policy and practices upon the constitutional rights of the residents of and visitors to the CITY OF HENDERSON, the CITY OF NORTH LAS VEGAS, and the County of Clark.

295.    The foregoing acts, omissions, and systematic failures are customs and policies of the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS and caused the named Defendants and other officers to believe that determination of the right to detain, search, compel removal from a home, use force and the amount of allowable legal force, punish individuals for exercising their First Amendment rights of expression, and file false criminal complaints and without probable cause of a crime being committed was within their discretion, and that complaints of illegal detainment, search, arrest, removal from a home, punishment, use of excessive force, and filing false criminal complaints without probable cause would not be honestly or properly investigated, with the foreseeable result that these Defendants would be likely to illegally detain, search, arrest, punish, compel removal from homes, use excessive force and make false criminal complaints without probable cause.

296.    The above-described polices and/or customs demonstrate a deliberate indifference on the part of Defendants CITY OF HENDERSON and CITY OF NORTH LAS

VEGAS to the Constitutional rights of United States citizens, and were the cause of the violations of Plaintiffs' rights alleged herein.

297.   While HPD had a written search and seizure policy in place, there was a custom and practice of not following the warrant policy, and rather relying exclusively on exigent circumstances to effectuate warrantless searches and seizures in incidents involving the HPD SWAT Team.

298.   ████████████████████████████████████ ████████ █ ████████████ ████ █████ ████████████████████████████████████ █████████████████████████████████ █████████████████

299.   This statement indicates that LIEUTENANT CASSELL, the HPD SWAT Commander, has in the past relied solely on exigency to justify entering a dwelling without a warrant.

300.   Together, Sergeant McKenna, LIEUTENANT DIMAURO (NLVPD) and LIEUTENANT CASSELL's (HPD) statements during a subsequent HPD internal investigation indicate a custom and practice of HPD and NLVPD of utilizing the exigency exception without having probable cause to enter homes and without a warrant.

301.   This custom and practice was a direct and proximate cause of the NLVPD SWAT Officers, the HPD SWAT Officers' and the HPD Officers' unlawful entry and search of Plaintiffs' home and the seizure of each of the Plaintiffs.

302.   THE CITY OF HENDERSON and THE CITY OF NORTH LAS VEGAS are, therefore, subject to vicarious liability pursuant to the United States Supreme Court's holding in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 701 (1978).

303.   As a direct and proximate result of the aforesaid acts, omissions, policies and customs of the HPD, the CITY OF HENDERSON, the NLVPD and the CITY OF NORTH LAS VEGAS, Plaintiffs were improperly and illegally detained, searched, arrested, forcibly removed from their homes, punished for their lawful expression protected under the First amendment and maliciously prosecuted and suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

304.   Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

**D.   CANTON FAILURE TO TRAIN, SUPERVISE, OR DISCIPLINE LIABILITY**

305.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

306.   ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

307.   Based on the actions and statements from the HPD internal affairs investigation, individual incident reports, and correspondence from officials in both the HPD and NLVPD as previously alleged, the HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers, and the HPD Officers do not understand the need and effect of getting a warrant prior to conducting a search or seizure.

308.   Despite this obvious need for training and discipline for the unconstitutional activity that occurred on July 10, 2011, NLVPD CHIEF CHRONISTER failed to take any

60

action in this matter, and failed to discipline any officers involved.

309.   Despite this obvious need for training and discipline, HPD CHIEF CHAMBERS failed to take action for approximately three weeks, and once she did, ██ ████████████████████████████████████████████████████ HPD CHIEF CHAMBERS failed to discipline any other HPD officers for this incident, and failed to address the obvious need to train officers on the requirements of the Fourth Amendment.

310.   HPD CHIEF CHAMBERS and NLVPD CHIEF CHRONISTER's failure to train, supervise, and discipline officers at every level of their respective organizations directly and proximately resulted in violations of ANTHONY, LINDA, and MICHAEL MITCHELL's constitutional rights under the Fourth Amendment.

311.   THE CITY OF HENDERSON and THE CITY OF NORTH LAS VEGAS are, therefore, subject to vicarious liability pursuant to the United States Supreme Court's holding in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 701 (1978), and *City of Canton v. Harris*, 489 U.S. 378 (1989).

312.   As a direct and proximate result of the conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling them to compensatory damages in an amount to be proven at trial.

313.   Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

///

///

61

1
2

**TENTH CLAIM FOR RELIEF**
**(Assault)**

3
4

314.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

5
6
7
8
9

315.   As described hereinabove, by pointing loaded firearms at Plaintiffs, and making threatening moves and advancing upon Plaintiffs, the previously named Defendants, including Defendant ALBERS, caused Plaintiffs to feel fear of harmful or offensive physical contact on multiple occasions.

10
11
12
13
14
15

316.   The actions of the HPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers, and the HPD Officers in causing Plaintiffs to fear such harmful or offensive physical contact were intentional, and undertaken with malice, oppression, and a willful disregard of Plaintiffs' rights, and without probable cause, legal justification, permission or consent.

16
17
18
19
20

317.   As a direct and proximate result of these actions, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling them to compensatory damages in an amount to be proven at trial.

21
22
23
24

318.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

25
26

**ELEVENTH CLAIM FOR RELIEF**
**(Battery)**

27
28

319.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

320.   As a result of being seized, shot, thrown to the ground, slammed into walls, handcuffed, beaten, and otherwise touched without consent as previously described, Plaintiffs suffered harmful or offensive physical contact at the hands of the NLVPD SWAT Officers, HPD SWAT Officers, and HPD Officers.

321.   The actions of the NLVPD SWAT Officers, HPD SWAT Officers, and HPD Officers in inflicting such harmful or offensive physical contact were intentional, and undertaken with malice and oppression.

322.   As a direct and proximate result of these actions, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

323.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

**TWELFTH CLAIM FOR RELIEF**
**(FALSE ARREST AND IMPRISONMENT)**

324.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

325.   HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers detained and arrested or caused to be detained and arrested Plaintiff ANTHONY MITCHELL and restrained his liberty without cause by dragging him from his home, handcuffing him, placing him in a police vehicle, and jailing him, all against his will and without his consent.

326.   HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers detained and arrested or caused to be detained and arrested Plaintiff MICHAEL MITCHELL and restrained his liberty without cause by physically preventing him from leaving the "Command Center," handcuffing him, placing him in a police vehicle, and jailing him, all against his will and without his consent.

327.   HPD  Command Officers, NLVPD Command Officers, HPD SWAT Officers and HPD Officers detained or caused to be detained Plaintiff LINDA MITCHELL and restrained her liberty without cause by seizing her by the arm, forcefully dragging her away against her will, and preventing her from remaining in her home, all against her will and without her consent.

328.   HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers, and HPD Officers' detention and arrest of Plaintiffs was without legal authority, without any  reasonable suspicion of wrongdoing, without  probable cause to believe that a crime had been committed, without exigent circumstances, and without a judicial warrant.

329.   HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers acted with oppression, fraud, and malice in detaining, arresting and restraining the liberty of Plaintiffs.

330.   As a direct and proximate result of the conduct set forth in this claim for relief, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

331.   Plaintiffs have each been forced to engage the services of an attorney, and are

entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### THIRTEENTH CLAIM FOR RELIEF
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

332.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

333.   As set forth hereinabove, HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers conduct was intentional, malicious, and oppressive, and constituted extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.

334.   As the actual and proximate result of HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers' extreme and outrageous conduct, including without limitation the invasion of Plaintiff ANTHONY MITCHELL's home, the invasion of the home of LINDA MITCHELL and MICHAEL MITCHELL, the forcible removal of LINDA MITCHELL from their home, the quartering of Defendants in their home without their consent, the shooting of Plaintiff ANTHONY MITCHELL and his dog while he was on the phone with his mother, and the unjustified handcuffing and detention of Plaintiffs ANTHONY and MICHAEL MITCHELL in each other's presence and in the presence of LINDA MITCHELL, physically abusing ANTHONY MITCHELL during and after his arrest, locking MICHAEL MITCHELL in a dangerously hot vehicle, and denying ANTHONY MITCHELL his anti-seizure medication, Plaintiffs suffered humiliation, mental anguish, physical discomfort, injury, and severe emotional distress, entitling each of them to compensatory damages in an amount to be

proven at trial.

335.   Plaintiffs have each been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### FOURTEENTH CLAIM FOR RELIEF
### (CIVIL CONSPIRACY)

336.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

337.   The HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers, and HPD Officers, acting in concert, agreed among themselves to detain, arrest, punish and employ physical violence against Plaintiffs, in the manners and ways previously alleged, all the while knowing that they had no legal right to do so.

338.   The HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers further agreed among themselves to provide a false accounting of the incident for the purpose of concealing their own wrongdoing and causing Plaintiffs to be arrested and jailed.

339.   The actions of HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers were undertaken with fraud, oppression, and malice.

340.   As a direct and proximate result of HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers' actions, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical

injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

341.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### FIFTEENTH CLAIM FOR RELIEF
### (MALICIOUS PROSECUTION)

342.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

343.   The HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers initiated criminal proceedings against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL by filing or causing to be filed a complaint in the Municipal Court of the CITY OF HENDERSON charging Plaintiffs each with crimes that were not committed.

344.   The HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers had no probable cause to believe that Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL had committed the charged crimes.

345.   The charges against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were dismissed with prejudice, thereby terminating the proceedings against Plaintiffs.

346.   The dismissal of said charges was not based on any agreement, request or acceptance of mercy, or compromise, and such termination was in the favor of Plaintiffs

67

ANTHONY MITCHELL and MICHAEL MITCHELL.

347.   The HPD  Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers acted with oppression, fraud, and malice in initiating criminal proceedings against Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL.

348.   As a result of the criminal proceedings initiated by HPD Command Officers, NLVPD Command Officers, NLVPD SWAT Officers, HPD SWAT Officers and HPD Officers, Plaintiffs ANTHONY MITCHELL and MICHAEL MITCHELL were wrongfully imprisoned, forced to post bond, and suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

349.   ANTHONY MITCHELL and MICHAEL MITCHELL have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### SIXTEENTH CLAIM FOR RELIEF
### (NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING)

350.   Plaintiffs hereby repeat, reallege, and incorporate by reference the previous paragraphs as though fully restated herein.

351.   Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS ("Municipal Defendants") owed a duty to citizens, such as Plaintiffs, to exercise care in the hiring, training, and supervision of their police force and attorneys, so as to protect citizens from false arrest, false imprisonment, assault, battery, and the like, at the hands of poorly trained, poorly supervised, unwisely hired, or unwisely retained police officers and

68

attorneys.

352.   Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS breached this duty by

a.    negligently tolerating and/or ratifying the practice or policy of their police officers in detaining, seizing, and arresting citizens without probable cause or reasonable grounds, punishing pretrial detainees and ignoring their serious medical needs, punishing citizens based on their expression protected under the First Amendment, maliciously prosecuting citizens, and violating citizens' Constitutional rights to due process and to freedom from unreasonable seizure, as manifested by Defendants' failure to discipline the officers and attorneys who committed such acts as alleged above;

b.    negligently tolerating and / or ratifying the practices and policies previously described herein; and

c.    failing to properly screen individuals who apply to become police officers and attorneys, and failing to remove dangerous police, as manifested by NLVPD's failure to conduct an internal investigation and inquiry and HPD's failure to appropriately discipline its officers under the circumstances described herein.

353.   As a direct and proximate result of the municipal Defendants' negligence, Plaintiffs suffered severe emotional distress, pain and suffering, humiliation, physical injuries, and loss of community reputation, entitling each of them to compensatory damages in an amount to be proven at trial.

354.   Plaintiffs have been forced to engage the services of an attorney, and are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable state or federal law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter a judgment in their favor and against Defendants, jointly and severally, and award:

69

1.    General damages in an amount to be proven at trial as to each and every claim herein;

2.    Exemplary and/or punitive damages in an amount to be proven at trial as to each and every claim herein, save for the Seventeenth and Twenty-Second claims for relief;

3.    Prejudgment interest pursuant to law;

4.    Declaratory relief declaring Defendant Officers' conduct to be unconstitutional;

5.    Following a proper motion, a permanent injunction requiring Defendants CITY OF HENDERSON and CITY OF NORTH LAS VEGAS to adopt appropriate policies regarding the hiring, training, and supervision of their police officers;

6.    Reasonable attorneys' fees and costs pursuant to all applicable state and federal statutes, codes, and rules, including without limitation 42 U.S.C. § 1988; and

7.    Such other and further relief as the Court deems just and proper.

///
///
///
///
///
///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues in this action to the extent authorized by law.

DATED this 1st day of April, 2016.

/s/ *Frank Cofer, Esq.*
FRANK H. COFER, ESQ.
Nevada Bar No. 11362
COFER & GELLER, LLC
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 777-9999
(702) 777-9995 (fax)
fcofer@cofergeller.com

BENJAMIN C. DURHAM, ESQ.
Nevada Bar No. 7684
BENJAMIN DURHAM LAW FIRM
601 South Tenth Street
Las Vegas, Nevada 89101
(702) 631-6111
(702) 946-1396 (fax)
bdurham@vegasdefense.com

BRADLEY S. MAINOR, ESQ.
Nevada Bar No. 7434
bmainor@mainorwirth.com
JOSEPH J. WIRTH, ESQ.
Nevada Bar No. 10280
jwirth@mainorwirth.com
6018 S. Ft. Apache Rd., Ste. 150
Las Vegas, Nevada 89148
(702) 464-5000
(702) 463-4440
*Attorneys for Plaintiffs*